1

Michael F. Ram, SBN #104805
Email:  mram@rocklawcal.com

2

RAM, OLSON, CEREGHINO
  & KOPCZYNSKI LLP

3

101 Montgomery Street, Suite 1800
San Francisco, California 94104

4

Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

5

6

Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com

7

Kerem M. Levitas
Email: klevitas@terrellmarshall.com

8

936 N. 34th Street, Suite 300
Seattle, Washington  98103

9

Telephone:  (206) 816-6603
Facsimile:   (206) 319-5450

10

11

[Additional Counsel Appear on Signature Page]

12

*Attorneys for Plaintiffs and the Proposed Class*

13

UNITED STATES DISTRICT COURT

14

FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

ABANTE ROOTER AND PLUMBING,
INC., GEORGE ROSS MANESIOTIS,

16

MARK HANKINS, and PHILIP J.
CHARVAT, individually and on behalf of all

17

others similarly situated,

18

Plaintiffs,

19

20

v.

21

ALARM.COM INCORPORATED, and
ALARM.COM HOLDINGS, INC.,

22

Defendants.

23

24

25

26

27

NO.

**CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF**

<u>JURY TRIAL DEMAND</u>

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ...................................................................................... 1

II.    PARTIES ................................................................................................... 1

III.   JURISDICTION AND VENUE ................................................................ 2

IV.    THE TCPA ................................................................................................ 2

V.     FACTUAL ALLEGATIONS .................................................................... 3

     A.     Both Defendants are Liable for the Illegal Conduct ...................... 3

     B.     Defendants Use Authorized Dealers to Generate Business ............ 5

     C.     Alliance Security and its Predecessor are Notorious TCPA
         Scofflaws ........................................................................................ 8

     D.     Defendants Expressly Authorized Alliance to Market and Sell
         Alarm.com Services ....................................................................... 9

     E.     Defendants are Vicariously Liable for Alarm.com Dealers'
         TCPA Violations .......................................................................... 10

     F.     Factual Allegations Regarding Plaintiff Abante ........................... 11

     G.     Factual Allegations Regarding Plaintiff Manesiotis ..................... 13

     H.     Factual Allegations Regarding Plaintiff Hankins ......................... 14

     I.      Factual Allegations Regarding Plaintiff Charvat .......................... 15

VI.    CLASS ACTION ALLEGATIONS .......................................................... 18

VII.   FIRST CLAIM FOR RELIEF ................................................................... 22

VIII.  SECOND CLAIM FOR RELIEF .............................................................. 23

IX.    THIRD CLAIM FOR RELIEF .................................................................. 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

X.      FOURTH CLAIM FOR RELIEF ....................................................................... 25

XI.     REQUEST FOR RELIEF ............................................................................... 25

XII.    DEMAND FOR JURY ................................................................................... 27

# I.  INTRODUCTION

1.      Defendant Alarm.com, Inc. is a publicly traded company that sells home-monitoring hardware and subscriptions to wireless home-security monitoring systems. To generate subscribers, Alarm.com relies on a network of third-party authorized dealers, one of which has a notorious history of generating sales through illegal telemarketing, having paid millions in fines to government agencies for telemarketing violations. Despite knowledge of this dealer's practices, Alarm.com expressly authorized it to promote and sell Alarm.com products and services using Alarm.com sales contracts and the Alarm.com name.

2.      Plaintiffs are consumers and a small business who received illegal Alarm.com telemarketing calls as a result of this principal-agent relationship. Under established principles of vicarious liability, Alarm.com is legally responsible for the calls, which violate federal telemarketing law.

3.      Accordingly, on behalf of persons and entities who also received Alarm.com telemarketing calls at their homes or on their cellular telephones, Plaintiffs bring this action as a class action under the Telephone Consumer Protection Act, which prohibits autodialed and prerecorded telemarketing calls and calls to numbers on the National Do Not Call Registry unless the caller has the recipient's written permission. Plaintiffs request relief including an injunction to end these practices, and an award to class members of the statutory damages for each illegal call.

# II.  PARTIES

4.      Plaintiff Abante Rooter and Plumbing, Inc. is a foreign corporation based in California, with its principal place of business in Alameda County, California.

5.      Plaintiff George Ross Manesiotis is a citizen of Florida, residing in Palm Beach County, Florida.

6.      Plaintiff Mark Hankins is a citizen of Florida, residing in Land O'Lakes County, Florida.

7.     Plaintiff Philip J. Charvat is a citizen of Ohio, residing in Franklin County, Ohio.

8.     Defendant Alarm.com Holdings, Inc. ("Holdings") is a Delaware Corporation with its principal place of business in Vienna, Virginia.  Defendant Holdings is engaged in substantial and not isolated business activities in the State of California and the United States.

9.     Defendant Alarm.com Incorporated ("Incorporated"), is a subsidiary of Alarm.com Holdings, Inc.  Defendant Incorporated is a Delaware Corporation with its principal place of business in Vienna, Virginia.  Defendant Incorporated is engaged in substantial and not isolated business activities in the State of California and the United States, including, but not limited to, engaging in contractual relationships with companies that make telemarketing calls into California, and then entering into contractual relationships and servicing the relationships with new customers that result from those telemarketing calls.

### III.  JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States.

11.     This Court has personal jurisdiction over Defendants because they operate, conduct, engage in, and/or carry on, business activities in this District and a substantial part of the wrongful acts alleged in this Complaint were committed in California.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) because Plaintiff Abamte resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

### IV.  THE TCPA

13.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

14.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).

15.   Additionally, the TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes[.]"  47 U.S.C. § 227(b)(1)(B).

16.   The TCPA also makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do Not Call Registry or the entity's company specific do-not-call list.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d).

17.   The TCPA provides a private cause of action to persons who receive calls in violation of these provisions. *See* 47 U.S.C. §§ 227(b)(3), (c).

18.   A seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

19.   Regulations of the Federal Communication Commission ("FCC") "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See Rules and Regs. Implementing the Telephone Consumer Prot. Act of 1991*, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20.   The FCC affirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers*." See In the Matter of the Jt. Pet. filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

## V.  FACTUAL ALLEGATIONS

**A.   Both Defendants are Liable for the Illegal Conduct.**

21.   Defendants provide cloud-based home automation, monitoring, and security services.

22.     Holdings owns and controls Incorporated.  Defendants operate a single website, www.alarm.com, which lists a single set of officers and directors and provides identical telephone numbers and office locations.

*Holdings Exerts Operational Control Over Incorporated.*

23.     Holdings' officers and directors direct and control the business strategy and daily operations of Incorporated, and exert operational control over Incorporated.

24.     Holdings' officers and directors direct and control Incorporated's sales and marketing strategy, including the use of illegal telemarketing calls.

25.     On information and belief, Defendants arbitrarily allocate funds between and amongst themselves.  Holdings pays routine expenses for Incorporated, performs accounting services for Incorporated, and reports Incorporated's earnings and losses to the SEC and its shareholders.

26.     Further, Holdings and Incorporated share assets, revenues, and access to capital.

27.     For instance, Holdings and Incorporated are parties to the same line of credit agreement, which it describes as a "Senior Secured Credit Facilities Credit Agreement by and among the Registrant [that is, Holdings], Alarm.com Incorporated, Silicon Valley Bank, Bank of America, N.A."  Alarm.com Holdings, Inc., Amendment No. 2 to Form S-1: Registration Statement (Form S-1) (Jan. 15, 2015).

28.     That credit facility "is available to [Defendants] to finance working capital and certain permitted acquisitions and investments, and is secured by substantially all of [Defendants'] assets, including intellectual property."  *Id.*

*Defendants Manifest a Unity of Business Interest.*

29.     Holdings and Incorporated manifest a unity of business interest and hold themselves out to the public and investors as a single entity.

30.     Defendants likewise hold themselves out to consumers and conduct business throughout the United States, including in the State of California, under a single trade name — Alarm.com.

31.     For instance, Defendants' website's "Investor FAQs" section states that "Alarm.com is incorporated in Delaware" making no distinction between Defendants' purportedly separate corporates entities.

32.     Incorporated manifests no separate corporate interests of its own and functions solely to achieve the business purposes and strategy of Holdings.

33.     Incorporated performs services sufficiently important to Holdings that absent Incorporated, Holdings would perform those services itself.

34.     For example, in an SEC filing, Holdings attached as an exhibit a "Dealer Program Agreement" with Monitronics Funding LP ("Monitronics").  Holdings described that agreement as "between the Registrant [that is, Holdings] and Monitronics Funding LP."  Alarm.com Holdings, Inc., Securities Registration Statement (Form S-1/A), Ex. 10.11 (June 19, 2015).

35.     The Dealer Program Agreement is actually between Incorporated and Monitronics. *Id.*

36.     Further, Holdings attached as an exhibit to the same filing a consumer home security system contract that listed only Incorporated, demonstrating that Holdings and Incorporated act as a single entity.

**B.      Defendants Use Authorized Dealers to Generate Business.**

37.     Defendants do not sell their services directly to consumers, but rather partner with a network of approximately 5,000 security system dealers and service providers ("Service Providers") throughout the United States, including California.

38.     Defendants charge Service Providers a fee for each consumer account that a Service Provider maintains with Defendants' services.

39.     Further, Defendants require Service Providers to enter into contracts that govern the Service Providers' interactions with consumers.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 5

40.     Alarm.com allows the Service Providers to enter into contractual relationships with customers.

41.     For example, the "Dealer Program Agreement" discussed in ¶¶ 33-34, supra, between Defendants and Monitronics provided:

> Alarm.com has entered into agreements with independently owned and operated security services dealers who market, sell, install and service residential and/or commercial security, monitoring, automation an structured wiring products (each an "ADC Dealer")
>
> Alarm.com has authorized the ADC Dealers to market and sell Alarm.com Services….
>
> The assignment by an ADC Dealer of any rights or obligations under an ADC Dealer Agreement requires the advance written consent of Alarm.com.

42.     In a June 15, 2015 SEC filing, Defendant Holdings described Defendants' relationship with their Service Providers as follows:

> We rely on our service provider network to acquire additional subscribers, and the inability of our service providers to attract additional subscribers or retain their current subscribers could adversely affect our operating results. Substantially all of our revenue is generated through the sales of our platform and solutions by our service providers, and our service providers are responsible for subscriber acquisitions, as well as providing customer service and technical support for our platform and solutions to the subscribers.

Alarm.com Holdings, Inc., Amendment No. 2 to Form S-1: Registration Statement (Form S-1) (Jan. 15, 2015).

43.     Defendants thus control details regarding the Service Provider's sale, installation, maintenance, and support of Defendants' home security systems to consumers.

44.     Defendants also have significant involvement in and control of their Service Providers' marketing of Defendants' services.

45.     For instance, Holdings' June 15, 2015 SEC filing states that Defendants provide Service Providers with "Sales, Marketing & Training" designed "to help effectively promote and sell the connected home." *Id.*

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 6

46.     In a June 30, 2015 SEC filing, Defendant Holdings reaffirmed both Defendants' involvement in the Service Providers' sales and marketing of Defendants' services: "We provide our service providers with specific training and programs to assist them in selling and providing support for our platform and solutions."  Alarm.com Holdings, Inc., Quarterly Report (Form 10-Q) (June 30, 2015).

47.     Defendants' website also provides: "Dealers have access to a library of marketing materials and sales tools to help promote interactive security solutions."

48.     Part of Defendants' and their Service Partners' strategy for obtaining customers involves the use of an automatic telephone dialing system ("ATDS") and automated or prerecorded messages.  These types of calls may violate the TCPA.

49.     Defendants know that their extensive involvement and control of their Service Providers' sales and telemarketing of Defendants' services makes Defendants potentially liable for their Service Providers' violations of the TCPA.

50.     Holdings' June 15, 2015 SEC filing recognizes Defendants' exposure under the TCPA:

> Our business, operations and services providers are subject to various U.S. Federal, state and local consumer protection laws, licensing regulation and other laws and regulations . . . . Our advertising and sales practices and that of our services provider network are subject to regulation by the U.S. Federal Trade Commission, or the FTC, in addition to state consumer protection laws. The FTC and the Federal Communications Commission have issued regulations and place restrictions on, among other things, unsolicited automated telephone calls to residential and wireless telephone subscribers by means of automatic telephone dialing systems and the use of prerecorded or artificial voice messages. If our service providers were to take actions in violation of these regulations, such as telemarketing to individuals on the "Do Not Call" registry, we could be subject to fines, penalties, private actions or enforcement actions by government regulators.

Alarm.com Holdings, Inc., Amendment No. 2 to Form S-1: Registration Statement (Form S-1) (Jan. 15, 2015).

51.     Finally, Defendants exercise control over their Services Providers by retaining the right to discipline and terminate those Service Providers that use illegal telemarketing.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 7

C. **Alliance Security and its Predecessor are Notorious TCPA Scofflaws.**

52.   One of Defendants' Service Providers is a company called Alliance Security.

53.   Alliance Security, and its predecessor, Versatile Marketing Solutions, Inc., ("VMS/Alliance") have a history that spans more than five years of penalties and failure to adhere to federal and state telemarketing laws.

54.   In July 2010, the Pennsylvania Attorney General fined VMS/Alliance $28,000 for telemarketing in violation of Pennsylvania's Do Not Call registry, and in a settlement agreement VMS/Alliance admitted to violations of the state telemarketer act.  Aaron Evans, "Three Businesses Fined for 'Do Not Call' Violations," Gant Daily: CNN News Affiliate (June 23, 2010), http://gantdaily.com/2010/07/23/three-businesses-fined-for-do-not-call-violations/ (last visited Nov. 27, 2015).

55.   In January 2012, the Attorney General for the State of Kentucky fined VMS/Alliance $20,000 for telemarketing in violation of Kentucky's Do Not Call registry.

56.   In April 2012, the TODAY show featured an investigative report on the illegal telemarketing practices of VMS/Alliance. Jeff Rosen and Sandra Thomas, "Rossen Reports: Telemarketers Ignore Do Not Call List," TODAY (April, 27, 2012), http://www.today.com/id/47177020/ns/today-today_news/t/rossen-reports-telemarketers-ignore-do-not-call-list/#.VgxBkflVhBc (last visited Nov. 27, 2015).

57.   On March 20, 2014, VMS/Alliance and its owner Jasit "Jay" Gotra entered into a Stipulated Final Order for Permanent Injunction and Civil Penalty Judgment with the Federal Trade Commission ("FTC"), the government entity charged with federal enforcement of the TCPA.  *See U.S. v. Versatile Marketing Solutions, Inc. and Jasit Gotra*, No. 1:14-cv- 10612 (D. Mass. Mar. 10, 2014).

58.   The terms include a $3.4 million judgment in favor of the FTC against the Defendant, and an order prohibiting VMS from (i) "Initiating any Outbound Telephone Call to any person at a telephone number on the National Do Not Call Registry[,]" and (ii) "Initiating

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 8

1    any Outbound Telephone Call to a person when that person has previously stated that he or she

2    does not wish to receive an Outbound Telephone Call made by." *Id*.

3    **D.    Defendants Expressly Authorized Alliance to Market and Sell Alarm.com Services.**

4         59.    Despite Alliance Security's well-publicized history of TCPA violations,

5    Defendants partnered with Alliance Security to promote their services.

6         60.    Defendants entered into a Service Partner and/or dealer partner agreement with

7    Alliance Security to market, including through telemarketing, their services to consumers.

8         61.    Alliance Security's website advertises that it sells Defendants' services.

9         62.    For example, Alliance Security's website advertises that it is "Powered by

10   Alarm.com" and that "Alarm.com's Geo-Services lets you know if you left home without

11   arming the security system, locking the door or closing the garage."  Alarm.com and Apple

12   Watch Home Automation, http://www.alliancesecurity.com/alarm-com-apple-watch-home-

13   automation/ (last visited Nov. 27, 2015).

14        63.    Alliance Security's equipment and customer service support webpage provides

15   detailed instructions on how to use Defendants' services, including how to configure accounts

16   on Defendants' website, how to elect to receive emails and texts regarding the alarm system

17   directly from Defendants, and how to change an Alarm.com password.

18        64.    In September 2015, Alliance Security representatives provided Defendants' home

19   security contracts to consumers, including Plaintiff Charvat, during home alarm system

20   installation visits.

21        65.    The contract provides:

22             Alarm.com…has authorized the Dealer to market and sell
               Alarm.com's services ("Services") to you.

23
               [This agreement] constitute[s] the terms and conditions of
24             Alarm.com's offering of the Equipment and Services ("Terms")
               and are part of your agreement with the Dealer.

25             By signing your agreement with the Dealer, accessing the
26             Alarm.com customer website or mobile applications, or using any
               other part of the Services and/or Equipment, you agree to be bound
27             by these Alarm.com Terms.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 9

You agree that these Alarm.com Terms may be enforced by us directly.

66.     Alliance Security uses ATDS equipment and software that has the capacity to store or produce telephone numbers to be called and which includes auto-dialers and predictive dialers.

67.     Alliance Security used ATDS equipment to call Plaintiffs.

68.     Alliance Security's calls to Plaintiffs were made for the purpose of marketing Defendants' services.

**E.      Defendants are Vicariously Liable for Alarm.com Dealers' TCPA Violations.**

69.     Defendants are vicariously liable for the conduct of Alliance Security under ordinary principles of agency because Defendants directed or authorized Alliance Security's conduct constituting the statutory violations alleged herein.

70.     Defendants established, approved, or ratified Alliance Security's policies and practices.

71.     Defendants accepted the benefits of Alliance Security's and other vendors' illegal telemarketing campaigns by accepting fees from new consumer accounts, in spite of knowledge that the new consumer accounts were generated through the making of illegal telemarketing calls such as those being challenged here.

72.     Defendants cloaked Alliance Security with apparent/implied authority to act on their behalf, including but not limited to authorizing Alliance Security to make marketing telephone calls on their behalf, to advertise that Alliance Security's products were affiliated with Defendants, and by authorizing Alliance Security to bind Defendants in contract directly with consumers.

73.     Defendants had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Alliance Security and formulated, directed, controlled, and participated in the acts and practices of Alliance Security that violated the TCPA, including the acts and practices set forth in this Complaint.

74.     Under ordinary principles of vicarious liability, Defendants are liable for the TCPA violations alleged above because they are directly involved in, authorized, or ratified the Alliance Security operations that violated the TCPA.

**F.      Factual Allegations Regarding Plaintiff Abante.**

75.     Plaintiff Abante owns a cellular telephone and cellular service with the number (510) 540-XXXX.  This phone is used by Abante's owner, Fred Heidarpour.

76.     On December 9, 2015, a prerecorded telemarketing call was placed to this number.

77.     On information and belief, this call was made by a third party lead generator authorized by Defendants and Alliance Security to make illegal telemarketing calls to consumers.

78.     The call was an interactive pre-recorded message offering home security services. It provided automated options to reach live operators.

79.     Mr. Heidarpour chose to be connected to a live operator, who offered to sell him a home security system.

80.     The operator stated that his company was affiliated with Alliance Security and provided products powered by Alarm.com.

81.     That same day, on the same cellular telephone, Mr. Heidarpour received a second call from or on behalf of Defendants.

82.     The caller told Mr. Heidarpour he worked for a company called "Nationwide Home Alarms" and attempted to sell Mr. Heidarpour a home security system, but the call was disconnected.

83.     On information and belief, Nationwide is Nationwide Alarms, LLC, a third party lead generator that Defendants authorized Alliance Security to hire for purposes of telemarketing Defendants' services.

84.     On December 11, 2015, Mr. Heidarpour received another call on the cellular phone from Nationwide.

85.     This call began with a distinctive pause consistent with an ATDS.

86.     After the pause, a representative named "Mason Slaton" came on the line and again attempted to sell a home security system.

87.     The agent repeated that his company was affiliated with Alliance Security, and that Mr. Heidarpour could control the home security system through a mobile application powered by Alarm.com.

88.     Between December 11 and December 14, 2015, Mr. Heidarpour exchanged emails with Mr. Slaton regarding the products and services Mr. Slaton was selling.

89.     Through these emails, Mr. Heidarpour learned that Nationwide's "parent company" is Alliance Security, that Nationwide is located in Pawtucket, Rhode Island at 999 Main St., and that "Alliance [Security] would install your system and monitor your system, [and] your phone app would be through alarm.com."

90.     In an email, Mr. Slaton confirmed this stating:

> Yes, our mobile application is Powered by Alarm.com, a subscription to this application comes free with our service. So, when you have our service, you would download the alarm.com app from the iPhone app store. and use a login that we would provide you with at your installation, this way, you would have complete access to your system from anywhere, in the world straight from your iPhone.

91.     Because Defendants permit their Service Providers, including Alliance Security, to contract for lead generation only with their written consent, Defendants provided apparent and actual authority through a subagency relationship for Nationwide to call Plaintiff Abante and to telemarket on Defendants' behalf.

92.     Plaintiff Abante did not provide prior express written consent to Defendants or any of their agents to receive prerecorded and/or ATDS-generated telephone calls on its cellular telephone line.

93.     Plaintiff Abante's privacy has been violated by the calls from, or on behalf of, Defendants as they constitute a nuisance and are annoying and harassing.  Plaintiff Abante has had to use valuable cellular telephone minutes for which it paid to deal with these calls.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 12

**G.      Factual Allegations Regarding Plaintiff Manesiotis.**

94.      In early 2014, Plaintiff Manesiotis' began receiving telemarketing calls on his cellular phone, (954) 857-XXXX, from or on behalf of Defendants.

95.      On information and belief, these calls were made by a third party lead generator authorized by Defendants and Alliance Security to make illegal telemarketing calls to consumers.

96.      Each call began with a distinctive pause consistent with an ATDS.

97.      After the pause, a representative came on the line and asked Plaintiff Manesiotis a series of questions, including whether he owned his home.

98.      When Plaintiff Manesiotis answered that he did not own his home, the caller would hang-up.

99.      Frustrated with the repeated calls, after receiving approximately six calls, Plaintiff Manesiotis told a representative that he did own his home so he could determine who was calling him.

100.    Plaintiff Manesiotis was then connected to a representative who stated the calls were on behalf of Alliance Security.

101.    Plaintiff Manesiotis told the representative to stop calling him.

102.    Nevertheless, Alliance Security continued to make numerous calls to Plaintiff Manesiotis' cellular phone.

103.    On January 16, 2015, Plaintiff Manesiotis registered his cellular telephone on the National Do Not Call registry.

104.    On February 3, 2015, Plaintiff Manesiotis posted a message to Alliance Security's Twitter account again requesting that they stop calling him.  The message read: "@whyalliance Please consider the Do Not Call list.  It exists for a reason.  fcc.gov/guides/robocal[sic]…Robo calls are illegal!"

105.    Alliance Security continued to call Plaintiff Manesiotis' cell phone on numerous occasions after he registered it on the National Do Not Call registry.

106.    Plaintiff Manesiotis did not provide prior express written consent to Defendants or any of their agents to receive ATDS generated telephone calls on his cellular telephone line.

107.    Plaintiff Manesiotis' privacy has been violated by the calls from or on behalf of Defendants, as they constitute a nuisance and are annoying and harassing.  Plaintiff Manesiotis has had to use valuable cellular telephone minutes for which he paid to deal with these calls.

108.    Defendants are responsible for the above-described automated calls.

**H.     Factual Allegations Regarding Plaintiff Hankins.**

109.    On September 10, 2015, Plaintiff Hankins received a prerecorded telemarketing call on his residential telephone line, (813) 995-XXXX from the Caller ID number (330) 237-6658.

110.    The call was an interactive pre-recorded message offering home security services, and provided automated options to reach live operators.

111.    During this call, Plaintiff Hankins chose to be connected to a live operator and was transferred to an agent named Joseph Price, who offered to sell him a home security system.

112.    Mr. Price specifically referenced Alarm.com in connection with the home security system he attempted to sell to Plaintiff Hankins.

113.    Upon information and belief, the call was placed from or on behalf of the Defendants.

114.    On October 5, 2015, Plaintiff Hankins received a second call from, or on behalf of, Defendants.

115.    Plaintiff Hankins received this call on his cellular telephone, (813) 503-XXXX from Caller ID number (915) 321-3788.

116.    The call was an interactive pre-recorded message from "Ashley" with "Prime Home Security" offering home security services. The message provided automated options to reach live operators.

117.    Plaintiff Hankins chose to be connected to a live operator and was connected with "Doug" from "Prime Home Security."

118.    Doug attempted to sell Plaintiff Hankins a home security system that he stated would be installed by Alliance Security and uses Alarm.com for the application.

119.    Because Defendants permit their Service Providers, including Alliance Security, to contract for lead generation only with Defendants' written consent, Defendants provided apparent and actual authority through a subagency relationship with the entities that placed the calls to Plaintiff Hankins to telemarket on Defendants' behalf.

120.    Plaintiff Hankins did not provide prior express consent to Defendants or any of their agents to receive prerecorded telephone calls on his residential or cellular telephone lines.

121.    Plaintiff Hankins' privacy has been violated by the above-described calls from, or on behalf of, Defendants as they constitute a nuisance as they are annoying and harassing. Plaintiff Hankins has had to expend time and valuable cellular minutes, for which he paid, to respond to and investigate the source of these annoying, harassing, and illegal telemarketing calls.

**I.    Factual Allegations Regarding Plaintiff Charvat.**

122.    Plaintiff Charvat registered his residential telephone number, (614) 895-XXXX, on the National Do Not Call Registry on September 12, 2011.

123.    Prior to August 3, 2015, Plaintiff Charvat requested that Defendants remove his residential telephone from Defendants' call list.

124.    Notwithstanding his presence on Defendants' do-not-call list and the National Do Not Call Registry, Plaintiff Charvat began receiving calls from, or on behalf of, Defendants on September 3, 2015.

125.    On September 3, 2015, Plaintiff Charvat received a call on his residential telephone number from "Jonathan" from "Home Security Center" offering to sell him a home security system.

126.   After asking some introductory questions, Jonathan transferred Plaintiff Charvat to an agent named Gene Aucella.

127.   Mr. Aucella initially identified his company as Monitronics, but stated in a later call that he was "with Alliance Security."

128.   Mr. Aucella asked if Plaintiff Charvat was interested in purchasing a home security system and asked if he could call back to discuss it further.  Plaintiff Charvat did not give Mr. Aucella permission to call again.

129.   Nevertheless, on September 8, 2015, Defendants again ignored Plaintiff Charvat's registration on the National Do Not Call Registry and Defendants' internal Do Not Call list, when Mr. Aucella called Plaintiff Charvat for a second time.

130.   Mr. Aucella again asked Plaintiff Charvat if he was interested in purchasing a home security system and inquired about the size of his house and the number of doors.

131.    Plaintiff Charvat, in an effort to determine what entity was responsible for the illegal telemarketing calls, asked if a dealer would come out to his house so that he could review the security system contract.

132.   Mr. Aucella did not respond, but later that day, Plaintiff Charvat received another call on his residential telephone line from "Ashley," who stated, "I'm with Alliance Security."

133.   The call disconnected and Ashley called back a short time later.

134.   When she called back, Ashley noted that Plaintiff Charvat's "number comes up on our do not call list" and asked if Plaintiff Charvat wanted to move forward with purchasing a home security system.

135.   So he could determine who was behind the illegal telemarketing call, Plaintiff Charvat responded by requesting that a dealer come to his home so he could read over the contract.

136.   Later that day, Plaintiff Charvat received his fifth and sixth calls from, or on behalf of Defendants.

137.   During one of those calls, a representative named David confirmed that an agent named Joe from Alliance Security would come to his home to show him the security system contract.

138.   On September 9, 2015, Joe Wyche from Alliance Security came to Plaintiff Charvat's home to discuss the home security system about which Plaintiff Charvat had received telemarketing calls.

139.   Joe provided Plaintiff Charvat with a contract from Defendants.

140.   That same day, Plaintiff Charvat received yet another call from, or on behalf of, Defendants.

141.   During that call, Plaintiff Charvat asked the agent, David, why the contract he had received from Alliance Security listed Alarm.com on it.

142.   David explained that Alliance Security would install the home security system and Alarm.com provided "the cellular system.  Alarm.com is essentially the system that you dial on your phone."

143.   Later that day, Plaintiff Charvat received yet another call from Gene "with Alliance Security."

144.   All of the above-described calls occurred after Plaintiff Charvat had registered his residential telephone number with the National Do Not Call Registry, and after Plaintiff Charvat requested that Defendants remove his number from their call list.

145.   Plaintiff Charvat's privacy has been violated by the above-described calls from, or on behalf of, Defendants as they constitute a nuisance as they are annoying and harassing. Plaintiff Charvat has had to expend valuable time responding to and investigating the source of these annoying, harassing, and illegal telemarketing calls.

146.   Plaintiff Charvat did not provide prior express written consent to Defendants or any of their agents to receive telephone solicitation calls on his residential telephone line.

147.   Plaintiff is not a customer of Alliance Security or Defendants.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 17

148.   Plaintiff never provided Alliance Security or Defendants with his personal information nor his residential telephone number.

## VI.  CLASS ACTION ALLEGATIONS

149.   <u>Class Definition</u>.  Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiffs bring this case as a class action on behalf of National Classes defined as follows:

> <u>Cell Phone Class</u>: All persons in the United States to whom: (a) Defendants or a third party acting on Defendants' behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to their cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> <u>Residential Class</u>: All persons in the United States to whom: (a) Defendants or a third party acting on Defendants' behalf, initiated one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to their residential telephone line; (d) through the use of an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> <u>Internal Do Not Call Class</u>: All persons in the United States who: (a) received more than one telemarketing call, initiated by Defendants or on Defendants' behalf; (b) promoting Defendants' goods or services; (c) more than 30 days after requesting not to receive further calls; (d) in a 12-month period; (e) on their cellular or residential telephone line; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> <u>National Do Not Call Class</u>: All persons in the United States who: (a) received more than one call, made by Defendants or on Defendants' behalf; (b) promoting Defendants' goods or services; (c) in a 12-month period; (d) on their cellular telephone line or residential telephone line; (e) whose cellular or residential telephone line number(s) appear on the National Do Not Call registry; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

Excluded from Classes are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 18

150.   <u>Numerosity</u>.  The Classes are each so numerous that joinder of all members is impracticable.  On information and belief, the Classes each have more than 1,000 members.  Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

151.   <u>Commonality</u>.  There are numerous questions of law and fact common to Plaintiffs and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

a.      As to Plaintiffs Manesiotis, Abante, and Hankins and the Cell Phone Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS or artificial or prerecorded voice;

b.      As to Plaintiffs Manesiotis, Abante,  and Hankins and the Cell Phone Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS or artificial or prerecorded voice, thus entitling Plaintiffs Manesiotis, Abante, and Hankins and the Cell Phone Class to treble damages;

c.      As to Plaintiff Hankins and the Residential Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 U.S.C. § 227(b)(1)(B) by initiating any call, except for emergency purposes, to a residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party;

d.      As to Plaintiff Hankins and the Residential Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(B) by initiating any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message

without the prior express consent of the called party, unless the call is initiated for emergency purposes, thus entitling Plaintiff Hankins and the Residential Class to treble damages;

e.      As to Plaintiffs Manesiotis and Charvat and the Internal Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 C.F.R. § 64.1200(d) by initiating any call for telemarketing purposes to Plaintiffs Manesiotis and Charvat and members of the Internal Do-Not-Call Class without following procedures for maintaining a list of persons who request not to receive telemarketing calls;

f.      As to Plaintiffs Manesiotis and Charvat and the Internal Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 C.F.R. § 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telemarketing calls in the future, pursuant to 47 U.S.C. § 227(c)(5)(A), thus entitling Plaintiffs Manesiotis and Charvat and the Internal Do-Not-Call Class to treble damages;

g.      As to Plaintiffs Manesiotis and Charvat and the National Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation within a 12-month period to Plaintiffs Manesiotis and Charvat and members of the National Do-Not-Call Class who have registered their residential telephone numbers with the National Do-Not-Call Registry;

h.      As to Plaintiffs Manesiotis and Charvat and the National Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation within a 12-month period to Plaintiffs Manesiotis and Charvat and members of the National Do-Not-Call Class who have registered their residential telephone numbers with the National Do-Not-Call Registry, thus entitling Plaintiffs Manesiotis and Charvat and the National Do-Not-Call Class to treble damages;

i.      Whether Defendants are vicariously liable for ATDS generated and/or automated or prerecorded calls promoting Defendants' products and/or services made by Defendants' affiliates, agents, and/or other persons or entities acting on Defendants' behalf;

j.      Whether Defendants are liable for telephone calls to persons on Defendants' internal do-not-call list made by Defendants' affiliates, agents, and/or other persons and entities acting of Defendants' behalf;

k.      Whether Defendants are liable for telephone calls to persons on the National Do-Not-Call Registry made by Defendants' affiliates, agents, and/or other persons and entities acting on Defendants' behalf;

l.      Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf should be enjoined from violating the TCPA in the future.

152.   Typicality.  Plaintiffs' claims are typical of the claims of the Classes.  Plaintiffs' claims, like the claims of Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

153.   Adequacy.  Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs have retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Classes.

154.   Predominance.  Defendants have engaged in a common course of conduct toward Plaintiffs and members of the Classes.  The common issues arising from this conduct that affect Plaintiffs and members of the Classes predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

155.   Superiority.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Defendants to comply

with the TCPA.  The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

156.  <u>Injunctive and Declaratory Relief Appropriate</u>.  Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis. Moreover, on information and belief, Plaintiffs allege that the automated calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VII.  FIRST CLAIM FOR RELIEF
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) – Cellular Telephone Calls – Cell Phone Class)

157.  Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

158.  The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs Manesiotis, Abante, and Hankins and members of the Cell Phone Class using an ATDS and/or artificial or prerecorded voice.

159.  As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227(b)(1)(A),

Plaintiffs Manesiotis, Abante, and Hankins and members of the Cell Phone Class are entitled to an award of (a) $500 in damages for each and every call to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B), or (b) $1,500 for each knowing or willful violation.

160.    Plaintiffs Manesiotis, Abante, and Hankins and members of the Cell Phone Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## VIII.  SECOND CLAIM FOR RELIEF
### (Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(B) – Residential Telephone Line Calls – Residential Class)

161.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

162.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by initiating calls, except for emergency purposes, to the residential telephone lines of Plaintiff Hankins and members of the Residential Class using an artificial or prerecorded voice.

163.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), Plaintiff Hankins and members of the Residential Class presumptively are entitled to an award of (a) $500 in damages for calls to their residential telephone lines using an artificial or prerecorded voice, pursuant to 47 U.S.C. § 227(b)(3)(B), or (b) $1,500 for each knowing or willful violation.

164.    Plaintiff Hankins and members of the Residential Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons

or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(B), by initiating calls, except for emergency purposes, to any residential telephone line using an artificial or prerecorded voice in the future.

## IX.  THIRD CLAIM FOR RELIEF
### (Violations of 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5) – Internal Do-Not-Call List – Internal Do-Not-Call Class)

165.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

166.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of 47 C.F.R. § 64.1200(d), by initiating any call for telemarketing purposes to Plaintiffs Manesiotis and Charvat and members of the Internal Do-Not-Call Class, without following procedures for maintaining a list of persons who request not to receive telemarketing calls ("internal do-not-call list").  This includes Defendants' failure to properly record do-not-call requests, failure to maintain a record of do-not-call requests, and failure to honor do-not-call requests.

167.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of 47 C.F.R. § 64.1200(d), Plaintiffs Manesiotis and Charvat and members of the Internal Do-Not-Call Class are entitled to an award of (a) $500 in statutory damages for each and every call in violation of the internal do-not-call list regulation, pursuant to 47 U.S.C. § 227(c)(5)(B), or (b) $1,500 for each knowing or willful violation.

168.    Plaintiffs Manesiotis and Charvat and members of the Internal Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R. § 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telemarketing calls in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## X.  FOURTH CLAIM FOR RELIEF
### (Violations of 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5) – National Do-Not-Call Registry – National Do-Not-Call Class)

169.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

170.   The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a 12-month period to Plaintiffs Manesiotis and Charvat and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry.

171.   As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of 47 C.F.R. § 64.1200(c), Plaintiffs Manesiotis and Charvat and members of the National Do-Not-Call Class are entitled to an award of (a) $500 in statutory damages for each and every call initiated to them, after registering their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B), or (b) $1,500 for each knowing or willful violation.

172.   Plaintiffs Manesiotis and Charvat and members of the National Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation to any residential telephone subscriber who has registered his or her telephone numbers with the National Do-Not-Call Registry in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## XI.  REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the Classes, request judgment against Defendants as follows:

A.     That the Court certify the proposed Classes;

B.     That the Court appoint Plaintiffs Manesiotis, Abante, and Hankins as representatives of the Cell Phone Class;

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 25

C.      That the Court appoint Plaintiff Hankins as representative of the Residential Class;

D.      That the Court appoint Plaintiffs Manesiotis and Charvat as representatives of the Internal Do-Not-Call Class, and the National Do-Not-Call Class.

E.      That the Court appoint the undersigned counsel as counsel for the Classes;

F.      That the Court enter a judgment permanently enjoining the Defendants from engaging in or relying upon telemarketing, or, alternatively, from engaging in or relying upon telemarketing that violates the TCPA;

G.      That, should the Court permit the Defendants to engage in or rely on telemarketing, it enter a judgment requiring them to adopt measures to ensure TCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that the Defendants comply with those measures;

H.      That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendants' compliance with the TCPA;

I.      That the Court enter a judgment finding that Defendants are vicariously liable to Plaintiffs and all class members for all violations arising from the calls;

J.      That the Court enter a judgment finding that Defendants are jointly and severally liable to Plaintiff and all class members for all violations arising from the calls;

K.      That Defendants and their agents, or anyone acting on their behalves, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

L.      That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation;

M.      That the Court enter an order awarding the Plaintiffs reasonable attorneys' fees and costs; and

N.      That the Plaintiffs and all class members be granted other relief as is just and equitable under the circumstances.

## XII. DEMAND FOR JURY

Plaintiffs demand a trial by jury for all issues so triable.

Dated: December 30, 2015                    Respectfully Submitted,

TERRELL MARSHALL LAW GROUP PLLC


By:   Beth E. Terrell, SBN #178181
       Beth E. Terrell, SBN #178181
       Email: bterrell@terrellmarshall.com
       Kerem M. Levitas
       Email: klevitas@terrellmarshall.com
       936 N. 34th Street, Suite 300
       Seattle, Washington  98103
       Telephone:  (206) 816-6603
       Facsimile:   (206) 319-5450

       Michael F. Ram, SBN #104805
       Email:  mram@rocklawcal.com
       RAM, OLSON, CEREGHINO
         & KOPCZYNSKI LLP
       101 Montgomery Street, Suite 1800
       San Francisco, California 94104
       Telephone:  (415) 433-4949
       Facsimile:  (415) 433-7311

       Marc R. Weintraub
       360 Central Avenue, Suite 1500
       St. Petersburg, Florida 33701
       Telephone:  (727) 894-6745
       Facsimile:   (727) 894-2649
       E-mail: mweintraub@baileyglasser.com

       John W. Barrett
       BAILEY & GLASSER, LLP
       209 Capitol Street
       Charleston, West Virginia  25301
       Telephone:  (304) 345-6555
       Facsimile:   (304) 342-1110
       E-mail: jbarrett@baileyglasser.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Edward A. Broderick
Anthony I. Paronich
BRODERICK LAW, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone:  (617) 738-7080
Facsimile:   (617) 830-0327
Email: ted@broderick-law.com
Email: anthony@broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts  01760
Telephone:  (508) 655-1415
Facsimile:   (508) 319-3077
E-mail: mmccue@massattorneys.net

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 28