Stephen E. Taylor, SBN 058452
Jonathan A. Patchen, SBN 237346
Cheryl A. Galvin, SBN 252262
TAYLOR & PATCHEN, LLP
One Ferry Building, Suite 355
San Francisco, CA 94111
Telephone: 415-788-8200
Facsimile: 415-788-8208
E-mail: staylor@taylorpatchen.com
E-mail: jpatchen@taylorpatchen.com
E-mail: cgalvin@taylorpatchen.com

Ross Allen Buntrock
OBSIDIAN LEGAL PLLC
1821 Vernon St., NW
Washington, DC 20009
Telephone: (202) 643-9055
Email: ross@olspllc.com

[Additional Counsel Appear on Signature Page]

*Attorneys for Defendants Alarm.com Incorporated*
*and Alarm.com Holdings, Inc.*

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., GEORGE ROSS MANESIOTIS, MARK HANKINS, and PHILIP J. CHARVAT, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>ALARM.COM INCORPORATED, and ALARM.COM HOLDINGS, INC.,<br><br>          Defendants. | Civil Action No. 4:15-cv-06314-YGR<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>DATE:   April 25, 2017<br>TIME:   2:00 p.m.<br>LOCATION:   Courtroom 1 – 4th Floor<br>JUDGE:   Honorable Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

I.  INTRODUCTION ...............................................................................................1

II.  ISSUE TO BE DECIDED ....................................................................................3

III.  FACTUAL BACKGROUND ..................................................................................3

    A.  THE HOME ALARM INDUSTRY ...................................................................3

    B.  ALARM.COM ..............................................................................................3

    C.  ALARM.COM'S CLS PROGRAM .................................................................5

    D.  PLAINTIFFS' CLAIMS ................................................................................6

IV.  LEGAL STANDARD ..........................................................................................7

V.  ARGUMENT ....................................................................................................7

    A.  INDIVIDUAL ISSUES PREDOMINATE OVER COMMON ISSUES AND PRECLUDE
        CERTIFICATION.........................................................................................9

        1.  THERE ARE NO CLASS-WIDE MEANS BY WHICH TO DETERMINE WHICH
            CALLS, IF ANY, WERE PLACED FOR PURPOSES OF "PROMOTING
            ALARM.COM'S GOODS OR SERVICES"...................................................10

        2.  THERE ARE NO CLASS-WIDE MEANS TO DETERMINE WHICH ENTITIES
            ARE LIABLE FOR EACH ALLEGED CALL ..............................................12

        3.  INDIVIDUAL ISSUES OF CONSENT PREDOMINATE OVER COMMON ISSUES ..........15

    B.  PLAINTIFFS HAVE FAILED TO ESTABLISH SUPERIORITY, NUMEROSITY, AND
        ADEQUACY OF REPRESENTATION ..............................................................17

        1.  PLAINTIFFS' PROPOSED CLASSES FAIL ON SUPERIORITY GROUNDS ...................18

        2.  PLAINTIFFS HAVE FAILED TO ESTABLISH THE NUMEROSITY OF THE CELL
            PHONE CLASS AND THE RESIDENTIAL CLASS........................................19

        3.  PLAINTIFF CHARVAT IS AN INADEQUATE REPRESENTATIVE OF THE
            NATIONAL DO-NOT-CALL CLASS........................................................22

VI.  CONCLUSION.................................................................................................23

1

## TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

*Carmax Auto Superstores Cal. LLC v. Hernandez,*
4
    94 F. Supp. 3d 1078 (C.D. Cal. 2015) ..............................................................4

5

*Conrad v. GMAC,*
6
    283 F.R.D. 326 (N.D. Tex. 2012) ....................................................................16

7

*Donaca v. Dish Network, LLC,*
    303 F.R.D. 390 (D. Colo. 2014) ......................................................................23
8

9

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    563 U.S 804 (2011) ...........................................................................................9
10

11

*Faulk v. Sears Roebuck & Co.,*
    2013 U.S. Dist. LEXIS 57430 (N.D. Cal. April 19, 2013) ................................9
12

*Fields v. Mobile Messengers Am., Inc.,*
13
    2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18, 2013) .............................16

14

*Gen. Tel. Co. of the Southwest v. Falcon,*
    457 U.S. 147 (1982) ......................................................................................7, 23
15

16

*Gene & Gene LLC v. BioPay LLC,*
    541 F.3d 318 (5th Cir. 2008) ...........................................................................15

17

*In re Monitronics Int'l, Inc.,*
    2016 U.S. Dist. LEXIS 177105 (N.D. W.Va. Dec. 22, 2016) .......................2, 8
18

19

*Jamison v. First Credit Servs.,*
    290 F.R.D. 92 (N.D. Ill. 2013) ........................................................................16
20

21

*Klay v. Humana, Inc.,*
    382 F.3d 1241 (11th Cir. 2004) ........................................................................9

22

*Legg v. Voice Media Group, Inc.,*
23
    2014 U.S. Dist. LEXIS 61836 (S.D. Fla. May 5, 2014) .............................19, 22

24

*Makaron v. GE Sec. Mfg.,*
    2015 U.S. Dist. LEXIS 75240 (C.D. Cal. May 18, 2015) .......................8, 11, 13
25

26

*Midtown Valuation, Inc. v. Capital Alliance Grp.,*
    2015 U.S. Dist. LEXIS 117191 (E.D.N.Y. Aug. 11, 2015) .............................22

27

28

*Midtown Valuation, Inc. v. Capital Alliance Grp.,*
  2015 U.S. Dist. LEXIS 117164 (E.D.N.Y. Sept. 2, 2015)..................................22

*Sali v. Universal Health Servs. of Rancho Springs, Inc.,*
  2015 U.S. Dist. LEXIS 182159 (C.D. Cal. June 3, 2015) .................................20

*Sherman v. Yahoo! Inc.,*
  2015 U.S. Dist. LEXIS 127809 (S.D. Cal. Sept. 23, 2015)...............................15

*Southwell v. Mortgage Investors Corp. of Ohio,*
  2014 U.S. Dist. LEXIS 112362 (W.D. Wash. Aug. 12, 2014) ....................19, 21

*Thomas v. Taco Bell Corp.,*
  582 Fed. Appx. 678 (9th Cir. 2014)......................................................................7

*True Health Chiropractic, Inc. v. McKesson Corp.,*
  2016 U.S. Dist. LEXIS 111657 (N.D. Cal. Aug. 22, 2016)...............................15

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)..............................................................................................7

**FEDERAL RULES**

FED.R.CIV.P. 23............. .................................................................2, 3, 7, 9, 18

**FEDERAL REGULATIONS**

47 C.F.R. § 64.1200.............................................................................................16

**OTHER AUTHORITIES**

Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10-C § 10:412…………………………….9

1

## I.   INTRODUCTION

2     More than 6,000 companies sell residential and commercial security systems that

3 include software and technology solutions developed by Defendant Alarm.com Incorporated

4 (hereinafter, together with its parent company, Alarm.com Holdings, Inc., "Alarm.com").

5 Plaintiffs here bring a putative class action seeking to hold Alarm.com vicariously liable for

6 damages potentially running into the billions of dollars for telephone calls made by one of these

7 6,000+ companies ("Dealers" or "Service Providers"). Alarm.com maintains that Plaintiffs are

8 grossly overreaching and that the applicable law and facts dictate that Alarm.com can have no

9 liability for the actions of a Dealer whom Alarm.com does not, and cannot, control. But that is

10 not the issue to be decided today. Plaintiffs' lengthy exposition and mischaracterization of

11 extraneous facts not relevant at this stage of the proceedings notwithstanding (many of which

12 are, in any event, not properly supported by citations to the record), the question for the Court's

13 resolution is whether the classes Plaintiffs propose to represent can properly be certified. They

14 cannot.

15     To begin with—and fundamentally—individual issues predominate over common issues

16 and thereby preclude class certification. Plaintiffs seek to hold Alarm.com vicariously liable for

17 the telemarketing practices of Alliance Security, Inc. ("Alliance")—one of the 6,000+ Dealers

18 that sell security systems incorporating Alarm.com's software. But even were one to assume

19 that at least some of the telephone calls at issue were made by Alliance on behalf of Alarm.com

20 (which Alliance itself disputes), certification would nevertheless be inappropriate because there

21 exist no class-wide means in this instance by which to determine *which* of Alliance's calls may

22 have promoted Alarm.com's technology. Accordingly, this individual question, the resolution

23 of which would necessitate hundreds if not thousands of mini-trials, would by itself

24 predominate over any common issues of law or fact shared by the putative class.

25     The same individual-by-individual analysis would be required to apportion liability

26 between Alarm.com and the various entities Plaintiffs have sued for the same calls in the

27 Monitronics MDL—a problem exacerbated by Plaintiffs' earlier refusal to transfer this matter to

28

---

the Monitronics litigation. Two different courts are now hearing two separate cases in which plaintiffs are seeking recovery from different defendants for the exact same purported violations. Apportioning liability under these circumstances—circumstances occasioned by Plaintiffs themselves due to their refusal to transfer this matter to the Monitronics MDL—will necessitate individual inquiries by two different courts into the potential liability of each defendant for each individual call. Individual issues predominate over common issues for this reason as well.

The same is true given the existence of consent in the record. Numerous courts have held that, where a defendant can present actual evidence of consent, and there are no class-wide means to determine which class members provided consent and which class members did not, certification is inappropriate. That is the case here also.

The unique facts of this case give rise to multiple individual questions that cannot be resolved by class-wide means. Individual issues therefore predominate over common issues and preclude certification. But predominance is not the only Rule 23 factor left unsatisfied; three additional grounds lead to the same conclusion. First, given the existence of the parallel litigation in the Monitronics MDL, a class action is not superior in this instance because of the risk of inconsistent results and the potential for double recovery. Second, Plaintiffs' first two proposed classes fail because Plaintiffs failed to submit expert reports establishing the numerosity of these classes. Finally, Plaintiffs' third proposed class fails because the lead Plaintiff for that class is not a member of the very class he seeks to represent.

Defendants are confident that, should this matter proceed, Plaintiffs' theory of liability—attempting to hold a software company liable for the actions of one of the 6,000+ companies that sell alarm systems using its technology—will fail on summary judgment, just like this theory already failed as to two defendants in the Monitronics MDL. *See In re Monitronics Int'l, Inc.*, MDL No. 1:13-md-2493, 2016 U.S. Dist. LEXIS 177105 (N.D. W.Va. Dec. 22, 2016)(granting summary judgment motions brought by UTC Fire & Security Americas Corporation and Honeywell International based on lack of vicarious liability). But this case

need not, and should not, proceed that far. Class certification is inappropriate here and Plaintiffs' Motion should therefore be denied.

## II.    ISSUE TO BE DECIDED

Whether Plaintiffs have demonstrated that their proposed classes are subject to certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

## III.    FACTUAL BACKGROUND

### A.    THE HOME ALARM INDUSTRY

Dealers like Alliance sell, install and service their own fully-integrated security systems. Matthew Pitts Declaration ("Pitts Decl."), ¶ 8. To package and construct their systems, these Dealers contract with companies such as Honeywell, GE/Interlogix and United Technologies Corporation, among others (the "Hardware Manufacturers"), which manufacture the various hardware components: security panels, sensors, and related components. Anne Ferguson Declaration ("Ferguson Decl."), ¶ 6. Dealers also contract with technology companies like Alarm.com (referred to as "Software Providers"), which develop the necessary software to allow the various system components to communicate as part of an interactive security system. *Id*. Finally, Dealers enter into arrangements with monitoring companies or central stations, which monitor the alarm systems and contact emergency services when an alarm is triggered. *Id*.

### B.    ALARM.COM

Alarm.com is a technology company that offers cloud-based software-as-a-service ("SaaS") solutions for the interactive security and intelligent automation markets for residential and light commercial properties. Ferguson Decl., ¶ 3. In other words, Alarm.com develops the software that allows various alarm system components to communicate with each other. *Id*.

Alarm.com does not sell its software directly to end user customers. Ferguson Decl., ¶ 4 Accordingly, Alarm.com has never placed a single phone call to any of the named Plaintiffs or any of the individuals comprising the putative classes. *Id*. Instead, Alarm.com sells its technology to approximately 6,000 different Dealers (of which Alliance is one). Ferguson Decl.,

¶ 5. These Dealers, in turn, choose how to incorporate Alarm.com's security and automation software solutions into the integrated security systems that they then sell and install, with combinations and packages designed by each Dealer to address the needs of each specific customer. *Id*. When Dealers sell their fully-integrated security systems to end users, they do so on their own behalf—not on behalf of the Hardware Manufacturers or Software Providers. *Id*. Alliance has acknowledged as much:

> The Defendant, Alarm.com, is the provider of one discrete component of Alliance's systems, and not of any product or service which is sold by Alliance as a commodity separate and apart from its own security systems.  Alliance therefore does not use any vendors to generate leads for the Defendants but rather only uses vendors to generate leads for itself – in order to sell its own security systems, of which Defendant's product or service is merely an integrated component.

Exhibit 1[1], *Abante Rooter, et al. v. Alarm.com*, No. 16-mc-00020-S-PAS (D.R.I.), Alliance's Objection to Plaintiff's Motion to Compel, Dkt. 10, p.3.[2]

  As a provider of one discrete component of an alarm system, Alarm.com controls neither the Dealers who purchase its software, nor their day-to-day marketing activities. Ex. 2, Steve Trundle Deposition ("Trundle Dep.,"), p. 77:3-24, pg. 78:1 (filed under seal); Ex. 3, Ferguson Dep., p. 36:24, p. 37:1. Alarm.com has no ability to monitor the marketing activities of the 6,000+ Dealers, with the exception of some Dealers that participate in the CLS Program (as described below). *Id*. Dealers market and sell a combination of Alarm.com and non-Alarm.com products through a variety of means and it would be impossible for Alarm.com to keep tabs on those activities, let alone attempt to control them. Ex. 2, Trundle Dep., p. 76:15-24, p. 77:1-24, pg. 78:1; Ex. 3, Ferguson Dep., p. 36:24, pg. 37:1. This type of dealer or reseller model is neither unique nor new. In fact, it is utilized in a host of other industries. Ferguson

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Margaret Schuchardt.
[2] The Court may take judicial notice of court filings in other litigation.  *See Carmax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1087 (C.D. Cal. 2015) ("Court orders and filings are proper subjects of judicial notice.").

Decl., ¶ 5. Plaintiffs' suggestion that Alarm.com should police the multitude of Dealers that sell its technology (as well as those Dealers' agents and sub-agents) is simply not feasible.

## C.   ALARM.COM'S CLS PROGRAM

Through the years, Alarm.com was from time to time contacted by consumers who wished to purchase security systems with Alarm.com's particular technology. Ex. 2, Trundle Dep., p. 28:1-24, p. 29:1-7. Because Alarm.com does not sell directly to end user consumers, Alarm.com generally passed on any such inquiries by informal means to one or more of the Dealers who incorporated Alarm.com technology into their security systems. *Id.* Eventually, Alarm.com added a feature to its website giving consumers the opportunity to request information from a local Dealer. Ex. 3, Ferguson Dep., p. 31:18-23, p. 32:19-24; p. 33:1-9. By way of this Customer Lead Service ("CLS"), consumers can now enter their contact information into Alarm.com's website and choose to be contacted by a number of local Dealers. *Id.*

Because the consumers in the CLS system have contacted Alarm.com and indicated that they are interested specifically in a security system with Alarm.com technology, Alarm.com has the incentive and ability to engage in some form of monitoring to ensure a positive experience for each customer. Ferguson Decl., ¶ 7. Accordingly, in addition to ensuring that such consumers have clearly expressed their desire to be contacted, [3] Alarm.com provides support resources to participating CLS Service Providers and uses the CLS program to periodically audit how a participating Dealer is utilizing the program and how a Dealer is following up with

---

[3] When submitting an inquiry through the Alarm.com site, consumers check a box to acknowledge their consent to be contacted by the Dealers they select:

> By checking this box you authorize Alarm.com and/or Dealers to call you or send you text messages to the number you provided above using an automatic telephone dialing system or an artificial or prerecorded voice for marketing purposes. You are not required to agree as a condition of purchasing any property, goods, or services. Text messaging and data rates may apply.

https://www.alarm.com/get_started/finddealer_dealermatched.aspx?q=7A42FCCA6487ABE0B9D9BE46332DE5B0&f=2

1   a CLS lead. Ex. 3, Ferguson Dep., p. 38:2-10. But such audits are limited to calls made to leads

2   obtained through the CLS programs—individuals who have expressed a specific interest in

3   Alarm.com's technology and services through Alarm.com's website.  *Id.*

4          Outside of the CLS program, Alarm.com does not have the ability to monitor the

5   marketing activities of Dealers. Ex. 2, Trundle Dep., p. 77:3-24, p. 78:1; Ex. 3, Ferguson Dep.,

6   p. 36:24, p. 37:1. Much like a brake pad manufacturer is neither able, nor expected, to control

7   the behavior of every Toyota dealership, Alarm.com cannot feasibly control the actions of the

8   thousands of Dealers that include its software in some of their products. Ex. 3, Ferguson Dep.,

9   36:24, 37:1.

10  **D.    PLAINTIFFS' CLAIMS**

11         The three remaining lead Plaintiffs (the fourth withdrew his claim) have together

12  brought nearly 100 TCPA cases. *See Order Granting Stipulation of Dismissal Without Prejudice

13  of George Ross Manesiotis* (Dkt. 58); Ex. 4, PL-CHARVAT_000001-2; Ex. 5, Philip Charvat

14  Deposition ("Charvat Dep."), p. 79:1-10; Ex. 6, Fred Heidarpour Deposition Transcript

15  ("Heidarpour Dep."), p. 86:15-24. Here, they attempt to hold Alarm.com liable for the alleged

16  conduct of one of the thousands of Dealers that sells security systems incorporating

17  Alarm.com's technology. As it turns out, however, while Plaintiffs argue in this litigation that

18  Alarm.com should be held responsible for Alliance's actions, in the Monitronics MDL

19  Plaintiffs' counsel (along with one of the named Plaintiffs in the instant litigation) brought

20  claims against a number of other companies they claim are vicariously liable for the very same

21  calls. *See* Ex. 7, *In re Monitronics Int'l, Inc*., MDL No. 1:13-md-2493, Second Amended

22  Master Consolidated Complaint; Ex. 8, Plaintiffs' Third Supplemental Statement; Ex. 9,

23  Plaintiffs' Fifth Supplemental Statement; *see also* Ex. 10, PL-CHARVAT_000011; Ex. 5,

24  Charvat Dep., pp. 222-232 (generally), 233:20-25, 234:1-8. Indeed, not only are the putative

25  classes Plaintiffs seek to certify here completely subsumed within the class definitions in the

26  Monitronics MDL, but Plaintiff Philip Charvat conceded at his deposition that he is seeking *full

27  recovery* from Alarm.com in this case for the very calls he claims were made on behalf of other

28

entities in the Monitronics MDL. Ex. 5, Charvat Dep., p. 77:1-24; p. 209: 15-24. Under these circumstances, class certification is inappropriate.

## IV.   LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S.Ct. 2541, 2550 (2011). Accordingly, while the Court retains broad discretion to certify a class, because representative actions are the exception and not the norm, the Court must conduct a "rigorous analysis" to determine whether the plaintiff has established the requirements of Rule 23 to ensure that a departure from the general rule of individual litigation is justified. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160-61, 102 S. Ct. 2364, 2372 (1982). The party seeking class certification bears the burden of demonstrating its compliance with Rule 23. *Wal-Mart*, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

## V.   ARGUMENT

The fundamental problem with class treatment in the instant case is that individual issues predominate over any common ones; there is no way to determine from the available data, on a class-wide basis, which of the individual calls at issue promoted Alarm.com's goods or services and which did not. Put simply, Alliance sells integrated security systems comprised of any number of branded hardware and software components combined or packaged to meet Alliance's customers' needs. But Alliance does not market those individual components. Instead, Alliance markets its own product—the integrated security system—and, accordingly, Alliance's telemarketing is made on its own behalf to promote its own products. Alarm.com cannot be held vicariously liable for calls not made on its behalf. *See, e.g., Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679-680 (9th Cir. 2014)(affirming grant of summary judgment for defendant on grounds that defendant was not directly or vicariously liable for the alleged calls

1    at issue); *In re Monitronics Int'l, Inc.*, 2016 U.S. Dist. LEXIS 177105 at *19-42 (rejecting

2    similar vicarious liability arguments to those made by Plaintiffs here); *Makaron v. GE Sec. Mfg*,

3    No. 14-cv-1274, 2015 U.S. Dist. LEXIS 75240, *15-28,  (C.D. Cal. May 18, 2015)(analyzing

4    whether security manufacturer could be liable under the FCC's vicarious liability standards and

5    granting manufacturer's motion for summary judgment).

6         Recognizing this, Plaintiffs limit their class definitions to individuals and entities that

7    received calls "promoting [Alarm.com's] goods or services." Motion, p. 12. But, in this

8    instance, there are no class-wide means to determine which calls were made for such a purpose.

9    Indeed, in the Monitronics MDL, Plaintiff Charvat has alleged that the very same calls at issue

10   here were made by Alliance on behalf of companies other than Alarm.com. Ex. 5, Charvat

11   Dep., p. 234:8.

12        The Monitronics MDL, in fact, underscores the myriad complex, individualized issues

13   presented by Plaintiffs' claims here. The Monitronics plaintiffs allege that Alliance made

14   telemarketing calls on behalf of several other companies; the Plaintiffs here allege that Alliance

15   made those very same calls on behalf of Alarm.com.  *See* Ex. 7, Second Amended Master

16   Consolidated Complaint.  In each litigation, the respective Courts will need to determine which

17   calls were made on behalf of which provider and, if more than one defendant is liable for the

18   calls, the extent of each defendant's liability. Neither here, nor in the Monitronics MDL, have

19   the putative class plaintiffs explained how these determinations can be made by class-wide

20   means. The simple answer is that they cannot.

21        Setting aside the issue of the potential liability of other parties, another individualized

22   issue presents itself here: consent. Even were one to assume that Alliance made calls promoting

23   Alarm.com's technology, Plaintiffs' proposed classes would fail because certain of the call

24   recipients provided consent to be contacted and therefore can have no claim. In this instance,

25   however, there are no class-wide means to determine who those individuals are.  Thus,

26   individualized issues of consent predominate over common issues and class certification is

27   inappropriate.

28

The above-noted issues also cause Plaintiffs' proposed classes to fail on superiority grounds. Class treatment is not superior in this instance because the existence of parallel but separate litigation involving the very same calls precludes certification pursuant to Federal Rule of Civil Procedure 23(b)(3)(B), (C) and (D).

Predominance and superiority, however, are not the only Rule 23 factors unsatisfied by Plaintiffs' proposed class definitions. Plaintiffs have also failed to identify the members of their proposed Cell Phone Class and Residential Class and have proposed a lead Plaintiff for the National Do-Not-Call Class ("DNC Class") who is an inadequate class representative. For all of these reasons, Plaintiffs have not established that all of the applicable requirements of Rule 23 have been met, and certification should be denied.

## A.  INDIVIDUAL ISSUES PREDOMINATE OVER COMMON ISSUES AND PRECLUDE CERTIFICATION

To certify a class under Rule 23(b)(3), as Plaintiffs propose, they must establish that "questions of law or fact common to class members *predominate* over any questions affecting only individual members. . . " Fed. R. Civ. P. 23(b)(3)(emphasis added). In determining whether common issues predominate, the Court must first identify the substantive issues related to Plaintiffs' claims; then consider the proof necessary to establish each element of the claim or defense; and consider how these issues would be tried. *See* Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10-C § 10:412 (*citing Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809, 131 S.Ct. 2179, 2184 (2011). "Where, after adjudication of the class-wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)."  *Klay v. Humana, Inc*., 382 F.3d 1241, 1255 (11th Cir. 2004); *Faulk v. Sears Roebuck & Co.*, 2013 U.S. Dist. LEXIS 57430, *15-17 (N.D. Cal. April 19, 2013)(opinion of this Court quoting same). In the present case, there exist significant individual issues that cannot be adjudicated by class-wide means. Certification is, therefore, inappropriate.

1

2

### 1.   THERE ARE NO CLASS-WIDE MEANS BY WHICH TO DETERMINE WHICH CALLS, IF ANY, WERE PLACED FOR PURPOSES OF "PROMOTING ALARM.COM'S GOODS OR SERVICES"

Plaintiffs maintain that Alarm.com should be held liable for all of the calls placed by Alliance because the calls were made to promote Alarm.com's goods or services. Plaintiffs are wrong. Alliance maintains that it does not make outbound calls on behalf of Alarm.com—it makes outbound calls for itself.  Pitts Decl., ¶ 5. This makes sense. After all, Alliance is one of more than 6,000 Dealers that sell security systems that include Alarm.com software as a discrete component of a fully-integrated security system.  Ferguson Decl., ¶ 5. These Dealers sell their own security systems (consisting of numerous hardware, software and monitoring components and services).  *Id.* at ¶ 6. That being the case, none of the calls at issue here were made on behalf of Alarm.com and, as a result, Alarm.com can have no liability here.

But even if Plaintiffs could demonstrate that *some* of the calls were made to promote Alarm.com's goods or services, certification would nevertheless be inappropriate because it is evident that not *all* of the calls promoted Alarm.com's technology.

To begin with, a significant number of the calls placed by Alliance resulted in installations of security systems *with no Alarm.com components.* In his declaration, Matthew Pitts, Alliance's director of legal compliance, explained that numerous sales that were precipitated by Alliance's telephone calls resulted in installations of landline-based security systems that included no Alarm.com software. Pitts Decl., ¶ 9. Moreover, numerous additional calls would have been placed to individuals who, although they did not purchase a security system, would have in any event been limited to choosing a landline-based system that could not have included any of Alarm.com's cellular or wireless technology. *Id.* In other words, many of the calls placed by Alliance did not result, and could not have resulted, in any benefit to Alarm.com. Given that Alarm.com provides only one discrete component of a security system, this is not surprising, but it underscores that Alliance was placing calls for itself—not for Alarm.com. *Id.* at ¶ 5.

---

Second, Alliance testified that Alarm.com would not generally have been mentioned by name on the calls at issue—a fact that is supported by the call scripts produced by Alliance in response to Plaintiffs' subpoena, none of which reference Alarm.com. Pitts Decl., ¶ 10. In fact, Alliance maintains that, not only was Alarm.com not mentioned by name, but in the majority of instances even the type of technology provided by Alarm.com would not have been mentioned. *Id.* at ¶ 11. The exceptions would have generally been limited to instances where individuals interested in a security system specifically asked about the providers or manufacturers of the various system components, or if the conversations otherwise proceeded into unscripted discussions. *Id.* at ¶ 10. Relevant case law demonstrates that this point is critical. *See Makaron*, 2015 U.S. Dist. LEXIS 75240 at *22. In *Makaron*, for instance, the court found that the call at issue in that case included no statement that the caller was "a representative or agent of the Defendant, or any other language that would lead the listener to reasonably believe that the caller was acting on behalf of the Defendant." *Id.* Accordingly, the *Makaron* court granted summary judgment for the defendant. *Id.* at *28. Here, the same issue will present itself as to each individual class members, and the court and the parties will need to delve into the facts of each alleged call to determine whether Alarm.com was mentioned or whether the caller otherwise led each putative class member to believe that the call was placed on behalf of Alarm.com. There are no class-wide means to accomplish this analysis—mini-trials will become necessary.

Third, the lead Plaintiffs themselves have confirmed Alliance's position. Mr. Hankins testified that he and/or his counsel excluded from this litigation security system-related telephone calls that did not mention Alarm.com because, in his view, they are not "germane." Ex. 11, Mark Hankins Deposition ("Hankins Dep."), p. 147:8-20. Moreover, while Plaintiff Abante maintains that Alarm.com was mentioned on the call Abante allegedly received from Alliance, Plaintiffs Charvat and Hankins both conceded at their depositions that the individuals who allegedly telephoned them did not mention Alarm.com until Plaintiffs first specifically asked about the company (although two Hardware Manufacturers, GE and 2GIG, were

apparently mentioned without prompting). *See* Complaint, Dkt. 1, pp. 11-12; Ex. 11, Hankins Dep., p. 124:8-25, p. 125: 1-20, p. 131:6-17; Ex. 5, Charvat Dep., p. 152:16-18.  In fact, Mr. Charvat noted that Alarm.com was not mentioned until his *sixth* call with Alliance—and then, only in response to his direct question. Ex. 5, Charvat Dep., pp. 176:24, p. 177:1-14.

Accordingly, even were one to assume that some of the calls at issue were placed by Alliance in order to promote Alarm.com's goods and services (which both Alliance and Alarm.com maintain is not the case), the record evidence demonstrates that not all of the calls could have promoted Alarm.com as the company was not mentioned on the vast majority of the calls, and a significant number of the calls resulted in purchases and installations of security systems that did not include—and could not have included—any Alarm.com components. Under these circumstances, the only way to determine whether a call was made to promote Alarm.com's goods and services—thereby rendering the recipient a member of the class— would be to investigate the particular circumstances and content of each particular call. There are no class-wide means of doing so because there is no way to determine from the data itself whether any of the calls were made on behalf of Alarm.com—a fact that Plaintiffs' expert, Anya Verkhovskaya, concedes. Ex. 12, Anya Verkhovskaya Deposition ("Verkhovshaya Dep."), pp. 62:12-25, 63:1-3. Accordingly, individual issues predominate over common issues and class certification should be denied.

2. <u>**THERE ARE NO CLASS-WIDE MEANS TO DETERMINE WHICH ENTITIES ARE LIABLE FOR EACH ALLEGED CALL**</u>

Plaintiffs here seek to hold Alarm.com liable for marketing calls made by Alliance for the full amount of damages per call available under the TCPA. *See* Complaint (Dkt. 1); Ex. 5, Charvat Dep., p. 209:11-19. But Plaintiffs fail to mention that at least one of the named Plaintiffs here is also seeking to hold other companies liable for the very same calls in the Monitronics MDL. Indeed, the classes Plaintiffs seek to certify in this litigation are subsumed in their entirety by the putative classes in the Monitronics MDL. Whatever other difficulties the overlapping classes may present in this action down the road, for purposes of certification, the

existence of parallel litigation raises issues that must be resolved on an individualized basis, specifically: on which entities' behalf was Alliance making calls? What "goods and services" were being promoted? If more than one entity is liable, how should that liability be apportioned? Since not every call made by Alliance marketed or even discussed every potential component of every system Alliance sells, there is no method by which the Court can answer these questions short of summoning each of the individual call recipients into court for the purpose of conducting mini-trials to determine which entities' products were promoted in each individual call. *See Makaron*, 2015 U.S. Dist. LEXIS 75240 at *22-*23.

In the Monitronics MDL, a number of class plaintiffs (including Plaintiff Charvat) assert that Alliance made telemarketing calls on behalf of Honeywell, ISI Alarms, and Monitronics. Specifically, the plaintiffs seek recovery for "illegal telemarketing calls on a residential or cellular telephone line, from or on behalf of the Defendants indicated, who are liable either under theories of direct liability (as in the case of Defendants VMS/Alliance and ISI Alarms) or vicarious liability (as in the case of Defendants Monitronics, UTC, and Honeywell, whose authorized dealers placed the illegal telemarketing calls)." Ex. 7, *In re Monitronics,* Second Amended Master Consolidated Complaint, Dkt. 355, ¶ 38.  In particular, Plaintiff Charvat seeks to serve as a representative of the following class:

> ***The UTC-Monitronics-Alliance Class:*** All persons or entities within the United States who received, on or after May 18, 2007, a non-emergency telephone call (excluding TSS Survey Class calls) from or on behalf of UTC, Monitronics, or VMS/Alliance, promoting goods or services:
>
> > (i) to a cellular telephone number through the use of an automatic telephone dialing system or an artificial or prerecorded voice; or
> >
> > (ii) to a residential telephone number through the use of an artificial or prerecorded voice; or
> >
> > (iii) to a cellular or residential telephone number registered on the national Do Not Call Registry and who received more than one such call within any twelve-month period.

*Id.,* ¶ 116(a).

This class encompasses entirely the classes Plaintiffs seek to represent here, which are defined in Plaintiffs' Motion as follows:

**Cell Phone Class (Plaintiff Abante Rooter & Plumbing, Inc.)**: All persons in the United States to whom: (a) Alliance or its agents, on Defendants' behalf, instituted one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to a recipient's cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time since October 15, 2013.

**Residential Class (Plaintiff Hankins):** All persons in the United States to whom: (a) Alliance or its agents, on Defendants' behalf, initiated one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to a recipient's residential telephone line; (d) through the use of an artificial or prerecorded voice; (e) at any time since October 15, 2013.

**National Do-Not-Call Class (Plaintiff Charvat**): All persons in the United States who: (a) received more than one call, made by Alliance on Defendants' behalf; (b) promoting Defendants' goods or services; (c) in a twelve-month period; (d) on their cellular telephone line or residential telephone line; (e) whose cellular or residential telephone line number(s) appear on the National Do-Not-Call Registry; (f) at any time since December 30, 2011.

Motion, pp. 12-13. In sum, any individuals who meet the class definition in the present case necessarily fall within the Monitronics MDL class as well.

This could have been avoided. On March 24, 2016, Defendants filed a motion seeking to transfer this litigation to the Monitronics MDL. Plaintiffs, however, resisted, arguing as follows:

The central common issue that must be resolved in the Abante action is whether Defendants are directly or vicariously liable for calls placed on Defendants' behalf. This question is wholly distinct from the central common issue raised in the Monitronics litigation, which is whether Monitronics, UTCFSA, and Honeywell are vicariously liable for calls placed on their behalf.

Ex. 13, *In re Monitronics*, MDL No. 1:13-md-2493 (N.D. W. Va.), Memorandum in Opposition to Alarm.com Motion to Transfer and Consolidate Potential Tag-Along Action. The above statement appears to imply that the calls allegedly placed on behalf of Alarm.com are different than the calls allegedly placed on behalf of Monitronics, UTCFSA and Honeywell. But, as Plaintiff Charvat has now conceded, they are not. They are the same calls. Ex. 5, Charvat Dep.,

pp. 233:20-25, 234:1-8. As a consequence, the calls at issue in this case are now entirely

subsumed by the class in the Monitronics MDL.

This overlap injects individual issues into this litigation that cannot be resolved by class-

wide means. In particular, to the extent any of the calls at issue are determined to have been

placed by Alliance to "promote" Alarm.com's technology, the Court will need to determine

how to apportion liability between Alarm.com and the other potentially responsible parties

against whom Plaintiffs have brought claims for the very same calls in a different litigation.

This analysis will need to take place on a call-by-call basis, as each call may have been made to

"promote" a different combination of the defendants against whom Plaintiffs have brought

claims in this case and in the Monitronics MDL. There are no class-wide means that would

simplify this analysis. For this reason, individual issues predominate over common issues and

preclude certification.

### 3. INDIVIDUAL ISSUES OF CONSENT PREDOMINATE OVER COMMON ISSUES

Where, as here, the record indicates that some class members consented to be contacted,

but it is not possible to determine by class-wide means who did and who did not consent, class

certification is inappropriate.

The seminal case on this issue is *Gene & Gene LLC v. BioPay, LLC*, 541 F.3d 318, 327-

329 (5th Cir. 2008), where the Fifth Circuit held that certification was inappropriate in a TCPA

case when the evidence showed that some of the faxes at issue were solicited by the recipients,

but determining exactly which ones were solicited could only be decided on a case-by-case

basis. The court noted that the plaintiff "failed to advance a viable theory of generalized proof

to identify those persons, if any, to whom [the defendant] may be liable under the TCPA." *Id.* at

329. *See also True Health Chiropractic, Inc. v. McKesson Corp.*, No. 13-cv-02219, 2016 U.S.

Dist. LEXIS 111657, *9-17 (N.D. Cal. Aug. 22, 2016)(finding Defendants presented sufficient

evidence to establish that the court would need to make detailed factual inquiries regarding

whether each putative class member granted prior express permission); *Sherman v. Yahoo! Inc.*,

13-cv-0041, 2015 U.S. Dist. LEXIS 127809, *32-*36 (S.D. Cal. Sept. 23, 2015)(declining to

1    certify class where the defendant had set forth several plausible consent theories that applied

2    differently to different class members and plaintiff failed to show that any theory of generalized

3    proof overcame the need for individualized determinations); *Fields v. Mobile Messengers Am.,*

4    *Inc.*, No. 12-cv-05160, 2013 U.S. Dist. LEXIS 163950, *8-15 (N.D. Cal. Nov. 18, 2013)(same);

5    *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106-107 (N.D. Ill. 2013) (same); *Conrad v.*

6    *GMAC*, 283 F.R.D. 326, 329-330 (N.D. Tex. 2012) (same; also noting that putative class

7    members may argue that they never consented despite records to the contrary, creating even

8    more individualized issues).

9          Here, there is no dispute that certain of the recipients of the Alliance calls at issue

10   consented to receive those calls—both Alarm.com and Alliance produced voluminous evidence

11   of consent. *See* Pitts Decl., ¶ 6; Angeleen Rohda Declaration ("Rohda Decl."), ¶ 4; Ex. 14,

12   Alarm 0018581-83 (three Excel spreadsheets filed under seal on CD-Rom); *see also* Ex. 15,

13   Alarm 0018577-80. The problem is determining which calls those were. Plaintiffs posit that

14   class members who provided consent can readily be identified from Alarm.com's records and

15   removed. Plaintiffs are incorrect. While the CLS consent data that Alarm.com produced does, in

16   fact, consist in significant part of individuals who provided proper consent to be contacted and

17   can therefore claim no TCPA violation, it also includes individuals who contacted Alarm.com

18   and whose information was then manually entered into the CLS system by Alarm.com

19   employees.  Rohda Decl., ¶ 4. Some of those individuals may have valid claims at this point,

20   but the data provides no means of determining who they are.

21         For instance, pursuant to the FCC's regulations applicable to the TCPA, an entity is

22   permitted to contact an individual who has registered her name on the national do-not-call

23   registry ("DNC") for up to three months after that individual has contacted the entity to inquire

24   about its services. 47 C.F.R. §64.1200(c), (f)(5), (f)(14). Alarm.com would have such an

25   established business relationship ("EBR") for a three-month period with the individuals who

26   contacted Alarm.com and were then manually added to the CLS list. If those individuals

27   subsequently made a purchase, the EBR would be extended to eighteen (18) months. *Id.* The

28

problem here is that there are no class-wide means to determine which individuals on Alarm.com's CLS list: (1) provided consent (and can therefore have no claim); (2) had either a 3-month or 18-month EBR with Alarm.com and were called during that time frame (and can therefore have no claim); or (3) had either a 3-month or 18-month EBR with Alarm.com but were called outside the applicable time frame (and may therefore have a valid claim).

Plaintiffs offer no class-wide means of separating individuals who were called after having provided consent or during the pendency of a valid EBR from those who were called after the EBR had expired. In fact, there is no class-wide means of doing so. Short of summoning each of these individuals into court to hold a multitude of mini-hearings, there is no way to determine which individuals provided consent, which individuals had an EBR with Alarm.com, and which individuals were contacted during the pendency of that EBR. The existence of consent and EBR is therefore another individualized issue that predominates over common issues.

**B.** **PLAINTIFFS HAVE FAILED TO ESTABLISH SUPERIORITY, NUMEROSITY, AND ADEQUACY OF REPRESENTATION**

The predominance of individual issues is sufficient to defeat certification here, but it is not the only reason Plaintiffs' motion fails.

First, the existence of the parallel litigation in the Monitronics MDL, in which Plaintiffs seek recovery for the very telephone calls at issue here, causes Plaintiffs' classes to fail on superiority grounds as well. Second, while Plaintiffs presented an expert report to establish the numerosity of the DNC Class, they failed to present similar, necessary expert testimony to establish the numerosity of the Cell Phone Class and the Residential Class. Finally, Plaintiff Charvat, who seeks to serve as a class representative for the DNC Class, is an inadequate class representative because he is not a member of the very class he seeks to certify. For all of these additional reasons, Plaintiffs' motion should be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   <u>PLAINTIFFS' PROPOSED CLASSES FAIL ON SUPERIORITY GROUNDS</u>

Plaintiffs' proposed classes fail because, on these particular facts, the present class action is not the superior method of adjudicating Plaintiffs' claims. Rule 23(b)(3) requires courts to consider the following when evaluating the superiority factor:

(A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)   the likely difficulties in managing a class action.

Here, subsections (B), (C), and (D) weigh against a finding that the present class action is the superior mechanism for resolving the claims of the Plaintiffs' classes. Litigation regarding the same calls at issue here is already pending in the Monitronics MDL. Because the classes and calls at issue here are subsumed within the larger Monitronics MDL, it is not appropriate to concentrate the litigation of the instant claims in this forum. Certification of classes in both actions could lead to inconsistent results as to the same calls or could lead to double recovery by class members.

Plaintiff Charvat is cognizant of the types of difficulties presented by parallel proceedings. In the Monitronics MDL, Charvat, along with Lead Counsel in the MDL, previously stated as follows in arguing in favor of transfer in order to avoid the specter of inconsistent rulings:

[If] Honeywell is somehow exempted from transfer to the MDL proceedings pending before Judge Irene Keeley in the Northern District of West Virginia, but the Mey/Charvat Claims against Monitronics are transferred, plaintiffs would face the untenable prospect of proving liability for the same telemarketing calls in two different courts. This would create an unacceptable risk of inconsistent rulings and duplication, as well as a remarkably confusing process for resolving claims at trial. It is exactly these kinds of circumstances that make consolidation desirable and appropriate.

Ex. 16, *In re Monitronics*, MDL No. 2493 (N.D. W. Va.) (Dkt. 82). Plaintiff Charvat's reasoning is sound. Moreover, the likely difficulties in managing a class action where parallel proceedings involving the same allegations against different defendants are pending weigh against a finding of superiority with respect to Plaintiffs' proposed classes. As to each putative class member, the Court will need to consider whether each call promoted Alarm.com, whether any calls promoted both Alarm.com and other entities at the same time (which could be inconsistent with rulings in the Monitronics MDL), how liability should be apportioned when calls are found to have been made on behalf of multiple parties, and whether each putative class member consented to the calls allegedly made on behalf of one or more entities. Under these circumstances, Plaintiffs' proposed class action here is not the superior method of adjudicating Plaintiffs' claims.

2.    **PLAINTIFFS HAVE FAILED TO ESTABLISH THE NUMEROSITY OF THE CELL PHONE CLASS AND THE RESIDENTIAL CLASS**

While Plaintiffs offer an expert report that purports to identify the size of the DNC Class, in contrast, Plaintiffs submit only a declaration of Plaintiffs' counsel's paralegal, Rachel Hoover, to identify the size of the Cell Phone Class and the Residential Class. Motion, pp. 9-10; Rachel Hoover Declaration ("Hoover Decl."), Dkt. 87, at ¶¶ 11-14. But Ms. Hoover's analysis is improper for the reasons described below and should be stricken.[4] Moreover, the call records relied upon by Plaintiffs do not reflect calls that meet the class criteria. Plaintiffs have thus failed to establish numerosity for those classes. *See Southwell v. Mortgage Investors Corp. of Ohio,* No. 13-cv-1289, 2014 U.S. Dist. LEXIS 112362, *4-12 (W.D. Wash. Aug. 12, 2014); *Legg v. Voice Media Group, Inc.*, No. 13-cv-62044, 2014 U.S. Dist. LEXIS 61836, *6-10 (S.D. Fla. May 5, 2014).

As an initial matter, class size determinations from telephone records in TCPA cases are the subject of expert testimony; Plaintiffs acknowledge as much by proffering the expert report

---

[4] Contemporaneously with this response, Defendants are filing a Motion to Strike Ms. Hoover's report.

of Ms. Verkhovskaya in support of their request to certify the DNC Class and by noting that an expert "will be able to identify members of the Residential and Cell Phone Classes . . ." at some time in the future. Motion, p. 20. Having failed, however, to timely submit an expert report to support certification of the Cell Phone Class and the Residential Class, and recognizing that class-related expert discovery is now closed, Plaintiffs have at the last minute submitted the Declaration of Plaintiffs' counsel's paralegal, Rachel Hoover, in an attempt to establish numerosity. But Ms. Hoover's testimony reveals that she: (1) is not an expert, Ex. 17, Rachel Hoover Deposition, p. 13:23-25, 14:1-3; (2) is a paralegal and office manager for Terrell Marshall and does not have the qualifications to perform the analysis noted in her declaration, *Id.* at 6-10 (generally); (3) attempted to perform the same analysis that she understands an expert would have performed, *Id.* at 99:15-25, 100:1-5; (4) has no knowledge about the reliability of the records she used for her analysis (approximately 50% of which she concedes appear to be erroneous) *Id.* at 26:7-18, 28:19-25, 29:1-8, 63:5-25; 64:1-6; and (5) concedes that her report has several mistakes, *Id*. at 89:3-11.

Because Ms. Hoover is not an expert, she cannot offer principled reasons, based on education and experience, for utilizing the tools she utilized and performing the tasks she performed to establish class size. Additionally, she is not competent to testify as to industry standards with respect to data sources. *See Sali v. Universal Health Servs. of Rancho Springs, Inc.*, 14-cv-985, 2015 U.S. Dist. LEXIS 182159, *30-33 (C.D. Cal. June 3, 2015) (finding a paralegal declaration improper where the paralegal did not have personal knowledge of the accuracy of the data he relied upon, and he offered improper opinion testimony by purporting to extract relevant information from extensive amounts of pay data and analyzing that data to reach conclusions without demonstrating he was qualified to conduct that analysis). Moreover, the data Ms. Hoover relied upon to perform her analysis is on its face unreliable as Ms. Hoover admits *that nearly half of all the call records at issue contained invalid phone numbers*. Ex. 17, Hoover Dep, 63:3-15. For all of these reasons, and consistent with applicable case law, the Court should not consider Ms. Hoover's declaration for any purpose.

1    The *Southwell* decision is particularly compelling on this point. In *Southwell*, the

2    plaintiff attempted to establish the numerosity of his proposed class by reference to one

3    numerosity-related paragraph in his class certification briefing, which was based on the

4    declaration of a purported expert who had no expertise with the TCPA or with do-not-call

5    policies, and who relied upon highly questionable data. *See Southwell,* 2014 U.S. Dist. LEXIS

6    112362 at *5-11. As here, plaintiff attempted to correct this deficiency by offering the

7    declaration of a second expert (as it happens, Anya Verkhovskaya—Plaintiffs' expert here) who

8    submitted what the court termed an "entirely prospective" declaration describing what she

9    "intended to do with the data provided by Plaintiffs." *See id.* at *11-12. The court rejected both

10   the initial report and the "prospective" follow-up report and held that plaintiffs failed to

11   establish numerosity. *Id.* The facts here are eerily similar. Plaintiffs here submitted a speculative

12   report by a paralegal who can provide no competent evidence upon which to estimate the size of

13   the putative class and, as in *Southwell*, have attempted to remedy the problem with a

14   prospective statement by a purported expert, Mr. Hansen, who "describes the methodology he

15   would use to identify cell phone numbers from calling records *were he asked to do so*." Motion,

16   p. 10 (emphasis added). That is improper and, for the reasons discussed in Alarm.com's

17   accompanying motions, the reports of Ms. Hoover and Mr. Hansen should be stricken.

18   The unreliability of Ms. Hoover's testimony notwithstanding, Plaintiffs face another

19   fundamental obstacle in identifying their first two proposed classes (the Cell Phone Class and

20   the Residential Class)—the calls they analyzed are not ones that meet the class criteria. The Cell

21   Phone Class is to be comprised of persons who received calls on cell phones using "an

22   automatic telephone dialing system or an artificial or prerecorded voice," while the Residential

23   Class is to be comprised of persons who received calls on their residential phones using "an

24   artificial or prerecorded voice." Motion, p. 12. But the Nationwide records Plaintiffs cite for this

25   proposition are not records of calls of that type. Based on the Nationwide declaration Plaintiffs

26   provided in support of their motion to certify, these are records of calls purportedly placed *after*

27   the recipients received prerecorded calls.  Joseph Moretti Declaration, Dkt. 89, at ¶ 6(c).

28

---

Accordingly, these records do not and cannot, inform the size of a class that received entirely different calls altogether. *Cf. Midtown Valuation, Inc. v. Capital Alliance Grp.*, No. 14-cv-1586, 2015 U.S. Dist. LEXIS 117191, *19-26 (E.D.N.Y. Aug. 11, 2015) *adopted by* 2015 U.S. Dist. LEXIS 117164 (E.D.N.Y. Sept. 2, 2015)(denying certification on numerosity grounds where plaintiff provided evidence of calls to a defendant's number *after* faxes were purportedly sent instead of evidence of persons who received unsolicited faxes); *Legg*, 2014 U.S. Dist. LEXIS 61836 at *6-10 (finding plaintiff "provided no competent evidence upon which even to estimate the size of the Proposed Class" where the only evidence of numerosity was an expert report, which was based on speculation and drew conclusions regarding a group of cellular subscribers that was not coextensive with the proposed class).[5]

For the above reasons, Plaintiffs have failed to provide the Court with evidence that the Cell Phone Class and the Residential Class are sufficiently numerous.

### 3. PLAINTIFF CHARVAT IS AN INADEQUATE REPRESENTATIVE OF THE NATIONAL DO-NOT-CALL CLASS

Unlike the Cell Phone Class and the Residential Class, for which Plaintiffs submitted no supporting expert report, Plaintiffs tendered the report of Anya Verkhovskaya to establish the numerosity of the DNC Class. Motion, p. 8. For the reasons discussed in Alarm.com's accompanying Motion to Strike, that report should be disregarded. But the flaws in Ms. Verkhovskaya's analysis notwithstanding, the DNC Class cannot be certified for an additional reason—Plaintiff Charvat, the sole representative of the DNC Class, is not a member of the class he seeks to represent because he did not receive calls that promoted Alarm.com goods and services.

Plaintiff Charvat received a series of phone calls from Alliance (a number of which were placed after Charvat represented to Alliance that he was interested in a home security system,

---

[5] The court struck plaintiff's expert's testimony but noted that plaintiff would have failed to establish numerosity even if the court had accepted the testimony. *See Legg*, 2014 U.S. Dist. LEXIS 61836 at *7-10

even going so far as to request a home visit). *See* Ex. 5, Charvat Dep., pp. 176:1-25, 177:1-25, 178:1-25. But Alarm.com was not mentioned until the sixth call Charvat received, and that was after Charvat asked about Alarm.com specifically. *Id*. at pp. 176:13-25, 177:1-3. While a number of other companies were mentioned by Alliance during the calls, Alarm.com was only mentioned in response to a specific inquiry. Accordingly, Mr. Charvat did not receive calls that promoted Alarm.com. Since that is a specific requirement of membership in the DNC Class, Mr. Charvat is not a member of this class and cannot serve as its representative.  *See Falcon*, 457 U.S. at 156, 102 S. Ct. at 2370; *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 396-397 (D. Colo. 2014)(denying class certification in a TCPA case where plaintiff did not receive calls from the dealers named in the class definition).

## VI.   CONCLUSION

Alarm.com develops and provides a discrete component of a fully-integrated security system—technology that enables certain wireless communication and automation functions for interactive security systems. Alarm.com sells that technology to thousands of Dealers who ultimately sell complete, integrated security systems (as well as other products that do not contain Alarm.com components) to end users. Plaintiffs here are attempting to hold Alarm.com liable for the conduct of one of the 6,000+ Dealers that sells systems incorporating Alarm.com's technology. But while it is easy to identify the calls Alliance made, there is simply no way, on a class-wide basis, to isolate which of those calls (if any) give rise to liability for Alarm.com, and if so, what the extent of Alarm.com's liability should be. To make that determination, the Court would need to identify the circumstances surrounding and content of each particular call, which would necessarily cause this matter to devolve into a series of mini-trials, rendering the issue uniquely unsuitable for class treatment.

While the predominance of the above-discussed individual issues is in and of itself sufficient to defeat certification, it is not the only basis upon which Plaintiffs' motion should be denied. The existence of parallel litigation involving the same telephone calls causes the proposed classes to fail on superiority grounds. Moreover, Plaintiffs have failed to establish

1  numerosity for the Cell Phone Class and the Residential Class, and the DNC Class lacks an

2  adequate class representative. For all of the foregoing reasons, Alarm.com respectfully requests

3  that Plaintiffs' Motion be denied.

4  Dated:     March 28, 2017                                  Respectfully submitted,

5                                                             JASZCZUK P.C.

6                                                             By:   /s/  Martin W. Jaszczuk
7                                                             Martin W. Jaszczuk (*pro hac vice*)
                                                              Margaret M. Schuchardt (*pro hac vice*)
8                                                             Keith L. Gibson (*pro hac vice*)
                                                              JASZCZUK P.C.
9                                                             311 South Wacker Drive, Suite 1775
                                                              Chicago, Illinois  60606
10                                                            Telephone:  (312) 442-0509
                                                              Facsimile:  (312) 442-0519
11                                                            mjaszczuk@jaszczuk.com
12                                                            mschuchardt@jaszczuk.com
                                                              kgibson@jaszczuk.com
13

14                                                            *Attorneys for Defendants Alarm.com*
                                                              *Incorporated and Alarm.com Holdings, Inc.*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Martin W. Jaszczuk, hereby certify that on March 28, 2017, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to all parties registered to receive electronic service in the above-captioned action.

Dated:    March 28, 2017                    Respectfully submitted,

                                            JASZCZUK P.C.

                                            By:   /s/  Martin W. Jaszczuk
                                            Martin W. Jaszczuk (*pro hac vice*)
                                            Margaret M. Schuchardt (*pro hac vice*)
                                            Keith L. Gibson (*pro hac vice*)
                                            JASZCZUK P.C.
                                            311 South Wacker Drive, Suite 1775
                                            Chicago, Illinois  60606
                                            Telephone:  (312) 442-0509
                                            Facsimile:  (312) 442-0519
                                            mjaszczuk@jaszczuk.com
                                            mschuchardt@jaszczuk.com
                                            kgibson@jaszczuk.com

                                            *Attorneys for Defendants Alarm.com*
                                            *Incorporated and Alarm.com Holdings, Inc.*