1

Chiharu Sekino, SBN #306589
Email: csekino@sfmslaw.com
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 429-5272
Facsimile: (866) 300-7367

2

3

4

5

6

Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email: jmurray@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 N. 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

7

8

9

10

11

[Additional Counsel Appear on Signature Page]

12

*Attorneys for Plaintiffs and the Proposed Classes*

13

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

14

15

16

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., MARK HANKINS, and PHILIP J. CHARVAT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALARM.COM INCORPORATED, and ALARM.COM HOLDINGS, INC.,<br><br>Defendants. | NO. 4:15-cv-06314-YGR<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>JURY TRIAL DEMAND<br><br>Complaint Filed: December 30, 2015<br><br>Honorable Yvonne Gonzalez Rogers<br><br>DATE:         May 2, 2017<br>TIME:         2:00 p.m.<br>LOCATION:  Oakland Courthouse<br>                       Courtroom 1 - 4th Floor |

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 2

    A.    Common issues predominate .............................................................................. 2

        1.    Whether Alarm.com is vicariously liable for Alliance's illegal telemarketing calls is a common question to be resolved on the merits, not at class certification ................................................................. 3

        2.    Plaintiffs propose a slightly revised definition for the National Do-Not-Call Class that eliminates the six-month overlap with claims in the Monitronics MDL .......................................................... 6

        3.    There are no individualized issues of consent that preclude class Certification ........................................................................................ 7

    B.    Numerosity is satisfied ..................................................................................... 10

    C.    Mr. Charvat will fairly and adequately represent the National Do-Not-Call Class ................................................................................................................. 14

    D.    Class certification is superior to a multitude of individual lawsuits ................... 14

III.    CONCLUSION .......................................................................................................... 15

1

## TABLE OF AUTHORITIES

2

**Page No.**

3

### FEDERAL CASES

4

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,

5

    133 S. Ct. 1184 (2013)....................................................................................... 4

6

*Aranda v. Caribbean Cruise Line, Inc.*,

7

    179 F. Supp. 3d 817 (N.D. Ill. 2016) ............................................................ 3, 4

8

*Bates v. United Parcel Servs.*,

    204 F.R.D. 440 (N.D. Cal. 2001)..................................................................... 11

9

*Bee, Denning, Inc. v. Capital Alliance Grp.*,

10

    310 F.R.D. 614 (S.D. Cal. 2015) ....................................................................... 5

11

*Briseno v. ConAgra Foods, Inc.*,

12

    844 F.3d 1121 (9th Cir. 2017) ........................................................................... 6

13

*Celano v. Marriott Int'l Inc.*,

    242 F.R.D. 544 (N.D. Cal. 2007)..................................................................... 11

14

*Civil Rights Educ. & Enforcement Center v. RLJ Lodging Trust*,

15

    No. 15-CV-0224-YGR, 2016 WL 314400 (N.D. Cal. Jan. 25, 2016) ............ 11

16

*Conrad v. General Motors Acceptance Corp.*,

17

    283 F.R.D. 326 (N.D. Tex. 2012) .................................................................... 10

18

*Donaca v. Dish Network, LLC*,

19

    303 F.R.D. 390 (D. Colo. 2014) ...................................................................... 14

20

*Fields v. Mobile Messengers Am., Inc.*,

    No. C 12-05160 WHA, 2013 WL 6073426 (N.D. Cal. Mar. 7, 2014) ........... 10

21

*Gene & Gene LLC v. BioPay LLC*,

22

    541 F.3d 318 (5th Cir. 2008) ............................................................................. 9

23

*Hanlon v. Chrysler Corp.*,

24

    150 F.3d 1011 (9th Cir. 1989) ........................................................................... 6

25

*In re Monitronics Int'l, Inc.*,

    No. 1:13-MD-2493, 2016 WL 7413495 (N.D.W.V. Dec. 22, 2016)................. 5

26

27

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
　　Nos. C 04–1511 CW, C 04–4203 CW, 2007 WL 1689899 (N.D. Cal.
　　June 11, 2007) ........................................................................................... 11

*Ira Holtzman, C.P.A. & Assoc. Ltd.  v. Turza*,
　　728 F.3d 682 (7th Cir. 2013) ...................................................................... 2

*Jamison v. First Credit Servs., Inc.*,
　　290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013) ................................................... 10

*Krakauer v. Dish Network L.L.C.*,
　　311 F.R.D. 384 (M.D.N.C. 2015) ................................................................ 9

*Kristensen v. Credit Payment Servs.*,
　　12 F. Supp. 3d 1292 (D. Nev. 2014) ........................................................... 5

*Lane v. Wells Fargo Bank, N.A.*,
　　No. C 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013) .......... 8

*Legg v. Voice Media Grp., Inc.*,
　　No. 13-62044-CIV, 2014 WL 1766961 (S.D. Fla. May 5, 2014) .................. 13

*Makaron v. GE Sec. Mfg., Inc.*,
　　No. CV-14-1274-GW, 2015 WL 3526253 (C.D. Cal. May 18, 2015) ............ 5

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
　　289 F.R.D. 674 (S.D. Fla. 2013) ................................................................. 8

*Meyer v. Bebe Stores, Inc.*,
　　No. 14-cv-00267-YGR, 2017 WL 558017 (N.D. Cal. Feb. 10, 2017) ............ 1

*Midtown Valuation, Inc. v. Capital Alliance Grp.*,
　　No. 14 cv 1586 (FB) (CLP), 2015 WL 5165085 (E.D.N.Y. Aug. 11, 2015) ...... 13

*Mims v. Arrow Fin. Servs., LLC*,
　　565 U.S. 368 (2012) .................................................................................... 4

*Sali v. Universal Health Servs. of Rancho Springs, Inc.*,
　　No. CV 14-985 PSG, 2015 WL 12656937 (C.D. Cal. June 3, 2015) ........ 11, 12

*Sherman v. Yahoo! Inc.*,
　　No. 13-cv-0041-GPC-WVG, 2015 WL 560440 (S.D. Cal. Sept. 23, 2015) ....... 9

*Southwell v. Mortg. Investors Corp. of Ohio, Inc.*,
　　No. C 13-1289 MJP, 2014 WL 3956699 (W.D. Wash. Aug. 12, 2014) .......... 12

*Stitt v. San Francisco Mun. Transp. Agency*,
    No. 12-cv-3704 YGR, 2014 WL 1760623 (N.D. Cal. May 2, 2014) ............................ 13

*Sullivan v. Kelly Servs., Inc.*,
    268 F.R.D. 356 (N.D. Cal. 2010 .................................................................................. 11

*Thomas v. Taco Bell Corp.*,
    582 F. App'x 678 (9th Cir. 2014) ................................................................................... 5

*True Health Chiropractic Inc. v. McKesson Corp.*,
    No. 13-cv-02219, 2016 U.S. Dist. LEXIS (N.D. Cal. Aug. 22, 2016) ............................ 9

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ............................................................................................. 4, 6

# I.  INTRODUCTION

Plaintiffs have demonstrated that all class certification requirements are satisfied for their three proposed classes of persons who received telemarketing calls made by Alliance Security, Inc. and its agents on behalf of defendant Alarm.com. The classes have thousands of members, the proposed class representatives are typical and adequate, and, as in most TCPA cases, common issues predominate. Class certification is also the superior method for litigating the claims because they are expensive to litigate and potential damages are limited. As this Court has recognized, "but for a class action, … violations of the TCPA may never be brought to light." *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2017 WL 558017, at *4 (N.D. Cal. Feb. 10, 2017).

Not surprisingly, much of Alarm.com's opposition brief consists of protestations about its vicarious liability for the telemarketing calls. Its focus on the merits is misplaced: the time for resolving liability issues is at summary judgment or trial, not at class certification. In fact, Alarm.com's brief sets this case up for classwide resolution nicely, identifying critical issues that may and should be decided as to all class members through a single, efficient trial:

- Is Alarm.com vicariously liable for the telemarketing calls as Plaintiffs allege? This question can be answered through evidence pertaining to Alarm.com's relationships with its alleged agents who placed the calls—a question that was answered for more than 18,000 class members in a recent five-day trial of TCPA claims by Plaintiffs' counsel in this case. *See* Barrett Decl. (ECF No. 88), Ex. 1.

- Is Plaintiffs' expert testimony – the vehicle that can prove classwide liability – reliable and persuasive?

- Does Alarm.com have evidence of consent to the calls at issue? Plaintiffs anticipated that Alarm.com would raise this issue, and carved out claims for calls placed by persons who contacted Alarm.com to request information.

- What is the appropriate penalty for each violation? Again, this was an issue addressed at the recent *Dish* trial for the entire class, and its resolution does not turn on individualized damages issues. *Id*.

TCPA claims can and should be certified so they can be resolved through efficient proceedings as to thousands of people in one fell swoop. As the Seventh Circuit Court of Appeals explained, "Class certification is normal in litigation under § 227, because the main questions … are common to all recipients." *Ira Holtzman, C.P.A. & Assoc. Ltd.  v. Turza,* 728 F.3d 682, 684 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014). The same is true here.

Alarm.com's brief raises no impediments to certification. Apart from its focus on the merits, Alarm.com challenges the class definition's overlap with claims in another case—a matter that can be addressed by a modest narrowing of the class definition. Alarm.com asserts individualized consent issues, but ignores that Plaintiffs have already excluded these easily identifiable, derived-from-defendant's-own-records consumers. And Alarm.com urges an unprecedented view of numerosity—a requirement that is easily satisfied in TCPA cases because of the sheer volume of automated calls caused by nuisance telemarketers—that would require expert testimony proving the *exact* number of class members at the certification stage.

None of Alarm.com's arguments overcome the efficiencies to be realized through certification of the claims in this case. The Court should grant Plaintiffs' motion and set the case on the path to judgment.

## II.  ARGUMENT

**A.    Common issues predominate.**

In their opening brief, Plaintiffs demonstrated that the elements of their claims will be proven with common evidence, satisfying the predominance requirement. None of the arguments Alarm.com makes in opposition precludes class certification.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

     1.     <u>Whether Alarm.com is vicariously liable for Alliance's illegal telemarketing calls is a common question to be resolved on the merits, not at class certification</u>.

Alarm.com contends that there is no way to determine which of Alliance's telemarketing calls were made to promote Alarm.com's services. Alarm.com is raising a merits argument that is not appropriately decided on class certification, and its argument confirms that Alarm.com's liability for the calls is an issue common to all class members.

Alliance's telemarketing calls promote "fully-integrated security systems" that are composed of the hardware that is installed in customers' homes and monitoring services. Pitts Decl. (ECF No. 94), ¶ 8. Alarm.com offers software subscriptions that allows customers to interact with their security systems from their cell phones and other electronic devices and related hardware like video cameras and recorders. Ex. 1 at 24:14-25:21; Ex. 2 at ALARM-10780-10786, ALARM-10800-10801; Ex. 4 at ALARM-16626-16636, 106640-63.[1] Alarm.com's products work in tandem with the other parts of the security systems that are the subject of Alliance's telemarketing calls. Ferguson Decl. (ECF No. 95), ¶ 6; Pitts Decl. (ECF No. 94), ¶ 8. In fact, Alarm.com and Monitronics formed a "technology partnership" in 2007, making the Alarm.com products a component of the monitoring services that Monitronics provides. Terrell Reply Decl., Exs. 32, 33 & 34; *see also* Moni website, https://www.alarm.com/us/MONI (click on video) (video demonstrating the Alarm.com software).

Because the calls promote the security systems and monitoring services as a package, it is not surprising if the Alliance telemarketers do not consistently mention Alarm.com by name or start their pitches with the wireless services that Alarm.com provides. Pitts Decl. (ECF No. 94), ¶¶ 10-11 (stating that most calls would have ended before the telemarketer got to the portion of the script discussing Alarm.com's wireless services). Alarm.com can be vicariously liable even if its name is not mentioned. *See Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 830-33 (N.D. Ill. 2016) (denying summary judgment where the defendants' names were not mentioned during the telemarketing calls). That all of the telemarketing calls promoted

---

[1] Unless otherwise noted, exhibits are attached to the Declaration of Beth Terrell (ECF No. 86).

Alarm.com's services is confirmed by Alliance's production of calling records in this case. Plaintiffs requested "All documents reflecting all telemarketing calls (including attempted telemarketing calls) for all outbound telemarketing calls **that promoted the Defendants' goods or services**." Ex. 24 at 1 (emphasis added). Alliance objected that the requests called for voluminous records and privileged material, but not that it was difficult or impossible to segregate the responsive records from other Alliance call records. Alliance ultimately produced the requested documents. *Id.* at 1-2. It is these call records that Plaintiffs' expert analyzed to identify the members of the proposed National Do-Not-Call Class. Ex. 25, ¶ 9.

That Alliance did not end up installing Alarm.com components as a result of every one of its telemarketing calls does not mean that the Alarm.com components were not promoted during those calls. In fact, the majority of the calls Alliance made were unwanted telemarketing solicitations to individuals on the National Do-Not-Call Registry, which is why this matter is appropriate for class treatment. Alarm.com argues that some individuals Alliance called could only choose a landline-based system and would have no need for Alarm.com's services, but when the telemarketing calls were made, "it was not possible to determine which components would end up constituting the alarm system that was ultimately installed for any given call recipient." Pitts Decl. (ECF No. 94), ¶ 9. TCPA liability turns on the illegality of the calls when made, not whether the recipients agreed to purchase the promoted products. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (2012) (outlining the conduct outlawed by the TCPA).

Alarm.com's argument that Plaintiffs cannot hold it vicariously liable for Alliance's telemarketing violations is a merits question that should not be resolved on class certification. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) ("When, as here, the concern about the proposed class is ... an alleged failure of proof as to an element of the plaintiffs' cause of action, courts should engage that question as a matter of summary judgment, not class certification." (citation omitted)); *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (plaintiffs need only show that there are common questions capable of classwide resolution, not that "those questions will be answered, on the merits, in

favor of the class"). The cases Alarm.com relies on confirm that vicarious liability is a merits issue that is not appropriately resolved at class certification, as all three addressed summary judgment motions. *See Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274-GW, 2015 WL 3526253, at *8-9 (C.D. Cal. May 18, 2015) (granting summary judgment where the plaintiffs could not say for sure that the telemarketing calls were placed by the dealer they claimed made the calls and based their vicarious liability claim solely on the dealer's ability to use the GE trademark); *see also Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679-80 (9th Cir. 2014) (affirming summary judgment where the plaintiff did not offer any evidence of actual or apparent authority or ratification); *In re Monitronics Int'l, Inc.*, No. 1:13-MD-2493, 2016 WL 7413495, at *13 (N.D.W.V. Dec. 22, 2016) (granting summary judgment on vicarious liability grounds).

Other courts have recognized that vicarious liability focuses on the defendant's conduct and can therefore be decided on a classwide basis. *See Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) ("Agency can be resolved on a class-wide basis."); *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 628 (S.D. Cal. 2015) (finding that vicarious liability was a common issue that predominated in the case). This case is no different. Alarm.com argues that "*none* of the calls at issue here were made on behalf of Alarm.com and, as a result, Alarm.com can have no liability here." Opp. at 10 (emphasis added). Plaintiffs contend that Alarm.com can be held vicariously liable for *all* of the calls. This common issue will turn on evidence of Alarm.com's conduct and the relationship between Alarm.com and Alliance, not the content of each individual telemarketing call.

███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████ Also relevant to the agency analysis are Alliance's use of a contract that includes "Alarm.com Terms" (Ex. 22 at 7), Alarm.com's provisions of scripts to its

1   dealers (Ex. 2 at ALARM-10790-92; Ex. 3 at 96:15-97:9; Ex. 4 at ALARM-16670, 16674;

2   Terrell Reply Decl., Ex. 35), as well as the sales training (Ex. 2 at ALARM-10793; Ex. 4 at

3   ALARM-16680) and integrated marketing services that Alarm.com provides its dealers (Ex. 2 at

4   ALARM-10795; Ex. 4 at ALARM-16673). In fact, Alarm.com's dealers use co-branded

5   advertising with a "powered by Alarm.com" logo (Ex. 2 at ALARM-10803, 10828, 10832; Ex. 3

6   at 92:16-94:9; Ex. 4 at ALARM-16672-16673) and Alliance features Alarm.com's software

7   prominently on its website (Terrell Reply Decl., Ex. 36).

8           Plaintiffs will offer this evidence and more in support of the merits of their claims against

9   Alarm.com. At this stage, however, the issue is not whether Plaintiffs can prove that Alarm.com

10  is vicariously liable for Alliance's telemarketing violations but rather whether the "proposed

11  classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler

12  Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1989) (citation omitted). The many common issues in this

13  case satisfy this standard. Even if some individualized issues remained after resolution of the

14  many common issues, class certification is still appropriate. As the Supreme Court recently

15  explained, "[w]hen one or more of the central issues in the action are common to the class and

16  can be said to predominate, the action may be considered proper under Rule 23(b)(3) even

17  though other important matters will have to be tried separately, such as damages or affirmative

18  defenses peculiar to some individual class members." *Tyson Foods,* 136 S. Ct. at 1045 (citation

19  omitted). Courts can use a "variety of procedural tools … to manage the administrative burdens

20  of class litigation." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).

21          2.      Plaintiffs propose a slightly revised definition for the National Do-Not-Call Class
                    that eliminates the six-month overlap with claims in the Monitronics MDL.

22          Alarm.com contends that overlapping classes in the Monitronics multidistrict litigation

23  currently pending in the Northern District of West Virginia creates individualized issues. The

24  MDL involves proposed class claims against Monitronics and Alliance, as well as former

25  security system dealer ISI Alarms NC, Inc. and its principals. Second Amended Master

26  Consolidated Complaint at ¶ 18, *In re Monitronics Int'l, Inc. TCPA Litig.*, MDL No. 1:13-MD-

27

2493 (N.D.W.V. Nov. 21, 2014), ECF No. 255.[2] Alarm.com is not a defendant in the MDL. The plaintiffs have not yet moved for class certification in the MDL but plan to do so by June 15, 2017, in accordance with the schedule set by the court. Terrell Reply Decl., ¶ 2. *Id.* There is only a slight overlap between the class period in the Monitronics litigation and the National-Do-Not-Call Class period in this case.[3] This overlap does not create individualized issues, as Alarm.com contends, since the defendants in both cases remain free to argue that they should not be held vicariously liable for the calls (and even that another entity should be held liable instead), and apportionment issues don't arise if the defendants are jointly and severally liable for the calls. Nonetheless, Plaintiffs propose to revise the National Do-Not-Call Class definition as follows:

> **National Do-Not-Call Class (Plaintiff Charvat):** All persons in the United States who: (a) received more than one call, made by Alliance on Defendants' behalf; (b) promoting Defendants' goods or services; (c) in a twelve-month period; (d) on their cellular telephone line or residential telephone line; (e) whose cellular or residential telephone line number(s) appear on the National Do-Not-Call Registry; (f) **at any time since June 1, 2012**.

Defining the class in this way addresses the concerns Alarm.com has raised.

     3.    <u>There are no individualized issues of consent that preclude class certification.</u>

Plaintiffs discussed the issue of consent in their opening brief, explaining that they can exclude the individuals who contacted Alarm.com from the class because those individuals are identified in Alarm.com's records. Alarm.com filed some of these records with their response brief. *See* Schuchardt Decl. (ECF No. 97), Ex. 14. Alarm.com also filed the declaration of employee Angeleen Rohda, who states that some of the individuals were added to these records because they telephoned or emailed Alarm.com requesting to be contacted, rather than because they filled out the online form on the Alarm.com website. Rohda Decl. (ECF No. 96), ¶¶ 4-6.

---

[2] Claims against Honeywell International, Inc. and UTC Fire and Americas Corporation, Inc. were dismissed on summary judgment.

[3] Alarm.com quotes the class definitions from the Monitronics complaint filed in November 2014. Plaintiffs will modify these definitions when they seek certification to conform to the call records they obtained through discovery. *Id.*

1    Because all of the individuals identified in these records contacted Alarm.com directly about its

2    products and services—whether by telephone or email or through the website—they arguably

3    consented to being contacted by Alarm.com's dealers, and can be excluded from the Classes.

4         Alarm.com argues that although the individuals identified in their records may have

5    consented to being contacted at some point, individualized issues arise because FCC regulations

6    provide that the consent expires after three months if the individuals did not make a purchase or

7    after eighteen months if they did make a purchase. But "summoning each of these individuals

8    into court to hold a multitude of mini-hearings" is not the way to resolve this issue. One solution

9    is to exclude all of the individuals on these records because they all contacted Alarm.com about

10   its products and services and consented to being contacted. *See Manno v. Healthcare Revenue

11   Recovery Grp., LLC*, 289 F.R.D. 674, 689-90 (S.D. Fla. 2013) (certifying a TCPA class after

12   excluding "any persons who may have been subject to an individualized consent defense"

13   because they communicated with the defendant prior to the telemarketing calls). Alternatively, a

14   list of individuals who consented can be compiled by comparing Alarm.com's records (which

15   show when each individual was added in a "date submitted" column, *see* Schuchardt Decl. (ECF

16   No. 97), Ex. 14) and the calls records (to determine when the individuals were called), as well as

17   records identifying the individuals who subscribed to Alarm.com's services.[4] *See Lane v. Wells

18   Fargo Bank, N.A.*, No. C 12-04026 WHA, 2013 WL 3187410, at *10 (N.D. Cal. June 21, 2013)

19   (certifying a class that required the review of records to exclude certain categories of borrowers

20   from the class even though doing so "will entail some effort on the part of counsel for both

21   parties"). Either way, the narrow consent issue can be easily addressed.[5]

22        Plaintiffs' counsel addressed a similar issue in the Dish case, where the court certified a

23   class of individuals whose phone numbers were registered on the National Do-Not-Call Registry.

---

[4] Alarm.com personnel testified that these individuals constitute only a small percentage of their subscribers. *See* Ex. 7 at 69:17-70:8; Ex. 8 at 55:10-56:13.

[5] Alarm.com notes without discussion that Alliance produced evidence of consent. This data was produced more than a month after the expert disclosure deadline but Plaintiffs' expert has said that it will be a simple matter to account for it. Ex. 26, ¶¶ 14-15.

*Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D.N.C. 2015). The court rejected the argument Alarm.com makes in this case that individualized issues relating to prior relationships with a small number of class members prevent certification because "it appears highly likely that this defense can in fact be resolved on a class-wide basis, at least in large part." *Id.* at 398. The court found that Dish could prove its defense "by, for example, offering a comprehensible customer list along with testimony about the list and which calls were to Dish customers; the factfinder could then determine whether those individuals as a group are not entitled to recover because of an [established business relationship]." *Id*. Any individualized issues that arose because the parties disputed the relevant dates "appear to be easily manageable." *Id.* The court was correct; before trial, the parties stipulated to the removal of individuals from the class definition who had a prior relationship with Dish. *See* Third Stipulation Regarding the Class Definition, *Krakauer v. Dish Network, L.L.C.*, No. 1:14-cv-00333-CCE-JEP (M.D.N.C.  Dec. 23, 2016), ECF No. 264-1 (Exhibit 38 to the Terrell Reply Declaration). The case was tried to verdict in just five days.

The cases Alarm.com cites are distinguishable. In several of the cases, the defendants provided evidence that class members consented to receiving communications in a variety of ways, necessitating individualized inquiries. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328-29 (5th Cir. 2008) (it was not possible to determine from the defendant's records whether a recipient had consented to receive faxed advertisements because the numbers "were collected over time and from a variety of sources"); *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219, 2016 U.S. Dist. LEXIS, at *9-17 (N.D. Cal. Aug. 22, 2016) (the defendants' evidence of consent included declarations of sales representatives declarations who said their customers often requested information by fax, product registration records in which customers checked a box indicating their preference to receive communications by fax, and written consent forms in which customers provided express permission to receive faxes); *Sherman v. Yahoo! Inc.*, No. 13-cv-0041-GPC-WVG, 2015 WL 560440, at *5-7, (S.D. Cal. Sept. 23, 2015) (there was no way to reliably identify class members who may have consented to

receiving texts in multiple ways, including by agreeing to one or more of Yahoo's various terms of service or when setting up their accounts); *Conrad v. General Motors Acceptance Corp.*, 283 F.R.D. 326, 330 (N.D. Tex. 2012) (debtors consented by providing their cell phone number when applying for a loan, via a phone conversation with an agent, by email, through a website, or during in person field calls). In the other cases Alarm.com cites, the defendants showed that a significant percentage of the proposed class consented to the communications, as compared to less than 1% of the proposed Classes in this case. *See Fields v. Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 WL 6073426, at *3-4 (N.D. Cal. Mar. 7, 2014) (evidence that over 1.5 million consumers consented to receive texts by entering their information into the defendant's website); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 107 (N.D. Ill. Mar. 28, 2013) (nearly half of the numbers called to collect a debt owed to Honda had consented, and likely many more).

**B.    Numerosity is satisfied.**

Plaintiffs demonstrated that the proposed classes consist of thousands of members. As redefined, the National Do-Not-Call Class has 199,345 members. Terrell Reply Decl., ¶ 3. Plaintiffs also demonstrated that the Residential and Cell Phone Classes have thousands of members based on calling records produced by Nationwide Alarms, Inc., one of Alliance's authorized dealers. Nationwide retained Justin Ramsey to send prerecorded messages to individuals promoting the security systems. Moretti Aff. (ECF No. 89), ¶ 3. The prerecorded messages invited recipients of the calls to press "1" to receive a call back from Nationwide with more information, and the produced call records are for the calls Nationwide made to the individuals who pressed "1" in response to Mr. Ramsey's prerecorded messages. *Id.*, ¶ 6. Plaintiffs' expert, Jeff Hansen, outlined the methodology he would use to analyze Nationwide's call records to identify cell phone numbers from these calling records. Ex. 30. Rachel Hoover, a paralegal who works for Plaintiffs' counsel, followed the methodology that Mr. Hansen described to identify the unique cell phone numbers on the Nationwide call records. Hoover Decl. (ECF No. 87), ¶¶ 2-11. Ms. Hoover found that there were 22,118 unique cell phone

numbers and 22,102 unique residential phone numbers. *Id.*, ¶¶ 11-12. Because a class of forty members is sufficient for numerosity, the thousands of members of each of the proposed classes satisfies the requirement. *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007).

Alarm.com argues, without citation to authority, that in TCPA cases numerosity can only be satisfied with expert testimony. Plaintiffs are not aware of any such requirement. In fact, it is well established that plaintiffs are not required to prove the exact number of persons in a class to establish numerosity. *See, e.g., Bates v. United Parcel Servs.*, 204 F.R.D. 440, 444 (N.D. Cal. 2001); *see also Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 362 (N.D. Cal. 2010) ("Although 75,000 may not be an entirely accurate estimate, the Court is satisfied that the estimate is not so far off the mark to defeat numerosity. If the class turns out to be smaller than legally required under Rule 23(a)(1), Defendants may move to decertify it."). The numerosity requirement is not about counting heads; rather, it is intended to determine whether joinder of all class members would be impracticable. *Civil Rights Educ. & Enforcement Center v. RLJ Lodging Trust*, No. 15-CV-0224-YGR, 2016 WL 314400, at *6 (N.D. Cal. Jan. 25, 2016). The relevant factors are "the size of the class, location of class members, difficulty in identifying those class members, and size of each class member's claim." *Id.* "In analyzing these factors, a court may make common-sense assumptions and reasonable inferences." *Id.*; *see also In re Abbott Labs. Norvir Anti-Trust Litig.,* Nos. C 04–1511 CW, C 04–4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) ("Where 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" (citation omitted)).

Alarm.com argues that Ms. Hoover's analysis is improper and that her declaration must be stricken, but this argument is based upon the faulty premise that plaintiffs must proffer an expert report that proves the exact number of class members to satisfy the numerosity requirement. Ms. Hoover did not purport to present expert testimony. She simply followed the methodology outlined by Mr. Hansen—and Alarm.com does not challenge either Mr. Hansen's methodology or that Ms. Hoover properly applied it. This case is therefore nothing like *Sali v. Universal Health Services of Rancho Springs, Inc.*, where the only evidence the plaintiffs

provided of the alleged wage and hour violations was a sparse declaration from their counsel's paralegal. No. CV 14-985 PSG, 2015 WL 12656937, at *10-11 (C.D. Cal. June 3, 2015). The paralegal analyzed payroll data to determine whether the plaintiffs were fully compensated for their work and were provided appropriate meal and rest breaks. *Id.* at *10. The court found the paralegal's analysis to be improper and insufficient to demonstrate typicality because it "purport[ed] to extract relevant information from extensive amounts of pay data and analyz[ed] that data to reach conclusions about injuries via an undisclosed method, using undisclosed assumptions." *Id.* By contrast, Ms. Hoover followed the unchallenged methodology outlined by Mr. Hansen and described each step of work in her declaration. Alarm.com deposed Ms. Hoover and had the opportunity to depose Mr. Hansen as well, though it declined to do so.

*Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, No. C 13-1289 MJP, 2014 WL 3956699 (W.D. Wash. Aug. 12, 2014), is also distinguishable. There, the court took issue with the plaintiffs' proffer of evidence in support of numerosity on reply instead of with their opening brief, and the adequacy of the analysis given some of the nuances involved in determining whether the calls violated the provision of the TCPA governing numbers listed on the national do-not-call list and the defendant's internal do-not-call list. *Id.* at *2-3. In this case, Plaintiffs provided evidence of numerosity with their opening brief, and have provided expert testimony to show the number of members of the National Do-Not-Call Class. *See* Exs. 25 & 26.

Alarm.com references "several mistakes" in Ms. Hoover's declaration, but cites deposition testimony where Ms. Hoover identified a single typographical error (the number of calls to cell phones she identified in paragraph 10 of her declaration should have been 125,342 instead of 125,346). Schuchardt Decl. (ECF No. 97), Ex. 17 (Hoover Dep.) at 89:3-11. Alarm.com also suggests that all of the call record data is unreliable because Ms. Hoover excluded telephone numbers that contained more or fewer than ten digits. Hoover Decl. (ECF No. 87), ¶ 3. Removing invalid telephone numbers from call records is standard practice and was performed by Ms. Verkhovskaya as well. Ex. 26, ¶ 25 (explaining that she removed invalid telephone numbers, contrary to the criticism of Alarm.com's expert that she failed to do so).

Finally, Alarm.com argues that Plaintiffs have not established numerosity because the Nationwide call records do not show the prerecorded calls that Plaintiffs contend violated the TCPA but instead document the follow up calls Nationwide made to the subset of individuals who received the prerecorded calls and pressed "1" for more information. If anything, the Residential and Cell Phone Classes are even larger than the thousands of individuals who can be identified from the Nationwide call records, since presumably many recipients of the prerecorded calls chose not to press "1." Alarm.com does not dispute that Mr. Ramsay made prerecorded calls or that the numbers in the Nationwide call records correspond to individuals who received follow up calls from Nationwide. In other words, Alarm.com does not dispute that the telephone numbers in the Nationwide call records belong to members of the Residential and Cell Phone Classes. Alarm.com only quibbles with the fact that Plaintiffs have not proffered Mr. Ramsay's call records in support of numerosity. Plaintiffs' evidence demonstrates that there are at least thousands of class members, and there is no requirement that they provide the evidence that Alarm.com apparently would have preferred.[6]

Given the minimal showing required to satisfy numerosity, as well as the relaxed evidentiary standard at class certification, *see Stitt v. San Francisco Mun. Transp. Agency*, No. 12-cv-3704 YGR, 2014 WL 1760623, at *1 n.1 (N.D. Cal. May 2, 2014), Plaintiffs' evidence is more than sufficient to demonstrate numerosity.

---

[6] Alarm.com relies on distinguishable cases where the plaintiffs could not show that the individuals they counted as class members were in fact part of the proposed class. *See Midtown Valuation, Inc. v. Capital Alliance Grp.*, No. 14 cv 1586 (FB) (CLP), 2015 WL 5165085, at *5-9 (E.D.N.Y. Aug. 11, 2015) (the plaintiff alleged the defendant sent unsolicited faxes but proffered only evidence of calls that were made to two different 1-800 numbers listed in the faxes and then forwarded on to other numbers not owned by the defendant), *adopted by* 2015 WL 5158448 (E.D.N.Y. Sept. 2, 2015); *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 WL 1766961, at *3 (S.D. Fla. May 5, 2014) (the plaintiff proffered a list of cellular subscribers who texted "STOP ALL" to the defendant but had no evidence of which of the subscribers continued to receive unwanted text messages and were thus class members).

**C.      Mr. Charvat will fairly and adequately represent the National Do-Not-Call Class.**

Alarm.com argues that Mr. Charvat cannot adequately represent the National Do-Not-Call Class because he did not receive a call promoting Alarm.com's services. As discussed above, the merits question of whether Alarm.com is vicariously liable for Alliance's telemarketing violations is a common question that is not appropriately resolved on class certification, and the issue is common to all members of the National Do-Not-Call Class. But there can also be no question that Alliance was promoting Alarm.com's services to Mr. Charvat because the Alliance representative who visited Mr. Charvat's home brought him a contract that included a page listing "Alarm.com Terms." Ex. 22 at 7. After Mr. Charvat received the contract, he received another call from Alliance and, when he asked about the relationship between the companies, was told about "how the equipment interrelated. If you had a cell phone and you hooked it up with the alarm.com app, it would interface with the alarm system." Terrell Reply Decl., Ex. 37 (Charvat Dep.) at 127:15-128:6. Alarm.com cites *Donaca v. Dish Network, LLC*, but there the plaintiff could not identify anyone else who received calls from the same dealers and the court found the class was not ascertainable. 303 F.R.D. 390, 396-97 (D. Colo. 2014).

Alarm.com also refers in passing to its criticisms of Ms. Verkhovskaya's expert report, arguing that the report should be disregarded for the reasons discussed in its motion to strike. Plaintiffs opposed that motion, pointing out that Ms. Verkhovskaya's report establishes that the National Do-Not-Call Class is sufficiently numerous and that Alarm.com's criticisms go to the weight of her opinion and not its admissibility.

**D.      Class certification is superior to a multitude of individual lawsuits.**

Alarm.com argues that class certification is not superior in this case because the same calls are at issue in the Monitronics MDL. As discussed above, any complications that could arise because of the six-month overlap between the classes in this case and the MDL are eliminated by Plaintiffs' proposed revision to the National Do-Not-Call Class definition. With Alarm.com's concerns laid to rest, it is evident that classwide treatment of Plaintiffs' TCPA claims is superior to requiring class members to pursue individual litigation. The time and

1    expense that would be necessary to take on a defendant like Alarm.com would deter most, if not

2    all, class members from filing suit. Plaintiffs do not anticipate any manageability issues since the

3    elements of their claims will be proven with common evidence.

### III.  CONCLUSION

5    Plaintiffs request that the Court grant their motion for class certification.

6    RESPECTFULLY SUBMITTED AND DATED this 12th day of April, 2017.

7                                   TERRELL MARSHALL LAW GROUP PLLC

9                       By:   Beth E. Terrell, SBN #178181
10                            Beth E. Terrell, SBN #178181
                             Email: bterrell@terrellmarshall.com
11                            Jennifer Rust Murray, *Admitted Pro Hac Vice*
                             Email:  jmurray@terrellmarshall.com
12                            936 North 34th Street, Suite 300
                             Seattle, Washington  98103
13                            Telephone:  (206) 816-6603
                             Facsimile:   (206) 319-5450
14
15                            John W. Barrett, *Admitted Pro Hac Vice*
                             E-mail: jbarrett@baileyglasser.com
16                            Jonathan R. Marshall, *Admitted Pro Hac Vice*
                             Email:  jmarshall@baileyglasser.com
17                            Ryan McCune Donovan, *Admitted Pro Hac Vice*
                             Email:  rdonovan@baileyglasser.com
18                            BAILEY & GLASSER, LLP
19                            209 Capitol Street
                             Charleston, West Virginia  25301
20                            Telephone:  (304) 345-6555
                             Facsimile:   (304) 342-1110
21
22                            Edward A. Broderick
                             Email: ted@broderick-law.com
23                            Anthony I. Paronich, *Admitted Pro Hac Vice*
                             Email: anthony@broderick-law.com
24                            BRODERICK & PARONICH, P.C.
25                            99 High Street, Suite 304
                             Boston, Massachusetts 02110
26                            Telephone:  (617) 738-7080
                             Facsimile:   (617) 830-0327
27

Matthew P. McCue
E-mail: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts  01760
Telephone:  (508) 655-1415
Facsimile:   (508) 319-3077

Chiharu Sekino, SBN #306589
Email: csekino@sfmslaw.com
SHEPHERD, FINKELMAN, MILLER
    & SHAH, LLP
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 429-5272
Facsimile: (866) 300-7367

James C. Shah, SBN #260435
Email: jshah@sfmslaw.com
SHEPHERD, FINKELMAN, MILLER
    & SHAH, LLP
35 East State Street
Media, Pennsylvania 19063
Telephone:  (610) 891-9880
Facsimile:  (866) 300-7367

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on April 12, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stephen E. Taylor, SBN #058452
Email: staylor@taylorpatchen.com
Jonathan A. Patchen, SBN #237346
Email: jpatchen@taylorpatchen.com
Cheryl A. Cauley, SBN #252262
Email:  ccauley@taylorpatchen.com
TAYLOR & PATCHEN, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone:  (415) 788-8200
Facsimile:   (415) 788-8208

Martin W. Jaszczuk, *Admitted Pro Hac Vice*
Email: mjaszczuk@jaszczuk.com
Margaret M. Schuchardt, *Admitted Pro Hac Vice*
Email:  mschuchardt@jaszczuk.com
Keith L. Gibson, *Admitted Pro Hac Vice*
Email:  kgibson@jaszczuk.com
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
Telephone: (312) 442-0311

Ross A. Buntrock, *Admitted Pro Hac Vice*
Email: ross@olspllc.com
OBSIDIAN LEGAL PLLC
1821 Vernon Street NW
Washington, DC 20009
Telephone: (202) 643-9055

*Attorneys for Defendants Alarm.com Incorporated and Alarm.com Holdings, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DATED this 12th day of April, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Beth E. Terrell, SBN #178181
     Beth E. Terrell, SBN #178181
     Email: bterrell@terrellmarshall.com
     936 North 34th Street, Suite 300
     Seattle, Washington  98103-8869
     Telephone:  (206) 816-6603
     Facsimile:  (206) 350-3528

*Attorneys for Plaintiffs*