**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ABANTE ROOTER AND PLUMBING, INC., MARK HANKINS, AND PHILIP K. CHARVAT**, individually and on behalf of all others similarly situated<br><br>**Plaintiffs,**<br><br>vs.<br><br>**ALARM.COM INCORPORATED AND ALARARM.COM HOLDINGS, INC.,**<br><br>**Defendants.** | Case No. 15-CV-6314-YGR<br><br>**ORDERS GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AS MODIFIED BY THE COURT; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO STRIKE** |

Plaintiffs Abante Rooter and Plumbing, Inc., Mark Hankins, and Philip K. Charvat bring this punitive class action against defendants Alarm.com, Inc. and Alarm.com Holdings, Inc. (collectively "Alarm.com") alleging four counts; namely violations of the Telephone Consumer Protection Act ("TCPA") for calls made to (i) cellular telephones and (ii) residential telephone lines; and violations of 47 C.F.R. Section 64.1200(c) and 47 U.S.C. Section 227(c)(5) for (iii) failure to follow procedures for maintaining a list of persons who request not to receive telemarketing calls; and (iv) for calls made to members of the National Do-Not-Call Registry ("DNC registry").

Now before the Court is plaintiffs' motion for class certification. (Dkt. No. 85, "Motion").[1]

---

[1] On March 28, 2017, Alarm.com filed its opposition brief. (Dkt. No. 93.) On April 12, 2017, plaintiffs filed their reply brief (Dkt. No.115-4). On April 19, 2017, the Court granted Alarm.com's administrative motion for leave to file a brief sur-reply in response to a modified class definition that plaintiffs first raised in their Reply (Dkt. No 124.) Plaintiffs filed two administrative sealing motions (Dkt. Nos. 84 and 115) and defendants filed one administrative sealing motion

Plaintiffs seek to represent three damages classes pursuant to Rule 23(b)(3). Specifically, plaintiffs define the classes as follows:[2]

> **(1) Cell Phone Class**: All persons in the United States to whom: (a) Alliance or its agents, on Defendants' behalf, instituted one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to a recipient's cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time since October 15, 2013.
>
> **(2) Residential Class**: All persons in the United States to whom: (a) Alliance or its agents, on Defendants' behalf, initiated one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to a recipient's residential telephone line; (d) through the use of an artificial or prerecorded voice; (e) at any time since October 15, 2013.
>
> **(3) National Do-Not-Call Class ("DNC Class")**: All persons in the United States who: (a) received more than one call, made by Alliance on Defendants' behalf; (b) promoting Defendants' goods or services; (c) in a twelve-month period; (d) on their cellular telephone line or residential telephone line; (e) whose cellular or residential telephone line number(s) appear on the National Do-Not-Call Registry; (f) at any time since December 30, 2010.

On March 28, 2017, Alarm.com filed motions to strike the expert reports of (i) Anya Verkhovakaya and (ii) Jeffery Hansen and (iii) the declaration of Rachel Hoover. (Dkt. Nos. 98, 100, 102.)

Having carefully considered the papers submitted, the pleadings in this action, the admissible evidence, and oral argument held on May 5, 2017, the Court **ORDERS** as follows: the

---

(Dkt. No. 92) in connection with their briefing on class certification. The material in question is subject to an earlier Stipulated Protective Order, allowing the parties to designate certain documents produced in discovery as confidential. (Dkt. No. 55.) The Court finds the requests are sufficiently justified under the applicable "good cause" standard. Accordingly, except as used herein, the Court **GRANTS** the motions to seal the designated excerpts and documents in question solely for purposes of resolving the instant motion. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006).

[2] Excluded from the proposed classes are defendants, any entity in which defendants have a controlling interest or that has a controlling interest in defendants, and defendants' legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

**COURT GRANTS AS MODIFIED BY THE COURT** plaintiffs' motion to certify the three proposed classes, as described herein.[3] The Court **GRANTS** defendants' motion to strike the expert report of Jeffery Hansen. The Court **DENIES** defendants' motions to strike the expert report of Anya Verkovskaya and the declaration of Rachel Hoover.

## I. RELEVANT BACKGROUND

Plaintiffs are consumers and a small business that allegedly received telemarketing calls from Alliance or its agents, allegedly on behalf of Alarm.com. (Dkt. No. 1, Class Action Complaint ("Complaint") at ¶ 2.) Plaintiffs allege that Alliance or its agents made these calls to (i) cell phone numbers using an automatic dialing system or an artificial or prerecorded voice; (ii) residential numbers using an artificial or prerecorded voice, and (iii) numbers on the DNC registry. (*Id.* at ¶¶ 157–164, 169–174.)

Alarm.com is a publicly traded company incorporated in Delaware, with its principal place of business in Virginia. (*Id.* at ¶ 9.) It sells cloud-based home automation, monitoring and security services. (*Id.* at ¶¶ 1, 21.) Alarm.com uses a network of 6,000 third-party security system dealers and service providers, including Alliance Security ("Alliance"), to sell subscriptions to its services.[4] (*Id.* at ¶ 37.) Alliance pays Alarm.com an "activation fee" and "monthly service charge" for each Alarm.com subscription sold. (Dkt No. 86, Declaration of Beth E. Terrell in Support of Motion to Certify Class ("Terrell Decl."), Exh. 1 at 19:6-20:8.)

Alliance sells, installs, and services fully-integrated security systems. (Dkt. No. 94, Declaration of Matthew Pitts ("Pitts Decl.") at ¶ 8.) To provide these integrated systems, Alliance contracts with companies that manufacture hardware components (*e.g.* Honeywell), develop the "necessary software system for components to communicate part of an integrated system" (*e.g.* Alarm.com), and monitor the alarm systems and contract emergency services when the alarm is

---

[3] The Court's modified class definition excludes from the proposed classes persons that (i) provided defendants with their telephone numbers(s) prior to receiving calls, and, with respect to the DNC Class only, (ii) received calls prior to June 30, 2010.

[4] Plaintiffs point out that Alliance has a history of TCPA violations, and has been fined by several state and federal agencies. (Complaint at ¶¶ 53–58.) This allegation is not relevant to the motions before the Court.

triggered (*e.g.* Monitronics). (Dkt. No. 95, Declaration of Anne Ferguson ("Ferguson Decl.") at ¶¶ 3, 6.) Alliance thus sells to consumers an integrated system of Alarm.com and non-Alarm.com products and services. In support of its sales efforts, Alliance uses Nationwide Alarms, LLC ("Nationwide") to conduct telemarketing. (Complaint at ¶¶ 37, 83.)

Alarm.com provides its dealers with resources and support. It encourages dealers to use the Alarm.com logo and to include the slogan, "powered by Alarm.com," on their websites. (Terrell Decl., Ex. 3 at 92:16-94:9.) Since at least 2012, Alarm.com has also drafted scripts for dealers to use when making telephone calls to potential customers. (*Id.* at 95:20-97:9.) Its "Premier Partner Program" rewards high-performing dealers by providing them with additional sales and marketing tools, a marketing allowance, and an opportunity to participate in Alarm.com's Customer Lead Service ("CLS") program. (Terrell Decl., Ex. 2 at 10834-35.) Alarm.com provides these dealers with leads on potential customers that inquire about Alarm.com's products and services through its website or a customer service representative. (Terrell Decl., Ex. 3 at 31:18–32:5.) These potential customers' numbers are compiled in Alarrm.com's CLS database. Alarm.com highlights its strong relationship with dealers by promoting them on its website. It further supports dealers though a "partner portal" that enables dealers to create customer accounts, access subscriber information, and receive support, documentation, and training. (Terrell Decl., Ex. 4 at 16671.)

## II. LEGAL FRAMEWORK

### A. *Daubert* Standard for Expert Opinions

Rule 702 permits opinion testimony by an expert as long as the witness is qualified and their opinion is relevant and reliable. Fed. R. Evid. 702. An expert witness may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

At the class certification stage, courts analyze challenges to expert testimony under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Ellis*, 657 F.3d at 982. "[A]t this early stage, robust gatekeeping of expert evidence is not required; rather, the court should ask only if expert evidence is useful in evaluating whether class certification requirements have been met." *Culley v. Lincare, Inc.*, No. 2:15-CV-00081-MCE-CMK, 2016 WL 4208567, at *1 (E.D. Cal. 2016) (quoting *Tait v. BSH Home Appliances Corp.*,

289 F.R.D. 466, 492–93 (C.D. Cal. 2012). The trial judge has discretion to determine reasonable measures of reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

The proponent of expert testimony has the burden of proving admissibility in accordance with Rule 702. Fed. R. Evid. 702, Advisory Committee Notes (2000 amendments). An expert should be permitted to testify if the proponent demonstrates that: (i) the expert is qualified; (ii) the evidence is relevant to the suit; and (iii) the evidence is reliable. *See Thompson v. Whirlpool Corp.*, No. C06-1804-JCC, 2008 WL 2063549, at *3 (W.D. Wash. 2008) (citing *Daubert*, 509 U.S. at 589–90).

### B. Class Certification

Under Federal Rule of Civil Procedure 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements as "numerosity, commonality, typicality[,] and adequacy of representation." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

Once the threshold requirements of Rule 23(a) are met, plaintiffs must then show "through evidentiary proof" that a class is appropriate for certification under one of the provisions in Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Here, plaintiffs seek certification under Rule 23(b)(3), which requires plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen, Inc. v. Conn. Ret. Plans & Trust*

*Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart*, 564 U.S. at 351); *see also Mazza*, 666 F.3d at 588. The Court considers the merits to the extent they overlap with the Rule 23 requirements. *Ellis*, 657 F.3d at 983. The Court must resolve factual disputes as "necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Id.* (Emphasis in original.) "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" *Aburto v. Verizon Cal., Inc.*, No. 11-CV-03683, 2012 WL 10381, at *2 (C.D. Cal. 2012) (quoting *Ellis*, 657 F.3d at 982), *abrogated on other grounds as recognized by Shiferaw v. Sunrise Sen. Living Mgmt., Inc.*, No. 13-CV-2171, 2014 WL 12585796, at * 24n. 16 (C.D. Cal. June 11, 2014). "A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule." *Wal-Mart*, 564 U.S. at 350. Ultimately, the Court exercises its discretion to determine whether a class should be certified. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

## III. MOTIONS TO STRIKE

The Court begins it analysis with the motions to strike, as defendants' arguments on the class certification motion stem, in part, from these challenges.

### A. Expert Report of Anya Verkhovskaya

Plaintiffs offer Ms. Verkhovskaya, Chief Operating Officer of a class action administration firm, to opine that the DNC class contains nearly 400,000 members. (Terrell Decl., Ex. 25 (Expert Report of Anya Verkhovskaya, A.B. Data, Ltd. ("Verkhovskaya Report")) at ¶ 33.) Defendants do not challenge Ms. Verkhovskaya's qualifications. Rather, defendants contend that Ms. Verkhovskaya's calculations are flawed because she included (i) all unique residential calls in her dataset, not just those that promoted Alarm.com; (ii) individuals that may have consented, and (iii) used Lexis Nexis data, which has an error rate of up to 14%, to remove business numbers from her output list.[5]

---

[5] Alarm.com also contends that she incorporated calls that may not have been answered. Ms. Verkhovskaya explained in her rebuttal report that she excluded unanswered calls based on fields in the call records that, based on her experience working with these types of records, signify whether a call was answered. (Terrell Decl., Exh. 26, Rebuttal Expert Report of Anya Verkhovskaya, A.B. Data, Ltd. at ¶¶ 4-6.)

6

With regard to the first issue, the Court understands defendants' argument that the calls may not have identified Alarm.com by name. However, plaintiffs' theory acknowledges the lack of call mentions, and posits that it does not matter. Thus, under plaintiffs' theory, it is proper for Ms. Verkhovskaya to include all unique residential telephone numbers in her dataset because plaintiffs position is that all calls promoted an integrated system including Alarm.com. That defendants do not agree with this theory does not require exclusion of Ms. Verkhovskaya's opinions.

Second, with regard to Ms. Verkhovskaya's inclusion of individuals that may have consented through the website or by contacting Alarm.com, the Court agrees that her calculations overreach and must be adjusted by removing individuals that inquired about Alarm.com's products or services prior to receiving a call. However, this only requires modification, by removing telephone numbers from her output list that appear in Alarm.com's CLS records, and will not affect her output figure of nearly 400,000 enough to undermine numerosity. Modification, not exclusion, is appropriate.

Finally, the Court finds that defendants' objection to Ms. Verkhovskaya's use of Lexis Nexis data to remove business numbers from her output list relates to the weight of her opinion, not exclusion. Another court rejected a similar challenge to her methodology in *Krakauer*, finding that Ms. Verkhovskaya properly used Lexis Nexis data to remove business numbers from her output list because it was the type of data reasonably relied upon by experts in the field and the 14% error rate was not "unreasonably high for these particular circumstances." *See Krakauer v. Dish Network, L.L.C,* 2015 WL 5227693, at *8-9 (M.D.N.C. Sept. 8, 2015). This Court concurs.

For the reasons above, defendants' motion to strike the expert report of Anya Verkhovskaya is **DENIED.**

### B. Expert Report of Jeffery Hansen

Plaintiffs offer Mr. Hansen, an electronic data analyst, to opine on the methodology he would use to determine how many cell phone numbers Alliance or its agents called using an automatic telephone dialing system as it relates to the requirement of numerosity. Defendants do not contest Mr. Hansen's qualifications, but argue that Mr. Hansen's report should be stricken because he offers no opinion or analysis of any kind. The report baldly describes the steps Mr.

7

Hansen would have taken to analyze relevant data, but he was never provided with the relevant data.

Plaintiffs' own papers concede that Mr. Hansen's report merely describes the analysis that "could be performed" and "can be conducted with the call data." (Dkt. No. 110, Opposition to Defendants' Motion to Strike Expert Report of Jeffery Hansen at 1.) Their main argument is that at class certification, the rules regarding admissibility of evidence are relaxed. *See Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014). Plaintiffs rely on two Northern District of California cases, *Rai* and *Ralston,* to argue that an expert report can be admitted at the class certification stage if it contains possible opinions on an articulated methodology even though it lacks the actual analysis. *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 263–64 (N.D. Cal. 2015); *Ralston v. Mortg. Investors Grp., Inc.*, No. 08-536-JF (PSG), 2011 WL 6002640, at *9 (N.D. Cal. 2011). *Rai* and *Ralston*, however, do not support such a broad proposition. Both cases addressed the issue of whether damages experts must conduct a fulsome analysis at the class certification stage. *Rai*, 308 F.R.D. at 263-64; *Ralston*, 2011 WL 6002640, at *9. Mr. Hansen, by contrast, has offered no analysis. For the reasons above, defendants' motion to strike the expert report of Jeffery Hansen is **GRANTED.**[6]

### C. Declaration of Rachel Hoover

Alarm.com has also moved to strike Ms. Hoover's declaration on the grounds that Ms. Hoover (i) is not an expert; (ii) does not have the qualifications to perform the analysis noted in her declaration; and (iii) has no knowledge about the reliability of the records she analyzed.[7] (Dkt. No. 100, Motion to Strike Declaration of Rachel Hoover, Ex. C at 13:23–25, 14:1–3, 26:7–29:8, 63:5–64:6, 89:3–11, 99:15–100:5.)

Here, plaintiffs do not offer Ms. Hoover as an expert, nor is expert testimony required for the straightforward summary noted in her declaration. According to her declaration, Ms. Hoover

---

[6] Pursuant to the Court's prior Order, expert discovery on class certification in this case closed on February 20, 2017. (Dkt. No. 73.) Expert discovery on the merits, however, has not closed.

[7] Defendants also argue that Ms. Hoover concedes that her report has several mistakes, however, these are mere typographical error that do not effect Ms. Hoover's tabulations.

took six Excel files that contained records of calls made by Nationwide, used a "data preparation, blending, and analytics program called Alteryx" to combine the records into a single database, removed obviously incorrect telephone number entries that contained fewer than ten digits, used Alteryx to separate cell from residential telephone numbers, and cross-checked to determine whether any numbers may have been reassigned from cell to residential, or vice versa. (Dkt. No. 87, Declaration of Rachel E. Hoover ("Hoover Decl.") at ¶¶ 2-8.) The Court finds that expert testimony is not necessary to perform this type of tabulation. *See Kristensen*, 12 F. Supp. 3d at 1304; *Villanueva v. Liberty Acquisitions Servicing, LLC*, No. 3:14-cv-01610-HZ, 2017 WL 1021523, at \*4 (D. Or. Jan. 13, 2017) (relying on data analysis conducted by attorney and attorney's staff to establish numerosity). The fact that Ms. Hoover had no personal knowledge of the data does not render her declaration unreliable, as Nationwide produced this data pursuant to a subpoena. (Hoover Decl. at ¶ 2.)

For the reasons above, defendants' motion to strike the declaration of Rachel Hoover is **DENIED.**

### IV.   MOTION FOR CLASS CERTIFICATION

Plaintiffs contend that they have established all requirements for certification of a damages class under Rule 23(b)(3). Alarm.com challenges all elements except for typicality. With respect to numerosity, defendants only challenge the Cell Phone Class and Residential Class. With respect to adequacy, defendants only challenge Mr. Chavart of the DNC Class.

In light of the issues presented, the Court will first address commonality under Rule 23(a) together with predominance under Rule 23(b)(3). *See, e.g.*, *Collins v. ITT Educ. Servs., Inc.*, No. 12-CV-1395, 2013 WL 6925827, at \*3 (S.D. Cal. 2013) (addressing commonality and predominance together) (citing *Amchem Prods.*, 521 U.S. at 609 ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.")); *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 13-CV-2468, 2014 WL 4627271, at \*8 (C.D. Cal. 2014). The Court will then address in turn the remaining factors under Rules 23(a) and 23(b)(3) — numerosity, typicality, adequacy, and superiority.

### A. Predominance and Commonality

Rule 23(a)(2) requires that the party seeking certification show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The existence of common questions itself will not satisfy the commonality requirement, and instead, "[w]hat matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted) (emphasis in original). The predominance inquiry under Rule 23(b)(3) is "far more demanding." *See Amchem Prods.*, 521 U.S. at 623–24.

Here, class members' claims hinge on several common questions; namely whether (1) Alarm.com is liable for Alliance's conduct; (2) Alliance is liable for the conduct of Alliance's agent, Nationwide; (3) the calls in question promoted Alarm.com; (4) Alliance or its agents called numbers on the DNC registry; (5) Alliance or its agents called cell numbers using a prerecorded message; and (6) Alliance or its agents placed calls to residential numbers using a prerecorded message. Defendants concede that five of the six questions listed are, in fact, common questions. Defendants focus their attack on the topic of whether "the calls in question promoted Alarm.com."[8] With respect to that issue, defendants argue that individual issues predominate. They identify three: (i) whether each call promoted Alarm.com, (ii) whether each class member consented to the call, and (iii) how to apportion liability for each call between Alarm.com and *In re Monitronics* defendants, including Alliance. *In re Monitronics Int'l, Inc. TCPA Litig.*, MDL No. 1:13-md-2493 (N.D. W. Va.).

As to the first issue, the gravamen of plaintiffs' theory is that Alarm.com is vicariously liable for calls made by Alliance or its agents because the calls promoted Alarm.com. Even if some

---

[8] Alarm.com also points to the fact that Alliance's testimony indicates that it does not make calls on behalf of Alarm.com, but makes calls on behalf of itself. (Pitts. Decl. at ¶ 5.) This point goes to the merits of plaintiffs' vicarious liability claim. Further, a showing that Alliance does not make calls on behalf of Alarm.com would support plaintiffs' position that the issue of vicarious liability can be answered on a classwide basis: if Alliance does not make calls on behalf of Alarm.com then plaintiffs cannot recover on a *classwide* basis.

10

of Alliance's calls did promote Alarm.com, defendants contend, the evidence reflects that not all calls were made for that purpose as Alarm.com generally was not mentioned by name on the calls and some calls resulted in installations of security systems with no Alarm.com components[9] (Pitts Decl. at ¶ 10.)

Defendants do not persuade. The mere fact that Alliance generally did not mention Alarm.com on the calls does raise a predominant individual issue. Plaintiffs have provided scripts, which evidence a consistent approach to making telephone calls. (Pitts Decl., Exh. A at ALLIANCE _00010-21.) These scripts have at least two critical common features: (i) none specifically mentions Alarm.com and (ii) all stress that customers can purchase an "interactive cellular service," tout its benefits ("arm and disarm the system from your cell phone...[and it] comes with the fastest response time in the industry") and reveal its price. (*Id*. at ALLIANCE_000011, *see also* ALLIANCE_000013, 15–16, 19.) Further, the calls in question were made pursuant to a contract between Alliance and Alarm.com. Under the contract, Alliance has the right "to market and sell Alarm.com Services," and "shall be solely responsibility for all sales and associated activities." (Dkt. No. 86, Exh. 5 at ALARM-0000005 at ¶ 3.) It is obligated to use "best efforts to market and sell Alarm.com Services." (*Id*.) The agreement was modified in 2015 to make Alarm.com "Alliance's exclusive supplier for all broadband and Interactive Services and wireless services." (*Id*. at ALARM-0000016 at ¶ 1.3.) Alarm.com has made no showing that the extent to which Alliance promoted Alarm.com varied significantly from call-to-call requiring an individualized inquiry. Whether a call from Alliance ultimately resulted in installation of a system with an Alarm.com component is circumstantial evidence and certainty not dispositive. The question at class certification is whether common evidence exists to answer the question, not whether plaintiffs will ultimately prevail.

With respect to the second issue, Alarm.com's CLS records indicate that certain recipients

---

[9] Defendant argues that some homes are limited to landline-based solutions and could not have used Alarm.com's cloud-based system, so calls to numbers associated with those households could not have promoted Alarm.com. This is beside the point, as it is not responsive to plaintiffs' allegation that the calls in question promoted Alarm.com, regardless of whether Alarm.com was mentioned on the call or Alliance ultimately installed an Alarm.com system at the point of purchase.

11

of the calls at issue initiated contact with Alarm.com by inquiring about its products and services and therefore should not be part of the class. (Dkt. No. 96, Declaration of Angeleen Rohda ("Rohda Decl.") at ¶ 4; Ex. 14.) The CLS records include three groups: individuals that (i) input their telephone number on Alarm.com's website and clicked a box indicating consent to be called; (ii) called an Alarm.com customer service representative but were not presented with a consent waiver; and (iii) previously purchased an Alarm.com product. (Rohda Decl. at ¶ 4.) Because the CLS records provide no way to isolate these groups, Alarm.com argues, there is no classwide means to determine whether these individuals consented to the calls.[10]

The Court agrees that these individuals may have consented, but defendants' concerns can be resolved through narrowing the proposed class definitions, rather than exclusion. Thus, modifying the class definitions to exclude three groups that arguably consented; namely those that (i) visited Alarm.com's website and typed in their telephone number, (ii) called an Alarm.com customer service representative and (iii) had an existing business relationship with Alarm.com, will resolve the individualized consent issue that Alarm.com raises.[11] *See Birchmier*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (certifying class after narrowed class definition addressed defendants' predominance arguments). *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674,

---

[10] Defendants also argue that FCC regulations permit entities to contact individuals on the DNC Registry for a specified window of time if that individual has contacted the entity to inquire about its services. 47 C.F.R. Section 64.12000(c), (f)(5), (f)(4). Under the relevant FCC regulation, Alarm.com would have an established business relationship ("EBR") that permits it to contract individuals who contacted Alarm.com and were then manually added to the CLS list for three months, and an eighteen-month EBR with regard to individuals that contacted Alarm.com and then made a purchase. Defendants contend that there is no classwide way to determine whether individuals on Alarm.com's CLS list (i) consented to receive calls, (ii) had a 3-month or 18-month EBR and were called within that window, or (iii) had a 3-month or 18-month EBR and were called outside that window. Narrowing the class definition resolves this issue by extending consent to all individuals on the DNC call list that previously contacted Alarm.com.

[11] In light of the Court's narrowed class definition, defendants' reliance on the concerns raised in *Gene & Gene* and *True Health Chiropractic* evaporate. *See Gene & Gene,* 541 F.3d 318, 328 (5th Cir. 2008) (plaintiff "failed to advance a viable theory of generalized proof to identify those persons, if any, to whom [the defendant] may be liable"); *True Health Chiropractic*, 2016 U.S. Dist. LEXIS 111657 at *9 (N.D. Cal. 2015) (certifying class would require detailed factual inquiries regarding whether each putative class member granted prior express permission).

689–90 (S.D. Fla. 2013) (finding that common questions predominated after excluding individuals that may have been subject to an individualized consent defense because they communicated with defendants before receiving calls). Determining which individuals inquired about Alarm.com's products or services prior to receiving a call will not be difficult because Alarm.com's CLS records indicate the date each telephone number was added. (Dkt. No. 97, Declaration of Schuchardt ("Schuchardt Decl."), Exh. 14 ("date submitted" column).)

As for the final issue, that is whether the proposed DNC Class overlaps with the proposed classes in *Monitronics* and if so how to apportion liability against Alliance, Monitronics, and several other defendants, the Court finds that the concerns do not prohibit certification. Apportionment of liability is a common issue across members of the DNC Class. *See Birchmier*, 302 F.R.D. at 253 ("whether a particular defendant is liable is not an *individual* issue among class members"). No individual inquiry is necessary because defendants have made no showing that the apportionment should differ from plaintiff-to-plaintiff. Whatever the ultimate apportionment may be, it can be applied on a classwide basis. Further, the risk of double recovery can easily be addressed, if necessary, by providing Alarm.com with an offset against any recovery that the *Monitronics* plaintiffs obtain in their litigation.

Thus, the Court finds that common issues predominate with respect to all of the proposed classes, as modified by the Court.

### B. Numerosity

Rule 23(a) requires that each proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23. Rather, the rule "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980); *see also Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014); *see, e.g.*, *Patrick v. Marshall*, 460 F. Supp. 23, 29 (N.D. Cal. 1978) (certifying class with at least thirty-nine potential members). A class or subclass with more than 40 members "raises a presumption of impracticability [of joinder] based on numbers alone." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015).

The Court finds that plaintiffs' showing of numerosity is sufficient as to each class. Plaintiffs offer expert testimony that the DNC Class consists of nearly 400,000 members. (Verkhovskaya Report at ¶¶ 9–26.) Alarm.com has moved to strike Ms. Verkhovskaya's expert report, but this challenge fails for the reasons discussed in Section III.A, *supra*. With regard to the Residential and Cell Phone classes, plaintiffs offer Ms. Hoover's lay declaration that each class has nearly 20,000 members. (Hoover Decl. at ¶¶ 11-12.) Alarm.com has moved to strike Ms. Hoover's declaration, but this challenge fails for the reasons discussed in Section III.C, *supra*.

### C. Typicality

To satisfy typicality, plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Defendants concede plaintiffs have made a sufficient showing of typicality. The Court concurs.

### D. Adequacy

Rule 23(a)'s adequacy requirement considers "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if] the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003). Alarm.com argues that plaintiffs have failed to satisfy adequacy with regard to the DNC Class. It does not contend that Charvat or counsel have any conflicts of interest, nor do they contest that counsel will not prosecute the action vigorously on behalf of the class. Rather, Alarm.com claims that Charvat is not a member of the DNC Class because he did not receive calls that promoted Alarm.com. Specifically, defendants highlight that Alarm.com was not mentioned until the sixth call Charvat received, when Charvat specifically asked Alliance about Alarm.com. (Charvat Dep. at 176:13-25, 177:1-3.) Plaintiffs counter that whether calls from Alliance promoted Alarm.com is a common issue across all members of the DNC Class.[12]

As an initial matter, defendants' argument is more aptly addressed as one of typicality, not adequacy. Further, as previously discussed herein, plaintiffs' theory of harm is not based on the

---

[12] The Court also notes that defendants offer no reason to challenge Charvat's commitment to "prosecute the action vigorously on behalf of the class." *See Staton*, 327 F.3d at 957. The same is true for the representatives of the Cell Phone and Residential classes.

14

assumption that Alliance or its agents specifically mentioned Alarm.com during the calls in question. Therefore the Court finds that Charvat's showing of adequacy is sufficient and that both plaintiffs' counsel and the other named plaintiffs satisfy the requirements of Rule 26(a).

### E. Superiority

Lastly, Rule 23(b)(3) requires a finding that a class action is superior to individual suits. To make this determination, the Court considers the following four non-exhaustive factors: (1) the interests of members of the class in individual controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1235 (9th Cir. 1996).

Defendants' main argument hinges on the claim that litigation is already pending in *Monitronics*. Specifically, defendants argue that certification here would not be superior because it could lead to double recovery, and it would be difficult to manage a class action where parallel proceedings involving the same allegations against different defendants are pending. With regard to apportioning liability, those arguments recycle those made in the context of predominance, and are similarly without merit here. As discussed above, any risk of double recovery could easily be addressed by affording Alarm.com an offset against any recovery by the *Monitronics* plaintiffs, if appropriate. While managing a class action alongside parallel proceedings regarding the same conduct against different defendants may present difficulties, Alarm.com makes no showing that these difficulties would be resolved by having plaintiffs pursue their claims individually. Further, defendants' arguments which raise consolidation concerns are not relevant to a superiority analysis.

Additionally, the Court notes the statutory damages provided by the TCPA are "not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 571–72 (W.D. Wa. 2012) (citing cases); *see also Whitaker v. Bennett Law, PLLC*, No.

15

13-CV-3145, 2014 WL 5454398, at *7 (S.D. Cal. 2014) (finding that given the damages allowed under the TCPA, "requiring the putative class members to adjudicate their claims independently would be too economically burdensome and would deprive many of a chance to recover under the law"). In light of these considerations, the Court finds that a class action is superior to individual adjudication.

The Court thus finds that the proposed classes, as modified by the Court, satisfy all the requirements under Rules 23(a) and 23(b)(3) for class certification, and **GRANTS** plaintiffs' motion to certify the Cell Phone Class, Residential Class and DNC Class as defined below.

**V.  CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion to strike the expert report of Anya Verkhovskaya is **DENIED.**

2. Defendants' motion to strike the expert report of Jeffery Hansen is **GRANTED.**

3. Defendants' to strike the declaration of Rachel Hoover is **DENIED**.

4. Plaintiffs' motion to certify the three classes under Rule 23(b)(3) is **GRANTED** as follows with the Court's modification emphasized:

(1) **Cell Phone Class**: All persons in the United States, to whom: (a) Alliance or its agents, on Defendants' behalf, instituted one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to a recipient's cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time since October 15, 2013; *(f) except those persons that provided Defendants with their telephone number(s) prior to receiving call(s) from Alliance or its agents, on Defendants' behalf.*

(2) **Residential Class**: All persons in the United States to whom: (a) Alliance or its agents, on Defendants' behalf, initiated one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to a recipient's residential telephone line; (d) through the use of an artificial or prerecorded voice; (e) at any time since October 15, 2013; *(f) except those persons that provided Defendants with their telephone number(s) prior to receiving call(s) from Alliance or its agents, on Defendants' behalf.*

(3) **National Do-Not-Call Class ("DNC Class")**: All persons in the United States who: (a) received more than one call, made by Alliance on Defendants' behalf; (b) promoting Defendants' goods or services; (c) in a twelve-month period; (d) on their cellular telephone line or residential telephone line; (e) whose cellular or residential telephone line number(s) appear on the National Do-Not-Call Registry; (f) *at any time since June 30, 2010*; *(g) except those persons that provided Defendants with their telephone number(s) prior to receiving call(s) from Alliance or its agents, on Defendants' behalf.*

5. The Court **APPOINTS** plaintiffs' counsel as class counsel.
6. A case management conferred is hereby **SCHEDULED** for **Tuesday, May 30, 2017 at 1:00 p.m.**, with a joint statement due pursuant to the Local Rules.

This Order terminates Dkt. No. 84, 85, 92, 98, 100, 102 and 115.

**IT IS SO ORDERED**.

Dated: May 5, 2017

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**