Martin W. Jaszczuk (*pro hac vice*)
Daniel I. Schlessinger (*pro hac vice*)
Margaret M. Schuchardt (*pro hac vice*)
Keith L. Gibson (*pro hac vice*)
JASZCZUK P.C.
311 South Wacker Drive, Suite 3200
Chicago, IL 60606
Telephone: (312) 442-0509
Facsimile: (312) 442-0519
mjaszczuk@jaszczuk.com
dschlessinger@jaszczuk.com
mschuchardt@jaszczuk.com
kgibson@jaszczuk.com

Craig S. Primis, P.C. (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5921
cprimis@kirkland.com

Kasey C. Townsend (SBN 152992)
Susan J. Welde (SBN 205401)
MURCHISON & CUMMING, LLP
275 Battery Street, Suite 850
San Francisco, CA 94111
Telephone: (415) 524-4300
ktownsend@murchisonlaw.com
swelde@murchisonlaw.com

Attorneys for Defendants ALARM.COM
INCORPORATED and ALARM.COM
HOLDINGS, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., GEORGE ROSS MANESIOTIS, MARK HANKINS, and PHILIP J. CHARVAT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALARM.COM INCORPORATED, and ALARM.COM HOLDINGS, INC.,<br><br>Defendants. | Case No.: 4:15-CV-06314-YGR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Judge:        Hon. Yvonne Gonzalez Rogers<br>Hearing Date: July 24, 2018<br>Time:         2:00 pm<br>Courtroom:    Courtroom 1, 4th Floor |

**NOTICE OF MOTION AND MOTION**

To the Clerk of the Northern District of California and all parties and their attorneys of record:

PLEASE TAKE NOTICE that on July 24, 2018, at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Yvonne Gonzalez Rogers, U.S. District Court Judge, U.S. District Court for the Northern District of California, Courtroom No. 1, 4th Floor, 1301 Clay Street, Oakland, California 94612, defendants Alarm.com Incorporated and Alarm.com Holdings, Inc. (together, "Alarm.com") will and hereby do move this Court, under Federal Rule of Civil Procedure 56, for an Order granting summary judgment in favor of Defendants.  Defendants' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Martin W. Jaszczuk in Support of Alarm.com's Motion for Summary Judgment, the pleadings on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

**STATEMENT OF THE ISSUES**

Pursuant to Federal Rule of Civil Procedure 56, Defendants move for summary judgment on all of Plaintiffs' claims, which arise under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*  Defendants' motion is made on the following grounds:

1.    Plaintiffs cannot show as a matter of law that Defendants are vicariously liable for the telemarketing calls at issue in this case, which were made by an independent contractor and not by an agent of Alarm.com.

2.    Plaintiffs have failed to establish that the telemarketing calls made to the Cell Phone Class were placed using an "automated telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), which is a necessary element of the Cell Phone Class members' claims.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ........................................................................................................1

4

STATEMENT OF FACTS ...........................................................................................3

5

LEGAL STANDARD...................................................................................................8

6

ARGUMENT ...............................................................................................................9

7

I.      Plaintiffs Cannot Show That Alliance Was Alarm.com's Agent With Actual Authority To Place The Allegedly Illegal Calls. ...............................................................................9

8

9

    A.      Alarm.com Lacked Sufficient Control Over Alliance To Be Held Vicariously Liable For Alliance's Conduct...........................................................................9

10

    B.      Plaintiffs Cannot Establish That Alliance Possessed Actual Authority To Place The Illegal Telemarketing Calls At Issue. ....................................................16

11

12

II.     Plaintiffs Cannot Show That Alliance Had Apparent Authority To Act As Alarm.com's Agent. ........................................................................................................................17

13

III.    Plaintiffs Cannot Show That Alarm.com Ratified Alliance's Telemarketing Activities.........19

14

IV.    The Calls At Issue Were Not Placed Using An ATDS...........................................21

15

CONCLUSION...........................................................................................................24

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abante Rooter & Plumbing v. Farmers Grp., Inc.,*
2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ..................................................................10, 15, 18

*ACA Int'l v. FCC,*
885 F.3d 687 (D.C. Cir. 2018) .......................................................................................3, 21, 22

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003) ..............................................................................................2, 19

*Bridgeview Health Care Ctr., Ltd. v. Clark,*
816 F.3d 935 (7th Cir. 2016) ....................................................................................................17

*Dominguez v. Yahoo!, Inc.,*
8 F. Supp. 3d 637 (E.D. Pa. 2014) ...........................................................................................23

*Henderson v. United Student Aid Funds, Inc.,*
2017 WL 766548 (S.D. Cal. Feb. 28, 2017) ............................................................................15

*Hodgin v. UTC Fire & Sec. Ams. Corp.,*
885 F.3d 243 (4th Cir. 2018) ................................................................................................3, 21

*In re Joint Petition Filed by Dish Network, LLC,*
28 FCC Rcd. 6574 (2013) ...........................................................................................................8

*In re Monitronics,*
223 F. Supp. 3d at 520–28 ..........................................................................................3, 9, 14, 18

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.,*
223 F. Supp. 3d 514 (N.D.W. Va. 2016) ............................................1, 3, 9, 10, 13, 14, 20, 21

*Jones v. Royal Admin. Servs., Inc.,*
887 F.3d 443 (9th Cir. 2018) .........................................1, 2, 8, 9, 10, 11, 12, 13, 14, 16

*Kahler v. Fidelity Mut. Life, Inc.,*
2018 WL 1365836 (N.D. Ohio Mar. 16, 2018) ........................................................................10

*Klee v. United States,*
53 F.2d 58 (9th Cir. 1931) ...........................................................................................................9

*Kristensen v. Credit Payment Servs. Inc.,*
2015 WL 4477425 (D. Nev. July 20, 2015), *aff'd*, 879 F.3d 1010 (9th Cir. 2018).....................20

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

*Kristensen v. Credit Payment Servs. Inc.*,
879 F.3d 1010 (9th Cir. 2018) ...................................................................2, 8, 9, 18

*Leon v. Caterpillar Indus., Inc.*,
69 F.3d 1326 (7th Cir. 1995) .................................................................................15

*Makaron v. GE Sec. Mfg., Inc.*,
2015 WL 3526253 (C.D. Cal. May 18, 2015) ...............1, 2, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19

*Marshall v. CBE Grp., Inc.*
2018 WL 1567852 (D. Nev. March 30, 2018).....................................................22, 23

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ....................................................9, 10

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) .............................................................................21

*Naiman v. TranzVia LLC*,
2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) ......................................................19

*NLRB v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*,
124 F.3d 1094 (9th Cir. 1997) .............................................................................17

*Prosser v. Navient Sols., Inc.*,
2015 WL 5168635 (N.D. Cal. Sept. 3, 2015) ......................................................20

*Thomas v. Taco Bell Corp.*,
879 F. Supp. 2d 1079 (C.D. Cal. 2012) ...............................................9, 10, 12, 13, 15

*Thomas v. Taco Bell Corp.*,
582 F. App'x 678 (9th Cir. 2014) .............................................................10, 17, 19

*United States v. Bonds*,
608 F.3d 495 (9th Cir. 2010) ..............................................................1, 9, 10, 11, 12, 14

*United States v. DISH Network, L.L.C.*,
75 F. Supp. 3d 942 (C.D. Ill. 2014) ....................................................................20

**Statutes**

47 U.S.C. § 227(a)(1).....................................................................................3, 21, 22

47 U.S.C. § 227(b) ...............................................................................................3

47 U.S.C. § 227(b)(1)(A)(iii) .............................................................................21

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................................8

iv

**Other Authorities**

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    30 FCC Rcd 7961 (2015) ................................................................................................22

Restatement (Third) of Agency § 1.01 (2006) ...........................................................................9

Restatement (Third) of Agency § 2.03 cmt. c (2006) ..............................................................17

Restatement (Third) of Agency § 3.15 (2006) .........................................................................18

Restatement (Third) of Agency § 4.06 (2006) .........................................................................19

**INTRODUCTION**

Plaintiffs' TCPA claims fail as a matter of law because Alarm.com cannot be held vicariously liable for the conduct of Alliance Security, one of 6,000 independent contractors that sell security systems containing Alarm.com's technology. Because Alliance, not Alarm.com, placed the allegedly unlawful telemarketing calls at issue, Plaintiffs' claims against Alarm.com rest on allegations that Alliance was acting as Alarm.com's agent. Plaintiffs invoke three theories of agency liability: that Alliance had actual authority from Alarm.com to make the allegedly illegal calls, that Alliance had apparent authority from Alarm.com to make the calls, or that even if Alliance lacked actual or apparent authority, Alarm.com ratified Alliance's conduct. All of these theories, however, are foreclosed by longstanding agency principles as confirmed by a series of recent decisions that granted summary judgment on similar facts. In these cases, the plaintiff (like Plaintiffs here) pointed to a contract that gave the defendant some degree of influence over the alleged agent's conduct. Each time, the court rejected the agency argument as a matter of law, because even where a contract governs the parties' business relationship, "a distributor or reseller" is generally "not an agent of the manufacturer from which it purchases its goods." *Makaron v. GE Sec. Mfg., Inc.*, 2015 WL 3526253, at *6–7 (C.D. Cal. May 18, 2015) (citing cases). These decisions confirm that judgment should be entered for Alarm.com.

**First**, Plaintiffs' "actual authority" theory fails because neither Alarm.com nor Alliance "manifest[ed] assent" to Alarm.com's "right to control" Alliance's allegedly illegal telemarketing activities. *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010). ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ And the documents and testimony in the record confirm that Alarm.com did not exercise the requisite control over the manner and means of Alliance's allegedly illegal telemarketing conduct. Courts have repeatedly rejected similar claims of vicarious liability as a matter of law, even in cases where a contract gave the supposed principal more control over the supposed agent's activities than is present here. *See, e.g., Jones v. Royal Admin. Servs., Inc.*,

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1   887 F.3d 443, 449–53 (9th Cir. 2018); *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*,

2   223 F. Supp. 3d 514, 520–28 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Ams.*

3   *Corp.*, 885 F.3d 243 (4th Cir. 2018); *Makaron*, 2015 WL 3526253, at *6–10.

4           Moreover, even assuming Plaintiffs could establish an agency relationship between Alarm.com

5   and Alliance for some purpose, the Ninth Circuit's decision in *Jones* confirms that, as a matter of law,

6   Plaintiffs cannot establish actual authority to engage in the specific misconduct alleged in this case.

7   *See* 887 F.3d at 449–50.  ███████████████████████████████████

8   ██████████████████████████████████████████████████████████

9   ██████████████████████████████████████████

10          ***Second***, Alliance lacked apparent authority to act on Alarm.com's behalf.  To survive summary

11  judgment on a claim of apparent authority, Plaintiffs must show that the alleged principal—

12  Alarm.com—did or said something to the recipients of Alliance's telemarketing calls that led the

13  recipients to believe Alliance was Alarm.com's agent.  *See, e.g.*, *Makaron*, 2015 WL 3526253, at *8.

14  Plaintiffs cannot cite to any such representations by Alarm.com.  Here, moreover, the Alarm.com

15  terms and conditions that consumers receive when they contract with Alliance expressly provide that

16  the "Dealer" (Alliance in this case) "is an independent contractor and ***not an agent*** of Alarm.com."

17  Jaszczuk Decl. Ex. 2 (Alliance Customer Agreement) at PL-CHARVAT_000024 (emphasis added).

18          ***Third***, Plaintiffs also cannot proceed on a theory that Alarm.com is liable because it ratified

19  Alliance's allegedly illegal telemarketing practices.  To proceed on a ratification theory, "the principal-

20  agent relationship is still a requisite, and ratification can have no meaning without it."  *Batzel v. Smith*,

21  333 F.3d 1018, 1036 (9th Cir. 2003).  Because Alliance "was neither the agent nor purported agent"

22  of Alarm.com, Alarm.com "cannot have ratified [Alliance]'s acts."  *Kristensen v. Credit Payment*

23  *Servs. Inc.*, 879 F.3d 1010, 1012 (9th Cir. 2018).  And even if Alliance were Alarm.com's agent for

24  some purposes, Alarm.com lacked knowledge of the material facts regarding Alliance's allegedly

25  unlawful conduct and did not receive the necessary benefit to give rise to liability under a ratification

26  theory.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1    Plaintiffs' attempt to hold Alarm.com liable for the conduct of an independent dealer thus

2    cannot be squared with the case law on vicarious liability.  Underscoring this point, a court reached

3    the same result in an almost identical case involving TCPA claims against similarly situated suppliers

4    of home alarm system components.  *See In re Monitronics*, 223 F. Supp. 3d at 520–28.  That case also

5    involved telephone calls (in many instances, the very same telephone calls at issue in this case) placed

6    by the same dealer (Alliance) on behalf of defendants who, like Alarm.com, supply components of

7    alarm systems but do not market or sell those systems to consumers.  In the face of virtually identical

8    allegations (including by one of the same Plaintiffs in this case), the *Monitronics* court held that

9    "Plaintiffs have not shown that a reasonable jury could find" an agency relationship between the

10   manufacturers and Alliance or its sub-dealers.  *Id.* at 525.  The plaintiffs did not even appeal the court's

11   rulings on actual and apparent authority, and the Fourth Circuit affirmed on the only ground appealed:

12   ratification.  *See Hodgin*, 885 F.3d at 251–54.  Plaintiffs—who have collectively brought nearly 100

13   TCPA lawsuits—cannot succeed on their claims here because of the very same legal deficiencies.

14   The Cell Phone Class members' claims fail as a matter of law for an independent reason:  they

15   have failed to show that they received calls made by an "automatic telephone dialing system," or

16   ATDS. 47 U.S.C. § 227(b).  Their only evidence in this regard is an opinion from their expert, whose

17   conclusion that Alliance used an ATDS is premised upon an alternative ATDS definition from an FCC

18   order that was recently vacated.  *See ACA Int'l v. FCC*, 885 F.3d 687, 695–704 (D.C. Cir. 2018).  It is

19   undisputed that Plaintiffs have no evidence that the equipment at issue had "the capacity—(A) to store

20   or produce telephone numbers to be called, using a random or sequential number generator; and (B)

21   to dial such numbers," which it must if it is to meet the statutory definition of an ATDS.  47 U.S.C. §

22   227(a)(1).  Summary judgment is therefore appropriate.

23                                    **STATEMENT OF FACTS**

24        ***Alarm.com and Alliance***.  Alarm.com is a technology company that offers cloud-based

25   software-as-a-service ("SaaS") security solutions for residential and commercial properties.  *See*

26   Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶ 3.  One of those solutions is software that enables the

27

28                                            3                              4:15-CV-06314-YGR
     DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1    wireless functions of fully integrated security systems.  *See* Jaszczuk Decl. Ex. 4 (3/28/17 Pitts Decl.

2    ("First Pitts Decl.")) at ¶ 8.

3         Alarm.com does not sell or market its software directly to consumers.  *See* Jaszczuk Decl. Ex.

4    3 (Ferguson Decl.) at ¶ 4.  The named Plaintiffs in this case, for example, do not allege that they ever

5    received a telemarketing call from Alarm.com itself.  *See, e.g.*, Pls.' Class Cert. Mot. at 8–10 (ECF

6    No. 85).  Instead, Alarm.com—like many other software developers—uses what is known as a

7    "dealer" or "reseller" model.  *See* Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶ 5.

8         Consistent with that model, Alarm.com sells its software to approximately 6,000 authorized

9    dealers, who separately purchase physical hardware components from manufacturers like Honeywell,

10   GE/Interlogix, and United Technologies Corporation.  *See Id.* ¶¶ 5-6; Jaszczuk Decl. Ex. 4 (First Pitts

11   Decl.) at ¶ 8; Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 108:17–109:17; Jaszczuk Decl. Ex. 6 (11/17/17

12   Pitts Decl. ("Second Pitts Decl.")) at ¶ 3.  The dealers choose whether and how to incorporate

13   Alarm.com software into their fully integrated security systems.  *See* Jaszczuk Decl. Ex. 3 (Ferguson

14   Decl.) at ¶ 5; Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶¶ 3–4.  The dealers also contract with

15   central monitoring systems that monitor the security systems and contact emergency services when an

16   alarm has been triggered.  *See* Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶ 6.  The dealers then sell the

17   fully integrated security systems (monitoring software and services plus hardware) to end-user

18   consumers.  *See id.*; Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 37:23–39:7; Jaszczuk Decl. Ex. 8 (Moretti

19   Dep. Tr.) at 12:14–13:9.  And when dealers sell their fully integrated security systems to consumers,

20   they do so directly on their own account.  *See* Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 4.

21        Alliance is a dealer of fully integrated home security systems.  *See* Jaszczuk Decl. Ex. 6

22   (Second Pitts Decl.) at ¶¶ 3–4.  During the relevant time period, Alliance's security systems consisted

23   of hardware and software components from a number of companies, of which Alarm.com was just

24   one.  *See id.* ¶¶ 3–4, 9.  Alliance markets and sells these fully integrated security systems to end-user

25   consumers, and then typically sells the resulting customer accounts to Monitronics International Inc.

26   ("Monitronics"), a central station alarm monitoring company.  *See* Jaszczuk Decl. Ex. 7 (Gotra Dep.

27   Tr.) at 37:23–38:13; Jaszczuk Decl. Ex. 8 (Moretti Dep. Tr.) at 13:2–9.  Alliance began using

28
**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

1   Alarm.com software in some of Alliance's security systems after Monitronics mandated that Alliance

2   use only Monitronics-approved software suppliers.  *See* Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at

3   19:11–24; Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 109:18–110:2.

4        As with the rest of Alarm.com's thousands of dealers, Alarm.com's relationship with Alliance

5   is governed by a standard Dealer Agreement (the "Agreement"), which the parties executed in 2008.

6   ███████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████

9   ███████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████

19  ██████████████████████████████

20        Alliance, as well as a number of sub-dealers engaged by Alliance,[2] advertised and sold

21  Alliance's fully integrated security systems through, among other means, telemarketing campaigns.

22

23  [1]   The parties amended the Dealer Agreement in 2015, after Alliance informed Alarm.com that

24  Alliance was considering replacing Alarm.com software with a competitor's.  *See* Jaszczuk Decl. Ex.
    6 (Second Pitts Decl.) at ¶¶ 9–10. ████████████████████████████████████

25  ███████████████████████████████████████████████████████████

26  [2]   Importantly, Alarm.com had no contractual relationship with any of Alliance's sub-dealers.  Nor did
    Alarm.com control or oversee any of their marketing activities.  *See* Jaszczuk Decl. Ex. 10 (Ferguson

27  Dep. Tr.) at 71:17–23; Jaszczuk Decl. Ex. 8 (Moretti Dep. Tr.) at 60:10–23.  Alliance, moreover, never
    sought Alarm.com approval for any of Alliance's sub-dealers.  *See* Jaszczuk Decl. Ex. 6 (Second Pitts

28
                                                5                          4:15-CV-06314-YGR
      DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1    *See* Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 6.  Alarm.com had no say in those marketing efforts.

2    *See* Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 31:12–33:9, 34:5–35:10; Jaszczuk Decl. Ex. 5 (Pitts Dep.

3    Tr.) at 110:3–111:18; Jaszczuk Decl. Ex. 10 (Ferguson Dep. Tr.) at 36:21–37:1, 83:19–23; ████████

4    ████████████████████████████████.  In fact, many of the security systems Alliance marketed

5    did not contain Alarm.com software at all.  *See* Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 9.

6         ***Alarm.com's CLS Program***.  Consumers who are interested in security systems featuring

7    Alarm.com software have from time to time contacted Alarm.com directly.  ██████████████████

8    ████████████████████████.  Until 2013, Alarm.com would forward those inquiries to one or

9    more of its dealers, since Alarm.com does not sell its software to end-users.  *See id.*  In 2013, however,

10   Alarm.com added a feature to its website that allows consumers to request to be contacted by an

11   Alarm.com dealer.  *See* Jaszczuk Decl. Ex. 10 (Ferguson Dep. Tr.) at 31:14-23, 32:19-33:9.

12   Alarm.com then sends the consumer's contact information to one of those dealers.  *See id.*  This feature

13   is known as the Customer Lead Service Program ("CLS Program").  *See id.*

14        Alarm.com's CLS Program is different from the dealer model that accounts for the vast

15   majority of sales of Alarm.com software.  Unlike its hands-off approach under the dealer model,

16   Alarm.com takes a more active role in the CLS Program, providing support resources and optional

17   marketing materials for the relatively few dealers that participate in the Program, as well as

18   periodically auditing how dealers follow up on CLS leads.  *See* Jaszczuk Decl. Ex. 3 (Ferguson Decl.)

19   at ¶ 7; Jaszczuk Decl. Ex. 10 (Ferguson Dep. Tr.) at 38:2–10.  Critically, potential customers contacted

20   by dealers through the CLS Program specifically and voluntarily contacted Alarm.com in the first

21   place, and thus necessarily consented to dealer marketing.  *See* Jaszczuk Decl. Ex. 10 (Ferguson Dep.

22   Tr.) at 31:14–23.  That is why the individuals who received calls through the CLS Program are

23   ***excluded*** from the Certified Classes in this case.  *See* Jan. 25, 2018 Order at 6 (ECF No. 176).  Thus,

24   while Plaintiffs have largely supported their vicarious liability claims with documents related to the

25

26   ───────────────────
     Decl.) at ¶ 7.  Nevertheless, for purposes of this motion, Alliance and its sub-dealers will generally be
27   referred to as "Alliance."

28                                             6                          4:15-CV-06314-YGR
     ─────────────────────────────────────────────────────────────────────────────
     DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
     ─────────────────────────────────────────────────────────────────────────────

CLS Program, *see, e.g.*, Pls.' Class Cert. Mot. at 4–5, calls from the CLS Program are not at issue in this case.

*Alliance's Alleged Misconduct*.  In May 2012, NBC's *Today Show* aired a segment entitled "Rossen Reports: Telemarketers ignore Do Not Call list."  *See* Jaszczuk Decl. Ex. 11 (Natale Dep. Ex. 17) at 1–2; Jaszczuk Decl. Ex. 12 (5/1/12 Natale Email).  In that piece, reporters accused Alliance's predecessor Versatile Marketing Solutions, Inc. ("VMS") of calling numbers listed on the national Do-Not-Call Registry.  *See* Jaszczuk Decl. Ex. 11 (Natale Dep. Ex. 17) at 2.

Alarm.com personnel became aware of the segment soon after it aired, and the company investigated the matter further.  *See* Jaszczuk Decl. Ex. 12 (5/1/12 Natale Email); ███████████ ███████████████████████████.  VMS assured Alarm.com that the allegedly unlawful telemarketing calls resulted from an inadvertent software issue.  *See* Jaszczuk Decl. Ex. 12 (5/1/12 Natale Email).  VMS also informed Alarm.com that safeguards were in place that would prevent any future violations.  *See id.* ████████████████████████████████████████ ██████████████████████████████████████████████████[3]  After VMS provided these assurances in 2012, there is no evidence that Alarm.com learned of any further allegations of misconduct against VMS or Alliance until the filing of this lawsuit.  ███████████ ████████████████████████.

*The Named Plaintiffs' Allegations*.  The three named Plaintiffs in this action—who have brought approximately 100 TCPA lawsuits, *see* Jaszczuk Decl. Ex. 14 (Charvat Dep. Tr.) at 79:5–22; Jaszczuk Decl. Ex. 15 (Heidarpour Dep. Tr.) at 86:15–87:20—seek to hold Alarm.com vicariously liable for allegedly unlawful telemarketing calls made by Alliance.  *See* Compl., at ¶¶ 75–148 (ECF No. 1).

---

[3]  The FTC filed a complaint against VMS in 2012, which concerned the same allegations that appeared in the *Today Show* piece: that VMS made telemarketing calls to numbers that appear on the Do-Not-Call Registry between 2010 and 2012.  *See U.S. v. Versatile Marketing Solutions, Inc.*, No. 1:14-cv-10612 (D. Mass. 2014).  Alliance and the FTC ultimately settled the matter in 2014, agreeing that Alliance would pay $3.4 million in penalties and cease unlawful telemarketing practices.  *Id.*

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Plaintiff Abante Rooter and Plumbing alleges that it received, without prior consent, three telemarketing calls in December 2015 from one of Alliance's sub-dealers, Nationwide Alarms, and an unspecified "third party lead generator." *Id.* ¶¶ 76–84. According to Abante, Nationwide represented on the calls that its "mobile application is Powered by Alarm.com," and that "a subscription to this application comes free with our service." *Id.* ¶ 90. In addition, Abante claims that its owner, Fred Heidarpour, exchanged emails with Nationwide "regarding the products and services" it was selling. *Id.* ¶ 88.

Plaintiff Hankins alleges that he received two automated telemarketing calls in September and October 2015. *See id.* ¶¶ 109, 114. Mr. Hankins claims that Alarm.com was referenced at some point during the first call. *See id.* ¶ 112. During the second call, Mr. Hankins asserts, a telemarketer from "Prime Home Security," purportedly an Alliance sub-dealer, said that the security system being sold featured Alarm.com technology. *See id.* ¶¶ 114–18. Neither call, according to Mr. Hankins, was placed with his prior consent. *See id.* ¶ 120.

Plaintiff Charvat claims he received a series of telemarketing calls in September 2015. *See id.* ¶¶ 124–37. According to Mr. Charvat, Alarm.com was mentioned only once during those calls, in response to Mr. Charvat's own inquiry about a document he received in connection with a home installation visit he scheduled with Alliance. *See id.* ¶¶ 137–42; Jaszczuk Decl. Ex. 16 (Charvat Call Transcripts) at PL-CHARVAT_000009. Mr. Charvat maintains he received the calls despite registering his telephone number with the national Do-Not-Call Registry, and despite requesting that his number be removed from Alliance's call list. *See* Compl., at ¶ 144.

## LEGAL STANDARD

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a non-moving party fails to establish an element essential to her vicarious liability claim under the TCPA, summary judgment is appropriate because there would be no entitlement to relief as a matter of law. *See, e.g.*, *Kristensen*, 879 F.3d at 1012, 1014–15; *Jones*, 887 F.3d at 453; *Makaron*, 2015 WL 3526253, at *6–10.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1

**ARGUMENT**

2      Summary judgment is appropriate here because there is no genuine dispute of material fact as

3  to Alarm.com's vicarious liability for Alliance's allegedly infringing telemarketing calls.  Vicarious

4  liability theories under the TCPA track the "bedrock theories of agency," specifically, "actual

5  authority, apparent authority," and "ratification."  *Jones*, 887 F.3d at 449; *see also In re Joint Petition*

6  *Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013).  The undisputed material facts of this

7  case confirm that Plaintiffs cannot establish an agency relationship under any of these theories.  ***First***,

8  Alliance was not Alarm.com's agent for any purpose and, regardless, Alliance lacked actual authority

9  from Alarm.com to make calls in violation of the TCPA.  *See, e.g.*, *Jones*, 887 F.3d at 448–50; *In re*

10  *Monitronics*, 223 F. Supp. 3d at 527–29; *Makaron*, 2015 WL 3526253, at *6–7.  ***Second***, Plaintiffs

11  have no evidence that Alliance had apparent authority to act as Alarm.com's agent.  *See, e.g.*, *In re*

12  *Monitronics*, 223 F. Supp. 3d at 527-29; *Makaron*, 2015 WL 3526253, at *8-10.  ***Third***, Plaintiffs

13  cannot show that Alarm.com ratified Alliance's allegedly unlawful telemarketing activities.  *See, e.g.*,

14  *Kristensen*, 879 F.3d at 1014-15.  Summary judgment is also appropriate as to the Cell Phone Class

15  because Plaintiffs have no evidence that Alliance sub-dealer Nationwide used an ATDS to call the

16  members of that Class.

17  **I.      Plaintiffs Cannot Show That Alliance Was Alarm.com's Agent With Actual Authority
          To Place The Allegedly Illegal Calls.**
18

19       **A.      Alarm.com Lacked Sufficient Control Over Alliance To Be Held Vicariously
                 Liable For Alliance's Conduct.**

20       The undisputed material facts show that Alliance was not Alarm.com's agent.  The traditional

21  agency test requires establishing: "(1) a manifestation by the principal that the agent shall act for him;

22  (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the

23  parties that the principal is to be in control of the undertaking."  *Makaron*, 2015 WL 3526253, at *6

24  (citations omitted); *see also* Restatement (Third) of Agency § 1.01 (2006).  "Agency means more than

25  mere passive permission; it involves request, instruction, or command."  *Meeks v. Buffalo Wild Wings,*

26  *Inc.*, 2018 WL 1524067, at *6 (N.D. Cal. Mar. 28, 2018) (Gonzalez Rogers, J.) (quoting *Klee v. United*

27  *States*, 53 F.2d 58, 61 (9th Cir. 1931)).  Although "court[s] will look to the totality of the

28
                                              9                        4:15-CV-06314-YGR
                DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1    circumstances" when deciding whether plaintiffs have made this showing, the "extent of control

2    exercised by the [principal]" is the "essential ingredient." *Bonds*, 608 F.3d at 505 (citation omitted);

3    *see also Makaron*, 2015 WL 3526253, at *6 ("A key requirement of classic common law agency is

4    that the principal is 'in control' of the agent's actions."); *In re Monitronics*, 223 F. Supp. 3d at 520

5    ("plaintiff must show that the defendant controlled or had the right to control the purported agent");

6    *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012) *(Thomas I)* (similar), *aff'd*,

7    582 F. App'x 678 (9th Cir. 2014).   Courts routinely resolve agency questions in TCPA cases as a

8    matter of law without a trial.  *See, e.g.*, *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL

9    288055, at *4 (N.D. Cal. Jan. 4, 2018); *Meeks*, 2018 WL 1524067, at *5; *Makaron*, 2015 WL 3526253

10   at *7; *In re Monitronics*, 223 F. Supp. 3d at 520; *Kahler v. Fidelity Mut. Life, Inc.*, 2018 WL 1365836,

11   at *5 (N.D. Ohio Mar. 16, 2018).

12        In *Jones*, the Ninth Circuit considered the level of control necessary to impose vicarious

13   liability on a defendant for calls made by a third party in violation of the TCPA.  *See* 887 F.3d at 449–

14   53.   There, the court affirmed summary judgment in favor of the defendant on the ground that the

15   third-party telemarketers "were not subject to sufficient control to establish vicarious liability."  *Id.* at

16   451.   Among other things, when the the court assessed "the control exerted by" the defendant, it

17   considered "whether the [purported agent's] work [wa]s normally done under the supervision of" the

18   defendant, whether the defendant "supplie[d the] tools and instrumentalities [and the place of work]"

19   of the purported agent, and "the subjective intent of the parties."  *Id.* at 450 (last set of brackets in

20   original) (citations omitted).

21        Although *Jones* addressed the theory that the defendant "had enough authority to control the

22   manner and means" of the unlawful telemarketing activity such that the defendant "may be held

23   vicariously liable to the same extent as an employer may be held liable for the conduct of its

24   employee," *id.* at 449–50, *Jones* nonetheless looked to the same indicia of control that courts—

25   including this one—have considered in conducting the traditional agency analysis for TCPA claims.

26   In *Meeks*, for example, this Court stated that a plaintiff must show that the defendant "controlled or

27   had the right to control [the entity responsible for the call] and, more specifically, the manner and

28
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

means of the [call] campaign they conducted." 2018 WL 1524067, at *6 (citations omitted). This Court dismissed the plaintiff's TCPA claims because it was the third party, not the defendants, that "controlled whether, when, and to whom to send the text messages, along with their content." *Id.*; *see also In re Monitronics*, 223 F. Supp. 3d at 520 (performing similar analysis); *Makaron*, 2015 WL 3526253, at *6-7 (similar); *Thomas v. Taco Bell Corp. (Thomas II)*, 582 F. App'x 678, 679 (9th Cir. 2014) (similar); *Thomas I*, 879 F. Supp. 2d at 1084–86 (similar); *Bonds*, 608 F.3d at 505–07 (similar). Applying that standard here, Alarm.com cannot be held vicariously liable because Alarm.com did not exert control over the "manner and means" of Alliance's allegedly illegal telemarketing.

*First*, the parties did not intend to give Alarm.com such control. ████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. The service contracts that Alliance provided consumers after the purchase of a fully integrated security system similarly explained that the "Dealer is an independent contractor and not an agent of Alarm.com." Jaszczuk Decl. Ex. 2 (Alliance Customer Agreement) at PL-CHARVAT_000024.  Courts have long held that "independent contractors are not ordinarily agents" because they are typically not subject to the purported principal's control. *Bonds*, 608 F.3d at 505; *see also Makaron* 2015 WL 3526253, at *7 (no agency where "the contracts between UTCFSA and its authorized dealers indicate that the parties agree that the authorized dealers are independent contractors").

Both Alarm.com and Alliance, moreover, affirmed their express contractual intent by testifying that they understood Alarm.com had no control over the method and manner in which Alliance engaged in sales efforts.  *See, e.g.*, Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 35:7–10 (Alliance CEO testifying that it was "[n]ever [his] intent ... that Alarm.com would control [Alliance's] business"); Jaszczuk Decl. Ex. 10 (Ferguson Dep. Tr.) at 83:19–23 (Alarm.com marketing executive testifying that "[w]e make recommendations, but we don't control the specific [marketing] tactics that [dealers] use"); Jaszczuk Decl. Ex. 17 (Billger Dep. Tr.) at 33:6–34:8 (Alarm.com account executive testifying that "train[ing] [Alliance] on how to handle an objection" during a sales call "would probably get

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

[him] kicked out of there" since Alliance "ha[s] [its] own process."). And perhaps even more importantly, as in *Jones*, the fact that Alliance sold security systems made up of components from "multiple companies indicates that [Alliance]'s intent was to have its telemarketers operate as independent contractors for many different companies." 887 F.3d at 453; *see also Bonds*, 608 F.3d at 505 ("[third party] act[ed] as an independent contractor, not an employee … [where the third party] had many different clients and offered his services to others during the same period"); *Makaron*, 2015 WL 3526253, at *7 ("[I]t would be unreasonable to hold that UTCFSA controlled how its authorized dealers sold their products, given that the authorized dealers could and did sell security products from other brands and manufacturers.").

If anything, the vendor agreement in *Jones* gave the defendant far more control over the alleged agent's telemarketing activities than the Dealer Agreement gives Alarm.com. ██████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████ the agreement in *Jones* stated that the telemarketer "is only authorized to utilize or employ sales and marketing methodologies approved by" the defendant, Jaszczuk Decl. Ex. 18 (*Jones* Vendor Agreement) at § 2, and that the vendor must "[u]tilize only those scripts and materials approved by [defendant], in its sole discretion," *id.* § 7.5. Accordingly, if the contract in *Jones* could not generate a material dispute regarding control sufficient to defeat summary judgment, then the Agreement at issue here cannot give rise to vicarious liability as a matter of law.

***Second***, the evidence shows that Alarm.com did not direct Alliance's activities. As Alliance's CEO testified, "Alarm.com [did not] set quot[a]s for Alliance" or "keep track of the hours worked by people working for Alliance." Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 33:1–6; *see also* Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 110:20–21. Alarm.com also did not require Alliance to use telemarketing scripts created by Alarm.com, *see* Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 110:17–19, to follow any Alarm.com guidelines and procedures during telemarketing calls, *see* Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 32:18–24; Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 110:3–5, or even to mention

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Alarm.com's name during telemarketing calls, *see* Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 33:7–9. Simply put, Alarm.com "provided … no guidance or direction" to Alliance with respect to Alliance's telemarketing activities or strategies, and it was Alliance, not Alarm.com, "who defined the scope" of those activities.  *Bonds*, 608 F.3d at 506; *see also Thomas I*, 879 F. Supp. 2d at 1085; Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶¶ 4–5; Jaszczuk Decl. Ex. 17 (Billger Dep. Tr.) at 33:6–34:8, 67:10–14. These identical facts have led courts to grant summary judgment for defendants.  *See Jones*, 887 F.3d at 451 (citing the fact that the defendant "did not have the right to control the hours the telemarketers worked nor did it set quotas for the number of calls or sales the telemarketers had to make"); *Makaron*, 2015 WL 3526253, at *7 ("There [wa]s no evidence that [defendant] controlled or directed the marketing campaigns of its authorized dealers, much less the specific marketing campaigns that targeted Plaintiffs in this case."); *Thomas I*, 879 F. Supp. 2d at 1085 (plaintiff "did not present any evidence to the Court that [defendant] directed or supervised the manner and means of the text message campaign conducted by" the third parties).

   ***Third***, there is no evidence that Alliance's telemarketing conduct was "normally done under the supervision of" Alarm.com.  *Jones*, 887 F.3d at 450.  Supervision means actual control over the activity, and is more than mere knowledge or even approval of marketing efforts.  *See Thomas I*, 879 F. Supp. 2d at 1086 ("evidence of knowledge, approval, and fund administration falls short of establishing that [defendant] directed or supervised the text message campaign"); *Jones*, 887 F.3d at 452 (provision of "some training and oversight" does not equate to "direct[] supervis[ion]").  Here, the undisputed evidence falls far short of showing direct supervision.  On the contrary, Alarm.com has always been just one of many vendors from which Alliance purchased components, in this case software, for its integrated security systems.  Alliance then sold those systems to consumers directly on its own account and for its own benefit.  *See* Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 4; Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 34:5–35:2; *see also In re Monitronics*, 223 F. Supp. 3d at 528 ("There is no evidence whatsoever that [the third parties] were acting primarily for the [defendants'] benefit, rather than their own gain.  In fact, [third party] representatives testified that [the third party] was acting for its own benefit.").  In these efforts, Alliance hired and trained its own employees and

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

contracted with its own sub-dealers, who were never approved, managed, or otherwise overseen by Alarm.com.  *See* Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 5; Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 34:5–10 (Alliance CEO testifying that Alarm.com did not provide training for Alliance "in how to make telemarketing calls").  The lack of supervision is further evidence that Alarm.com did not exercise the necessary level of control over Alliance.

*Fourth*, Alarm.com did not provide Alliance with any "tools" or "instrumentalities" necessary to complete Alliance's calls or sales.  *Jones*, 887 F.3d at 452.  Alliance supplied its own phones, computers, furniture, and office space.  *See* Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 110:17–111:12; Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 34:11–21.  Similarly, "if [Alliance] wanted any brochures [or] other sales literature, it had to develop and manufacture them itself." *Jones*, 887 F.3d at 452; *see also, e.g.*, Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 34:22–23.  These facts also weigh against a finding that an agency relationship existed.  *See Bonds*, 608 F.3d at 505 (opining that "[third party] provid[ing] his own instrumentalities and tools for his work" "point[ed] to [the third party]'s acting as an independent contractor," not an agent).[4]

Lacking any indicia of actual control, Plaintiffs try to cobble together features of the Alarm.com-Alliance relationship to suggest some degree of oversight.  None raises a genuine issue of material fact as to the existence of a principal-agent relationship.  It is not enough, for example, that Plaintiffs point to "the mere existence of a formal licensing or dealership agreement," *In re*

---

[4]  In *Jones*, the Ninth Circuit considered several additional factors in concluding that the defendant lacked "enough authority to control the actions of its agent such that the principal may be held vicariously liable to the same extent as an employer may be held liable for the conduct of its employee."  887 F.3d at 450.  These factors also weigh against a finding of agency here.  As in *Jones*, it is undisputed in this case that Alliance, which sells fully integrated security systems to end-user consumers, "was an independent business, separate and apart from" Alarm.com, a software developer.  *Id.* at 452; *see* Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶¶ 5–6.  Similarly, at all relevant times, Alliance's marketing, sales, and installations of fully integrated security systems were not within the regular course of Alarm.com's business.  *See Jones*, 887 F.3d at 452; *see also* Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶¶ 4–6; Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 4.  Finally, although Alarm.com and Alliance executed the original Dealer Agreement in 2008, the Agreement was amended in 2015, when Alliance threatened to replace Alarm.com's software with another company's if the parties did not come to more favorable terms, which is indicative of a lack of control.  *See* Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 10; *see also In re Monitronics*, 223 F. Supp. 3d at 527–28 ("If VMS … were subject to the control of the movants there would be no need to woo their business.").

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1   *Monitronics*, 223 F. Supp. 3d at 522, or "the fact that entities were permitted to hold themselves out

2   as authorized dealers or some similar description," *id.* at 527; *see also id.* at 521 ("a distributor of

3   goods for resale is normally not treated as an agent of the manufacturer").  Similarly, providing

4   recommendations or guidelines to a vendor or dealer does not show control over the calls.  *See Jones*,

5   887 F.3d at 452 (provision of "some training and oversight" does not equate to "direct[]

6   supervis[ion]"); *In re Monitronics*, 223 F. Supp. 3d at 521 ("telemarketing calls ... do not violate the

7   TCPA" generally and thus "assisting a party in setting up telemarketing centers or providing scripts

8   for in-person calls is not evidence of agency").  Nor can Plaintiffs establish the requisite level of

9   control by relying on Alliance's "limited license to use the [Alarm.com] marks and logos," *Makaron*,

10  2015 WL 3526253, at *7; *see also Abante Rooter & Plumbing*, 2018 WL 288055, at *5 ("While the

11  [use of defendant's mark and trade name] does show that there is some connection … it does not show

12  what that connection is or how that relationship relates to the alleged calls."), or Alarm.com's right to

13  terminate the Dealer Agreement, *see Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1330 (7th Cir.

14  1995).  And even if Alarm.com had "knowledge" of, or even "approv[ed]" of, Alliance's marketing

15  campaigns (which it did not), that "do[es] not amount to controlling the manner and means of" those

16  campaigns.  *Thomas I*, 879 F. Supp. 2d at 1086; *see also Makaron*, 2015 WL 3526253, at *7.

17  Accordingly, Plaintiffs cannot raise any genuine issue of material fact as to Alarm.com's control of

18  the manner and means of Alliance's allegedly illegal telemarketing.

19          In the end, it is simply implausible that Alarm.com, a software company, would have the

20  resources or manpower to oversee and control the marketing activities of 6,000 authorized dealers

21  (and their sub-dealers, and so on).  That is particularly true given that the vast majority of these dealers

22  also sell systems featuring technology developed by Alarm.com's competitors.  "[T]o extend vicarious

23  liability to such a circumstance would result in almost any long-term contract automatically creating

24  an agency relationship unless the hiring entity turned a completely blind eye to the contract once it

25  was signed." *Henderson v. United Student Aid Funds, Inc.*, 2017 WL 766548, at *7 (S.D. Cal. Feb.

26  28, 2017).  For this very reason, a court in the Central District of California granted summary judgment

27  for defendants facing substantially similar claims, opining that "the evidence," including the fact that

28
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

defendants sold their products to "[t]housands of downstream, independent businesses," could "not support a finding" that the defendant "exercises control over the actual marketing of the security equipment after it is sold to" those businesses. *Makaron*, 2015 WL 3526253, at *2–7. For the reasons cited, Plaintiffs cannot impose vicarious liability by showing that Alarm.com gave Alliance actual authority to act as its agent.

> **B.  Plaintiffs Cannot Establish That Alliance Possessed Actual Authority To Place The Illegal Telemarketing Calls At Issue.**

Even assuming Plaintiffs could establish an agency relationship between Alarm.com and Alliance for some purpose, Alliance clearly lacked actual authority to engage in the specific misconduct alleged in this case. *Jones* is dispositive on this point. In *Jones*, the plaintiffs argued that "numerous provisions" in the vendor agreement between the defendant and the telemarketer established actual authority, including provisions mandating that the telemarketer comply with the defendant's guidelines and procedures and that the defendant provide the telemarketer with contract forms and coverage terms and conditions. 887 F.3d at 449, 451–52. But the court rejected that argument, instructing that "[a]ctual authority is limited to actions specifically mentioned to be done in a written or oral communication or consistent with a principal's general statement of what the agent is supposed to do." *Id.* at 449 (citations omitted). Because it was "undisputed" that the vendor agreement "expressly prohibited 'any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling,'" the agreement "could [not] sustain a jury's finding of actual authority." *Id.*

So too here. ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ This provides an independent reason why summary judgment is warranted on Plaintiffs' claim that Alliance acted with actual authority. *See Makaron*, 2015 WL 3526253, at *6 (concluding that

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1   plaintiffs had not established actual authority where "UTCFSA [ ] require[d] its distributors and

2   dealers to comply with all local, state, and federal laws in their marketing and sales tactics.").[5]

3   **II.   Plaintiffs Cannot Show That Alliance Had Apparent Authority To Act As Alarm.com's**
    **Agent.**

4

5       Plaintiffs also lack sufficient evidence to show that Alliance possessed apparent authority to

6   act on Alarm.com's behalf.   Under settled Ninth Circuit law, "[a]pparent authority arises from the

7   principal's manifestations to a third party that supplies a reasonable basis for that party to believe that

8   the principal has authorized the alleged agent to do the act in question." *NLRB v. Dist. Council of Iron*

9   *Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997); *see also Thomas II*, 582

10  F. App'x at 679 (similar).   To prove that an alleged agent acted with apparent authority, it is not enough

11  for Plaintiffs "merely [to] show[ ] that [the alleged agent] claimed authority or purported to exercise

12  it." *Iron Workers*, 124 F.3d at 1099.   Instead, Plaintiffs must generate "proof of something said or

13  done *by the [alleged principal]* on which [a third party] reasonably relied." *Id.* (emphasis added); *see*

14  *also Makaron*, 2015 WL 3526253, at *8 (same); Restatement (Third) of Agency § 2.03 cmt. c (2006)

15  ("Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's

16  authority to act as an agent when the belief is reasonable and *is traceable to a manifestation of the*

17  *principal*." (emphasis added)).

18      As a matter of law, Plaintiffs cannot demonstrate that Alarm.com said or did anything that

19  would lead consumers to believe Alliance had apparent authority to act as Alarm.com's agent with

20  regard to the calls at issue.   On the contrary, Alarm.com unambiguously notified consumers in its

21  terms of service that "Dealer is an independent contractor and *not* an agent of Alarm.com." Jaszczuk

22  Decl. Ex. 2 (Alliance Customer Agreement) at PL-CHARVAT_000024 (emphasis added).   Two of

23  the three named Plaintiffs in this case, moreover, do not even claim they communicated directly with

24  Alarm.com.   *See* Compl., at ¶¶ 109–148; *see also Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d

25  _____

26  [5]   The substantive scope of the vendor agreement in *Jones* is identical to the Dealer Agreement
    here.   The vendor agreement in *Jones* provided an illustrative example, barring "applicable state or
27  Federal law, including but not limited to 'robo-calling.'"   887 F.3d at 449.   Both contracts expressly
    prohibited violations of federal statutory law, which includes the TCPA, and that express prohibition
    forecloses a finding of actual authority in this case.   *See Makaron*, 2015 WL 3526253, at *6.

28

935, 939 (7th Cir. 2016) ("To create apparent authority, the principal must speak, write, or otherwise

act toward a third party."), *cert. denied*, 137 S. Ct. 200 (2016).  And the third—Abante—that allegedly

did communicate directly with Alarm.com, was told:

> Alarm.com does not sell any of its products or services directly to the public or conduct telemarketing of any kind.  Instead, we wholesale the Alarm.com platform to over 5,000 businesses that resell our products to consumers.  ***These businesses are independent companies and are not affiliated with Alarm.com.  Alarm.com is not responsible for their marketing activities.***

Jaszczuk Decl. Ex. 19 (8/19/15 Heidarpour Email) at 1 (emphasis added).  On this record, Alarm.com

neither said nor did anything that would lead third parties, including the Plaintiffs here, to believe that

Alliance had Alarm.com's authority to make the calls at issue.

The facts Plaintiffs have cited to support their theory do not create any genuine issue of material

fact.  At times, Plaintiffs have pointed to the fact that (1) Alarm.com's website informed consumers

that subscriptions were available through Alliance; (2) Alarm.com's terms and conditions were

included with the service contracts that Alliance provided customers during installation; and (3)

Alliance mentioned or displayed Alarm.com's name in some (but not all) telemarketing calls and on

Alliance's website.  That Alarm.com makes its services available through dealers, though, does not

somehow endow those dealers with apparent authority.  *See Makaron*, 2015 WL 3526253, at *9 ("Just

because an entity sells a particular brand of products does not mean that that entity has *apparent*

*authority* to speak or act for that brand.").  This is especially true when the Alarm.com terms and

conditions consumers receive explicitly tell them that the dealer is not Alarm.com's agent.  *See*

Jaszczuk Decl. Ex. 2 (Alliance Customer Agreement) at PL-CHARVAT_000024.  In addition, the

mere use or display of Alarm.com's name is not the type of "manifestation" sufficient to establish

apparent authority.  *See, e.g.*, *In re Monitronics*, 223 F. Supp. 3d at 527–28 ("[T]he mere fact that a

dealer uses a supplier['s] name does not render it an agent of the supplier, just as every bar which

advertises that they sell a particular brand of beer is not the agent of the brewery whose name they

advertise."); *Abante Rooter & Plumbing*, 2018 WL 288055, at *5–6 ("[The supplier's] willingness to

display [the dealer's name] implies that there is some relationship between [dealer] and [supplier].

---

18                           4:15-CV-06314-YGR

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

1    But … the bare existence of a relationship does not indicate that [the dealer] was authorized to act on

2    [the supplier]'s behalf or speak to the scope of that purported authorization."). Accordingly, there is

3    no basis on which a reasonable jury could conclude that Alliance possessed apparent authority to act

4    as Alarm.com's agent.[6]

5    **III.   Plaintiffs Cannot Show That Alarm.com Ratified Alliance's Telemarketing Activities.**

6            Plaintiffs' ratification theory must also fail.  A precondition for application of the doctrine of

7    ratification is an agency relationship: "[W]hen an actor is not an agent and does not purport to be one,

8    the doctrine of ratification does not apply."  *Kristensen*, 879 F.3d at 1014 (citation omitted).  Thus, the

9    Ninth Circuit has affirmed summary judgment for defendants (including in the TCPA context) where

10   plaintiffs failed to establish actual or apparent authority.  *See id.* at 1014–15; *Batzel*, 333 F.3d at 1036.

11   As the Ninth Circuit explained, "[a]lthough a principal is liable when it ratifies an originally

12   unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no

13   meaning without it."  *Thomas II*, 582 F. App'x at 680 (citation omitted); *Makaron*, 2015 WL 3526253,

14   at *10 ("Plaintiffs have not presented evidence that would support that an applicable principal-agent

15   relationship existed between [dealer] and [defendant].  Without this prerequisite, [defendant] could

16   not 'ratify' the actions of its resellers or authorized dealers.").  Here, because the record indisputably

17   demonstrates that Alliance was not acting as an agent of Alarm.com, Plaintiffs' ratification theory fails

18   as a matter of law.  That should be the end of the inquiry.

19           But even assuming Plaintiffs could establish that Alliance was acting as Alarm.com's agent

20   for some purpose, Plaintiffs' ratification theory fails for two additional, independent reasons.  ***First***,

21   there is no genuine dispute of material fact that Alarm.com lacked "knowledge" of the "material facts"

22   required for ratification.  Restatement (Third) of Agency § 4.06 ("A person is not bound by ratification

23   made without knowledge of material facts involved in the original act when the person was unaware

24   of such lack of knowledge."); *see also Naiman v. TranzVia LLC*, 2017 WL 5992123, at *7 (N.D. Cal.

25
26   [6]  Because Alliance had no actual or apparent authority to make the calls on Alarm.com's behalf, it
     follows that its sub-dealer Nationwide similarly lacked any such authority.  *See* Restatement (Third)
27   of Agency § 3.15 ("An agent may appoint a subagent only if the agent has actual or apparent authority
     to do so.").

28

1  Dec. 4, 2017) ("[A] principal is not bound by a ratification made without knowledge of material facts

2  about the agent's act." (citation omitted)); *Makaron*, 2015 WL 3526253, at *10 ("[Defendant] has no

3  information of telephone calls being placed by or on behalf of [the alleged agent] and, hence, could

4  not have ratified those calls.").

5      Plaintiffs have cited the fact that NBC's *Today Show* aired a segment disclosing that Alliance

6  was involved in litigation with two state attorneys general and an unidentified consumer class action,

7  and that a 2014 settlement with the FTC subjected Alliance to potential penalties of $3.4 million and

8  required Alliance to stop engaging in unlawful telemarketing practices.  These facts, however, comes

9  close to showing that Alarm.com had knowledge of the telemarketing calls that are the subject of

10 Plaintiffs' Complaint here.  *See, e.g.*, Compl., at ¶¶ 76, 81 84, 88, 104, 109, 114, 124–25.

11     For one, Alliance (then VMS) assured Alarm.com after the *Today Show* segment aired in 2012

12 that safeguards were in place to prevent any future violations.  *See* Jaszczuk Decl. Ex. 12 (5/1/12

13 Natale Email); ███████████████████████████████████████████████████; Jaszczuk Decl.

14 Ex. 5 (Pitts Dep. Tr.) at 24:11–26:18.  And equally important, Plaintiffs have developed zero evidence

15 showing that Alarm.com knew, until the filing of this lawsuit, that Alliance may not have kept those

16 promises.  On this record, Plaintiffs cannot raise a genuine issue of material fact as to Alarm.com's

17 knowledge of the unlawful telemarketing calls alleged in the Complaint during the relevant time

18 period.

19     ***Second***, the record also lacks any evidence showing that Alarm.com benefitted from Alliance's

20 conduct.  In the Ninth Circuit, a "seller may be liable for the acts of another under traditional agency

21 principles if it ratifies those acts by knowingly ***accepting their benefits***."  *Kristensen v. Credit Payment*

22 *Servs. Inc.*, 2015 WL 4477425, at *3 (D. Nev. July 20, 2015) (emphasis added) (citation omitted),

23 *aff'd*, 879 F.3d 1010 (9th Cir. 2018); *see also Prosser v. Navient Sols., Inc.*, 2015 WL 5168635, at *9

24 (N.D. Cal. Sept. 3, 2015) ("Generally, ratification requires that the principal, knowing the facts,

25 accepts the benefits of the agent's actions." (citations omitted)).

26     In this case, none of the named Plaintiffs claim they actually purchased an Alarm.com security

27 system from Alliance or an Alliance sub-dealer.  Plaintiffs, moreover, have no evidence that any of

28
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

the other class members purchased such a system.  *See United States v. DISH Network, L.L.C.*, 75 F. Supp. 3d 942, 1018 (C.D. Ill. 2014) ("Most of the telemarketing calls did not result in sales, so ratification would not seem applicable to the majority of the calls."), *vacated in part on other grounds*, 80 F. Supp. 3d 917 (C.D. Ill. 2015).  Similarly, there is no evidence to suggest that Alliance's or Nationwide's allegedly unlawful telemarketing efforts resulted in any general increase in Alarm.com sales or revenues.

Without such evidence, Plaintiffs cannot show the necessary benefit to support ratification, as the Fourth Circuit recently explained in affirming the *Monitronics* decision granting summary judgment in favor of defendants.  *See Hodgin*, 885 F.3d at 253–54.  In *Monitronics*, "Plaintiffs argue[d] that [defendants] benefitted from the telemarketers' use of robocalls and their calls to numbers on the Do-Not-Call Registry because the[ ] aggressive telemarketing practices increased the number of home-security products the telemarketers sold, which in turn caused them to buy more goods from UTC and Honeywell."  *Id.* at 254.  But the Fourth Circuit rejected that argument because "Plaintiffs failed to proffer any evidence supporting their allegation that illegal telemarketing practices increased VMS's and ISI's sales of home-security products."  *Id.*  Here, too, Plaintiffs have failed to offer any such evidence, and Alarm.com respectfully submits that this Court should reach the same conclusion.

## IV.  The Calls At Issue Were Not Placed Using An ATDS.

Alarm.com is entitled to summary judgment as to the claims raised by the Cell Phone Class for an additional, independent reason: the D.C. Circuit recently vacated the FCC order on which Plaintiffs' theory of liability relies.  *See ACA Int'l*, 885 F.3d at 695–704.  The Cell Phone Class[7] seeks

---

[7]  The definition of the Cell Phone Class is as follows:

> All persons in the United States, to whom: (a) Alliance's agent Nationwide Alarms, LLC, on Defendants' behalf, instituted one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to a recipient's cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time since October 15, 2013; (f) except those persons that provided Defendants with their telephone number(s) prior to receiving call(s) from Nationwide, on Defendants' behalf.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1    to impose liability on Alarm.com for Alliance sub-dealer Nationwide's calls made "using any

2    automatic telephone dialing system … to any telephone number assigned to a … cellular telephone

3    service."   47 U.S.C. § 227(b)(1)(A)(iii).   As this language makes clear, the use of an automatic

4    telephone dialing system ("ATDS") is an essential element of the Cell Phone Class claims.  *See, e.g.*,

5    *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  The TCPA defines

6    an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be

7    called, using a random or sequential number generator; and (B) to dial such numbers," 47 U.S.C. §

8    227(a)(1)

9         Plaintiffs have no evidence demonstrating that the calls at issue were made using an ATDS.

10   All Plaintiffs have mustered is the claim of their expert that Nationwide's dialing system "has the

11   capacity to store or produce telephone numbers to be called … ***from a list or database of numbers***,

12   and to dial such numbers ***without human intervention***."  Jaszczuk Decl. Ex. 20 (Corrected Snyder

13   Report) at ¶ 62 (emphases added); *see also* Jaszczuk Decl. Ex. 21 (Snyder Dep. Tr.) at 71:19–72:1.

14        But that opinion is not evidence that the Nationwide equipment is able "to store or produce

15   telephone numbers to be called, using a random or sequential number generator," as required by the

16   statute.  47 U.S.C. § 227(a)(1).  Instead, Plaintiffs' expert's opinion rests on a definition of ATDS

17   from a series of FCC pronouncements that are no longer good law.  The FCC interpreted the statutory

18   definition of an ATDS to include equipment that can dial telephone numbers from "a list" or "database

19   of numbers" and dial those numbers "without human intervention."  *In re Rules & Regulations*

20   *Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd 7961, 7973–75, 8019

21   (2015).  The D.C. Circuit vacated the FCC order, holding that the FCC's ATDS standard was

22   "inconsistent" and "fail[ed] to satisfy the requirement of reasoned decisionmaking ...."  *ACA Int'l*, 885

23   F.3d at 703.  At no point does the TCPA provide an alternative definition of an ATDS whereby

24   equipment that lacks the capacity to store or produce numbers "using a random or sequential number

25   generator," 47 U.S.C. § 227(a)(1), becomes an ATDS if it nevertheless "has the capacity to store or

26

27   Jan. 25, 2018 Order at 6 (ECF No. 176).  Plaintiffs have no evidence that Cell Phone Class members
     received prerecorded voice calls, and so their claims rest exclusively on the assertion that Nationwide
     made the calls at issue using an ATDS.

28
     DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1  produce telephone numbers to be called … from a list or database of numbers" and "dial such numbers

2  without human intervention."  Jaszczuk Decl. Ex. 20 (Corrected Snyder Report) at ¶ 62.  Following

3  the D.C. Circuit's ruling, the only valid definition of an ATDS is the one provided in the statute.  *See*

4  *Marshall v. CBE Grp., Inc*. 2018 WL 1567852, at *7 (D. Nev. March 30, 2018) ("Plaintiff cannot rely

5  on the FCC's definition of an ATDS to the extent it includes systems that cannot be programmed to

6  dial random or sequential numbers ....").

7           Assessed against the correct definition, Plaintiffs cannot establish that Nationwide's system

8  has the capacity to store or produce numbers using a random or sequential number generator.  Certainly

9  they cannot rely on their expert for this point.  He testified as follows:

10                    Q. ....  So you are not contending that the Ytel system has the present or
                      potential capacity to store phone numbers to be called, using a random
11                    or sequential number generator?

12                    A. Correct.

13                    Q. And you are not contending that the Ytel system has the present or
                      potential capacity to produce phone numbers to be called, using a
14                    random or sequential number generator?

15                    A. Correct.

16  Jaszczuk Decl. Ex. 21 (Snyder Dep. Tr.) at 74:16–25.  Plaintiffs' expert's conclusion was instead

17  premised on the equipment's purported ability to dial from a list of numbers, without human

18  intervention, which tracks the now invalid FCC ruling:

19                    Q. Am I correct in saying that you contend that the Ytel system that was
                      used in the case at issue here satisfies the second clause of paragraph 10
20                    [of the Snyder Report], which is, quote, dials from a list or database of
                      numbers, and that it also satisfies the third clause in paragraph 10, which
21                    states, quote, and to dial such numbers without human intervention.
                      Correct?
22
                      A. Correct.
23

24  *Id.* at 71:19-72:1.

25           Because Mr. Snyder used an invalid definition of an ATDS, his opinion provides no evidence

26  to support the Cell Phone Class claims.  As one other court evaluating the very same opinion from the

27  very same expert found, it "reflect[ed] a misunderstanding of the statutory requirements, which require

28
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

more than simply that the system store telephone numbers and send messages to those numbers without human intervention." *Dominguez v. Yahoo!, Inc*., 8 F. Supp. 3d 637, 643 n.6 (E.D. Pa. 2014), *vacated in part on other grounds*, 629 F. App'x 369 (3d Cir. 2015); *see also Marshall*, 2018 WL 1567852, at *8 (granting summary judgment to defendant on plaintiff's ATDS claim because Mr. Snyder's report failed to establish that the dialing system at issue "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers").

Since Plaintiffs bear the burden of establishing the use of an ATDS and have failed to do so, Defendants are entitled to summary judgment as to all of the Cell Phone Class members' claims.

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in favor of Defendants on all of Plaintiffs' claims.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1  Dated: May 1, 2018                    Respectfully submitted,

2

3                                        By:  */s/ Martin W. Jaszczuk*
                                         Martin W. Jaszczuk (*pro hac vice*)
4                                        Daniel I. Schlessinger (*pro hac vice*)
                                         Margaret M. Schuchardt (*pro hac vice*)
5                                        Keith L. Gibson (*pro hac vice*)
                                         JASZCZUK P.C.
6                                        311 South Wacker Drive, Suite 1775
                                         Chicago, IL 60606
7                                        Telephone: (312) 442-0509
                                         Facsimile: (312) 442-0519
8                                        mjaszczuk@jaszczuk.com
                                         dschlessinger@jaszczuk.com
9                                        mschuchardt@jaszczuk.com
                                         kgibson@jaszczuk.com
10
                                         Craig S. Primis (*pro hac vice* pending)
11                                       KIRKLAND & ELLIS LLP
                                         655 Fifteenth Street, N.W.
12                                       Washington, DC 20005
                                         Telephone: (202) 879-5921
13                                       Facsimile: (202) 879-5200
                                         craig.primis@kirkland.com
14
                                         Kasey C. Townsend (SBN 152992)
15                                       Susan J. Welde (SBN 205401)
                                         MURCHISON & CUMMING, LLP
16                                       275 Battery Street, Suite 850
                                         San Francisco, CA 94111
17                                       Telephone: (415) 524-4300
                                         Facsimile: (415) 391-2058
18                                       ktownsend@murchisonlaw.com
                                         swelde@murchisonlaw.com
19
                                         *Attorneys for Defendants Alarm.com*
20                                       *Incorporated and Alarm.com Holdings, Inc.*

21

22

23

24

25

26

27

28
                                         25                       4:15-CV-06314-YGR
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**CERTIFICATE OF SERVICE**

I, Martin W. Jaszczuk, hereby certify that on May 1, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties registered to receive electronic service in the above-captioned matter.

Dated: May 1, 2018                                    Respectfully submitted,


                                                      By: ___/s/ Martin W. Jaszczuk_____
                                                      Martin W. Jaszczuk (*pro hac vice*)
                                                      Daniel I. Schlessinger (*pro hac vice*)
                                                      Margaret M. Schuchardt (*pro hac vice*)
                                                      Keith L. Gibson (*pro hac vice*)
                                                      JASZCZUK P.C.
                                                      311 South Wacker Drive, Suite 1775
                                                      Chicago, IL 60606
                                                      Telephone: (312) 442-0509
                                                      Facsimile: (312) 442-0519
                                                      mjaszczuk@jaszczuk.com
                                                      dschlessinger@jaszczuk.com
                                                      mschuchardt@jaszczuk.com
                                                      kgibson@jaszczuk.com

                                                      Craig S. Primis (*pro hac vice* pending)
                                                      KIRKLAND & ELLIS LLP
                                                      655 Fifteenth Street, N.W.
                                                      Washington, DC 20005
                                                      Telephone: (202) 879-5921
                                                      Facsimile: (202) 879-5200
                                                      craig.primis@kirkland.com

                                                      Kasey C. Townsend (SBN 152992)
                                                      Susan J. Welde (SBN 205401)
                                                      MURCHISON & CUMMING, LLP
                                                      275 Battery Street, Suite 850
                                                      San Francisco, CA 94111
                                                      Telephone: (415) 524-4300
                                                      Facsimile: (415) 391-2058
                                                      ktownsend@murchisonlaw.com
                                                      swelde@murchisonlaw.com

                                                      *Attorneys for Defendants Alarm.com*
                                                      *Incorporated and Alarm.com Holdings, Inc.*

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT