-EXHIBIT 7-

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

ABANTE ROOTER AND PLUMBING, INC., MARK HANKINS, and PHILIP J. CHARVAT, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ALARM.COM INCORPORATED, and ALARM.COM HOLDINGS, INC.,

Defendants.

Case No. 4:15-cv-06314-YGR

(Hon. Yvonne Gonzalez Rogers)

**CORRECTED EXPERT REPORT OF RANDALL A. SNYDER**

**TABLE OF CONTENTS**

RELEVANT TRAINING, EXPERIENCE AND CREDENTIALS...................................................3

DOCUMENTS REVIEWED AND CONSIDERED.........................................................................5

SUMMARY OF OPINIONS .............................................................................................................6

AUTOMATIC TELEPHONE DIALING FUNCTIONS ..................................................................8

THE TCPA AND AUTOMATIC TELEPHONE DIALING SYSTEMS .......................................13

CLOUD-BASED AUTOMATIC DIALING SYSTEMS.................................................................16

THE YTEL CLOUD CONTACT CENTER AUTOMATIC DIALING SYSTEM.........................17

DETERMINING LANDLINE AND CELLULAR TELEPHONE NUMBERS.............................19

CONCLUSIONS..............................................................................................................................23

I, Randall A. Snyder, hereby declare as follows:

1.      My name is Randall A. Snyder. I am an adult over the age of 18 and a resident of the state of Nevada. I have personal knowledge of each of the matters stated herein, and if called to testify, I could and would testify competently about them.

2.      I am an independent telecommunications technology consultant and I reside at 8113 Bay Pines Avenue, Las Vegas, Nevada, 89128. I have been retained by Terrell Marshall Law Group PLLC in the matter *Abante Rooter v. Alarm.com Incorporated, et al.*, No. 4:15-cv-06314-YGR (N.D. Cal.) to provide my opinions relating to dialing technology described within the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and utilized by Nationwide Alarms, LLC to place calls to cellular telephone numbers. I understand that Plaintiffs allege such calls were placed on behalf of Alarm.com Incorporated ("Alarm.com" or "Defendants") and that Plaintiffs allege Alarm.com is vicariously liable for the calls. I have been asked to determine whether the cloud-based dialing system Nationwide used to place calls on behalf of Defendants is equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or from a list or database of numbers, and whether Nationwide operated equipment which has the capacity to dial telephone numbers without human intervention.

### RELEVANT TRAINING, EXPERIENCE AND CREDENTIALS

3.      I have over 33 years of experience in telecommunications network and system architecture, engineering, design and technology. I have expertise in the fields of both wireline and wireless telecommunications networking technology. I have a Bachelor of Arts degree with a major in mathematics from Franklin and Marshall College. I have been retained as a testifying or consulting expert in over 200 cases regarding cellular telecommunications technology, including over 165 cases by both plaintiffs and defendants regarding the TCPA and associated regulations.

4.      I was a software engineer, designing, developing, testing and deploying code for complex real-time database, data communications and telecommunications systems for the first eight years of my career. This work included designing and developing relational databases, database applications, data communications protocols, telecommunications protocols, signaling protocols, call control and call processing systems and dynamic traffic engineering and overload control systems for the cellular networks. Overall, these software systems were written in assembly computer language (ASM), Pascal and C programming languages.

5.      I have taught many classes and seminars on both wireline and wireless telecommunication network technologies and have been a panelist and speaker at numerous conferences at the Institute of Electrical and Electronics Engineers ("IEEE"), the Personal Communication Society ("PCS"), and the Cellular Telecommunications and Internet Association ("CTIA"). I spent seven years developing standards within the American National Standards Institute's ("ANSI's") subsidiary organization, the Telecommunications Industry Association ("TIA"), providing technical contributions and authoring and editing telecommunications proposed standards documents. Most notably, I authored and oversaw the standardization of Interim Standard 93, providing interconnection technology between wireline and wireless telecommunications networks, which is now a fully accredited ANSI standard.

6.      I am the co-author of the McGraw-Hill books "Mobile Telecommunications Networking with IS-41," and "Wireless Telecommunications Networking with ANSI-41, 2nd edition" published in 1997 and 2001, respectively. I have been issued 39 U.S. and international patents on telecommunications networking technology. I have been hired as a consultant by the CTIA, as well as by many wireline and wireless telecommunications companies, including Bell Laboratories, McCaw Cellular, AirTouch, AirTouch International, AT&T Wireless, AT&T Mobility, Lucent, Nokia, Ericsson, Motorola, Samsung, Siemens, Nextwave, MCI, Daewoo,

Globalstar, T-Mobile, Sprint, U.S. Cellular, Teleglobe Canada, Teledesic and other telecommunications technology vendors and service providers. I was also nominated in 2006 for a National Television Arts Emmy Award for Outstanding Achievement in Advanced Media Technology for unique wireless content distribution technology I designed while employed at Entriq, Inc. Still more detail, as well as details of publications that I have authored or co-authored within at least the past 10 years, are provided in my attached *curriculum vitae* (a true and correct copy of which is attached hereto as Exhibit A) along with a list of cases where I served as a testifying or consulting expert and my standard rate sheet.

7.      I am being compensated at the rate of $475 per hour for my study, analysis and written testimony in this case.

## DOCUMENTS REVIEWED AND CONSIDERED

8.      My opinions in this Declaration are based on my education, knowledge, experience, expertise, training and my review of the following documents in this case:

a.      Class Action Complaint for Damages and Injunctive Relief;

b.      Orders Granting Plaintiffs' Motion for Class Certification as Modified by the Court; Granting in Part and Denying in Part Defendants' motions to Strike;

c.      Ytel, Inc. End User License Agreement (Bates Nos. YTEL 000001–YTEL 000010);

d.      Ytel, Inc. Master Services Agreement (Bates Nos. YTEL 000011–YTEL 000025);

e.      Affidavit of Joe Moretti;

f.      Public information from Ytel website (https://www.ytel.com);

g.      Revised results of cellular Telephone Number Analysis performed by DRRT

h.      Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and regulations promulgated thereunder;

i.   Federal Communications Commission's ("FCC") Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated October 16, 1992;

j.   FCC's Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated July 3, 2003;

k.   FCC's Declaratory Ruling in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 Request of ACA International for Clarification and Declaratory Ruling dated January 4, 2008;

l.   Appeal from the United States District Court for the Northern District of California, No. 07-16356, D.C. No. CV-06-02893-CW Opinion, filed June 19, 2009;

m.   FCC's Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated February 15, 2012;

n.   FCC's Notice of Proposed Rulemaking in the Matter of the Middle Class Tax Relief and Job Creation Act of 2012, Establishment of a Public Safety Answering Point Do-Not-Call Registry dated May 22, 2012;

o.   FCC's Declaratory Ruling in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated July 10, 2015.

## SUMMARY OF OPINIONS

9.     The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity – (i) to store or produce telephone numbers to be called, using a random or sequential number generator; and (ii) to dial such numbers." Additionally, it is my understanding that the Federal Communications Commission ("FCC") has issued regulations that also define an ATDS as including the capacity to dial telephone numbers from a provided list or database of telephone numbers without human intervention.

10.     Based on my review of the relevant documents and the facts described above, it is my opinion that Nationwide Alarms, LLC utilized equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or from a

list or database of numbers, and to dial such numbers without human intervention. I base this opinion on my knowledge, education, experience, expertise, training and on the evidence I have reviewed.

11.     Nationwide Alarms LLC employed automatic telephone dialing services provided by Ytel, for the purpose of making outbound telemarketing calls to consumers.

12.     Ytel provides cloud-based call center facilities to its customers that remotely use those facilities to create and manage automatic outbound calling campaigns. Ytel is able to offer these call center services by deploying automatic telephone dialing hardware and software that is used to automate dialing functions. Ytel provides automatic telephone dialing services to its customers that have the ability to input a list of telephone numbers to be subsequently dialed.

13.     In addition to dialing telephone numbers using a random or sequential number generator, the FCC has determined that computer equipment capable of dialing lists of numbers is also subject to the TCPA's restrictions on the use of autodialers.

14.     Therefore, it is my opinion, based on my knowledge, education, experience, expertise, training, my review of the relevant documents, and the facts described above, that the Ytel Cloud Contact Center automatic dialing system is equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or from a list or database of numbers, and to dial such numbers without human intervention.

15.     Therefore, it is my opinion, based on my knowledge, education, experience, expertise, training, and the facts described above, that Nationwide Alarms utilized an ATDS as defined within the TCPA to initiate automated calls to Plaintiff Hankins', Plaintiff Abante Rooter's, and Cell Phone Class members' cellular telephone numbers.

16.     In addition, based on my knowledge, education, experience, expertise, training, conversations with DRRT, and the facts described above, it is my opinion that Nationwide Alarms

used the Ytel system to initiate 119,484 calls to 22,055 unique telephone numbers that (1) were cellular telephones at the time of the calls and (2) had not been provided to Alarm.com before the calls.

## AUTOMATIC TELEPHONE DIALING FUNCTIONS

17.    Automatic telephone dialing systems used by companies that perform telemarketing and debt collection services typically fall into several fundamental types of computerized telephone number dialing: *preview* dialing, *progressive* dialing, *predictive* dialing and *unattended message* dialing. Note that telephone numbers to be dialed using these dialing functions are organized as "campaigns." A campaign is simply an electronic list of telephone numbers organized by some defined criteria that are to be called for a specific purpose. Each distinct campaign calls the telephone numbers in the list using the same dialing method, which is defined within the campaign setup parameters.

18.    Preview dialing is a method for dialing individual telephone numbers by call center agents. When preview dialing is used, each individual call center agent can "preview" a computerized call record and has the ability to originate a call to the consumer. For example, the call center agent may be able to enter the individual digits of a full 10-digit telephone number. The entered digits are sent as a message into the automatic dialing system to be subsequently dialed by the system. Furthermore, the call center agent can "invoke" the automatic sending of all the individual digits of the telephone number into the system at one time without entering the individual digits. The telephone number to be called may be displayed on the computer screen and the call center agent sends the digits into the automatic dialing system by clicking the displayed number itself or, for example, by clicking a "submit" button for the displayed telephone number. In some cases, a soft-phone application enables the call center agent to dial the number; in other cases, clicking the number simply sends a message containing the entire telephone number into the

automatic dialing system to be subsequently dialed by the system. In addition, sometimes preview dialing can be fully automated. This automation is sometimes known as "timed preview dialing" or "dynamic preview dialing." Timed/dynamic preview dialing automatically processes the next telephone number in the list once the agent has concluded a call. The next telephone number to be called is processed at some predefined time limit, for example 90 seconds. If the agent does not call the next number within 90 seconds, the preview dialing system automatically processes the next telephone number in the list. This mechanism is typically used to maximize the number of calls made and to ensure call center agents are moving quickly through their call record list.

19.     Progressive dialing (sometimes known as "power dialing" or "war dialing") is a computerized method for automatically dialing lists of telephone numbers commonly used in call center operations. Progressive dialing is a type of automatic telephone dialing whereby the equipment initiates outbound telephone calls for sales, telemarketing, collections, information surveys or other purposes by *progressively* dialing through a list of telephone numbers. Using this basic type of automatic dialing, the computerized system dynamically regulates the number of calls to be automatically dialed by maintaining a simple balance among the number of call center agents currently available, the number of calls currently in progress and the "dial ratio." The dial ratio is simply the ratio of telephone lines configured per call center agent involved in a particular calling campaign. Using this mechanism, the number of automatic outbound telephone calls to be dialed by the computer system can be dynamically regulated (*i.e.*, increased or decreased) over time simply based on the number of calls in progress, the number of agents and the number of telephone lines available per agent. Prerecorded voice technology may also be used to announce to the called party to wait for a call center agent to respond. Called parties that answer a progressively dialed outbound call may be redirected and connected to a call center agent. In addition, progressive dialing methods enable a variety of programmatic ways to treat calls that have not been answered

by the called party. As examples, calls that may be answered by voicemail, calls that receive a busy signal and calls that are not answered, may all be treated and managed differently by the automatic dialing system. Progressive dialing can sometimes use an interactive voice response ("IVR") system, whereby an artificial or prerecorded voice message is used to communicate with the called party and computerized prompts may be used to enable the called party to provide responses. The artificial or prerecorded voice messages are recorded before the calling campaign is executed and are stored in audio files that are configured as part of the IVR calling campaign.

20.     Predictive dialing is a computerized method for automatically dialing lists of telephone numbers commonly used in call center operations. Predictive dialing is a type of automatic telephone dialing as defined by the FCC to make outbound telephone calls for sales, telemarketing, collections, information surveys or other purposes. Predictive dialing provides the capability to "predict" the availability of call center agents that can respond to the outbound calls that have been dialed by the predictive dialing system and answered by the called party. Prerecorded voice technology may also be used to announce to the called party to wait for a call center agent to respond. Called parties that answer a predictively dialed outbound call typically experience a distinctive and recognizable pause due to the time interval during which the call is redirected and connected to an available call center agent. Prerecorded voice technology may also be used to announce to the called party to wait for a call center agent to respond. Called parties that answer a predictively dialed outbound call typically experience a distinctive and recognizable pause due to the time interval during which the call is redirected and connected to an available call center agent. In addition, predictive dialing methods enable a variety of programmatic ways to treat calls that have not been answered by the called party. As examples, calls that may be answered by voicemail, calls that receive a busy signal and calls that are not answered, may all be treated and managed differently by the automatic dialing system.

21.     In addition, predictive dialing methods enable a variety of programmatic ways to treat calls that have not been answered by the called party. As examples, calls that may be answered by voicemail, calls that receive a busy signal and calls that are not answered, may all be treated and managed differently by the automatic dialing system.

22.     Note that the actual *predictive* functionality of predictive dialers occurs *after* the equipment automatically dials telephone numbers from a list of numbers. Therefore, the automatic telephone dialing function of the equipment, *i.e.*, the ability to automatically dial telephone numbers from a list of numbers, occurs prior to the call being connected and *predictively* redirected to an available call center agent. Thus, predictive dialing is identical to progressive dialing with the addition of the automated capability of connecting the called party (once the outbound call is answered) to an algorithmically predicted call center agent. Note that Progressive dialing can also incorporate an algorithm, albeit much less sophisticated than predictive dialing algorithms, to redirect answered calls to agents.

23.     Unattended message dialing (sometimes known as a "message blast" or a "phone blast") is a computerized method for automatically dialing electronic lists of telephone numbers with the intent to only transmit a prerecorded voice message to the called parties once the call is answered. If an answering machine or voicemail system answers the call, the prerecorded voice message can be left as a recording for the called party to listen to later. No call center agents are required and there are no inbound calls to the system. Unattended message calls are always outbound, from an automatic telephone dialing system to a stored electronic list of telephone numbers. The prerecorded voice message is recorded before the calling campaign is executed and is stored in an audio file that is automatically played when the call is answered.

24.     Both progressive and predictive automatic dialing require the equipment to perform *call progress analysis* for each automatically initiated call. Call progress analysis automatically

detects ring-back tones, busy tones, fast-busy tones, special information tones, answering machines, voicemail systems, a person answering a call, etc. The equipment itself essentially *listens* to the initiated call that is in progress and can be programmed to act in a particular way depending on the result of the call attempt. In SIP-based VoIP systems, call progress analysis is performed and transmitted via "session progress messages." Call progress analysis capability is a key characteristic of automatic telephone dialing systems. The presence of this function is inherent in the process of automatic dialing and clearly implies the capability of the equipment to automatically dial telephone numbers. This is because the functional process to analyze call progress tones is established prior to the process of electronically signaling out (*i.e.*, dialing) the ten digits of a telephone number. Computerized call progress analysis is inextricably tied to the process of automatic electronic dialing.

25.    Additionally, unattended message dialing, predictive dialing and progressive dialing can use prerecorded voice technology to leave a message on an answering machine or a voicemail system if a person does not answer the call. This function, of course, is based on the ability of the equipment to perform call progress analysis, so different prerecorded messages can be left when the automatic dialing system detects a person answering versus a voicemail system answering. For example, prerecorded voice technology can be used for predictive dialing to announce to the called party to wait on the line for a call center agent to respond or to leave a prerecorded message on an answering machine.

26.    These types of computerized dialing (*i.e.*, preview, progressive, predictive and unattended message) require the automatic system to store telephone numbers to be called. The numbers stored electronically are automatically and directly dialed by the dialing system equipment. The list of telephone numbers to be called by the equipment is made available to the dialing system as part of setting up each call or calling campaign.

## THE TCPA AND AUTOMATIC TELEPHONE DIALING SYSTEMS

27.     For ease of reference, this section simply presents the TCPA and FCC definitions that I understand, from Plaintiffs' attorneys, to be the most applicable to my analysis in this case.

28.     The TCPA defines an ATDS as "equipment which has the capacity— (i) to store or produce telephone numbers to be called, using a random or sequential number generator; and (ii) to dial such numbers." (47 U.S.C. § 227(a)(1)).

29.     In the FCC's Report and Order of July 3, 2003, 18 FCC Rcd. 14014 (2003), the Commission stated the following:

> The statutory definition contemplates autodialing equipment that either stores or produces numbers. It also provides that, in order to be considered an "automatic telephone dialing system," the equipment need only have the "*capacity* to store or produce telephone numbers (emphasis added)..." It is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies. In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily. As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed—the capacity to dial numbers without human intervention. We fully expect automated dialing technology to continue to develop. (¶ 132.)
>
> [T]o exclude from these restrictions equipment that use predictive dialing software from the definition of "automated telephone dialing equipment" simply because it relies on a given set of numbers would lead to an unintended result. Calls to emergency numbers, health care facilities, and wireless numbers would be permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists and software packages. We believe the purpose of the requirement that equipment have the "capacity to store or produce telephone numbers to be called" is to ensure that the prohibition on autodialed calls not be circumvented. Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" and the intent of Congress. (¶ 133.)

30.    The FCC's Report and Order of January 4, 2008, 23 FCC Rcd. 559 (2008), stated the following:

> The commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed—the capacity to dial numbers without human intervention. The Commission noted that it expected such automated dialing technology to continue to develop and that Congress had clearly anticipated that the FCC might need to consider changes in technology. (¶ 13.)

> …calls to emergency numbers, health care facilities, and wireless numbers are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls. (¶ 14.)

31.    In the FCC's Notice of Proposed Rulemaking of May 22, 2012, the Commission stated the following:

> Under the TCPA, the term "automatic telephone dialing system" is defined as "equipment which has the capacity– (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. at § 227(a)(1). The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention whether or not the numbers called are randomly or sequentially generated or come from calling lists. (p.4, footnote 12.)

32.    In the FCC Declaratory Ruling and Order of July 10, 2015, 30 FCC Rcd. 7961 (2015), the Commission stated the following:

> We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. We also reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason. We also find that callers cannot avoid obtaining consent by dividing ownership of pieces of dialing equipment that work in concert among multiple entities. (¶ 10.)

33.     Additionally, the FCC again emphasized that dialing systems that dial telephone numbers from lists of numbers also qualify as an ATDS within the TCPA:

> The Commission declined to distinguish between calls to wireless telephone numbers made by dialing equipment "paired with predictive dialing software and a database of numbers" and calls made "when the equipment operates independently of such lists and software packages." Recognizing the developments in calling technology, the Commission found that "[t]he basic function of such equipment, however, has not changed—the capacity to dial numbers without human intervention." The Commission found it troubling that predictive dialers, like dialers that utilize random or sequential numbers instead of a list of numbers, retain the capacity to dial thousands of numbers in a short period of time and that construing the autodialer definition to exclude predictive dialers could harm public safety by allowing such equipment to be used to place potentially large numbers of non-emergency calls to emergency numbers, a result the TCPA was intended to prevent. The Commission concluded that the TCPA's unqualified use of the term "capacity. was intended to prevent circumvention of the restriction on making autodialed calls to wireless phones and emergency numbers and found that "a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" and the intent of Congress. (¶ 14.)

> We agree with commenters who argue that the TCPA's use of "capacity" does not exempt equipment that lacks the "present ability" to dial randomly or sequentially. We agree that Congress intended a broad definition of autodialer, and that the Commission has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the "capacity" to dial random and sequential numbers, rather than the "present ability" to do so. Hence, any equipment that has the requisite "capacity" is an autodialer and is therefore subject to the TCPA. (¶ 15.)

34.     Furthermore, the FCC emphasized that the technological test to determine if a system meets the definition of an ATDS is based on the system's potential functionalities and not the system's "present use" or "current capacity":

> By finding that, even when the equipment presently lacked the necessary software, it nevertheless had the requisite capacity to be an autodialer, the Commission implicitly rejected any "present use" or "current capacity" test. In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities. (¶ 16.)

35.     Moreover,

> We conclude that such equipment can be deemed an autodialer if the
> net result of such voluntary combination enables the equipment to have
> the capacity to store or produce telephone numbers to be called, using
> a random or sequential number generator, and to dial such numbers.
> The fact that two separate entities have voluntarily entered into an
> agreement to provide such functionality does not alter this analysis. As
> one commenter notes, this conclusion is consistent with the statutory
> language and prior Commission interpretations of the TCPA. The
> TCPA uses the word "system" to describe the automated dialing
> equipment that is defined in section 227(a)(1) of the Act. The
> Commission noted, in concluding that a predictive dialer meets the
> definition of an autodialer, that "[t]he hardware, when paired with
> certain software, has the capacity to store or produce numbers and dial
> those numbers." As a result, the Commission has recognized that
> various pieces of different equipment and software can be combined to
> form an autodialer, as contemplated by the TCPA. The fact that these
> individual pieces of equipment and software might be separately
> owned does not change this analysis. (¶ 24.)

## CLOUD-BASED AUTOMATIC DIALING SYSTEMS

36.     Many software application services companies market and sell business solutions,
including various telephone dialing and call (or contact) center services, via cloud-based systems.

37.     A cloud-based system is a software delivery model whereby application software
and associated data are centrally hosted in the "cloud." The cloud means a large, centralized
computer equipment system serving multiple remote client users in real-time via the Internet.
These systems are typically accessed by customers using a web-based application through an
Internet web browser. Cloud-based solutions have become a common delivery model for many
business applications for several reasons. The centralized computer equipment can provide
software services to hundreds or thousands of remote customer users from the centralized hosted
platform; the company operating and maintaining the platform need not deliver and install a
physical system to each customer, obviating maintenance and professional services costs for those
systems; software upgrades and new features and functions for the platform can be installed just

once and made available to all customers at the same time, and; customers need not incur the capital and operational expenditures to own and operate a complex computer equipment system of their own.

38.      Companies that market and sell cloud-based automatic dialing services typically provide a software-based application programming interface ("API") that can be used by telemarketers and other customers to develop a software application that connects to their dialing system platform to initiate automatic outbound calls. An API is essentially a programmatic method of communication between two computer systems. The API can be used as part of a software application created by the telemarketer to access the automatic dialing system, or it can be an online portal made accessible to the telemarketer via a web-based user interface ("UI"). These software methods enable a telemarketer to create an automatic telephone dialing campaign and then upload, or otherwise choose, a list of telephone numbers to be dialed by the system. The automatic dialing system automates the process of initiating calls to the numbers on the supplied list of numbers *en masse* as outbound calls to the list of telephone numbers previously provided to the dialing system.

39.      Cloud-based automatic dialing systems provide the automatic functions enabling multiple types of outbound calling campaigns. These dialing systems provide one or more of predictive dialing, power dialing, preview dialing, timed preview dialing, unattended message dialing. Even if a particular client customer does not make use of one of these automatic dialing functions, these dialing systems nevertheless inherently maintain the capability to automatically dial using these functions as other client customers can use those functions simultaneously.

### THE YTEL CLOUD CONTACT CENTER AUTOMATIC DIALING SYSTEM

40.      It is my understanding that Nationwide Alarms used telecommunications services

provided by Ytel[1] to initiate calls to consumers.

41.     Ytel provides various cloud-based software services to its client customers, enabling them to realize a "virtual" call center facility to communicate with prospective customers without the need to invest in the purchase, operation and management of the necessary facilities, hardware, software and personnel required to operate their own call center. Ytel provides automated and sophisticated software services to companies desiring to communicate with consumers via telephone. These automated services include managing telemarketing campaigns, managing call agents, managing prospective customers and customer lists, call monitoring, technical support, etc. Ytel manages and operates the centralized hosted computerized software and equipment that provides automatic telephone dialing services to multiple remote call center customers using real-time internet connections.

42.     The Ytel Cloud Contact Center provides several types of automatic telephone dialing software services including predictive dialing, power dialing, progressive dialing and preview dialing services. Furthermore, the Ytel Cloud Contact Center dialing system provides campaign and telephone list (*i.e.*, customer acquisition lists) management functions. (Exhibit B.)

43.     Ytel's Master Services Agreement states that Ytel provides, "[O]nline cloud-based software and related platforms including, but not limited to, inbound call center software, outbound calling applications, predictive dialing technology, voice broadcasting technology, Interactive Voice Response ("IVR") technology, sip trunking , audio conversion, telephone lobbying system technology, name and address capture, conferencing technology, database scrubbing and message play…" (Exhibit C, YTEL 000018.)

44.     Additionally, Ytel's end user license agreement ("EULA") includes the contracted

---

[1] https://www.ytel.com

features, "Inbound, outbound and blended call handling," the "Ability to set-up and manage multiple inbound and outbound campaigns," "Web-based IVR editor to control flow of inbound calls," "No agent and after hours call handling," "Ability to set outbound caller ID per campaign, per list or based on customer area code," and "Agents can see calls in queue." (Exhibit C, YTEL 000005.) Each of these telecommunications features is associated with, and relevant to, automatic telephone dialing functions.

45.     Therefore, it is my opinion, based on my knowledge, education, experience, expertise, training, my review of the relevant documents, and the facts described above that the Ytel Cloud Contact Center dialing system is equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or from a list or database of numbers, and to dial such numbers without human intervention.

### DETERMINING LANDLINE AND CELLULAR TELEPHONE NUMBERS

46.     Just over 50% of all households in the U.S. today exclusively use cell phones. Cellular telephone numbers are often used as home, residential, business or other numbers and are subsequently designated as such on forms and other records. Due to the inherent unreliability of these forms and records as the guiding information for making automated outbound telephone calls, most debt collectors and telemarketers use a highly reliable and inexpensive technology solution that has been available to them for well over a decade.

47.     In November, 2003, the FCC mandated the implementation of a service known as "number portability" to be offered by both landline and cellular common carriers to all landline and cellular subscribers. Specifically, the service is characterized by two features: Local Number Portability ("LNP") and Wireless Local Number Portability ("WLNP"). LNP enables cellular subscribers to "port," or transfer, their cellular telephone numbers from a cellular carrier to a landline carrier within a defined geographic local area to essentially become home landline

telephone numbers and vice versa. WLNP enables cellular subscribers to "port," or transfer, their cellular telephone numbers from one cellular carrier to another, allowing them to essentially own their telephone number regardless of which cellular carrier they wish to subscribe to.

48.     Because of number portability, there is no distinguishing characteristic within the telephone number format and the value of the digits themselves to determine which carrier services a particular telephone number and whether the number is even a landline or cellular number. The standard numbering plan in the United States for both landline and cellular telephone numbers is the ten-digit number format: "NPA-NXX-XXXX." "NPA" refers to the Numbering Plan Area, more commonly known as the three-digit "area code." The NPA is also of the format "NXX." The entire format of the number, "NXX-NXX-XXXX" refers to a numbering plan where the digit "N" can be any number from 2 through 9 and the digit "X" can be any number from 0 through 9.

49.     If a subscriber wishes to port his or her landline telephone number to a cellular telephone number, or vice versa, or their telephone number to another competing landline or cellular carrier, the carrier is required to do so within a few hours or less. To do this, all of the landline and cellular carriers are connected to a nationwide real-time number portability database. The primary number portability database is owned, operated and maintained by an independent company known as ©Telcordia Technologies, Inc. dba "iconectiv."[2] Because of the FCC mandate for number portability among all common carriers, a centralized real-time telephone number portability database needs to be employed for any and all telephone calls to be completed to the appropriate carrier network.

50.     The number portability database essentially associates each and every telephone number with a landline or cellular carrier network identifier, enabling calls to be made to the

---

[2] http://www.iconectiv.com/numbering/number-portability-administration-center-npac

proper landline or cellular carrier network. During the course of establishing each and every telephone call and to deliver those calls to the proper network servicing the called party numbers, the number portability database is queried in real-time so that calls can terminate in the proper carrier network and properly delivered to the called party. Due to the critical nature of this service, reliability of iconectiv's database is among the highest in the telecommunications industry.

51.     Iconectiv, as well as other information services companies that provide commercial access to iconectiv's database, is commonly employed by debt collection and telemarketing companies to analyze databases or lists of telephone numbers prior to calling them using an automatic telephone dialing system. Iconectiv's client wholesalers lease and maintain access to the number portability database enabling organizations to definitively know whether any telephone numbers in a list of numbers are cellular or not. I have personally been involved with contracting these organizations to obtain this telephone number data, both for wireless network products I have designed and in many TCPA cases.

52.     Telephone numbers to be called by debt collectors and telemarketers are typically "scrubbed" by either iconectiv or its client wholesalers to determine which ones are cellular telephone numbers prior to being added to a campaign of numbers to be called by an automatic telephone dialing system. "Scrubbing" is a term used to describe a process by which a list of telephone numbers is compared against another list of telephone numbers having additional parameters associated with those numbers. If a telephone number is determined to be a cellular telephone number by this "scrubbing" process, it can be treated appropriately and in accordance with all local, state and federal statutes and regulations. For example, organizations need to recognize whether a telephone number is a landline or cellular number, and treat them appropriately so that they do not initiate automatic calls in potential violation of the TCPA.

53.     Based on my knowledge, education, experience, expertise and training, it is my

opinion that consumers' telephone numbers can be definitively and clearly determined to be either cellular or landline numbers. Furthermore, the ability to do so is an inexpensive and straightforward administrative process commonly used in the debt collection and telemarketing industries.

54.     I have personal and detailed technical experience with many of the information service companies that provide commercial access to iconectiv's database to perform the cell phone scrubbing process. Among these are Alexander Reus, P.A. dba DRRT, a limited partner of Diaz Reus & Targ LLP[3] ("DRRT").

55.     According to DRRT, 119,484 calls were made to 22,055 unique cellular telephone numbers by the Nationwide Alarms using the automatic dialing services provided by Ytel. Attached to this report as Corrected Exhibit D is a copy of a list of the 22,055 unique cellular telephone numbers and corresponding number of calls ("Corrected Cell Phone Class List") that DRRT provided to me. I am very familiar with the methodology and techniques used to perform this cell phone scrubbing process, as described above. I am personally familiar with DRRT and its engagement in dozens of TCPA class action cases where it has properly performed the cell phone scrubbing process that I agree with. I am familiar with the steps that DRRT took to perform the cell phone scrub in this case.

56.     I understand that DRRT has the ability to determine whether a telephone number was a cellular or landline number at any time in the past, removing the possibility that a cellular telephone number on the "scrubbed" list of Cellular Class members could have been ported and was a landline number at the time calls to that number were made. I understand that in this case the determined list of cellular telephone numbers resulting from the initial analysis scrub was

---

[3] https://drrt.com/areas-of-expertise/litigation-support/telephone-consumer-protection-act-tcpa/

compared against telephone numbers that were ported both one day before calls to that number were made and one day after calls to that number were made. This comparison resulted in the removal of any calls that may have been landline numbers at the time the calls were made, thus ensuring that the telephone numbers on the final proposed Cellular Class member list were, in fact, cellular telephone numbers at the time the calls were made. I understand that DRRT also excluded inbound calls from its analysis. DRRT also excluded calls to telephone numbers that were included on six spreadsheets of telephone numbers that consumers had provided to Defendants.

57.     Therefore, based on my knowledge, education, experience, expertise, training, and the facts described above, it is my opinion that Nationwide Alarms initiated 119,484 calls to 22,055 unique cellular telephone numbers that had not been provided to Alarm.com as determined by DRRT.

58.     I have reviewed the Corrected Cell Phone Class List. I understand that Plaintiff Hankins' cell phone number is (813) 503-9101. I searched the Corrected Cell Phone Class List that DRRT provided me and found this number on it. I understand that Plaintiff Abante Rooter's cell phone number is (510) 540-7210. I searched the Corrected Cell Phone Class List that DRRT provided me and found this number on it.

## CONCLUSIONS

59.     Nationwide Alarms employed automatic telephone dialing services provided by Ytel, for the purpose of making outbound telemarketing calls to consumers.

60.     Ytel provides cloud-based call center facilities to its customers that remotely use those facilities to create and manage automatic outbound calling campaigns. Ytel is able to offer these call center services by deploying automatic telephone dialing hardware and software that is used to automate dialing functions. Ytel provides automatic telephone dialing services to its customers that have the ability to input a list of telephone numbers to be subsequently dialed.

61.    In addition to dialing telephone numbers using a random or sequential number generator, the FCC has determined that computer equipment capable of dialing lists of numbers is also subject to the TCPA's restrictions on the use of autodialers.

62.    Therefore, it is my opinion, based on my knowledge, education, experience, expertise, training, my review of the relevant documents, and the facts described above, that the Ytel Cloud Contact Center automatic dialing system is equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or from a list or database of numbers, and to dial such numbers without human intervention.

63.    Therefore, it is my opinion, based on my knowledge, education, experience, expertise, training, and the facts described above, that Nationwide Alarms utilized an ATDS as defined within the TCPA to initiate automated calls to Plaintiff Hankins', Plaintiff Abante Rooter's, and Cell Phone Class members' cellular telephone numbers.

64.    In addition, based on my knowledge, education, experience, expertise, training, and the facts described above, it is my opinion that Nationwide Alarms initiated 119,484 calls to 22,055 unique telephone numbers that were cellular telephones as of the date of the call as determined by DRRT and had not been provided to Defendants before the calls.

65.    My opinions in this Report are based upon extensive experience in the telecommunications industry, a detailed understanding of telecommunications systems and a detailed understanding of automatic telephone dialing systems. I hereby reserve the right to supplement or modify my opinions detailed in this Report to the extent that new information is made available through discovery or other means.

I declare that the foregoing is true and correct subject to the laws of perjury of the United States.

Executed in Las Vegas, Nevada, on this 11th day of January, 2018.

_Randall A. Snyder_

_____

Randall A. Snyder

# EXHIBIT A

## Randall A. Snyder
## Curriculum Vitae

## Professional Summary

Mr. Snyder has over 33 years of experience in telecommunications network and system architecture, engineering, design and technology. He has expertise in the fields of both wireline and wireless telecommunications networking technology. He has been retained as an expert witness in over 200 cases regarding telecommunications technology including over 165 Telephone Consumer Protection Act (TCPA) cases, patent and intellectual property cases, breach of contract cases and other areas of litigation regarding telecommunications network technology.

Mr. Snyder has taught many classes and seminars on both wireline and wireless telecommunication network technologies and has been a panelist and speaker at numerous conferences at the Institute of Electrical and Electronics Engineers (IEEE) and the Cellular Telecommunications and Internet Association (CTIA). He spent several years developing network technology standards within the American National Standards Institute (ANSI) and the Telecommunications Industry Association (TIA), providing technical contributions and authoring and editing telecommunications proposed standards documents. Most notably, ANSI-93, providing interconnection technology between wireline and wireless telecommunications networks.

Mr. Snyder is the co-author of the McGraw-Hill books "Mobile Telecommunications Networking with IS-41," and "Wireless Telecommunications Networking with ANSI-41, 2nd edition" published in 1997 and 2001, respectively. He holds 39 patents on telecommunications networking technology and has been hired as a consultant by the CTIA, as well as many wireline and wireless telecommunications companies, including Bell Laboratories, IBM, Google, McCaw Cellular, AirTouch, AirTouch International, AT&T Wireless, AT&T Mobility, Lucent, Nokia, Ericsson, Motorola, Samsung, Siemens, Nextwave, MCI, Daewoo, Globalstar, T-Mobile, Sprint, U.S. Cellular, Teleglobe Canada, Teledesic and others. He was also nominated in 2006 for a National Television Arts Emmy Award for Outstanding Achievement in Advanced Media Technology for unique wireless content distribution technology he designed while at Entriq, Inc.

## Subject Matter Expertise

- Wireless and cellular network systems
- Wireless and cellular network architectures
- Network interconnectivity
- GSM, UMTS, LTE and ANSI-41 (CDMA) standards and networks
- Location Based Services (LBS)
- Short Message Service (SMS)
- Multimedia Message Service (MMS)
- Wireless Application Protocol (WAP)

- Call Processing and Calling Features
- Billing Systems Support (BSS)
- Operations, Administration, Maintenance & Provisioning (OAM&P, OSS)
- Signaling System No. 7 (SS7)
- LTE Diameter Signaling
- Multifrequency Signaling
- Automatic Telephone Dialing Systems (ATDS)

**Randall A. Snyder**
**Curriculum Vitae**

## Notable Expert Witness Engagements

- Retained as Plaintiff's testifying expert witness in *Satterfield v. Simon & Schuster, Inc.* No. 07-16356, D.C. No. CV-06-02893-CW Opinion. Appeal from the United States District Court for the Northern District of California. Opinion remanded by the United States Court of Appeals for the Ninth Circuit. Personally cited in opinion by N.R. Smith, Circuit Judge, June 19, 2009.

  Result of expert opinion greatly expanded the TCPA and was followed by formal FCC Declaratory Rulings citing this case that text messages are calls as defined by the TCPA, and sending messages to a stored electronic list of telephone numbers falls within the definition of an Automatic Telephone Dialing System (ATDS).

- Retained as Plaintiff's testifying expert witness in *Gomez v. Campbell-Ewald Company*. No. 13-55486, D.C. No. 2:10-CV-02007-DMG-CW Opinion. Appeal from the United States District Court for the Central District of California. Opinion vacated by the United States Court of Appeals for the Ninth Circuit. Opinion by Fortunato P. Benavides, Circuit Judge. Filed September 19, 2014. Appellate court opinion upheld by the Supreme Court of the United States. Opinion by Justice Ginsburg, January 20, 2016.

- Retained by the Department of Justice Canada as Plaintiff's consulting expert in *Commissioner of Competition v. Rogers Communications Inc., Bell Canada, Telus Corporation and the Canadian Wireless Telecommunications Association*. Defendants accused of deceptive and misleading marketing practices related to premium text messages leading to improper charging for multimedia content delivery using various mobile billing mechanisms. Case settled favorably for the Canada Competition Bureau in May, 2016.

- Retained by IBM de México as testifying expert witness in *IBM de México Comercialización y Servicios, S. de R.L. de C.V. adverse Iusacell, S.A. de C.V.* International $4B material breach of contract case under the International Chamber of Commerce International Court of Arbitration. A decision is currently being deliberated by the international court.

## Education

| Year | College or University | Degree |
|------|----------------------|--------|
| 1984 | Franklin and Marshall College | B.A., Mathematics (minor in Astronomy) |

> **Randall A. Snyder**
> **Curriculum Vitae**

## Professional Experience

| | |
|---|---|
| From: | January 2007 |
| To: | Present |
| Organization: | Wireless Research Services, LLC; Las Vegas, NV |
| Title: | President and Founder |
| Summary: | Technology and expert witness consulting services. Areas of subject matter expertise include mobile and cellular networking, 2G, 2.5G, 3G, LTE, GSM, ANSI-41, LBS, SMS, MMS, WAP, SS7, Diameter Signaling, Automatic Telephone Dialing Systems (ATDS) and mobile multimedia systems. With this expertise, primary consulting is in the area of system and product analysis, architecture, design, development, management and marketing as well as patent preparation and development, expert reports, expert testimony and litigation support. Particular areas of expert witness experience include patent litigation and the Telephone Consumer Protection Act (TCPA). |

| | |
|---|---|
| From: | September 2007 |
| To: | August 2010 |
| Organization: | Finsphere Corporation; Bellevue, WA (acquired by Visa) |
| Title: | Vice President Wireless Engineering and Product Management |
| Summary: | Was among the first handful of employees at Finsphere prior to Series A funding. As vice president of product management and wireless engineering and a member of the executive management team, was responsible for product management activities and wireless technology solutions for Finsphere's products. These products encompassed mobile location based software-as-a-service (SaaS) products offered primarily to financial institutions and banks. Responsibilities included product requirements and system functionality, strategic planning, R&D of new technologies, wireless network interconnectivity as well as wireless technology for Finsphere's products. Was also responsible for market strategies, white papers and development and management of intellectual property and patent applications. |

| | |
|---|---|
| From: | May 2004 |
| To: | April 2007 |
| Organization: | Entriq, Inc.; Carlsbad, CA |
| Title: | Vice President Product Management |
| Summary: | Was responsible for the entire product management team and system architecture for Entriq's products and services. Products encompassed mobile and broadband pay media applications (specializing in video), digital rights management (DRM) and security solutions, e-commerce and m-commerce systems as well as ad management and delivery solutions for both broadband and mobile media services. Responsibilities also included network and protocol analysis, market analysis, evaluation of third-party software and services, all vendor contract negotiations, RFP responses and overall administrative responsibility for the entire product line. Was responsible for directing |

| Randall A. Snyder |
| Curriculum Vitae |

and managing the technical writing department producing all user documentation associated with the products. Was nominated for a National Television Arts and Sciences Emmy Award for Outstanding Achievement in Advanced Media Technology for unique mobile technology designed, developed and commercially deployed as part of Entriq's solution.


From:         February 2002
To:           November 2003
Organization: m-Qube, Inc. (acquired by Verisign); Boston, MA
Title:        Founder, Vice President Product Management and Carrier Marketing
Summary:      Was responsible for the entire product management and carrier marketing teams, member of the executive management team and one of the founders. Was responsible for all product management, system engineering and product strategy for all business conducted with the wireless industry and carriers. Was in charge of the market strategy and wireless network architecture for m-Qube's mobile marketing service, a value-added service offering mobile marketing solutions to wireless carriers using short message services (SMS) for GSM and CDMA networks. The service architecture enabled branded companies to deploy promotional marketing and messaging campaign dialogs with mobile subscribers via SMS. The network architecture required definition and design of all aspects of the overall network including SMS technology, interconnectivity to the wireless carriers, signaling, traffic management, market requirements for features and services, network equipment specifications and OA&M.


From:         April 2001
To:           February 2002
Organization: Bitfone Corporation; Mountain View, CA
Title:        Vice President Product Management and Marketing
Summary:      Was responsible for the entire product management team and all of the company's product definitions, strategies and positioning. Had direct responsibility for market and product requirements, market research, competitive analysis, product strategy and sales strategy. Bitfone's products included the iBroker, a mobile Internet technology infrastructure platform to enhance WAP, MMS, mobile e-mail and wireless messaging. Was also responsible for the mProve product (obtained via merger with Digital Transit, Inc.) providing over-the-air firmware and software update technology to mobile devices.


From:         November 2000
To:           April 2001
Organization: Openwave Systems (via merger of Phone.com and Software.com); Redwood City, CA
Title:        Executive Director Emerging Technologies
Summary:      Was responsible for new 3G technologies and providing market and product plans for those technologies for the entire product line. Primary responsibility for the 3GPP Multimedia Messaging Service (MMS), collecting market requirements from customers, developing corporate strategy for MMS and preparing the organization for

**Randall A. Snyder**
**Curriculum Vitae**

additional development of the product. In addition, taught wireless technology classes to the different departments at Openwave and educated them on wireless service provider strategies and network technologies.

| | |
|---|---|
| From: | March 2000 |
| To: | November 2000 |
| Organization: | @Mobile and Software.com (via acquisition); Santa Barbara, CA |
| Title: | Director Wireless Product Management |
| Summary: | Was responsible for the product managers and for all of the wireless internet infrastructure products. Responsibilities included the overall market and product strategy for Software.com's wireless e-mail, short message service, instant messaging and unified messaging products. Was responsible for the overall revenues generated from these products based on detailed product plans and internal organizational planning. Much of his time was spent working with the executive management team and the sales directors on corporate market strategy. |

| | |
|---|---|
| From: | December 1999 |
| To: | March 2000 |
| Organization: | FreeSpace Communications, Inc.; Palo Alto, CA |
| Title: | Consulting Network Systems Engineer |
| Summary: | Was responsible for the complete design of the backbone network architecture for a new broadband fixed wireless data network. This new architecture incorporated DSL as the backbone network technology. The network architecture required definition and design of all aspects of the overall network plan including DSL technology, IP technology, ATM technology, interconnectivity to the PSTN, operations signaling, traffic engineering, market requirements for network features and services, network equipment specifications and OA&M. |

| | |
|---|---|
| From: | April 1992 |
| To: | December 1999 |
| Organization: | Synacom Technology, Inc.; San Jose, CA |
| Title: | Executive Director Product Marketing and Management |
| Summary: | |

1998 – 1999     Executive Director Product Marketing and Management

- Responsible for managing the entire product management and marketing department of Synacom Technology, including market research and planning, product management and market communications. Lead the entire design, definition and product direction of all aspects of Synacom's products.

1997 – 1998     Director Systems Engineering

- Responsible for coordinating and managing the overall functional and requirements specifications for all Synacom's products as well as the detailed test

plans used for alpha system testing of those products. Also responsible for directing and managing the technical writing department producing all of the user documentation associated with all of the products. Provided the primary sales engineering support for sales and marketing and was involved in nearly every aspect of the product lifecycle.

1996 – 1997          Director Consulting Services and Principal Engineer

- Responsible for obtaining, coordinating and managing all technical consulting projects performed by the company. These projects included wireless network architecture and design for both IS-41 and GSM networks for dozens of client companies (carriers and equipment manufacturers). In this role, continued as a member of both the ANSI/TIA TR45.2 Subcommittee for cellular radio intersystem operations standards and the ANSI/TIA TR46 Committee for 1900 MHz GSM PCS standards. Major contributor to TR46 in the area of GSM-to-IS-41 network interworking. Also authored, edited and published TIA standard specification IS-93 for cellular network interconnections to the PSTN and ISDN.

1992 – 1996          Principal Engineer

- Consulted for McCaw Cellular, AT&T Wireless, AirTouch Cellular, AirTouch Satellite Services, Globalstar, Nokia, MCI, Sprint PCS, XYPoint, NextWave, NewNet American Personal Communications, CTIA and several other national and international wireless telecommunications companies.

- Wrote wireless network design and analysis papers including HLR specifications, Authentication Center specifications, PCS network design, short message service (SMS) design, intelligent network applications of wireless technology and in-house expert in signaling protocols. Extensive experience with Signaling System No. 7, including both protocol implementation and design. Authored the Standard Requirements Document for the SS7-based A-interface between the base station and MSC used throughout the TIA. Also involved in the design of the Bellcore WACS/PACS technology, digital cellular network service and feature descriptions, SCPs and HLRs. Extensive experience developing the architecture and design of distributed intelligent networks including, SS7, cellular, PCS, AIN and WIN networks. Key member of the original Cellular Digital Packet Data (CDPD) architecture and design team. Designed the CDPD air interface protocol emulator developed and marketed by AirLink Communications, Inc.

From:          December 1990
To:            April 1992
Organization:  AT&T Bell Laboratories; Whippany, NJ
Title:         Consulting Member of the Technical Staff
Summary:       Evaluated wireless technology services for the Wireless Systems Architecture group. Also participated as a system engineer on the design of the Global System for Mobile (GSM) communication architecture and a software engineer developing the base station controller (BSC) for GSM. Also responsible for planning, coordinating, designing and testing the SS7 protocol software for the GSM A-interface between the BSC, MSC and operations and maintenance center (OMC). High-level and detailed

> **Randall A. Snyder**
> **Curriculum Vitae**

design specifications were developed to coordinate the protocol testing between two remote laboratories. Provided the traffic analysis and traffic engineering of call traffic for the BSC. Specifically designed and developed the dynamic traffic overload control subsystem for the BSC. Presentations were given to technical staffs at multiple Bell Laboratories facilities supporting this work.

From:            May 1987
To:              December 1990
Organization:    DGM&S, Inc.; Mt. Laurel, NJ
Title:           Senior Staff Consultant
Summary:         Responsible for the design, development and test coordination of an advanced intelligent network applications platform for a service control point (SCP). Also spent several years as a consulting software engineer for Siemens AG, developing and testing SS7 and call control software for the EWSD digital switching system for international as well as U.S. national network implementations. This work involved extensive travel to both Frankfurt and Munich, Germany for software system design and testing. Also involved in the concept, design and technical marketing of proprietary enabling technology software products for SS7 and ISDN.

From:            May 1986
To:              May 1987
Organization:    ADP, Inc.; Mt. Laurel, NJ
Title:           Senior Software Engineer and Analyst
Summary:         Responsible for the design and development of data communications and real time database application software for a host data center that provided real time financial information to large brokerage houses. Data communication protocol expertise in HDLC, RS-232 and IBM BiSync.

From:            June 1984
To:              May 1986
Organization:    C3, Inc.; Cape May, NJ
Title:           Consulting Systems Analyst and Software Engineer
Summary:         Civilian consulting systems analyst and engineer to the U.S. Coast Guard Electronics Engineering Center (EECEN) for C3, Inc. Developed sophisticated database software for shipboard use including inventory and law enforcement applications. The work included the follow-through of the entire project lifecycle including writing of requirements, functional, design and program specifications, coding, debugging, alpha and beta testing, release, shipboard installation and continuing technical support of the product. Received a personal commendation from Admiral W.F. Merlin, Chief, Office of Command, Control and Communications, for successful efforts on these projects.

| Randall A. Snyder |
| Curriculum Vitae |

---

## Professional Affiliations, Achievements & Awards

- Personal commendation from Admiral W.F. Merlin, Chief, Office of Command, Control and Communications, USCG (1986)
- Nominated, Technology and Engineering Emmy Award for Outstanding Achievement in Advanced Media Technology, 2006

## Patents, Publications & Citations

### Issued Patents

| Patent | Date | Description |
|---|---|---|
| US 9,838,872 | 12/5/2017 | Systems and Method for Mobile Identity Protection for Online User Authentication |
| US 9,818,121 | 11/14/2017 | Mobile Communications Message Verification of Financial Transactions |
| US 9,801,063 | 10/24/2017 | Systems and Methods for Authenticating a User of a Computer Application, Network, or Device Using a Wireless Device |
| US 9,736,662 | 8/15/2017 | Mobile Messaging Short Code Translation and Routing System and Method |
| US 9,679,312 | 6/13/2017 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 9,603,023 | 3/21/2017 | System and Method for Identity Protection Using Mobile Device Signaling Network Derived Location Pattern Recognition |
| US 9,456,348 | 9/27/2016 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 9,432,845 | 8/30/2016 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 9,420,448 | 8/16/2016 | System and Method for Determining and Delivering Appropriate Multimedia Content to Data Communication Devices |
| US 9,313,628 | 4/12/2016 | System and Method for Determining and Delivering Appropriate Multimedia Content to Data Communication Devices |
| US 9,185,123 | 11/10/2015 | Systems and Method for Mobile Identity Protection for Online User Authentication |
| US 9,154,952 | 10/6/2015 | Systems and Methods for Authenticating a User of a Computer Application, Network, or Device Using a Wireless Device |
| US 9,092,803 | 7/28/2015 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 8,954,102 | 2/10/2015 | System and Method for Determining and Delivering Appropriate Multimedia Content to Data Communication |

> ### Randall A. Snyder
> ### Curriculum Vitae

| | | |
|---|---|---|
| | | Devices |
| US 8,938,215 | 1/20/2015 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 8,923,902 | 12/30/2014 | Mobile Messaging Short Code Translation and Routing System and Method |
| US 8,839,394 | 9/16/2014 | Systems and Methods for Authenticating a User of a Computer Application, Network, or Device Using a Wireless Device |
| US 8,831,564 | 9/9/2014 | System and Method for Mobile Identity Protection Using Mobile Device Signaling Network Derived Location Pattern Recognition |
| US 8,819,141 | 8/26/2014 | Centralized Mobile and Wireless Messaging Opt-out Registry System and Method |
| US 8,761,732 | 6/24/2014 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 8,670,753 | 3/11/2014 | System and Method for Determining and Delivering Appropriate Multimedia Content to Data Communication Devices |
| Israel 200949 | 1/10/2014 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| Mexico 308720 B | 12/4/2013 | Sistema y Metodo para el Analisis Automatizado que Compara una Ubicacion del Dispositivo Inalambrico con Otra Ubicacion Geografica |
| US 8,588,748 | 11/19/2013 | System and Method for Mobile Identity Protection of a User of Multiple Computer Applications, Networks or Devices |
| US 8,437,784 | 5/7/2013 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 8,374,634 | 2/12/2013 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 8,280,348 | 10/2/2012 | System and Method for Mobile Identity Protection Using Mobile Device Signaling Network Derived Location Pattern Recognition |
| US 8,155,677 | 4/10/2012 | Mobile Messaging Short Code Translation and Routing System and Method |
| New Zealand 580499 | 8/31/2012 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 8,131,262 | 3/6/2010 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 8,116,731 | 2/14/2012 | System and Method for Mobile Identity Protection of a User of Multiple Computer Applications, Networks or Devices |
| Australia 2008/115299 | 2/9/2012 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| S. Africa 2009/06947 | 1/26/2011 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 7,792,518 | 9/7/2010 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 7,403,788 | 7/22/2008 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |

> **Randall A. Snyder**
> **Curriculum Vitae**

| | | |
|---|---|---|
| US 6,128,389 | 10/3/2000 | Authentication Key Management System and Method |
| US 5,970,144 | 10/19/1999 | Secure Authentication-Key Management System and Method for Mobile Communications |
| US 5,850,445 | 12/15/1998 | Authentication Key Management System and Method |
| US 5,799,084 | 8/25/1998 | System and Method for Authenticating Cellular Telephonic Communication |

## Publications

1. What Workers Want from Wireless by Randall A. Snyder; April 15, 2004. America's Network, Advanstar Communications, Santa Ana, California USA.

2. Snyder, Randall A. and Gallagher, Michael D. Wireless Telecommunications Networking with ANSI-41 Second Edition; McGraw-Hill, New York, NY USA; © Copyright 2001 Randall A. Snyder and Michael D. Gallagher. *Foreword by Tom Wheeler, former Chairman, Federal Communications Commission.*

3. Forecasting SS7 Traffic by Randall A. Snyder; November 1, 2000. Wireless Review, Volume 17, Number 21, Intertec Publishing, Overland Park, KS USA.

4. Gallagher, Michael D. and Snyder, Randall A. Mobile Telecommunications Networking with IS-41; McGraw-Hill, New York, NY USA; © Copyright 1997 Michael D. Gallagher and Randall A. Snyder.

5. IS-41/GSM Interoperability by Randy Snyder; December, 1995, Cellular Networking Perspectives, Cellular Networking Perspectives, LTD, Calgary, Alberta, Canada.

## Citations

1. Commendation from Admiral W.F. Merlin, Chief, Office of Command, Control and Communications, USCG (1986).

2. Method and Apparatus for Routing Short Messages, US Patent #6308075, Issued October 23, 2001.

3. Mediation Software for Delivery of Interactive Mobile Messaging and Personalized Content to Mobile Devices. Patent Application # 20020120779, August 29, 2002.

4. Automatic In-Line Messaging System, US Patent #6718178, Issued April 6, 2004.

5. Method and System for Wireless Instant Messaging, US Patent #7058036, Issued June 6, 2006.

6. United States Court of Appeals for the Ninth Circuit. Satterfield v. Simon & Schuster, Inc. No. 07-16356, D.C. No. CV-06-02893-CW Opinion. Appeal from the United States District Court for the Northern District of California. Opinion by N.R. Smith, Circuit Judge. Filed June 19, 2009.

**Randall A. Snyder**
**Curriculum Vitae**

## Litigation Support Experience

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Los Angeles County District Attorney |
| Case Name: | State of California v. Allied Interstate, LLC |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Ongoing |
| Date: | 2018 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Rios v. Synchrony Bank |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Kopelowitz Ostrow Ferguson Weiselberg Gilbert |
| Case Name: | Dipuglia v. US Coachways, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Terrell Marshall Law Group PLLC |
| Case Name: | Abante Rooter v. Alarm.com, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Bursor & Fisher, P.A. |
| Case Name: | Cortes v. National Credit Adjusters, L.L.C. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |

> ### Randall A. Snyder
> ### Curriculum Vitae

Date:                    2017

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to unlawful cellular telephone calls
Law Firm:                Morgan & Morgan, P.A.
Case Name:               Ansley v. Comcast Corporation
Services Provided:       Testifying expert for plaintiff
Disposition:             Ongoing
Date:                    2017

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                         unlawful cellular telephone calls
Law Firm:                Krohn & Moss, Ltd.
Case Name:               Blake v. Navient Solutions, Inc.
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Ongoing
Date:                    2017

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to unlawful cellular telephone calls
Law Firm:                Burke Law Offices, LLC
Case Name:               Saunders v. Dyck O'Neal, Inc.
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Ongoing
Date:                    2017

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to short message service (SMS) technology
Law Firm:                Lemberg & Associates LLC
Case Name:               Larson v. Harman Management Corporation and 3Seventy, Inc.
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Ongoing
Date:                    2017

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                         unlawful cellular telephone calls
Law Firm:                Law Offices of Jeffrey Lohman
Case Name:               Millora v. Navient Solutions, Inc.
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Dismissed
Date:                    2017

> **Randall A. Snyder**
> **Curriculum Vitae**

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Office of Chris R. Miltenberger, PLLC |
| Case Name: | In Re Portfolio Recovery Associates, LLC |
| Services Provided: | Testifying expert for Plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Ronald A. Marron |
| Case Name: | Gulley v. Comenity, LLC |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Sulaiman Law Group, Ltd. |
| Case Name: | O'Connor/Figueroa v. HSBC Mortgage Corporation (USA), et al. |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Mayer v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Dismissed |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Wunderlich v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action |

|  |  |
|---|---|
|  | related to unlawful cellular telephone calls |
| Law Firm: | Berger & Montague, P.C. |
| Case Name: | Richardson v. Verde Energy USA, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

|  |  |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Martin & Bontrager, APC |
| Case Name: | Foss v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

|  |  |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Givens v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2017 |

*Expert Engagement:*

|  |  |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Ibarra v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

|  |  |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Hyde & Swigart |
| Case Name: | Foley v. GatherApp, Inc. |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

|  |  |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |

```
┌─────────────────────────────┐
│     Randall A. Snyder        │
│     Curriculum Vitae         │
└─────────────────────────────┘
```

Case Name:              Stringham v. Navient Solutions, Inc.
Services Provided:      Testifying expert, expert reports for plaintiff
Disposition:            Ongoing
Date:                   2017

*Expert Engagement:*
Type of Matter:         Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                        unlawful cellular telephone calls
Law Firm:               Krohn & Moss, Ltd.
Case Name:              Brown v. Crescent Bank & Trust, Inc.
Services Provided:      Testifying expert, expert reports for plaintiff
Disposition:            Ongoing
Date:                   2017

*Expert Engagement:*
Type of Matter:         Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                        unlawful cellular telephone calls
Law Firm:               Law Offices of Jeffrey Lohman
Case Name:              Rogers v. Navient Solutions, Inc.
Services Provided:      Testifying expert, expert reports for plaintiff
Disposition:            Ongoing
Date:                   2017

*Expert Engagement:*
Type of Matter:         Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                        unlawful cellular telephone calls
Law Firm:               Law Offices of Jeffrey Lohman
Case Name:              Saballos v. Navient Solutions, Inc.
Services Provided:      Testifying expert, expert reports for plaintiff
Disposition:            Ongoing
Date:                   2017

*Expert Engagement:*
Type of Matter:         Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                        related to unlawful cellular telephone calls
Law Firm:               Dostart Hannink Coveney, LLP
Case Name:              Kerr v. Zacks Investment Research, Inc.
Services Provided:      Testifying expert for plaintiff
Disposition:            Ongoing
Date:                   2017

*Expert Engagement:*
Type of Matter:         Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                        unlawful cellular telephone calls
Law Firm:               Law Offices of Jeffrey Lohman
Case Name:              Kelsaw v. Navient Solutions, Inc.
Services Provided:      Testifying expert, expert reports for plaintiff

<div style="text-align:center; border:1px solid black;">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

Disposition:          Ongoing
Date:                 2017

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                      unlawful cellular telephone calls
Law Firm:             Hyde & Swigart
Case Name:            DeMun v. National Enterprise Systems, Inc.
Services Provided:    Testifying expert for plaintiff
Disposition:          Settled
Date:                 2017

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                      unlawful cellular telephone calls
Law Firm:             Krohn & Moss, Ltd.
Case Name:            Dillard v. Credit Protection Association LP
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Ongoing
Date:                 2017

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                      related to unlawful cellular telephone calls
Law Firm:             Berger & Montague, P.C.
Case Name:            Rubenstein v. Loandepot.com, LLC
Services Provided:    Testifying expert for plaintiff
Disposition:          Settled
Date:                 2017

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                      unlawful cellular telephone calls
Law Firm:             Law Offices of Jeffrey Lohman
Case Name:            Collier v. Navient Solutions, Inc.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Settled
Date:                 2017

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                      unlawful cellular telephone calls
Law Firm:             Law Offices of Jeffrey Lohman
Case Name:            Smith v. Navient Solutions, Inc.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Ongoing
Date:                 2017

Randall A. Snyder
Curriculum Vitae

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Moore v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports, arbitration testimony for plaintiff |
| Disposition: | Dismissed |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Deffenbaugh v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports, arbitration testimony for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | McClogan v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports, arbitration testimony for plaintiff |
| Disposition: | Prevailed via arbitration |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Blankson v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Natoli v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

<div align="center">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Welch v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Amaral v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Lewis v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Smith v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Law Offices of Jeffrey Lohman |
| Case Name: | Turner v. Navient Solutions, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |

> **Randall A. Snyder**
> **Curriculum Vitae**

Law Firm:                Law Offices of Jeffrey Lohman
Case Name:               Hernandez v. Navient Solutions, LLC
Services Provided:       Testifying expert, expert reports, arbitration testimony for plaintiff
Settled                  Settled
Date:                    2017

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                         unlawful cellular telephone calls
Law Firm:                Law Offices of Jeffrey Lohman
Case Name:               Stotler v. Navient Solutions, LLC
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Settled
Date:                    2017

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to unlawful cellular telephone calls
Law Firm:                Haines & Krieger, LLC
Case Name:               Mitchell v. LRE of Nevada, LLC
Services Provided:       Testifying expert for plaintiff
Disposition:             Ongoing
Date:                    2017

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                         unlawful cellular telephone calls
Law Firm:                Krohn & Moss, Ltd.
Case Name:               Tokarski v. Navient Solutions, LLC
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Ongoing
Date:                    2017

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to unlawful cellular telephone calls
Law Firm:                Thompson Consumer Law Group
Case Name:               Larson v. Online Information Services, Inc.
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Settled
Date:                    2017

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                         unlawful cellular telephone calls
Law Firm:                Krohn & Moss, Ltd.
Case Name:               Moody v. Navient Solutions, LLC

<div align="center">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:    Ongoing
Date:    2017

*Expert Engagement:*
Type of Matter:    Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls
Law Firm:    Law Offices of Jeffrey Lohman
Case Name:    Centrella v. Navient Solutions, LLC
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:    Settled
Date:    2017

*Expert Engagement:*
Type of Matter:    Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls
Law Firm:    Sulaiman Law Group, Ltd.
Case Name:    Cain v. Ocwen Loan Servicing, LLC
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:    Settled
Date:    2017

*Expert Engagement:*
Type of Matter:    Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls
Law Firm:    Law Office of Chris R. Miltenberger, PLLC
Case Name:    Lockett v. Conn Appliances, Inc. et al.
Services Provided:    Testifying expert for plaintiff
Disposition:    Ongoing
Date:    2017

*Expert Engagement:*
Type of Matter:    Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm:    Kopelowitz Ostrow Ferguson Weiselberg Gilbert
Case Name:    Gottlieb v. CITGO Petroleum Corporation
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:    Settled
Date:    2017

*Expert Engagement:*
Type of Matter:    Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls
Law Firm:    Krohn & Moss, Ltd.
Case Name:    Martinez v. Navient Solutions, LLC
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:    Ongoing

<div style="text-align:center; border:1px solid black;">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

Date:                        2017

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                            related to short message service (SMS) technology
Law Firm:                Zimmerman Reed LLP
Case Name:            Lennartson v. Papa Murphy's Holdings, Inc.
Services Provided:    Testifying expert for plaintiff
Disposition:            Ongoing
Date:                        2017

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                            related to unlawful cellular telephone calls
Law Firm:                Bursor & Fisher, P.A.
Case Name:            McMillion v. Rash Curtis & Associates
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:            Ongoing
Date:                        2017

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                            related to unlawful cellular telephone calls
Law Firm:                Bursor & Fisher, P.A.
Case Name:            Mbazomo v. ETourandTravel, Inc.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:            Ongoing
Date:                        2017

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                            related to unlawful cellular telephone calls
Law Firm:                Bursor & Fisher, P.A.
Case Name:            Bakov v. Consolidated Travel Holdings Group, Inc.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:            Ongoing
Date:                        2017

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                            unlawful cellular telephone calls
Law Firm:                Haines & Krieger, LLC
Case Name:            Miles v. Receivables Performance Management, LLC
Services Provided:    Testifying expert for plaintiff
Disposition:            Settled
Date:                        2017

```
┌─────────────────────────────┐
│      Randall A. Snyder        │
│      Curriculum Vitae         │
└─────────────────────────────┘
```

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Law Office of Chris R. Miltenberger, PLLC |
| Case Name: | Mahoney v. TT of Pine Ridge, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Haines & Krieger, LLC |
| Case Name: | Toldi v. Hyundai Capital America |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Withdrawn |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | McGuire Law, P.C. |
| Case Name: | Serban v. CarGurus, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Haines & Krieger, LLC |
| Case Name: | Marshall v. The CBE Group, Inc. |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Keogh Law, Ltd. |
| Case Name: | Glasser v. Hilton Grand Vacations, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2017 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action |

<div style="border:1px solid black; text-align:center;">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

|  |  |
|---|---|
|  | related to short message service (SMS) technology |
| Law Firm: | Carey Rodriguez Milian Gonya LLP |
| Case Name: | Farnham v. Caribou Coffee Company, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2017 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
|---|---|
| Law Firm: | Bursor & Fisher, P.A. |
| Case Name: | Hunter v. Time Warner Cable Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2016 |

*Expert Engagement:*

| Type of Matter: | Unlawful Recording of and Eavesdropping Upon Confidential Communications (Cal. Penal. Code §§ 632) and Unlawful Wiretapping (Cal. Penal. Code §§ 631) class action related to unlawful recording of telephone conversations |
|---|---|
| Law Firm: | Da Vega Fisher Mechtenberg LLP |
| Case Name: | Gruber v. Yelp, Inc. |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Ongoing |
| Date: | 2016 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
|---|---|
| Law Firm: | Law Office of Michael A. Ziegler, P.L. |
| Case Name: | Francescutti v. The CBE Group, Inc. |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Withdrawn |
| Date: | 2016 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
|---|---|
| Law Firm: | Haines & Krieger, LLC |
| Case Name: | Self-Forbes v. Advanced Call Center Technologies, LLC |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2016 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
|---|---|

## Randall A. Snyder
## Curriculum Vitae

Law Firm:                Engstrom, Lipscomb & Lack
Case Name:               Nghiem v. Dick's Sporting Goods, Inc.
Services Provided:       Testifying expert for plaintiff
Disposition:             Dismissed
Date:                    2016

*Expert Engagement:*

Type of Matter:          Intellectual property (patents) related to short message service (SMS) technology
Law Firm:                United States Department of Justice (DOJ)
Case Name:               CellCast Technologies, LLC v. The United States of America
Services Provided:       Testifying expert, expert reports for defendant
Disposition:             Ongoing
Date:                    2016

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                         unlawful cellular telephone calls
Law Firm:                McGuire Law, P.C.
Case Name:               Katz v. American Honda Motor Co., Inc.
Services Provided:       Testifying expert, expert reports, depositions for plaintiff
Disposition:             Ongoing
Date:                    2016

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                         unlawful cellular telephone calls
Law Firm:                Bursor & Fisher, P.A.
Case Name:               Morris v. SolarCity Corp.
Services Provided:       Testifying expert, expert reports, depositions for plaintiff
Disposition:             Settled
Date:                    2016

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to short message service (SMS) technology
Law Firm:                Keller Rohrback, L.L.P.
Case Name:               Wick v. Twilio, Inc.
Services Provided:       Consulting expert for plaintiff
Disposition:             Dismissed
Date:                    2016

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                         unlawful cellular telephone calls
Law Firm:                Edelman, Combs, Latturner & Goodwin, LLC
Case Name:               Bailey v. Santander Consumer USA, Inc.
Services Provided:       Testifying expert, expert reports, depositions for plaintiff

```
Randall A. Snyder
Curriculum Vitae
```

Disposition:          Settled
Date:                 2016

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                      related to unlawful cellular telephone calls
Law Firm:             Bailey & Glasser LLP
Case Name:            Newhart v. Quicken Loans, Inc. et al.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Ongoing
Date:                 2016

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                      unlawful cellular telephone calls
Law Firm:             Manchee & Manchee, PC
Case Name:            Gibbs v. Ocwen Loan Servicing, LLC
Services Provided:    Testifying expert for plaintiff
Disposition:          Settled
Date:                 2016

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                      unlawful cellular telephone calls
Law Firm:             Maney & Gordon, P.A.
Case Name:            Holland v. Keesler Federal Credit Bureau
Services Provided:    Testifying expert, expert reports, depositions for plaintiff
Disposition:          Ongoing
Date:                 2016

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                      related to short message service (SMS) technology
Law Firm:             McGuire Law, P.C.
Case Name:            Spencer v. Kohl's Department Stores, Inc.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Ongoing
Date:                 2016

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                      related to unlawful cellular telephone calls
Law Firm:             Parisi & Havens LLP
Case Name:            Slovin v. SunRun. Inc.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Ongoing
Date:                 2016

```
┌─────────────────────────────────┐
│        Randall A. Snyder         │
│        Curriculum Vitae          │
└─────────────────────────────────┘
```

*Expert Engagement:*

Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                       unlawful cellular telephone calls
Law Firm:              Law Office of Chris R. Miltenberger, PLLC
Case Name:             Harrington v. RoundPoint Mortgage Servicing Corporation
Services Provided:     Testifying expert, expert reports, depositions for plaintiff
Disposition:           Dismissed
Date:                  2016

*Expert Engagement:*

Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to short
                       message service (SMS) technology
Law Firm:              Law Office of Troy D. Krenning, LLC
Case Name:             Newton v. Comdata, Inc.
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Settled
Date:                  2016

*Expert Engagement:*

Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                       unlawful cellular telephone calls
Law Firm:              Bursor & Fisher, P.A.
Case Name:             Yerkes v. RGS, Financial, Inc.
Services Provided:     Testifying expert for plaintiff
Disposition:           Settled
Date:                  2016

*Expert Engagement:*

Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to short message service (SMS) technology
Law Firm:              Manning Law APC
Case Name:             Vizcarra v. Macys.com Inc. et al.
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Settled
Date:                  2016

*Expert Engagement:*

Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                       unlawful cellular telephone calls
Law Firm:              Sulaiman Law Group, Ltd.
Case Name:             Deaderick v. Contract Callers, Inc.
Services Provided:     Testifying expert for plaintiff
Disposition:           Withdrawn
Date:                  2016

*Expert Engagement:*

**Randall A. Snyder**
**Curriculum Vitae**

Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to short message service (SMS) technology
Law Firm:              Tycko & Zavareei LLP
Case Name:             Lathrop v. Uber Technologies, Inc.
Services Provided:     Testifying expert, exert reports for plaintiff
Disposition:           Settled
Date:                  2015–2017

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to short message service (SMS) technology
Law Firm:              McGuire Law, P.C.
Case Name:             Zeidel v. A&M (2015) LLC
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Settled
Date:                  2015–2016

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to unlawful cellular telephone calls
Law Firm:              Marquis Aurbach Coffing
Case Name:             Fisher v. MJ Christensen Jewelers, LLC
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Ongoing
Date:                  2015–2016

*Expert Engagement:*
Type of Matter:        Competition Act, § 74.1 R.S.C. 1985, c. C-34 class action related to false and
                       misleading advertisements related to premium text messaging and short message
                       service (SMS) technology
Law Firm:              Department of Justice Canada
Case Name:             Commissioner of Competition v. Rogers Communications Inc., Bell Canada,
                       Telus Corporation and the Canadian Wireless Telecommunications Association
Services Provided:     Consulting expert for plaintiff
Disposition:           Settled
Date:                  2013–2016

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                       unlawful cellular telephone calls
Law Firm:              Maney & Gordon, P.A.
Case Name:             Ritter v. Wells Fargo Bank, N.A.
Services Provided:     Testifying expert for plaintiff
Disposition:           Settled
Date:                  2015

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action

<div align="center">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

|  |  |
|---|---|
|  | related to short message service (SMS) technology |
| Law Firm: | Bock & Hatch, LLC |
| Case Name: | Kozlow v. Shopkick, Inc. |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Withdrawn |
| Date: | 2015 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
|---|---|
| Law Firm: | Edelson PC |
| Case Name: | Suttles v. Mutual of Omaha Insurance Company |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2015 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
|---|---|
| Law Firm: | Manchee & Manchee, PC |
| Case Name: | Gebray v. Ocwen Loan Servicing, LLC |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2015 |

*Expert Engagement:*

| Type of Matter: | Invasion of Privacy Act (Cal. Penal. Code §§ 630) class action related to unlawful recording of telephone conversations |
|---|---|
| Law Firm: | Keller Grover LLP and Law Offices of Scot D. Bernstein |
| Case Name: | Saunders v. Cabela's Incorporated |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2015 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
|---|---|
| Law Firm: | McGuire Law, P.C. |
| Case Name: | Lozano v. Avenue Stores, LLC |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2015 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
|---|---|
| Law Firm: | Bailey & Glasser LLP |

| | |
|---|---|
| **Randall A. Snyder** | |
| **Curriculum Vitae** | |

Case Name:          Phillips v. Mozes, Inc. et al.
Services Provided:  Testifying expert, expert reports, depositions for plaintiff
Disposition:        Settled
Date:               2015

*Expert Engagement:*
Type of Matter:     Intellectual property (patents) related to mobile location based technology and
                    short message service (SMS) technology
Law Firm:           Knobbe, Martens, Olson & Bear, LLP
Case Name:          TeleCommunication Systems, Inc. v. Airbus DS Communications, Inc.
Services Provided:  Testifying expert for defendant
Disposition:        Settled
Date:               2015

*Expert Engagement:*
Type of Matter:     Intellectual property (patents) related to machine-to-machine (M2M) mobile
                    technology
Law Firm:           Paul Hastings LLP
Case Name:          M2M Solutions LLC v. Novatel Wireless Solutions, Inc.
Services Provided:  Testifying expert, USPTO affidavits for patent reexamination for defendant
Disposition:        Ongoing
Date:               2015

*Expert Engagement:*
Type of Matter:     Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                    related to short message service (SMS) technology
Law Firm:           Mazie Slater Katz & Freeman LLC
Case Name:          Meyer v. Bebe Stores Inc.
Services Provided:  Testifying expert, expert reports for plaintiff
Disposition:        Settled
Date:               2015

*Expert Engagement:*
Type of Matter:     Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                    related to short message service (SMS) technology
Law Firm:           Strategic Legal Practices, APC
Case Name:          Haghayeghi v. Guess Inc.
Services Provided:  Testifying expert for plaintiff
Disposition:        Settled
Date:               2015

*Expert Engagement:*
Type of Matter:     Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                    unlawful cellular telephone calls
Law Firm:           Bailey & Glasser LLP
Case Name:          Stein v. Monterey Financial Services, Inc.

<div style="border:1px solid black; text-align:center;">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Settled
Date:                  2015

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                       unlawful cellular telephone calls
Law Firm:              Aronovitz Law
Case Name:             McKee v. Navient Solutions, Inc.
Services Provided:     Testifying expert for plaintiff
Disposition:           Ongoing
Date:                  2015

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to short message service (SMS) technology
Law Firm:              Butsch Roberts & Associates, LLC
Case Name:             Moore v. Family Dollar Stores, Inc.
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Settled
Date:                  2015

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                       unlawful cellular telephone calls
Law Firm:              Bailey & Glasser LLP
Case Name:             Jones v. FMS Corp., U.S. Department of Education
Services Provided:     Testifying expert for plaintiff
Disposition:           Settled
Date:                  2015

*Expert Engagement:*
Type of Matter:        Invasion of Privacy Act (Cal. Penal. Code §§ 630) class action related to
                       unlawful recording of telephone conversations
Law Firm:              Keller Grover LLP and Law Offices of Scot D. Bernstein
Case Name:             Roberts v. Wyndham International, Inc.
Services Provided:     Testifying expert, expert reports, depositions for plaintiff
Disposition:           Settled
Date:                  2015

*Expert Engagement:*
Type of Matter:        Intellectual property (patents) related to short message service (SMS) technology
Law Firm:              Paul Hastings LLP
Case Name:             Nova Transforma Technologies, LLC v. AT&T Mobility LLC
Services Provided:     Consulting expert, USPTO affidavits for patent reexamination for defendant
Disposition:           Settled
Date:                  2015

## Randall A. Snyder
## Curriculum Vitae

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to
                         unlawful cellular telephone calls
Law Firm:                Maney & Gordon, P.A.
Case Name:               Drew v. Ocwen Loan Servicing, LLC
Services Provided:       Testifying expert, expert reports, depositions, trial testimony for plaintiff
Disposition:             Plaintiff obtained statutory damages for willful TCPA violations
Date:                    2015

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to unlawful cellular telephone calls
Law Firm:                Parisi & Havens LLP
Case Name:               Kleja v. Transworld Systems, Inc.
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Settled
Date:                    2015

*Expert Engagement:*

Type of Matter:          Invasion of Privacy Act (Cal. Penal. Code §§ 630) class action related to
                         unlawful recording of telephone conversations
Law Firm:                Keller Grover LLP and Law Offices of Scot D. Bernstein
Case Name:               McCabe v. Six Continents Hotels, Inc.
Services Provided:       Testifying expert, expert reports, depositions for plaintiff
Disposition:             Settled
Date:                    2015

*Expert Engagement:*

Type of Matter:          Material Breach of Contract
Law Firm:                Hogan Lovells USA LLP
Case Name:               IBM de México Comercialización y Servicios, S. de R.L. de C.V. adverse
                         Iusacell, S.A. de C.V.
Services Provided:       Testifying expert, expert reports for IBM México
Disposition:             Ongoing
Date:                    2014–2016

*Expert Engagement:*

Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to unlawful cellular telephone calls
Law Firm:                Caddell & Chapman
Case Name:               Hooker v. Sirius XM Radio, Inc.
Services Provided:       Testifying expert for plaintiff
Disposition:             Settled
Date:                    2014–2016

*Expert Engagement:*

<div style="border:1px solid black; text-align:center;">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Heyrich Kalish McGuigan, PLLC |
| Case Name: | Gragg v. Orange Cab Company, Inc. et al |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2013–2016 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | McGuire Law, P.C. |
| Case Name: | Valladares v. Blackboard, Inc. |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Settled |
| Date: | 2014–2015 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls |
| Law Firm: | Lemberg & Associates LLC |
| Case Name: | Hamlett et al v. Santander Consumer USA Inc. et al |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2014–2015 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Parisi & Havens LLP |
| Case Name: | Lofton v. Verizon Wireless LLC |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2014–2015 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | McGuire Law, P.C. |
| Case Name: | Spencer v. AT&T Digital Life, Inc. |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |

| | |
|---|---|
| **Randall A. Snyder**<br>**Curriculum Vitae** | |

Law Firm:              Butsch Roberts & Associates, LLC
Case Name:             In re: Life Time Fitness, Inc.
Services Provided:     Consulting expert for plaintiff
Disposition:           Settled
Date:                  2014

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to unlawful cellular telephone calls
Law Firm:              Morgan & Morgan, P.A.
Case Name:             Cauchon v. Whetstone Partners, LLC, d/b/a eTitleLoan
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Settled
Date:                  2014

*Expert Engagement:*
Type of Matter:        Intellectual property (patents) related to short message service (SMS) technology
Law Firm:              McGuireWoods LLP
Case Name:             Comcast Cable Communications, LLC v. Sprint Communications Company L.P.
Services Provided:     Consulting expert for defendant
Disposition:           Settled
Date:                  2014

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to short message service (SMS) technology
Law Firm:              Bock & Hatch, LLC
Case Name:             Kozlow v. Hangtime, Inc.
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Settled
Date:                  2014

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to unlawful cellular telephone calls
Law Firm:              Parisi & Havens LLP
Case Name:             In re Collecto, Inc.
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Settled
Date:                  2014

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to unlawful cellular telephone calls
Law Firm:              Edelson PC
Case Name:             Birchmeier et al v. Caribbean Cruise Line, Inc. et al
Services Provided:     Testifying expert, expert reports for plaintiff

> **Randall A. Snyder**
> **Curriculum Vitae**

Disposition:        Settled
Date:               2014

*Expert Engagement:*
Type of Matter:     Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                    related to short message service (SMS) technology
Law Firm:           Keogh Law, Ltd.
Case Name:          Johnson v. Yahoo! Inc.
Services Provided:  Testifying expert, expert reports, depositions for plaintiff
Disposition:        Ongoing
Date:               2014

*Expert Engagement:*
Type of Matter:     Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                    related to short message service (SMS) technology
Law Firm:           Jacobs Kolton, Chtd.
Case Name:          Nunes v. Twitter, Inc.
Services Provided:  Consulting expert for plaintiff
Disposition:        Ongoing
Date:               2014

*Expert Engagement:*
Type of Matter:     Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                    related to unlawful cellular telephone calls
Law Firm:           Manning Law, PLLC
Case Name:          Manning v. Lendio, Inc.
Services Provided:  Testifying expert for plaintiff
Disposition:        Ongoing
Date:               2014

*Expert Engagement:*
Type of Matter:     Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                    related to short message service (SMS) technology
Law Firm:           The Law Offices of Joseph R. Manning, Jr.
Case Name:          Vargem v. Tax Defense Partners, LLC
Services Provided:  Testifying expert for plaintiff
Disposition:        Ongoing
Date:               2014

*Expert Engagement:*
Type of Matter:     Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                    related to unlawful cellular telephone calls
Law Firm:           Steptoe & Johnson PLLC
Case Name:          Cain v. Monitronics, International, Inc.
Services Provided:  Consulting expert for defendant
Disposition:        Dismissed
Date:               2014

## Randall A. Snyder
## Curriculum Vitae

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful cellular telephone calls |
| Law Firm: | Mantese Honigman Rossman and Williamson, P.C. |
| Case Name: | Glassbrook v. Rose Acceptance, Inc. and First National Bank of America |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Ongoing |
| Date: | 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Kazerouni Law Group, APC |
| Case Name: | Iniguez v. The CBE Group, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Keogh, Cox & Wilson, Ltd. |
| Case Name: | Hetherington v. Omaha Steaks, Inc. and Omaha Steaks International, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Potter Handy, LLP |
| Case Name: | Potter v. Bank of America Corporation |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Lemberg & Associates LLC |
| Case Name: | Shiyan v. Lucille Roberts Health Clubs, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Withdrawn |
| Date: | 2014 |

> **Randall A. Snyder**
> **Curriculum Vitae**

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Lemberg & Associates LLC |
| Case Name: | Meyer v. Receivables Performance Management LLC |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Settled |
| Date: | 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | McGuire Law, P.C. |
| Case Name: | Murray v. Bill Me Later, Inc. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Lemberg & Associates LLC |
| Case Name: | Creel v. GC Services, L.P. |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Intellectual property (patents) related to short message service (SMS) technology and communication protocols |
| Law Firm: | White & Case LLP |
| Case Name: | Nokia Corporation v. Google Inc. |
| Services Provided: | Testifying expert for defendant |
| Disposition: | Settled |
| Date: | 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | McGuire Law, P.C. |
| Case Name: | Gomez v. Campbell-Ewald Company |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Ongoing |
| Date: | 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action |

```
┌─────────────────────────────────┐
│      Randall A. Snyder          │
│      Curriculum Vitae           │
└─────────────────────────────────┘
```

|                    |                                                                              |
|--------------------|------------------------------------------------------------------------------|
|                    | related to short message service (SMS) technology                            |
| Law Firm:          | Francis & Mailman, P.C.                                                       |
| Case Name:         | Dominguez v. Yahoo! Inc.                                                      |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff                 |
| Disposition:       | Ongoing                                                                      |
| Date:              | 2013–2016                                                                    |

*Expert Engagement:*

|                    |                                                                              |
|--------------------|------------------------------------------------------------------------------|
| Type of Matter:    | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm:          | McGuire Law, P.C.                                                            |
| Case Name:         | Smith v. Microsoft Corporation                                              |
| Services Provided: | Testifying expert, expert reports for plaintiff                             |
| Disposition:       | Ongoing                                                                      |
| Date:              | 2013–2016                                                                    |

*Expert Engagement:*

|                    |                                                                              |
|--------------------|------------------------------------------------------------------------------|
| Type of Matter:    | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm:          | Lemberg & Associates LLC                                                     |
| Case Name:         | Horton v. Cavalry Portfolio Services LLC                                     |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff                 |
| Disposition:       | Ongoing                                                                      |
| Date:              | 2013–2014                                                                    |

*Expert Engagement:*

|                    |                                                                              |
|--------------------|------------------------------------------------------------------------------|
| Type of Matter:    | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm:          | Law Office of Scott D. Owens, Esq. and Farmer, Jaffee, Weissing, Edwards, Fistos & Lehrman, P.L. |
| Case Name:         | Legg v. Voice Media Group, Inc.                                             |
| Services Provided: | Testifying expert, expert reports for plaintiff                             |
| Disposition:       | Dismissed                                                                    |
| Date:              | 2013–2014                                                                    |

*Expert Engagement:*

|                    |                                                                              |
|--------------------|------------------------------------------------------------------------------|
| Type of Matter:    | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm:          | Edelson LLC                                                                  |
| Case Name:         | Sterk v. Path, Inc.                                                         |
| Services Provided: | Testifying expert, expert reports for plaintiff                             |
| Disposition:       | Settled                                                                      |
| Date:              | 2013–2014                                                                    |

*Expert Engagement:*

|                    |                                                                              |
|--------------------|------------------------------------------------------------------------------|
| Type of Matter:    | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |

```
┌─────────────────────────────┐
│      Randall A. Snyder       │
│      Curriculum Vitae        │
└─────────────────────────────┘
```

Law Firm:              Wooten, Kimbrough & Normand, PA
Case Name:             Murphy v. DCI Biologicals, LLC
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Settled
Date:                  2013–2014

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to short message service (SMS) technology
Law Firm:              Kazerouni Law Group, APC
Case Name:             Sherman v. Yahoo! Inc.
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Dismissed
Date:                  2013–2014

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and Fair Debt
                       Collection Practices Act (FDCPA) 15 U.S.C. 15 § 1692 related to unlawful
                       cellular telephone calls
Law Firm:              Collins & Story, PA
Case Name:             Keen v. Delta Outsource Group, Inc.
Services Provided:     Testifying expert, expert reports, depositions for plaintiff
Disposition:           Settled
Date:                  2013–2014

*Expert Engagement:*
Type of Matter:        Intellectual property (patents) related to short message service (SMS) technology
                       and mobile banking
Law Firm:              Panovia Group LLP
Case Name:             N5 Technologies, LLC v. Capital One, N.A. et al
Services Provided:     Testifying expert, expert reports, depositions for plaintiff
Disposition:           Settled
Date:                  2013–2014

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and California's
                       Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 class action related to
                       short message service (SMS) technology
Law Firm:              Hartmann and Kananen
Case Name:             Baird v. Sabre, Inc.
Services Provided:     Testifying expert, expert reports for plaintiff
Disposition:           Dismissed
Date:                  2013–2014

*Expert Engagement:*
Type of Matter:        Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                       related to short message service (SMS) technology and unlawful charging of

<div align="center">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

|  | cellular telephone customers |
|---|---|
| Law Firm: | Edelson LLC |
| Case Name: | Lee v. Stonebridge Life Insurance Company |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2012–2014 |

*Expert Engagement:*

| Type of Matter: | Intellectual property (patents) related to short message service (SMS) technology and multimedia message service (MMS) technology |
|---|---|
| Law Firm: | Baker Botts LLP |
| Case Name: | Intellectual Ventures LLC v. AT&T Mobility LLC, T-Mobile USA, Inc., Sprint Spectrum L.P., US Cellular Corporation |
| Services Provided: | Testifying expert, expert reports for defendants |
| Disposition: | Patent withdrawn from litigation |
| Date: | 2012–2014 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
|---|---|
| Law Firm: | Keogh Law, Ltd. |
| Case Name: | Wanca v. LA Fitness International, LLC |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2013 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
|---|---|
| Law Firm: | Lemberg & Associates LLC |
| Case Name: | Penn v. NRA Group, LLC |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Ongoing |
| Date: | 2013 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
|---|---|
| Law Firm: | Lemberg & Associates LLC |
| Case Name: | Reed v. GC Services LP |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2013 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
|---|---|

Law Firm:          The Lavery Law Firm
Case Name:         Volpe v. Caribbean Cruise Line, Inc.
Services Provided:  Consulting expert for plaintiff
Disposition:       Dismissed
Date:              2013

*Expert Engagement:*

Type of Matter:    Washington Consumer Protection Act, RCW 19.86 and RCW 80.36.400 related
                   to unfair business practices and unlawful cellular telephone calls
Law Firm:          Williamson and Williams Law
Case Name:         Kids Northwest v. First Data Corporation
Services Provided:  Consulting expert for plaintiff
Disposition:       Ongoing
Date:              2013

*Expert Engagement:*

Type of Matter:    Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                   related to short message service (SMS) technology
Law Firm:          George Rikos Law
Case Name:         Van Patten v. Vertical Fitness
Services Provided:  Testifying expert, expert reports for plaintiff
Disposition:       Dismissed
Date:              2013–2016

*Expert Engagement:*

Type of Matter:    Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and California
                   Business and Professions Code § 17200 class action related to short message
                   service (SMS) technology
Law Firm:          Milberg LLP
Case Name:         D'Agostino v. Jesta Digital, LLC (dba Jamster)
Services Provided:  Testifying expert, expert reports for plaintiff
Disposition:       Settled
Date:              2013

*Expert Engagement:*

Type of Matter:    Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and Restrictions
                   on Telemarketing, Telephone Solicitation, and Facsimile Advertising 47 C.F.R.
                   § 64.1200(d)(3) class action related to unlawful cellular telephone calls
Law Firm:          Burke Law Offices, LLC
Case Name:         Benzion v. Vivint, Inc.
Services Provided:  Testifying expert, expert reports, depositions for plaintiff
Disposition:       Settled
Date:              2013

*Expert Engagement:*

Type of Matter:    Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                   related to unlawful cellular telephone calls

> **Randall A. Snyder**
> **Curriculum Vitae**

Law Firm:            Lemberg & Associates LLC
Case Name:           Rutigliano v. Convergent Outsourcing, Inc.
Services Provided:   Testifying expert, expert reports for plaintiff
Disposition:         Ongoing
Date:                2013

*Expert Engagement:*
Type of Matter:      Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                     related to short message service (SMS) technology
Law Firm:            Kazerouni Law Group, APC
Case Name:           Emanuel v. The Los Angeles Lakers, Inc.
Services Provided:   Testifying expert, expert reports for plaintiff
Disposition:         Dismissed
Date:                2013

*Expert Engagement:*
Type of Matter:      Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                     related to short message service (SMS) technology
Law Firm:            Kazerouni Law Group, APC
Case Name:           Barani v. Wells Fargo Bank, N.A.
Services Provided:   Consulting expert for plaintiff
Disposition:         Settled
Date:                2013

*Expert Engagement:*
Type of Matter:      Intellectual property (patents) related to wireless calling party identification
                     technology
Law Firm:            K&L Gates LLP
Case Name:           Cequint Inc. v. Apple Inc.
Services Provided:   Consulting expert for plaintiff
Disposition:         Settled
Date:                2013

*Expert Engagement:*
Type of Matter:      Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                     related to unlawful cellular telephone calls
Law Firm:            Donald A. Yarbrough, Esq.
Case Name:           Mais v. Gulf Coast Collection Bureau, Inc.
Services Provided:   Testifying expert, expert reports for plaintiff
Disposition:         Dismissed on appeal
Date:                2013

*Expert Engagement:*
Type of Matter:      Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                     related to unlawful cellular telephone calls
Law Firm:            Donald A. Yarbrough, Esq.
Case Name:           Manno v. Healthcare Revenue Recovery Group, LLC

<div style="border:1px solid black; text-align:center;">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

| | |
|---|---|
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | Law Office of Scott D. Owens, Esq. |
| Case Name: | Wojcik v. Buffalo Bills, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2012–2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | Law Office of Scott D. Owens, Esq. |
| Case Name: | Keim v. ADF Midatlantic, LLC (Pizza Hut) |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Ongoing |
| Date: | 2012–2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP |
| Case Name: | Connelly v. Hilton Grand Vacations Company, LLC |
| Services Provided: | Testifying expert, expert reports, depositions for defendant |
| Disposition: | Dismissed |
| Date: | 2012–2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Kirby Law Group |
| Case Name: | Agne v. Papa John's International, Inc. et al |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2012 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action and NY GBL 399-P class action related to unlawful calls |
| Law Firm: | Bellin and Associates LLC |
| Case Name: | Tipoo v. Enhanced Recovery Company, LLC |

```
┌─────────────────────────────┐
│      Randall A. Snyder       │
│      Curriculum Vitae        │
└─────────────────────────────┘
```

Services Provided:       Testifying expert for plaintiff
Disposition:             Undisclosed
Date:                    2012

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to unlawful calls
Law Firm:                Burke Law Offices, LLC
Case Name:               Bailey v. Household Finance Corporation et al
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Undisclosed
Date:                    2011–2012

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to short message service (SMS) technology
Law Firm:                Burke Law Offices, LLC
Case Name:               Annoni v. FYISMS.com, LLC
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Undisclosed
Date:                    2011–2012

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to short message service (SMS) technology and unlawful charging of
                         cellular telephone customers
Law Firm:                KamberEdelson, LLC
Case Name:               Schrock v. Wenner Media LLC
Services Provided:       Consulting expert for plaintiff
Disposition:             Undisclosed
Date:                    2011

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to short message service (SMS) technology and unlawful charging of
                         cellular telephone customers
Law Firm:                Summit Law Group
Case Name:               Kramer v. Autobytel, Inc. and B2Mobile, LLC
Services Provided:       Consulting expert for defendant
Disposition:             Settled
Date:                    2011

*Expert Engagement:*
Type of Matter:          Intellectual property (patents) related to wireless location based services (LBS)
Law Firm:                Mintz, Levin, Cohn, Ferris, Glovsky and Popeo PC
Case Name:               Emsat Geolocation Technology, LLC v. CellCo Limited Partnership (dba
                         Verizon Wireless) et al

| | Randall A. Snyder |
|---|---|
| | Curriculum Vitae |

---

Services Provided:    Testifying expert, USPTO affidavits for patent reexamination for plaintiff
Disposition:          Undisclosed
Date:                 2010–2011

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                      related to unlawful calls
Law Firm:             Keogh Law, Ltd.
Case Name:            Griffith v. Consumer Portfolio Services, Inc.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Undisclosed
Date:                 2010–2011

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                      related to unlawful calls
Law Firm:             Keogh Law, Ltd.
Case Name:            Dobbin v. Wells Fargo Auto Finance, Inc.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Dismissed
Date:                 2010–2011

*Expert Engagement:*
Type of Matter:       Intellectual property (patents) related to short message service (SMS) technology
Law Firm:             Nelson Bumgardner Casto PC
Case Name:            Celltrace LLC v. AT&T Inc. et al
Services Provided:    Consulting expert for plaintiff
Disposition:          Undisclosed
Date:                 2010

*Expert Engagement:*
Type of Matter:       California Constitution, Article VI, § 10, class action related to short message
                      service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm:             KamberEdelson, LLC
Case Name:            VanDyke v. Media Breakaway, LLC
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Settled
Date:                 2009

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                      related to unlawful calls
Law Firm:             Gordon & Rees LLP
Case Name:            Allen v. Rickenbacker Collection Services
Services Provided:    Consulting expert for defendant
Disposition:          Undisclosed
Date:                 2009

---

Randall A. Snyder
Curriculum Vitae

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Intellectual property (trademarks) related to short message service (SMS) technology |
| Law Firm: | Fish & Richardson P.C. |
| Case Name: | Cricket Communications, Inc. v. HipCricket, Inc. |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2008–2009 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | California Constitution, Article VI, § 10, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Albrecht v. mBlox, Inc. et al |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2008–2009 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Blim & Edelson, LLC |
| Case Name: | Satterfield v. Simon & Schuster, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2007–2009 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Walker v. Motricity, Inc. |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Rynearson v. Motricity, Inc. |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

<div align="center">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

| | |
|---|---|
| Type of Matter: | California Constitution, Article VI, § 10, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Reed v. Sprint Nextel Corporation |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Paluzzi v. CellCo Limited Partnership (dba Verizon Wireless) and mBlox. Inc. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Nava v. Predicto Mobile, LLC |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | McFerren v. AT&T Mobility, LLC |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Guerrero v. MobileFunster, Inc. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Computer Fraud and Abuse Act, 18 U.S.C. Article § 1030, class action related to |

short message service (SMS) technology and unlawful charging of cellular
telephone customers

| | |
|---|---|
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Gray v. Mobile Messenger Americas, Inc. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Goddard v. Google, Inc. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Duffy v. Nevis Mobile, LLC |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Criswell v. MySpace, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453 and 28 U.S.C. § 1367(a) class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Bradberry v. mBlox, Inc. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | California Constitution, Article VI, § 10, class action related to short message |

<div align="center">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

|  |  |
|---|---|
|  | service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Ayers v. Media Breakaway, LLC |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| Type of Matter: | Intellectual property (patents) related to wireless location based services (LBS) |
|---|---|
| Law Firm: | Hahn Loeser & Parks, LLC |
| Case Name: | Emsat Geolocation Technology, LLC v. CellCo Limited Partnership (dba Verizon Wireless) et al |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2008 |

*Expert Engagement:*

| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
|---|---|
| Law Firm: | Blim & Edelson, LLC |
| Case Name: | Valdez v. Sprint Nextel Corporation |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2007 |

*Expert Engagement:*

| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 201 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
|---|---|
| Law Firm: | Blim & Edelson, LLC |
| Case Name: | Bradberry v. T-Mobile USA, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2007 |

*Expert Engagement:*

| Type of Matter: | California Computer Crime Law, Cal. Pen. Code § 502 and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 class action related to short message service (SMS) technology |
|---|---|
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Abrams v. Facebook, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2007 |

*Expert Engagement:*

| Type of Matter: | Intellectual property (patents) related to short message service (SMS) technology |
|---|---|

## Randall A. Snyder
## Curriculum Vitae

Law Firm:              Paul Hastings LLP
Case Name:             TeleCommunication Systems, Inc. v. Mobile365, Inc.
Services Provided:     Testifying expert, expert reports, depositions, trial testimony for defendant
Disposition:           Settled
Date:                  2007



*Wireless Research Services*

Wireless Research Services, LLC
Rate Sheet January 1, 2017

# Wireless Research Services, LLC

## 2017 Rate Sheet

| ITEM | FEE |
|------|-----|
| Non-refundable Retainer at Time of Engagement | $4,000 |
| Expert Witness Consulting, Expert Reports | $475 per hour |
| Depositions, In-court Testimony | $500 per hour |
| Required Travel, Lodging, Board and Administrative Expenses | $1,000 per airline travel day plus actual incurred expenses |
| Invoicing | Payment due upon receipt |
| Penalty for Late Payments | 10% of total invoice added after each 30 days late until full payment is received |

By signing below and returning an executed copy to Wireless Research Services, LLC along with payment of the non-refundable retainer, you agree to the payment terms contained on this rate sheet.

Agreed to by: _Jennifer Rust Murray - Jennifer Rust Murray_

Law firm/Company: _Terrell Marshall Law Group PLLC_

Case Name: _Abante Rooter et al. v. Alarm.com, Inc., No. 4:15-cv-06314-YGR_

Date: _12|13|17_

# EXHIBIT B



ytel.com/marketing-suite/interact/

Call Center Software for Inbound, Outbound, and Blended Interactions | Ytel

Overview      Acquire at Scale      Track and Automate      **Interact and Execute**

# All in one contact center, customizable for every department to communicate how teams and customers choose.



### Inbound

Deliver a 5 star customer experience with turnkey ACD, IVR, and CTI.

### Blended

Get access to custom settings for inbound and outbound call blending.

### Outbound

Choose your dial type: progressive, preview, power, and predictive dialing.

# Communication Channels



# Perfect Your Outbound Dialing Strategy

PATRICK KENNEDY, YTEL | 26 JUNE 2017

Everyone is looking for the same thing in general with an outbound dialing strategy. Your company wants to improve connection rates and lower the amount of time and money that you spend making each sale. Your ROI hinges on the training and the talent of your call center staff. However, your outbound dialing strategy also has a great deal to do with your success. Here are some of the best ways to use this piece of technology to perfect your outbound dialing strategy.

All of the tips below are predicated on having a predictive dialer, which is one of the best pieces of hardware that you can use to upgrade your dialing. Predictive dialers help to create continuous connections, reduce phone downtime per agent per day and raise outbound KPIs.

## Improve Your Customer Acquisition Lists

Everything starts from a great initial list. Make sure that you have a healthy list that corresponds with your target audience. Keeping your agents on the phone all day with unqualified clients is the worst use of their time and yours. Connect your CRM with your contact center solution to continuously improve the quality of your call lists. Also, segment your lists between buyer profiles to ensure that you are calling the right one for the campaign at hand.

## Using Automation

Used in tandem with one another, predictive dialing and automation will speed up your call frequency exponentially without reducing call quality. This system type will not even give your call center agents a chance to waste time between calls – once one call is complete, the next one is queued up immediately. This also reduces human error in dialing manually. You also have the ability to engage predictive dialers that delve into the proficiency of your individual agents. Overall, you should expect improved KPIs and a higher ROI from your dialing activities each day.

Google Custom Search



Subscribe to **Ask**.Ytel and Never Miss a Post

SUBSCRIBE

## FEATURED STORIES



High Converting Voice Campaigns with Ringless Voicemail

Conversational Marketing: It's In High Demand

Culture is a Team Sport: Build a Positive Culture

# EXHIBIT C



# Nationwide Alarms LLC



800.382.4913

Ytel, Inc.
17595 Harvard Ave.
Suite C161
Irvine, CA 92614

YTEL_000001



# Introduction

Ytel, Inc. offers cutting edge, proprietary cloud based communications services, featuring turn-key contact center and business communications Software (as that term is defined in the Ytel, Inc. End User License Agreement ("EULA")).  Through multi-channel communications and 100% web-based technology, Ytel, Inc. can help you ("Customer") lower costs, increase revenue, and improve your customers' experience.

# Services

- ☑ Cloud Contact Center
- ☐ Message360™: Custom Platform Services
- ☐ Message360™: Voice Messaging Application
- ☐ Message360™: Voice Messaging Plus Application

Legal Version {00118002:1} Ytel Version 4.2
Copyright © 2014 Ytel, Inc.| All Rights Reserved

YTEL_000002



# Scope

The Cloud Contact Center™ software application ("CCC") is a Software application that assists in the management and running of a call center.  The CCC runs on a network owned and operated by Ytel, Inc.  Subject to the restrictions set forth in the Order Form below (as well as the EULA and Ytel, Inc. Master Services Agreement), Customer can deploy the CCC to multiple agents in multiple locations.  The CCC can accept inbound calls, make manual outbound calls and make automated outbound calls to increase agent utilization.  The technical requirements associated with operating the CCC can be found at the following web address: https://support.ytel.com/hc/en-us/articles/201497670.

The Message360™ custom platform service ("Message360") is an infrastructure as a service that allows Ytel employees to program custom platform services ("CPS") on behalf of customer requirements.  Company also has a library of pre-built software applications that run on top of Message360.  They Voice Messaging ("Voice Messaging") which allows customers to upload a phone list and have our network call that list with a pre-recorded message and Voice Message Plus ("Voice Message Plus") which allows customer to upload a phone list, have our network call that list, schedule stop and start times of calling, and view advanced reports on the result of calling said list.

Any software application, functionality, feature, product and/or service (collectively, "Customization") that is/are not expressly included in this Scope and/or Order Form below, whether or not such Customization was included in any oral representation by Ytel, Inc. personnel, shall not be deemed to be included herein, and shall only be made available to Customer at an additional cost, as separately negotiated by the parties and memorialized in a writing executed by both parties.

YTEL_000003



# CCC Features

- Inbound, outbound and blended call handling
- Ability to set-up and manage multiple inbound and outbound campaigns
- HTML5 web-based agent interface
- Ability to use soft phone (Ytel, Inc. Approved X-Lite Version) or Zoiper
- Ability to use web-based phone (Windows only) located inside the agent interface
- 90 Days of call recordings.  Available via web interface. FTP access available upon request
- Three way calling with ability to transfer calls to external source
- Web-based IVR editor to control flow of inbound calls
- No agent and after hours call handling
- Ability to display a dynamic script (dynamic fields supported) per campaign or list
- Ability to transfer customer information from one agent screen to another agent screen
- Ability to "park" customers with custom on-hold music
- Screen pop lead information to agent contact tab.
- Screen pop external CRM via the method of http get (request info from a web server)
- Ability to set-up custom fields for each list
- Ability to set outbound caller ID per campaign, per list or based on customer area code
- Ability to start/stop the recording of agent calls at any time
- Ability to record all calls
- Ability to dial alternate phone numbers for the same customer record
- Agents can schedule a callback to a specific customer/lead
- Callbacks can be handled by the agent who scheduled the callback, or the first available agent
- Ability for agents to use hot keys (quicker call handling)
- API to control agent session. Latest documentation available at http://support.ytel.com/
- API to send data to CCC. Latest documentation available at http://support.ytel.com/
- Built in time clock to track agent hours.  Not to be used for HR payroll reporting
- Ability to work with Ytel, Inc. approved hard phones.  List available at http://support.ytel.com/
- Managers can listen to, or join, in-progress agent/customer calls
- Agents can select "pause codes" so that manager(s) can track agent idle time (break, etc)
- Agents can see calls in queue (manager(s) can turn this feature on/off)
- Ability to export customer and call data from web based interface
- Real-time system dashboard.  Screenshot example available at www.ytel.com
- E-Mail API : Ability to send customers an e-mail with one click
- Use SQL to apply filters to any campaign (example:  filter data by state)

YTEL_000004



# Order Form, EULA and MSA

This Order Form ("Order Form"), consisting of the Scope, Features, Order Form, CCC Pricing, Message360 Pricing, Optional Services, Credit Card Authorization and Card on File, is made and entered into by and among Nationwide Alarms LLC with a business address 999 Main St Unit 111 Pawtucket Providence RI 02860 ("Customer"), and Ytel, Inc., with a business address located at 27422 Portola Parkway, Suite 100, Foothill Ranch, California 92610 ("Company"). **This Order Form is subject to the Master Services Agreement ("MSA"), as well as the End User License Agreement ("EULA") appended thereto.** To the extent that anything in or associated with this Order Form is in conflict or inconsistent with: (a) the MSA, the MSA shall take precedence unless otherwise stated to the contrary herein or in the MSA; and/or (b) the EULA, the EULA shall take precedence unless otherwise stated to the contrary herein or in the EULA. Any capitalized terms not defined herein shall have the meaning set forth in the MSA, unless set forth to the contrary herein.

## Setup Fee

Customer agrees to pay nonrefundable set-up fees for to the specific Services (which includes the Software, as that term is defined in the EULA) requested in this Order Form. Access to the Services will not be made available by Company, nor will access to production level support be provided by Company, until such funds have been received.

## Billing

Customer shall be billed for the Services in the amounts, and as per the schedule, set forth in this Order Form. Company shall monitor non-recurring usage ("NRC") and/or actual usage each month. Company reserves the right, at any time, to bill for NRC or actual usage where Customer's applicable usage exceeds one hundred and ten percent (110%) of the amount specified in this Order Form.

## Payment

Customer shall either pre-pay for Services, or pay by wire, bank deposit or credit card within four (4) days of receiving each invoice from Company. Where Customer fails to make any scheduled payment when due, such overdue amounts will be subject to interest charges in the amount of the lesser of one and one half percent (1.5%) per month, compounded monthly, or the maximum amount permitted by law. Customer shall pay a Twenty-Five Dollar ($25.00) service fee for any returned check, or the actual fees charged by any financial institution arising from any charges related to non-payment of funds, whichever is higher. In addition, Company shall be entitled to recover all reasonable costs of collection (including agency fees, attorneys' fees, court costs and expenses) incurred in attempting to collect payment from Customer hereunder. Company may immediately terminate the Agreement, and deny access to the Services, for non-payment on any past due amounts.

## Term

This Order Form, the MSA and the EULA shall be effective on the Start Date and continue for an initial term of thirty six (36) months. Upon the expiration of the initial term, and any subsequent term, this Order Form, the MSA and the EULA shall renew automatically for additional one (1) year periods, unless terminated: (a) by either party by providing ninety (90) days' prior written notice (notice from Customer can be sent to billing@ytel.com); and (b) as otherwise set forth in the MSA and/or EULA.

YTEL_000005



# CCC Pricing

| Product | Qty | List Price | Discount | Sales Price | Subtotal |
|---|---|---|---|---|---|
| Term (in months) | 36 | | | | |
| | | | | | |
| Setup (One Time) | 1 | $1,500.00 | -$1,500.00 | $0.00 | $0.00 |
| Cloud Contact Center Seats (Openers) | 15 | $100.00 | | $100.00 | $1500.00 |
| Minutes & Phone Numbers | | | | | |
| Inbound Local Minutes | 6666 | $0.01500 | | $0.01500 | $100.00 |
| Outbound Interstate Minutes (Out of state) | 0 | $0.01500 | | | Included in Unlimited package |
| Outbound Intrastate Minutes (In state) | 0 | $0.01650 | | | Included in Unlimited package |
| Inbound Toll Free Minutes | 0 | $0.02500 | | $0.02500 | Usage |
| DID Activation Fee Per Number | 50 | $5.00 | -$2.50 | $2.50 | $125.00 |
| DID Monthly Fee (Local) | 50 | $5.00 | -$2.50 | $2.50 | $125.00 |
| DID Monthly Fee (Toll Free) | 0 | $10.00 | -$5.00 | $5.00 | $0.00 |
| Outbound Add On | | | | | |
| 3:1 unlimited Outbound Min/Long Distance | 10 | $30.00 | | $30.00 | $300.00 |
| Custom Recommendations (Monthly) | | | | | |
| | | | | | |
| Custom Recommendations (One Time) | | | | | |
| Automatic Account Top Off | Y | | | | |
| When balance reaches | 25 | | | | |
| Top off with amount | 100 | | | | |
| Monthly Minimum | | $500 | | | |
| Monthly Fees | | | | | $1925.00+ inbound Minutes |
| Total Due Today | | | | | $2025.00 |

Ytel, Inc. | 17595 Harvard Ave, Suite C161 Irvine, CA 92614 | 800.382.4913
Legal Version (00118002;1) Ytel Version 4.2
Copyright © 2014 Ytel, Inc.| All Rights Reserved

6

YTEL_000006



# Optional Services

| Standard | |
|---|---|
| Suppression Lists (each list) | $25 |
| Custom Caller ID Name (monthly) | $1 |
| Port In - Resporg to Ytel (per number) - [Minimum of $100 NRC] | $0 |
| Port Out - Resporg Away (per number) - [Minimum of $100 NRC] | $10 |
| XML Feeds (monthly per feed) | $150 |
| Professional Audio Recordings (per file-recording) | $25 |
| Company Name Change | $1,000 |
| Onsite Monitoring Server (monthly) | $500 |
| Need a hard phone? Access our wholesale account at www.netxusa.com | $0 |
| Benchmark Report (We review your entire system and processes) | $800 |
| Professional Services (Tech support is already included, this is for custom work) | $200 |
| Recording Server FTP Login (monthly) | $75 |
| Vanity Number (800 and hard to find numbers) | Upon Request |
| Wireless Phone Scrubbing (per request) | $0.0003 |
| Agent-to-Agent Chat (monthly) | $99 |
| Message360 Advanced IVR & Call Flows (Basic IVR is included with X5) | $0.025 |
| Call Recording (Up to 90 Days) | Included |
| Call Recording (90+ Days) | Call |
| SQL Database Access (monthly) | $500 |
| Become Ytel Certified. 3 Day Course in Foothill Ranch, CA. Includes food/lodging. | $3000 |
| Phone Number Lookup (Carrier Lookup up to 100 numbers) | $25 |
| | |
| Training | |
| Initial training includes 2 hours of training | Included |
| Additional Remote Training (per hour) | $200 |
| On-Site Training -- 6 Hours -- Within 100 Miles of zip code 92620 (per day) | $1,000 |
| On-Site Training -- 100+ Miles from zip code 92620 | Upon Request |
| | |
| Smart Admin | |
| Smart Admin (20 Hours + Dedicated Support Number). 25% Discount. | $3,000 |
| Smart Admin (40 Hours + Dedicated Support Number). 35% Discount. | $5,200 |
| Smart Admin (80 Hours + Dedicated Support Number). 45% Discount. | $8,800 |
| Smart Admin (160 Hours - Full Time Engineer). 55% Discount. | $14,400 |
| *3 Month Minimum Addendum on Smart Admin Agreements. OS v2.0 | |

YTEL_000007



# Credit Card Authorization

Customer must complete this Credit Card Authorization form to schedule payments which will automatically be charged by Company to Customer's credit card.

Recurring Payments:

Upon completing this Credit Card Authorization form, and depending on the applicable Services selected by Customer, the amount due for the applicable Services ordered will be billed directly to the credit card provided below, or later updated ("Card on File"), on a monthly, recurring basis.  Customer authorizes Company to charge for any and all fees associated or related to any service provided to Customer by Company, whether recurring or non-recurring, one-time, or for any billable charge. Customer acknowledges and agrees that Company will not obtain any additional authorization from Customer for this recurring payment.  Every time that Customer uses the Services, Customer re-affirms that Company is authorized to bill Customer's Card on File and to have the monthly fees applied to same.  ALL CHARGES ARE FINAL AND NON-REFUNDABLE.

The fees associated with the Services will appear on Customer's Card on File statement through the identifier "Ytel," "Ytel, Inc.," "YTEL 800 382 4913" or some variation thereof, depending on the preferences associated with the provider of the Card on File.  Failure by Customer to use the Services does not constitute a basis for refusing to pay any associated charges.

Company's authorization to provide and bill for the Services may be obtained by way of Customer's electronic signature or, where applicable, via physical signature and/or voice affirmation. Once an electronic signature is submitted, this electronic order constitutes an electronic letter of agency.  Company's reliance upon Customer's electronic signature was specifically sanctioned and written into law when the Uniform Electronic Transactions Act and the Electronic Signatures in Global and National Transactions Act were enacted in 1999 and 2000, respectively. Both laws specifically preempt all state laws that recognize only paper and handwritten signatures.

YTEL_000008



# Card on File

| Credit Card Number | CVV | Expiration Date |
|---|---|---|
| ***************** | 633 | 08/19 |

Name on Card

Barry A Crins

Billing Address

85 garfield ave

Billing Zip Code

02920

This credit card will be used to automatically bill for all charges set forth herein order form

YTEL_000009



# Authorization

I, the undersigned acting as an authorized agent of Customer, authorize the Company to charge the credit card provided above according to the terms outlined above. If any of the above-noted payment dates fall on a weekend or holiday, I understand that payment(s) may be executed on the next business day.  I understand that this Credit Card Authorization will remain in effect until I cancel it in writing by e-mailing billing@ytel.com, subject to the cancellation terms of the Order Form, MSA and EULA.  This Credit Card Authorization is provided for purposes of paying for the applicable Services set forth above. I certify that I am an authorized user of this credit card and that I will not dispute the scheduled payments with my credit card company, provided that the transactions are in accordance with the terms indicated in this Credit Card Authorization, the Order Form, MSA and EULA.

SIGNATURE

**IN WITNESS WHEREOF**, the Parties have executed this Order Form as of the date below each Party's respective signature.

CUSTOMER
Customer Name:

**Signature:** *Joseph Moretti*
Joseph Moretti (Dec 3, 2015)

**Email:**  jmoretti.nationwidealarms@gmail.com

COMPANY
Ytel, Inc.

**Signature:** Jeff Jones (Dec 3, 2015)

**Email:**  jeff@ytel.com

Ytel, Inc. | 17595 Harvard Ave, Suite C161 Irvine, CA 92614 | 800.382.4913
Legal Version {00118002;1} Ytel Version 4.2
Copyright © 2014 Ytel, Inc.| All Rights Reserved

10

YTEL_000010



# Master Services Agreement ("MSA")

This MSA is made and entered into by and between the individual or entity executing this MSA as the customer ("Customer") and Ytel, Inc. ("Company").  For purposes of this MSA, Customer and Company shall be referred to collectively as the "Parties" and each individually as a "Party."

**WITNESSETH:**

**WHEREAS**, Company supplies certain software, platforms, technology and communications services and/or consulting services of any kind, including, without limitation, the Software (as defined in the End User License Agreement ("EULA") attached hereto, which is incorporated herein by reference), and consulting services, if any, (collectively, the "Services"), as further specified below, in the EULA and in the Order Form, respectively, and Customer desires to utilize said Services; and

**WHEREAS**, for purposes of this MSA, the term "Order Form" shall refer to the Scope, Order Form and Credit Card Authorization, each of which is incorporated herein by reference (this MSA, the EULA and the Order Form shall be referred to, collectively, as the "Agreement").

**NOW THEREFORE**, in consideration of the respective representations, warranties, covenants and agreements set forth in the Agreement, and subject to Company having all necessary approvals, facilities and agreements to provide the Services, Customer and Company agree as follows:

1.  **START DATE.**  For purposes of the Agreement, the "Start Date" will be the date that Customer and Company sign each of the Order Form, the EULA and this MSA.  Beginning on the Start Date, Company will provide the Services to Customer, as specified both in the EULA and the Order Form.  If a conflict exists between the general terms of this MSA and the specific terms of the Order Form, the specific terms of the Order Form will prevail. If a conflict exists between the general terms of this MSA and the specific terms of the EULA, the specific terms of the EULA will prevail with respect to the Software only.

2.  **TAXES.**  Customer is responsible for, and must pay, any and all applicable sales, use, excise, public utility, or other taxes, regulatory fees and charges now in force or enacted in the future, by any federal, state, local or other governmental body, as well as any other additional costs that may arise as a result of Customer's use of the Services. Similarly, Company may pass through to Customer taxes and fees owed by Company associated with Customer's access to and use of the Services to the extent permissible by law. Said amounts, if any, are in addition to set-up fees and/or charges associated with the consumption of the Services. If Customer is exempt from paying any taxes or fees, Customer must provide documentation, acceptable to Company, certifying that Customer is exempt. Tax exemption will only apply from and after the date that Company acknowledges Customer's exemption request. Customer agrees to indemnify and hold Company, its third party vendors, and their respective parent companies, subsidiaries, affiliated companies, as well as the employees, directors, officers and shareholders of same, harmless from and against any and all claims, liabilities, losses, judgments, damages and expenses including, without limitation, attorneys' fees and costs of litigation, incurred or suffered by such party relating to or arising out of any exemption claimed by Customer.

3.  **BILLING ADJUSTMENTS.**  Any request for a billing adjustment shall be made in good faith and by e-mail to Company at billing@ytel.com. Any such request shall include detailed documentation to establish the basis for any requested adjustment.  Company will determine, in its sole, good-faith discretion, whether any adjustment shall be made and any such adjustments will be credited to Customer's account balance. If a request for a billing adjustment is not made to the e-mail address indicated above within seven (7) days, the charges shall be deemed final, valid and binding, and Customer waives its rights to any credits, offsets or adjustments with regard thereto.

Ytel, Inc. | 17595 Harvard Ave, Suite C161 Irvine, CA 92614 | 800.382.4913

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000011



4.  **LATE PAYMENT.**  Company may suspend the Provision of Services indefinitely and/or terminate this MSA, the EULA and any Order Form, in Company's sole and absolute discretion, if payment on any invoice is not received in the time period specified.

5.  **TERMINATION.**  Company shall have the right to limit, suspend and/or terminate Services in the event that, in Company's reasonable determination, Customer's use of the Services is: (a) materially adversely affecting Company's facilities or its ability to provide services to other customers; (b) unlawful, unauthorized or fraudulent; or (c) otherwise in breach of this MSA, the EULA and/or the Order Form.  In the event of any termination of the Agreement, Customer shall pay to Company, immediately upon receipt of any applicable invoice, any and all amounts due to Company under the Agreement.

6.  **RESPONSIBILITIES OF THE PARTIES.**

a.  **COMPLIANCE.**  Customer represents and warrants that it is aware of, and it and its use of the Services will comply in all respects with: (i) the various state and federal Do Not Call ("DNC") laws, and those governing the National Do Not Call Registry ("NDNCR"), the Telephone Consumer Protection Act (47 USC § 227), and its implementing regulations adopted by the Federal Communications Commission (47 CFR § 64.1200), as amended from time-to-time ("TCPA"), the Amended Telemarketing Sales Rule ("ATSR"), 16 CFR 310 et seq., and Telephone Preference Service ("TPS") laws and/or regulations; (ii) the various Canadian National Do Not Call List Rules ("DNCL"), Telemarketing Rules and Automatic Dialing-Announcing Device ("ADAD") Rules; (iii) applicable telemarketing record keeping requirements; (iv) call hour/time of day restrictions (as required by applicable law or as directed by the called party during the course of the call); (v) disconnect and call abandonment requirements; (vi) prohibitions against contacting facilities and telephonic devices of certain classifications using autodialers (or any other automatic telephone dialing system), artificial voice calls and/or pre-recorded calls without "prior express written consent" (as defined under the TCPA) in each instance; (vii) caller identification and consent requirements; (viii) live operator requirements; and (ix) opt-out and internal do-not-call request requirements (collectively, "Applicable Law"). Some information regarding the DNC, TCPA, TSR, TPS and the Canadian Rules (DNCL, Telemarketing Rules, and ADAD) can be found at:

- http://www.donotcall.gov (DNC)
- http://www.fcc.gov (Federal Communications Commission and the TCPA)
- http://www.ftc.gov (Federal Trade Commission and the ATSR)
- http://www.tpsonline.org.uk/tps (TPS)
- https://www.lnnte-dncl.gc.ca/nrt-ntr-eng (DNCL, Telemarketing Rules, and ADAD Rules)

Without limiting the foregoing, Customer represents and warrants that: (A) at all times prior to and after the effective date of this MSA, the database of consumers to be contacted utilizing the Services ("Customer Database") was/shall be generated, collected, stored and used in compliance with Applicable Law; (B) the Customer Database consists of records of persons who have supplied express affirmative consent to receive commercial telephone calls from Customer; (C) Customer shall scrub the Customer Database against the NDNCR, any and all state DNC Registries and against its internal do-not-call list prior to calling any consumers in the Customer Database; and (D) the Customer Database shall consist of individuals that have provided "prior express written consent" to receive commercial telephone calls (including pre-recorded calls, artificial voice calls and/or autodialed calls) from Customer, within the meaning of the TCPA, to the telephone number(s) provided by such individuals.  Customer shall retain the records of each individual's "prior express written consent" ("Consent Records") for a minimum of five (5) years following creation of same, and shall provide such Consent Records to Company within three (3) business days of receipt of a Company request for same, at any time.  The Consent Records shall include, at a minimum, the language used to obtain "prior express written consent," the IP address of the source of the consumer data (or telemarketing voice consent capture tapes, if applicable) and the date and time stamp indicating the time that the consumer data was collected.

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000012



b.   **CONTENT/CAMPAIGN SERVICES/CAMPAIGN PRODUCTS.**  Customer is and shall be solely responsible and liable for: (i) the creation, editorial substance, control and all other aspects of its own data, and third party data utilized by it in connection with the Services, including, but not limited to, source code, phone numbers in the Customer Database, programs, telemarketing scripts, databases, voice files and/or any other computer code ("Content"); (ii) the acts and omissions of any and all employees, contractors and/or agents performing telemarketing and other services on its behalf ("Campaign Services"); and (iii) the products and/or services marketed in connection with the Services ("Campaign Products").

c.   **NO HARMFUL CODE.**  Customer represents and warrants to Company that no Content shall be knowingly transmitted by Customer in connection with the Services containing any program, routine or device which is designed to delete, disable, deactivate, interfere with or otherwise harm any software, program, data, device, system or service including, without limitation, any 'time bomb,' virus, drop dead device, malicious logic, worm, Trojan horse or trap or back door.

d.   **INDEMNIFICATION.**  Customer agrees to indemnify, defend and hold harmless Company and its officers, directors and employees from and against any losses, claims, obligations, liabilities, damages, settlements, costs and expenses (including, but not limited to, consequential damages, incidental damages, special damages, disbursements and attorneys' fees, including attorneys' fees incurred by counsel selected by Company in its sole discretion) arising from or relating to any actual or threatened claim (regardless of any fault or truth to any allegation), suit, action, proceeding, governmental investigation or enforcement action based upon or arising out of: (i) any breach of the Agreement by Customer; (ii) the Customer Database, Content, Campaign Products and/or Campaign Services; and/or (iii) any other acts or omissions of Customer.

7.   **INTELLECTUAL PROPERTY.**

a.   **OWNERSHIP.**  All right, title and interest, including all intellectual property rights and any associated hardware and software of Company or its licensors, and any updates, upgrades or modifications thereof, in and to any ideas, know-how, and/or programs developed by Company or its licensors (including the Services and associated Software) during the course of performance of the Agreement shall remain the property of Company or its licensors.  All right, title, and interest in and to any Content communicated via Company's infrastructure through use of Company Services and any applications shall remain the sole property of Customer and/or its customers or third parties as applicable.

b.   **RESTRICTIONS.**  Customer shall not: (i) disassemble, reverse engineer, decompile, or otherwise attempt to derive source code from the software or documentation, modify, adapt, create derivative works based upon, or translate any Services (including the Software or associated documentation) owned and/or provided by Company; or (ii) copy, install or use Services (including the Software or associated documentation) on any of its computer systems, servers or networks without Company's prior written consent.

8.   **LIMITATION OF LIABILITY.**  OTHER THAN FOR INDEMNIFICATION OBLIGATIONS ARISING HEREUNDER, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY, ANY OF ITS CUSTOMERS OR ANY OTHER PERSON, FIRM OR ENTITY FOR DIRECT, INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, ACTUAL OR PUNITIVE DAMAGES, OR FOR ANY LOST PROFITS OF ANY KIND OR NATURE WHATSOEVER, UNDER ANY LEGAL OR EQUITABLE THEORY, EVEN IF FORESEEABLE, ARISING OUT OF ANY MISTAKE, ACCIDENT, ERROR, OMISSION, INTERRUPTION, OR DEFECT IN TRANSMISSION, OR DELAY ARISING OUT OF OR RELATING TO THE SERVICES OR THE OBLIGATIONS OF EACH PARTY PURSUANT TO THE AGREEMENT INCLUDING, WITHOUT LIMITATION, ANY FAILURE TO PROVIDE TIMELY, ACCURATE PROVISION, OR INSTALLATION OF ANY PORTION OF THE SERVICES, OR CONDITIONS WHICH MAY RESULT FROM ACTIONS OF REGULATORY OR JUDICIAL AUTHORITIES.

3

YTEL_000013



9.  **DISCLAIMED WARRANTIES.**  EXCEPT AS EXPRESSLY SET FORTH IN THIS MSA, THERE ARE NO OTHER WARRANTIES, EXPRESS OR IMPLIED HEREUNDER.  THE SERVICES ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS WITHOUT ANY WARRANTY OR CONDITION OF ANY KIND, EITHER EXPRESS OR IMPLIED.  USE OF THE SERVICES IS AT CUSTOMER'S OWN RISK.  COMPANY DOES NOT WARRANT THAT THE SERVICES WILL MEET CUSTOMER'S REQUIREMENTS OR THAT OPERATION OF THE SERVICES WILL BE UNINTERRRUPTED, ERROR FREE, SECURE, ACCURATE, COMPLETE OR CURRENT. WITHOUT LIMITATION, TO THE FULLEST EXTENT PERMISSIBLE BY LAW, THIS DISCLAIMER EXTENDS TO IMPLIED WARRANTIES AND CONDITIONS OF MERCHANTABLE QUALITY, FITNESS FOR A PARTICULAR PURPOSE, WARRANTIES ARISING BY STATUTE OR OTHERWISE IN LAW AND/OR FROM A COURSE OF DEALING OR USAGE OF TRADE.    COMPANY'S SOLE AND EXCLUSIVE OBLIGATION, AND CUSTOMER'S SOLE AND EXCLUSIVE REMEDY, FOR ANY BUG, ERROR OR OTHER FAILURE OF THE SERVICES TO PERFORM AS SET FORTH IN THE AGREEMENT IS A CREDIT OR REFUND, AT COMPANY'S SOLE DISCRETION, BASED ON THE ORIGINAL CHARGE FOR THE APPLICABLE SERVICES.

10.  **REGULATIONS.**  The Agreement is made expressly subject to all present and future valid orders and regulations of any regulatory body having jurisdiction of the subject matter of the Agreement and to the laws of the United States of America, any of its states, or any foreign governmental agency having jurisdiction.  If any terms of the Agreement are found in conflict with any law, the Agreement shall be deemed modified to the extent necessary to make it comply with the law in such a way as is consistent with the intent and purpose of the Agreement.

11.  **NO AGENCY.**  Neither Party is authorized to act as an agent for, nor legal representative of, the other Party. Neither Party has the authority to assume nor create any obligation on behalf of or binding on the other Party.

12.  **FORCE MAJEURE.**  Other than for payment obligations arising hereunder, if either Party's performance under the Agreement is restricted or interfered with, in whole or part, by causes beyond its reasonable control including, but not limited to, acts of God, fire, explosion, vandalism, cable cut, utility curtailments, power failures, storm or other similar occurrence, any law, order, regulation, tariffs or rates which make it impossible or impractical for it or its service providers to provide its services at the current rates, request of the United States government, or of any agency, court, or other instrumentality or civil or military authority, or by national emergency, insurrection, riot, war, strike, lockout or work stoppage or other labor difficulties, supplier failure or shortage or breach or delay ("Force Majeure Event"), then such Party shall be excused from its performance on a day-to-day basis to the extent of the subject Force Majeure Event.  Company's obligation to provide Services is subject to and contingent on the continuation of Company's agreements with its underlying service providers to provide the applicable services to Company at the current rates and on the same conditions under which such service providers are currently providing or offering to provide the applicable services to Company.  Any changes in or termination to those agreements will relieve Company of its obligations and all liability under the Agreement.

13.  **NO WAIVER.**  The failure of either Party to enforce or insist upon compliance with any of the terms of the Agreement or the wavier of any terms contained within the Agreement does not constitute a general waiver or relinquishment of any other terms of the Agreement.

14.  **ASSIGNMENT/BINDING EFFECT.**  The Agreement is binding upon, and inures to the benefit of, the Parties and their respective successors and assigns.  Customer  will not  assign, transfer, license or otherwise transfer all or any part of its rights, duties or other interests in or to the Agreement or the proceeds from the Agreement ("Assignment") without Company's prior written consent.  Company may make an Assignment without Customer's consent at any time during the term of the Agreement.  Any attempt to make an Assignment in violation of this provision shall be null and void.  Customer shall provide written notice to Company of any material change in its ownership (which is defined as a change in ownership affecting majority voting control of at least 50.1%). No Assignment will release either Party from its obligations arising under the Agreement.

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000014



15.  **AMENDMENT.**  This MSA, the EULA and/or the Order Form(s) may only be amended by an instrument in writing, signed by both Parties, except in the case of rate or fee change notifications which do not require Customer's signature to be effective.  The fees for Services may be modified WITH twenty-four (24) hour's e-mail notice to Customer. In the event of any dispute about the rates set forth in the Order Form and any amendments thereto, the rates quoted on the most recently dated amendment shall prevail.

16.  **ENTIRE AGREEMENT.**  This MSA, together with the EULA, Order Form(s) and any amendments/attachments hereto/thereto, supersedes and merges all prior agreements, promises, understandings, statements, representations, warranties and covenants and all inducements to the making of the Agreement relied on by either Party to the Agreement, whether written or oral, and embodies the Parties' complete and entire agreement with respect to the subject matter of the Agreement.  No statement or agreement, oral or written, made before the signing of the Agreement will vary or modify the written terms of the Agreement.

17.  **NO THIRD PARTY BENEFICIARIES.**  The Agreement is made solely for the benefit of Company and Customer, and their respective successors and permitted assigns.  Nothing in the Agreement should be interpreted to mean that Company and Customer are partners, joint venturers, co-owners or are otherwise participants in a common undertaking.  Neither Party nor its employees are given authority, express or implied, to represent, act for or otherwise create or assume any obligation on behalf of, or binding on, the other Party.  Nothing in the Agreement will confer any rights or remedies on any third party.

18.  **SEVERABILITY.**  If any terms of the Agreement are determined to be illegal, unenforceable or invalid, in whole or in part, for any reason, the terms shall be stricken and will not affect the legality, enforceability or validity of the remainder of the Agreement.  If any terms of the Agreement are stricken as a result of this Section 18, then the stricken provision(s) shall be deemed replaced, to the extent possible, with legal, enforceable, and valid terms that are as similar in tenor to the stricken provision(s) as is legally permissible.  All headings and titles contained in the Agreement are used solely to organize the contents of the Agreement and will not be used to affect the interpretation of the contents of the Agreement.

19.  **CONFIDENTIALITY.**  During the term of the Agreement, and until such time as the Confidential Information (as defined below) is no longer protectable under applicable state law, neither Party will use or disclose any Confidential Information of any other Party except as specifically contemplated herein.  For purposes of the Agreement, "Confidential Information" means: (a) information that is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; (b) the terms of this MSA, the EULA, Order Form(s), any amendments/attachments hereto/thereto and any communications concerning same, including invoices; (c) information that is the subject of efforts that are reasonable under the circumstances to maintain its secrecy and/or confidentiality; and (d) all aspects of, and processes associated with, the Services (which shall be deemed Company's Confidential Information), all technical or non-technical data, formulae, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data and lists of actual or potential business partners.  Confidential Information does not include information that: (i) has been independently developed by the receiving Party without access to the disclosing Party's Confidential Information; (ii) has become publicly known through no breach of this Section 19 by the receiving Party; (iii) has been rightfully received from a third Party authorized to make such disclosure; (iv) has been approved for release in writing by the disclosing Party; or (v) is required to be disclosed by a competent legal or governmental authority. At the request of the disclosing Party, the receiving Party shall return all of the disclosing Party's Confidential Information to the disclosing Party.  When the Agreement terminates, the Parties agree to return to one another any and all materials and confidential information belonging to the other Party.  Both Parties agree that injunctive relief, including specific performance, for violation (or threatened violation) of the confidentiality provisions contained in this Section 19 is appropriate and shall be available to the non-breaching Party without a showing of irreparable harm or injury and without the necessity to post any bond whatsoever. Further, notwithstanding the termination of this Agreement

Ytel, Inc. | 17595 Harvard Ave, Suite C161 Irvine, CA 92614 | 800.382.4913

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000015



for any reason or by Agreement, neither party shall disparage, slander or libel the other on any social media or public internet site.  This term shall survive the termination of any termination of this agreement for any reason, whether by contract, rescission or operation of law.

20.  **REPRESENTATION OF AUTHORITY AND INTENT.**  Each Party represents and warrants to the other that the signing and delivery of the Agreement, and the performance of the Party's obligations under the Agreement, has been duly authorized and that the Agreement is a valid and legal agreement that is binding on the Parties and enforceable in accordance with its terms.  The Parties will, at their own costs and expense, execute and deliver any other documents and instruments and will take any other actions as may be reasonably required or appropriate to carry out the intent and purposes of the Agreement.

21.  **ESCALATION PROCEDURES.**  In the event of any disruption of Services or any problems with regard to Services provided by Company, Customer should e-mail support@ytel.com immediately and ask that the applicable problem be escalated to the Company manager on duty.

22.  **GOVERNING LAW AND ADJUDICATION OF DISPUTES.**  The Agreement is in all respects governed by the laws of the State of California, without regard to choice of laws.  The Parties specifically consent to the personal jurisdiction of the State of California for all disputes related to the Agreement. Any disputes that may arise under the Agreement shall be resolved in accordance with the laws of the State of California, and shall be adjudicated exclusively in the state or federal courts in the State of California.

23.  **COUNTERPARTS.**  The Agreement may be signed in several counterparts, each of which constitutes an original, but all of which will constitute one instrument.

24.  **NOTICES.**  Unless otherwise specifically provided for herein, any notice required by the Agreement is effective and deemed delivered: (a) three (3) business days after posting with the United States Postal Service when mailed by certified mail, return receipt requested, properly addressed and with the correct postage; (b) one (1) business day after pick up by the courier service when sent by overnight courier, properly addressed; and (c) immediately when sent via facsimile, via e-mail or by opening a support ticket by e-mailing support@ytel.com.  The Company ticketing system will provide a ticket number to Customer for reference. Notices will be sent to the addresses specified at the beginning of this document (if included), unless either Party notifies the other of an address/number change in writing.

25.  **HEADINGS.**  The headings in the Agreement are for convenience only and shall not affect the construction hereof.

26.  **DRAFTING.**  Each Party executing the Agreement agrees that it has fully participated in the drafting of the Agreement and that no Party shall be deemed to be the drafting Party.

27.  **ASSENT TO BE BOUND.**  Customer agrees to be bound by the terms of this MSA, and acknowledges that Customer is entering into a legally binding contract, by one or more of the following methods: (a) executing this MSA; (b) clicking to accept or agree where this option is made available to Customer; or (c) by actually using the Services. Customer should print or save a copy of this MSA for Customer's records.  If Customer does not agree with any part of this MSA, Customer is not authorized to access or use the Services.

28.  **ELECTRONIC SIGNATURES.**  Company's authorization to provide and bill for the Services may be obtained by way of Customer's electronic signature or, where applicable, via physical signature and/or voice affirmation.  Once an electronic signature is submitted: (a) this electronic order constitutes an electronic letter of agency; and (b) Customer hereby agrees to: (i) the use of electronic communication in order to enter into this MSA, place orders and create other records hereunder; and (ii) the electronic delivery of notices, policies and records of transactions initiated or completed through use of the Services.  Customer hereby waives any rights or requirements under any laws of

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000016



electronic records, to the extent permitted under applicable law.  Company's reliance upon Customer's electronic signature was specifically sanctioned and written into law when the Uniform Electronic Transactions Act and the Electronic Signatures in Global and National Transactions Act were enacted in 1999 and 2000, respectively.  Both laws specifically preempt all state laws that recognize only paper and handwritten signatures.

---

### SIGNATURE

**IN WITNESS WHEREOF,** the Parties have executed this Order Form as of the date below each Party's respective signature.

CUSTOMER
Customer Name:

Signature: *Joseph Moretti*
Joseph Moretti (Dec 3, 2015)

Email:  jmoretti.nationwidealarms@gmail.com

COMPANY
Ytel, Inc.

Signature: Jeff Jones (Dec 3, 2015)

Email:  jeff@ytel.com

---

# End User License Agreement – ("EULA")

This EULA, effective as of the last date that a Party executes below, is entered into by and between Ytel, Inc., hereinafter referred to as "Company" and the individual or entity executing this EULA as the end-user of the Software (as defined below) ("Customer"), shall continue in full force and effect until such time as it is terminated per the terms of this EULA.  For purposes of this EULA, Customer and Company shall be referred to collectively as the "Parties" and each individually as a "Party."

This EULA, and any modifications or subsequent versions entered into by and through a writing signed by both

Ytel, Inc. | 17595 Harvard Ave, Suite C161 Irvine, CA 92614 | 800.382.4913

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000017



Company and Customer, shall govern the provision of, access to, and use by Customer of, Company's software, associated telephone calls, data, files, information, online or electronic documentation, media and any other Company service applicable thereto (collectively, "Software"). This EULA shall be governed, and incorporated into, that certain Master Services Agreement to which it is attached (the "MSA").  To the extent that anything in or associated with this EULA is in conflict or inconsistent with the MSA, this EULA shall take precedence unless otherwise stated to the contrary herein or in the MSA.  Any capitalized terms not defined herein shall have the meaning set forth in the MSA.

**About Company:**  In connection with the Software, Company provides, as specified in an Order Form, online cloud-based software and related platforms including, but not limited to, inbound call center software, outbound calling applications, predictive dialing technology, voice broadcasting technology, Interactive Voice Response ("IVR") technology, sip trunking, audio conversion, telephone lobbying system technology, name and address capture, conferencing technology, database scrubbing and message play.  The Software allows Customer to contact businesses and individuals via telephone by using Customer's personal/business computer and associated broadband Internet connection.

**Assent to Be Bound:** Customer agrees to be bound by the terms of this EULA, and acknowledges that Customer is entering into a legally binding contract, by one or more of the following methods: (a) executing this EULA; (b) clicking to accept or agree where this option is made available to Customer; or (c) by actually using the Software.  Customer should print or save a copy of this EULA for Customer's records.  If Customer does not agree with any part of this EULA, Customer is not authorized to access or use the Software.

**Electronic Signatures:** Company's authorization to provide and bill for the Software may be obtained by way of Customer's electronic signature or, where applicable, via physical signature and/or voice affirmation.  Once an electronic signature is submitted: (a) this electronic order constitutes an electronic letter of agency; and (b) Customer hereby agrees to: (i) the use of electronic communication in order to enter into this EULA, place orders and create other records hereunder; and (ii) the electronic delivery of notices, policies and records of transactions initiated or completed through use of the Software.  Customer hereby waives any rights or requirements under any laws of electronic records, to the extent permitted under applicable law.  Company's reliance upon Customer's electronic signature was specifically sanctioned and written into law when the Uniform Electronic Transactions Act and the Electronic Signatures in Global and National Transactions Act were enacted in 1999 and 2000, respectively.  Both laws specifically preempt all state laws that recognize only paper and handwritten signatures.

**License and Restrictions/No Granting of Rights to Third Parties:** Customer shall not sell, assign, rent, lease, sublease, sublicense, encumber, use the Software (or other Services, as that term is defined in the MSA) in a timesharing or service bureau arrangement, permit simultaneous use of the Software (or other Services) by more than one user, distribute, export, import, act as an intermediary or provider or otherwise grant rights to third parties with regard to the Software (or other Services) unless approved in writing, in advance, by Company.  Unless expressly permitted hereunder, Customer shall NOT transfer the Software (or other Services) to any third party under any circumstances.  Any such purported transfer shall be null and VOID.

**No Modifications/Reverse Engineering:** Customer shall not undertake, cause, permit or authorize any modification, derivative works, translation, reverse engineering, decompiling, disassembling, hacking or other attempt to derive the source code associated with the Software, its related documentation, including translation or localization (code written to published Application Programming Interfaces ("APIs") for the Software shall not be deemed derivative works), or any part thereof except to the extent permitted by law.

**No Removal of Notices:** Customer agrees that Customer shall not remove or alter any trademark, logo, copyright, proprietary notices, legends, symbols and/or any other indication of intellectual property and/or proprietary rights that Company has in or to the Software (or other Services), whether such notice or indications are affixed on, contained in

Ytel, Inc. | 17595 Harvard Ave, Suite C161 Irvine, CA 92614 | 800.382.4913

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000018



or otherwise connected to any materials associated with the Software (or other Services).

**No Publishing:** Customer shall not publish any results of benchmark tests run on any Software to a third party without Company's prior written approval.

**Third Party Software:**  The Software may be incorporated into, and/or may incorporate, certain software, plug-ins, applications and other technology provided by, owned and/or controlled by third parties (collectively, "Third Party Software").  Any Third Party Software that may be provided with the Software is made available for use at Customer's option and at Customer's own risk.  Any such Third Party Software that may be distributed together with the Service and Software may be subject to Customer explicitly accepting license agreement(s), terms and conditions and/or privacy policies as made available by the applicable third party(ies).  Company is not responsible for any Third Party Software and shall have no liability whatsoever for Customer's use of, or inability to use, Third Party Software.  Customer acknowledges and agrees that it will proceed solely against the applicable third party, and not to Company or its affiliates, in connection with any dispute regarding the Third Party Software.

### LICENSE GRANT

**License Grant:**  Company hereby grants to Customer, subject to the terms, conditions, restrictions and limitations set forth in this EULA, a worldwide, non-exclusive, revocable, non-transferrable license to use those portions of the Software referred to herein as "Cloud Contact Center™," "Message360™," and "SimpleDial™."  The features associated with each of these Software offerings are as described below:

**Cloud Contact Center** – is a cloud based call center software application that enables Customer to accept inbound, and make outbound, telephone calls.   The Cloud Contact Center software has the ability to route inbound calls based on time, destination and source.  Outbound calls can be made manually, or in an automated fashion, using the Cloud Contact Center software.  The Cloud Contact Center Software enables Customer to generate reports on how many calls are made, both inbound and outbound, together with certain performance metrics of agents using the Cloud Contact Center software.

**Message360** – is a programming language, combined with a user portal, that enables Customer to design business communication messages.  These messages can be communicated via telephone calls, SMS text messages, chats, tweets, e-mail and direct mail.  Where Customer is utilizing Message360, its employees and agents can: (a) choose a series of options and be routed to internal or external destinations; and/or (b) speak or input DTMF digit tones to identify themselves or pass relevant information to Customer.  The IVR system associated with Message360 can be connected to Customer's systems to further enhance its communications options.  Examples include processing inbound calls and routing them to a destination based on customer input or sending pre-recorded telephone messages to many recipients.

**Software Product Support:** Absent another agreement, Company is under no obligation to provide technical support in connection with the Software under this EULA, and provides no assurance that any specific errors or discrepancies in the Software will be corrected.  Company reserves the right (but is not obligated) to add additional features or functions to the existing Software,  and to provide bug fixes, error corrections, patches, new releases or any other component not specified within this EULA, from time to time.  Customer acknowledges and agrees that Company has no obligation to make any subsequent versions of any component of the Software available to Customer, or to provide bug fixes, error corrections, patches, new releases or any other component not specified in this EULA.

### CUSTOMER'S RESPONSIBILITIES

**Lawful Purposes:** Customer shall use the Software for lawful purposes only.  In this respect, Customer may not, without limitation: (a) intercept or monitor, damage or modify any communication which is not intended for Customer;

9

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000019



(b) knowingly transmit content through the Software containing any program, routine or device which is designated to delete, disable, deactivate, interfere with or otherwise harm any software, program, data, device, system, or service from the Software including, without limitation, any 'time bomb', virus, drop dead device, spider, malicious logic, Trojan Horse, trap, or back door; (c) send any unsolicited communication not permitted by Applicable Law (as defined in the MSA); (d) expose any party to material which is offensive, harmful to minors, indecent or otherwise objectionable in any way; (e) use the Software to cause or intend to cause embarrassment or distress to, or threaten, harass or invade the privacy of, any third party; (f) use any material or content that is subject to any third party proprietary rights, unless Customer has the requisite license or permission from the owner of such rights to use same; and/or (g) use any caller ID or ANI that is fraudulent, unauthorized or false.

**Representations and Warranties:**  Customer represents and warrants that Customer is authorized to enter into and comply with the terms of this EULA.  Furthermore, Customer represents and warrants that Customer shall, at all times, comply with Customer's obligations as set forth in this EULA, as well as all Applicable Law in connection with Customer's use of the Software.

**Indemnification:** Without limiting the indemnification obligations set forth in the MSA, Customer agrees to indemnify and hold harmless Company and Company's affiliated entities, officers, directors, employees and agents from and against all costs, expenses, damages or other losses incurred in connection with actual or threatened claims and/or actions brought by any person or authority arising from or connected with: (a) any fraudulent, unlawful (or allegedly fraudulent or unlawful) telephone calls, messages or other communications delivered by Customer by and through the Software; (b) any violation by Customer of Applicable Law; (c) Customer's violation of any representation, warranty or covenant contained herein; and/or (d) any use by Customer (or anyone else using Customer's login information) of the Software.  If Customer fails to promptly investigate and defend or settle any claim of which Customer is notified, then Company has the right to take sole control over the claim and all negotiations for its settlement or compromise.  In such event, Customer shall pay, as they become due, all of the reasonable costs and expenses (including reasonable attorneys' fees and related costs) incurred by Company in defending or negotiating settlement of the claim, and Customer shall satisfy any related settlement, award or judgment.

**Equipment & Tools:**  Customer is responsible for providing and maintaining Customer's own bandwidth, compliant ANI's and/or caller IDs, and any related equipment needed to effectively use the Software (and other Services).

**Data & Content:** Customer is responsible for, and Customer represents and warrants that it has all right, power and authority to provide and use, Customer's Content.  Customer agrees that Customer will not use any Content that is subject to any third party intellectual property rights, unless Customer has a license or specific permission from the owner to use such Content and to grant Company the license to utilize same as contemplated hereunder.  Company reserves the right (but shall have no obligation) to decide whether any Content that Customer uses complies with this EULA.  Company may, in its sole discretion, remove such Content and/or terminate this EULA and Customer's use of the Software, without prior notice to Customer, if Customer uses any Content in a manner that is in breach of this EULA.

**Export Restrictions:**  Customer acknowledges that the Software is of U.S. origin and agrees to comply with all applicable international and national laws that apply to the Software, including the U.S. Export Administration Regulations, as well as end-user, end-use and destination restrictions issued by the government of the United States and the governments of other nations.

**No Access to Emergency Services:**  The Software (and other Services) is not a replacement for Customer's ordinary telephone service.  Neither the Software nor any other Services allow Customer to make emergency calls to emergency services.  Customer must make alternative communications arrangements to ensure that Customer can make emergency calls where necessary.

Ytel, Inc. | 17595 Harvard Ave. Suite C161 Irvine, CA 92614 | 800.382.4913

10

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000020



## TERM, TERMINATION, CUSTOMER'S ACCOUNT

**Term of EULA:**  Customer's rights with respect to accessing and using the Software will become effective when both Parties execute the Order Form, this EULA and the MSA.  This EULA will remain in effect until terminated by either Company or Customer as set forth below.

**Termination:**  Company may terminate this EULA where Customer, or anyone using Customer's account, whether permitted by Customer or not, breaches this EULA. Upon any expiration or termination of this EULA: (a) the rights and licenses granted to Customer under this EULA shall cease; (b) Customer shall immediately cease using the Software; and (c) Customer shall immediately cease using, and return to Company, any and all items and documentation relating to the Software in Customer's possession or control that are proprietary to Company or contain Confidential Information (as defined in the MSA).

**Payments:**  Payments made to Company are non-refundable.  Customer agrees to prepay for all Software and other Services provided by Company.  Customer agrees to pay for all telephone calls initiated through the Software outside of Customer's agreed upon calling plan, which becomes effective when Customer pays Customer's monthly bill.

**Suspension:**  Customer's right to use of the Software and other Services may be suspended by Company if Customer payment for same is not received by Company when due.  Customer may receive, but Company is under no obligation to send, email reminders sent to Customer's preferred email address as specified in Customer's account information, which e-mail address may be updated by Customer by emailing Company at: billing@ytel.com.

## DISCLAIMER OF WARRANTIES AND LIMITATION OF LIABILITY

**No Warranties:**  WITHOUT LIMITING THE DISCLAIMERS SET FORTH IN THE MSA, AND EXCEPT AS EXPRESSLY SET FORTH IN THIS EULA, THERE ARE NO OTHER WARRANTIES, EXPRESS OR IMPLIED HEREUNDER.  THE SOFTWARE IS PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS WITHOUT ANY WARRANTY OR CONDITION OF ANY KIND, EITHER EXPRESS OR IMPLIED.  USE OF THE SOFTWARE IS AT CUSTOMER'S OWN RISK.  COMPANY DOES NOT WARRANT THAT THE SOFTWARE WILL MEET CUSTOMER'S REQUIREMENTS OR THAT OPERATION OF THE SOFTWARE WILL BE UNINTERRRUPTED, ERROR FREE, SECURE, ACCURATE, COMPLETE OR CURRENT. WITHOUT LIMITATION, TO THE FULLEST EXTENT PERMISSIBLE BY LAW, THIS DISCLAIMER EXTENDS TO IMPLIED WARRANTIES AND CONDITIONS OF MERCHANTABLE QUALITY, FITNESS FOR A PARTICULAR PURPOSE, WARRANTIES ARISING BY STATUTE OR OTHERWISE IN LAW AND/OR FROM COURSE OF DEALING OR USAGE OF TRADE.

**Specific Disclaimer of Liability for Emergency Services:**  Company does not provide connections to emergency services via the Software or other Services.  Customer should be aware that Company shall not be liable (whether in contract, tort (including negligence) or any other theory of liability, and whether or not the possibility of such damages or loss has been notified to Company) for any claim, damage, or loss, arising from or relating to Customer's failure to make additional arrangements to access emergency services.

**Customer's Own Risk:**  Customer acknowledges and agrees that the entire risk arising out of Customer's use of the Software and other Services remains with Customer, to the maximum extent permitted by Applicable Law.

**Limitation of Liability:**  Without limiting the limitation of liability provisions contained in the MSA, Customer acknowledges and agrees that Company, its affiliates, licensors and employees will have no liability in connection with or arising from Customer's use of the Software.  Without limiting the foregoing, in no event shall Company, its affiliates, agents or employees be liable, whether in contract, warranty, tort (including negligence), product liability or any other form of liability for any: (a) indirect, incidental, special, consequential  (including, without limitation, any loss, or corruption, of data, any interruption, computer failure or pecuniary loss) or punitive damages arising out of the use

Ytel, Inc. | 17595 Harvard Ave, Suite C161 Irvine, CA 92614 | 800.382.4913

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000021



or inability to use the Software; (b) loss of income, business or profits (whether direct or indirect) arising out of the use or inability to use the Software; and/or (c) loss or damage which may have been incurred by Customer as a result of: (i) any disruptions or delays in any communications when using the Software; (ii) the suspension or termination of this EULA by Customer or by Company for any reason; and/or (iii) the release, or the decision not to release, new versions of the Software to Customer.

These limitations on Company's Liability to Customer shall apply whether or not Company, its affiliates or Company employees have been advised of the possibility of such losses or damages.

**MISCELLANEOUS**

**Entire Agreement:**  This EULA, together with the MSA, Order Form(s) and any amendments/attachments hereto/thereto, supersedes and merges all prior agreements, promises, understandings, statements, representations, warranties and covenants and all inducements to the making of this EULA relied on by either Party whether written or oral, and embodies the Parties' complete and entire agreement with respect to the subject matter of this EULA.  No statement or agreement, oral or written, made before the signing of this EULA will vary or modify the written terms of this EULA.

**No Waiver:**  The failure of either Party to enforce or insist upon compliance with any of the terms of this EULA or the wavier of any terms in this EULA does not constitute a general waiver or relinquishment of any other terms of this EULA.

**Confidentiality:**  The Software is deemed Confidential Information (as defined in the MSA) of Company.  Customer will not disclose any use of, or information pertaining to, the Software to any third party without the prior written approval of Company.  Customer shall maintain the confidentiality of the Software with at least the same degree of care that Customer uses to protect Customer's own confidential and proprietary information, but not less than a reasonable degree of care under the circumstances.  Customer will not be liable for the disclosure of any Confidential Information which is: (a) in the public domain other than by a breach of this EULA on Customer's part; (b) rightfully received from a third party without any obligation of confidentiality; (c) rightfully known to Customer without any limitation on use or disclosure prior to its receipt from Company; or (d) generally made available to third parties by Company without restriction on disclosure.

**Ownership of Software:**  All right, title and interest in and to the Software shall at all times remain with Company, and/or its suppliers.  Customer agrees to prevent any unauthorized access to Customer's account.  Except as expressly provided herein, Company does not grant any express or implied right to Customer in or to any Company trade secret information.

**Regulations:**  This EULA is made expressly subject to: (a) all present and future valid orders and regulations of any regulatory body having jurisdiction over the subject matter of this EULA; (b) the laws of the United States of America; or (c) any foreign governmental agency having jurisdiction.

**No Agency:**  Neither Party is authorized to act as an agent for, or legal representative of, the other Party.  Neither Party has the authority to assume or create any obligation on behalf of, or binding on, the other Party.

**No Third Party Beneficiaries:**  This EULA is made solely for the benefit of Customer and Company.  Nothing in this EULA should be interpreted to mean that Customer and Company are partners, joint venturers, co-owners or are otherwise participants in a common undertaking.  Neither Party nor its employees are given authority, express or implied, to represent, act for, or otherwise create or assume any obligation on behalf of, or binding on the other Party.  Nothing in this EULA will confer any rights or remedies on any third party.

Ytel, Inc. | 17595 Harvard Ave, Suite C161 Irvine, CA 92614 | 800.382.4913

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000022



**Notices:**  Unless otherwise specifically provided for herein, any notice required by this EULA is effective and deemed delivered: (a) three (3) business days after posting with the United States Postal Service when mailed by certified mail, return receipt requested, properly addressed and with the correct postage; (b) one (1) business day after pick up by the courier service when sent by overnight courier, properly addressed; and (c) immediately when sent via facsimile or electronic mail.  Notices will be sent to the addresses given at the time that Customer registers for access to the Software, unless Customer notifies Company by emailing support@ytel.com or billing@ytel.com of any applicable address change.

**Force Majeure:**  Other than with respect to payment obligations arising hereunder, if either Party's performance under this EULA is restricted or interfered with, in whole or part, by causes beyond its reasonable control including, but not limited to, acts of God, fire, explosion, vandalism, cable cut, utility curtailments, power failures, storm or other similar occurrence, any law, order, regulation, tariffs or rates which make it impossible or impractical to provide the Software at the current rates, request of the United States government, or of any agency, court, or other instrumentality or civil or military authority, or by national emergency, insurrection, riot, war, strike, lockout or work stoppage or other labor difficulties, supplier failure, carrier failure or shortage or breach or delay (each, a "Force Majeure Event"), then it is excused from its performance on a day-to-day basis to the extent of this Force Majeure Event.  Company's obligation to provide the Software is subject to, and contingent upon, the Company's underlying service providers continuing to provide the services needed to provide Software to Customer at the current rates and on the same conditions under which such service providers are currently providing or offering to provide the applicable services to Company.  Company's obligation to provide Services is subject to and contingent on the continuation of Company's agreements with its underlying service providers to provide the applicable services to Company at the current rates and on the same conditions under which such service providers are currently providing or offering to provide the applicable services to Company.  As such, any changes in, or termination of, the services provided by its service providers will relieve the Company of its obligations and any liability arising under this EULA.

**Escalation Procedures:**  In the event of any disruption of the Software or any problems associated with same, Customer should e-mail support@ytel.com immediately and ask that the applicable problem be escalated to the Company manager on duty.

**Governing Law and Adjudication of Disputes:**  This EULA is in all respects governed by the laws of the State of California, without regard to choice of laws.  Any disputes that may arise under this EULA shall be resolved in accordance with the laws of the State of California, and shall be adjudicated exclusively in the state or federal courts located in California.  Customer specifically consents to the exclusive jurisdiction of the State of California and to the courts located therein.

**Severability:**  If any terms of this EULA are determined to be illegal, unenforceable or invalid, in whole or in part, for any reason, the terms shall be stricken and will not affect the legality, enforceability or validity of the remainder of this EULA.  If any terms of this EULA are stricken as a result of this Section, then the stricken provision shall be deemed replaced, to the extent possible, with legal, enforceable, and valid terms that are as similar in tenor to the stricken provision as is legally permissible.  All headings and titles contained in this EULA are used solely to organize the contents of this EULA and will not be used to affect the interpretation of the contents of this document.

**Headings:**  The headings in this EULA are for convenience only and shall not affect the construction hereof.

**Drafting:**  Each Party executing this EULA agrees that it has fully participated in the drafting of this EULA and that no Party shall be deemed to be the drafting Party.

**CUSTOMER EXPRESSLY ACKNOWLEDGES THAT CUSTOMER HAS READ THIS EULA AND UNDERSTANDS THE RIGHTS, OBLIGATIONS, TERMS AND CONDITIONS SET FORTH HEREIN.  BY SIGNING THIS EULA, CUSTOMER EXPRESSLY CONSENTS TO BE BOUND BY ITS TERMS AND CONDITIONS AND GRANTS TO**

YTEL_000023



**COMPANY THE RIGHTS SET FORTH HEREIN.**

### SIGNATURE

**IN WITNESS WHEREOF**, the Parties have executed this Order Form as of the date below each Party's respective signature.

CUSTOMER
Customer Name:

Signature: *Joseph Moretti*
Joseph Moretti (Dec 3, 2015)

**Email:** jmoretti.nationwidealarms@gmail.com

COMPANY
Ytel, Inc.

Signature: *Jeff Jordan (Dec 3, 2015)*

**Email:** jeff@ytel.com

Ytel, Inc. | 17595 Harvard Ave, Suite C161 Irvine, CA 92614 | 800.382.4913

Legal Version {00118003;1} Ytel Version 4.0
Copyright 2014 © Ytel, Inc. | All Rights Reserved

YTEL_000024



17595 Harvard Ave , Suite C161, Irvine, CA  92614  | 800.382.4913

## Addendum D

The following shall amend the paragraph labeled TERM on page 5 of the User Agreement:

1. **TERM  *ADD***:  *However, Customer shall have the right to cancel account during the first 60 days of service only, by providing at least 30 day written notice. After first 60 days without Notice of Cancellation, the term and renewals set forth above shall take full effect.*

2.   *All other terms and conditions of the MSA shall otherwise remain in full force and effect subject to confidentiality and other intellectual rights.*

**Nationwide Alarms LLC**                    **Ytel, Inc.**

**Signature:** *Joseph Moretti*              **Signature:** *Jeff Jones*
Joseph Moretti (Dec 3, 2015)                 Jeff Jones (Dec 3, 2015)

**Email:**  jmoretti.nationwidealarms@gmail.com      **Email:**  jeff@ytel.com

**Authorized Signature**                    **Authorized Signature**

Version 2.1

YTEL_000025