1   Chiharu Sekino, SBN #306589
    Email: csekino@sfmslaw.com
2   SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
    44 Montgomery Street, Suite 650
3   San Francisco, California 94104
    Telephone: (415) 429-5272
4   Facsimile: (866) 300-7367

5   Beth E. Terrell, SBN #178181
    Email: bterrell@terrellmarshall.com
6   Jennifer Rust Murray, *Admitted Pro Hac Vice*
    Email:  jmurray@terrellmarshall.com
7   Elizabeth A. Adams, SBN #290029
    Email:  eadams@terrellmarshall.com
8   TERRELL MARSHALL LAW GROUP PLLC
    936 N. 34th Street, Suite 300
9   Seattle, Washington 98103
    Telephone: (206) 816-6603
10
    [Additional Counsel Appear on Signature Page]
11
    *Attorneys for Plaintiffs and the Proposed Class*
12

13              UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
14                     OAKLAND DIVISION

15   ABANTE ROOTER AND PLUMBING,          NO. 4:15-cv-06314-YGR
     INC., MARK HANKINS, and PHILIP J.
16   CHARVAT, individually and on behalf of all   **PLAINTIFFS' RESPONSE TO**
     others similarly situated,               **DEFENDANTS' SEPARATE**
17                                            **STATEMENT OF UNDISPUTED FACTS**
                        Plaintiffs,          **IN SUPPORT OF MOTION FOR**
18                                            **SUMMARY JUDGMENT**
            v.
19                                            JURY TRIAL DEMAND
     ALARM.COM INCORPORATED, and
20   ALARM.COM HOLDINGS, INC.,              Complaint Filed:  December 30, 2015

21                      Defendants.          Honorable Yvonne Gonzalez Rogers

22                                            DATE:        July 24, 2018
                                             TIME:        2:00 p.m.
23                                            LOCATION:  Oakland Courthouse
                                                         Courtroom 1 - 4th Floor
24

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF
UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 1
CASE NO. 4:15-CV-06314-YGR

1

## STATEMENT OF GENUINE UNDISPUTED FACTS

2          Plaintiffs Abante Rooter and Plumbing, Inc., Mark Hankins, and Philip J. Charvat

3   ("Plaintiffs") hereby submit the following Response to Defendants Alarm.com Incorporated and

4   Alarm.com Holdings, Inc.'s ("Defendants") Separate Statement of Undisputed Facts in Support

5   of their Motion for Summary Judgment.  Plaintiffs also submit (in Section II, below) additional

6   material facts in support of their Response to Defendants' summary judgment motion.

7   **A.    Plaintiffs' Response to Defendants' Statement of Undisputed Facts.**

8          Plaintiffs respond to Defendants' Separate Statement of Undisputed Facts as follows:

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|-----|----------------------------------------------------|---------------------------------|
| Issue 1 (Plaintiffs cannot establish vicarious liability) | Fact 1. Alarm.com is a technology company that offers cloud-based software-as-a-service solutions for residential and commercial properties.  Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶ 3. | Undisputed. |
| Issue 1 | Fact 2. Alarm.com develops software that enables the wireless functions of fully integrated security systems.  Jaszczuk Decl. Ex. 4 (3/28/17 Pitts Decl. ("First Pitts Decl.")) at ¶ 8. | Undisputed. |
| Issue 1 | Fact 3. Alarm.com does not sell or market its software directly to consumers.  Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶ 4. | Undisputed. |

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| Issue 1 | Fact 4. Alarm.com sells its software to approximately 6,000 authorized dealers.<br><br>Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶¶ 5–6; Jaszczuk Decl. Ex. 4 (First Pitts Decl.) at ¶ 8; Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 108:17–109:17; Jaszczuk Decl. Ex. 6 (11/17/17 Pitts Decl. ("Second Pitts Decl.")) at ¶ 3. | Disputed.<br><br>Dealers do not purchase Alarm.com software but rather ███████ ███████████ pursuant to subscription agreements that are between Alarm.com and the end user.<br><br>Ex. 1 at ALARM-6-7, 12; Ex. 3. |
| Issue 1 | Fact 5. Authorized dealers like Alliance Security combine Alarm.com software with components made by other manufacturers to create fully integrated security systems.<br><br>Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶ 5; Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶¶ 3–4. | Disputed.<br><br>Alarm.com's software allows the security system components to communicate with each other.<br><br>Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶ 3. |
| Issue 1 | Fact 6. The authorized dealers choose whether and how to incorporate Alarm.com software into fully integrated security systems.<br><br>Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶ 5; Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶¶ 3–4. | Disputed.<br><br>Until summer 2017, ███████ ███████████████ ███████████████<br><br>Ex. 2 at 109:18-110:2; Ex. 1 at Alarm-17; Ex. 7 at 163:2-20.<br><br>The only way that Alliance could choose to use a service other than Alarm.com would be if Alliance terminated the Dealer Agreement.<br><br>Ex. 8 at 55:15-56:13.<br><br>Alliance is not permitted to choose the components to use, but instead ███████ |

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Ex. 1 at Alarm-6.<br><br>Alliance promoted Alarm.com in nearly every sale, disseminated business cards that displayed only two logos — Alarm.com and Alliance, and Alarm.com required include the slogan "powered by Alarm.com" on its website as a condition for receiving marketing funds.<br><br>Ex. 8 at Exs. 7 & 8; Ex. 8 at 130:13-133:9.<br><br>As of May 1, 2012, █████████<br><br>Ex. 31. |
| Issue 1 | Fact 7. The named Plaintiffs do not allege that they ever received a telemarketing call from Alarm.com itself.<br><br>Pls.' Notice of Mot. & Mem. of Points & Auth. in Supp. of Mot. for Class Certification, at 8–10 (ECF No. 85). | Undisputed. |
| Issue 1 | Fact 8. When authorized dealers sell fully integrated security systems to consumers, they do so directly on their own account.<br><br>Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 4. | Disputed.<br><br>The Dealer Agreement sets the price for Alarm.com services in a detailed schedule.<br><br>Ex. 1 at ALARM-14-15.<br><br>███████████<br><br>Alliance never takes ownership of the Alarm.com Subscription Agreements, which are between Alarm.com and the end user.<br><br>Ex. 1 at ¶ 6.1 and ALARM-6; Ex. 3. |

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Upon termination of the Dealer Agreement, ███████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ ███████. <br><br> Ex. 1 at ¶ 11.6. |
| Issue 1 | Fact 9. Alliance markets and sells fully integrated security systems to end-user consumers, and then typically sells the resulting customer accounts to Monitronics International Inc., a central station alarm monitoring company. <br><br> Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 37:23–38:13; Jaszczuk Decl. Ex. 8 (Moretti Dep. Tr.) at 13:2–9. | Disputed. <br><br> Although Alliance markets and sells Alarm Monitoring Agreements to end users and then sells those accounts to Monitronics, Alliance does not purchase and own Alarm.com subscriptions, which are agreements between Alarm.com and the end user. <br><br> Ex. 1 at ALARM-6-7, 12; Ex. 3. |
| Issue 1 | Fact 10. In 2008, Alliance became an Alarm.com authorized dealer, and began using Alarm.com software in some of the fully integrated security systems that Alliance marketed and sold. <br><br> Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 19:11–24; Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 109:18–110:2; Jaszczuk Decl. Ex. 1 (Dealer Agreement) at 1. | Disputed. <br><br> The Dealer Agreement between Alliance and Alarm.com requires ████████████████████ ███████. <br><br> Ex. 1 at ¶ 3.1. <br><br> Until summer 2017, ███████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ <br><br> Ex. 2 at 109:18-110:2; Ex. 1 at Alarm-17; Ex. 7 at 163:2-20. <br><br> The only way that Alliance could choose to use a service other than Alarm.com would be if Alliance terminated the Dealer Agreement. <br><br> Ex. 8 at 55:15-56:13. |

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Alliance promoted Alarm.com in nearly every sale, disseminated business cards that displayed only two logos — Alarm.com and Alliance, and Alarm.com was required include the slogan "powered by Alarm.com" on its website as a condition for receiving marketing funds.<br><br>Ex. 8 at Exs. 7 & 8; Ex. 8 at 130:13-133:9..<br><br>As of May 1, 2012, ███████████ .<br><br>Ex. 31. |
| Issue 1 | Fact 11. Alliance became an Alarm.com authorized dealer after Monitronics mandated that Alliance use only Monitronics-approved software suppliers.<br><br>Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 19:11–24; Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 109:18–110:2. | Undisputed. |
| Issue 1 | Fact 12. Alarm.com's relationship with Alliance is governed by a Dealer Agreement.<br><br>Jaszczuk Decl. Ex. 1 (Dealer Agreement). | Undisputed. |
| Issue 1 | Fact 13. Under the Alarm.com-Alliance Dealer Agreement ████████ ████████████████████ ███████████████████<br><br>Jaszczuk Decl. Ex. 1 (Dealer Agreement) at § 9.6. | Disputed.<br><br>The Dealer Agreement provides:<br>████████████████████ ████████████████████ ██████████ The Dealer Agreement does not make any representations about what Alliance is |

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | "considered" to be "under" the Dealer Agreement. Ex. 1 at ¶ 9.6. |
| Issue 1 | Fact 14. The Alarm.com-Alliance Dealer Agreement ████████ ████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████ Jaszczuk Decl. Ex. 1 (Dealer Agreement) at § 3.3. | Undisputed. |
| Issue 1 | Fact 15. The service agreements signed by customers following the sale of an Alliance fully integrated security system featuring Alarm.com software state that Alliance "is an independent contractor and not an agent of Alarm.com." Jaszczuk Decl. Ex. 2 (Alliance Customer Agreement) at PL-CHARVAT_000024. | Undisputed. |
| Issue 1 | Fact 16. The parties amended the Dealer Agreement in 2015, after Alliance informed Alarm.com that Alliance was considering replacing Alarm.com software with a competitor's. Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶¶ 9–10. | Undisputed. |
| Issue 1 | Fact 17. Alliance, as well as a number of sub-dealers engaged by Alliance, advertised and sold Alliance's fully | Undisputed. |

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
|  | integrated security systems through, among other means telemarketing campaigns.<br><br>Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 6. |  |
| Issue 1 | Fact 18. Alarm.com did not oversee or manage any of the marketing activities of Alliance's sub-dealers.<br><br>Jaszczuk Decl. Ex. 10 (Ferguson Dep. Tr.) at 71:17–23; Jaszczuk Decl. Ex. 8 (Moretti Dep. Tr.) at 60:10–23. | Disputed.<br><br>Alarm.com takes action to ensure compliance with telemarketing laws if it is made aware of an egregious case.<br><br>Ex. 4 at 36:10-37:20.<br><br>Alarm.com is "always mindful" of its dealer program service providers, and where it also work with some of its larger subdealer service providers Alarm.com is "mindful of those relationships" and wants to make sure that it is helping to support those service providers as much as possible so that they can grow their subscriber base.<br><br>Ex. 4 at 136:1-17. |
| Issue 1 | Fact 19. Alliance never sought, nor did the Dealer Agreement require, Alarm.com approval for any of Alliance's sub-dealers.<br><br>Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 7; Jaszczuk Decl. Ex. 1 (Dealer Agreement). | Undisputed. |
| Issue 1 | Fact 20. Many of the security systems marketed by Alliance during the relevant period did not contain Alarm.com software.<br><br>Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 9. | Disputed.<br><br>Until summer 2017, ███████████<br>█████████████ ████████<br>████████ ███████ |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 8
CASE NO. 4:15-CV-06314-YGR

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Ex. 2 at 109:18-110:2; Ex. 1 at Alarm-17; Ex. 7 at 163:2-20. |
| | | The only way that Alliance could choose to use a service other than Alarm.com would be if Alliance terminated the Dealer Agreement. |
| | | Ex. 8 at 55:15-56:13. |
| | | Alliance promoted Alarm.com in nearly every sale, disseminated business cards that displayed only two logos — Alarm.com and Alliance, and Alarm.com required include the slogan "powered by Alarm.com" on its website as a condition for receiving marketing funds. |
| | | Ex. 8 at Exs. 7 & 8; Ex. 8 at 130:13-133:9. |
| | | As of May 1, 2012, ███████████ ████████████████████████ |
| | | Ex. 31. |
| Issue 1 | Fact 21. In 2013, Alarm.com added a feature to its website known as the Customer Lead Service Program ("CLS Program"), which allows end-users to enter contact information and request to be contacted by an Alarm.com dealer. Jaszczuk Decl. Ex. 10 (Ferguson Dep. Tr.) at 31:14–23, 32:19–33:9. | Undisputed. |
| Issue 1 | Fact 22. Potential customers contacted by dealers through the CLS Program specifically and voluntarily contacted Alarm.com, and thus consented to dealer marketing. Jaszczuk Decl. Ex. 10 (Ferguson Dep. Tr.) at 31:14–23. | Undisputed. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF
UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 9
CASE NO. 4:15-CV-06314-YGR

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| Issue 1 | Fact 23. Relatively few dealers participate in the CLS Program. Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶ 7; Jaszczuk Decl. Ex. 10 (Ferguson Dep. Tr.) at 38:2–10. | Undisputed. |
| Issue 1 | Fact 24. The individuals who received calls through the CLS Program are excluded from the Certified Classes in this case. Order Granting Pls.' Mot. to Amend Class Definitions, at 6 (ECF No. 176). | Undisputed. |
| Issue 1 | Fact 25. In May 2012, NBC's Today Show aired a segment entitled "Rossen Reports: Telemarketers ignore Do Not Call list." Jaszczuk Decl. Ex. 11 (Natale Dep. Ex.) at 1; Jaszczuk Decl. Ex. 12 (5/1/12 Natale Email). | Undisputed. |
| Issue 1 | Fact 26. In the May 2012 Rossen Report, reporters accused Alliance's predecessor Versatile Marketing Solutions, Inc. ("VMS") of calling numbers listed on the national Do-Not-Call Registry. Jaszczuk Decl. Ex. 11 (Natale Dep. Ex.) at 2. | Disputed. VMS and Alliance are, in essence, the same company; it's just a name change. Ex. 2 at 54:2-6. |
| Issue 1 | Fact 27. Alarm.com personnel became aware of the Today Show segment soon after it aired, and the company investigated the matter further. Jaszczuk Decl. Ex. 12 (5/1/12 Natale Email); Jaszczuk Decl. Ex. 9 (Trundle Dep. Tr.) at 68:21–70:1. | Disputed. Alarm.com did not investigate, but instead ███████████████████ ███████████████████ Ex. 7 at 69:8-72:4. Alliance's Director of Legal Compliance was not aware of anybody |

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | at Alarm.com discussing the Today Show segment with anyone at Alliance. |
| | | Ex. 2 at 112:1-113:4. |
| | | Alarm.com was concerned about the allegations in the Today Show segment but chose not to take any concrete steps to ensure that Alliance was no longer going to violate the law because Alarm.com does not actively monitor or control the sales and marketing practices of its service providers. |
| | | Ex. 4 at 174:10-175:24. |
| | | Alarm.com has never considered terminating Alliance. |
| | | Ex. 7 at 71:3-12; Ex. 4 at 176:12-16. |
| | | Alarm.com's CEO █████████ ████████████████████████ ████████████████████████ ████████████████████████ |
| | | Ex. 7 at 71:13-72:4. |
| Issue 1 | Fact 28. VMS assured Alarm.com that the allegedly unlawful telemarketing calls resulted from an inadvertent software issue.<br><br>Jaszczuk Decl. Ex. 12 (5/1/12 Natale Email). | Disputed in part.<br><br>The email on which Alarm.com relies states in full: "To generate as many sales as [Alliance] do[es] this was a minor problem with the software they were using."<br><br>Ex. 13. |
| Issue 1 | Fact 29. VMS informed Alarm.com that safeguards were in place that would prevent any future violations. | Disputed.<br><br>The evidence in the record does not say this. The email on which |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 11

CASE NO. 4:15-CV-06314-YGR

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Jaszczuk Decl. Ex. 12 (5/1/12 Natale Email). | Alarm.com relies says only that Mr. Natale "spoke to Jay this morning and they have a lot of safeguards in place to make sure this doesn't happen. To generate as many sales as they do this was a minor problem with the software they were using." The email doesn't say that safeguards are in place to make sure this doesn't happen in the future and it is unclear whether Mr. Gotra assured Mr. Natale that the safeguards were in place "to make sure this doesn't happen in the future" or whether the violations occurred despite the purported "safeguards" that were purportedly in place. The email suggests the latter by indicating that the violations occurred due to the large volume of sales VMS generated. Ex. 13. |
| Issue 1 | Fact 30. The three named Plaintiffs in this action have together brought approximately 100 TCPA lawsuits. Jaszczuk Decl. Ex. 14 (Charvat Dep. Tr.) at 79:5–22; Jaszczuk Decl. Ex. 15 (Heidarpour Dep. Tr.) at 86:15–87:20. | Undisputed. |
| Issue 1 | Fact 31. Plaintiff Abante Rooter and Plumbing, Inc. alleges that it received, without prior consent, three telemarketing calls in December 2015 from one of Alliance's sub-dealers, Nationwide Alarms, and an unspecified "third party lead generator." Class Action Compl., at ¶¶ 76–84 (ECF No. 1). | Undisputed. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 12

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| Issue 1 | Fact 32. Plaintiff Mark Hankins alleges that he received two automated telemarketing calls in September and October 2015. <br><br> Class Action Compl., at ¶¶ 109, 114 (ECF No. 1). | Undisputed. |
| Issue 1 | Fact 33. Plaintiff Philip J. Charvat's allegations stem from a series of telemarketing calls he claims to have received in September 2015. <br><br> Class Action Compl., at ¶¶ 124–37 (ECF No. 1). | Disputed. <br><br> Mr. Charvat also received a call from Alliance on November 14, 2017 promoting Alarm.com's services. <br><br> Ex. 22. |
| Issue 1 | Fact 34. The Alarm.com-Alliance Dealer Agreement ███████ ████████████████████ <br><br> Jaszczuk Decl. Ex. 1 (Dealer Agreement) at § 3.2(b). | Undisputed. |
| Issue 1 | Fact 35. Alarm.com did not set quotas for Alliance or keep track of the hours worked by Alliance employees. <br><br> Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 33:1–6; Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 110:20–21. | Disputed in part. <br><br> The Dealer Agreement ███████ ████████████████████ ████████████████████ ██████████████ <br><br> Ex. 1 at ALARM-15. |
| Issue 1 | Fact 36. Alarm.com did not require Alliance to use telemarketing scripts created by Alarm.com, to follow any Alarm.com guidelines and procedures during telemarketing calls, or to mention Alarm.com's name during telemarketing calls. | Disputed. <br><br> Alarm.com encouraged dealer partners to reference that they provide Alarm.com's services but not to refer to themselves as Alarm.com. <br><br> Ex. 4 at 41:19-19. |

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 32:18–24, 33:7–9; Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 110:3–19. | |
| Issue 1 | Fact 37. Alliance hired and trained its own employees and contracted with its own subdealers, who were never approved, managed, or otherwise overseen by Alarm.com. Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 5; Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 34:5–10. | Disputed. Alarm.com provided training to Alliance employees. Ex. 4 at 92:8-15. Alarm.com supported larger subdealer service providers as much as possible so that they can grow their subscriber base. Ex. 4 at 136:1-17. |
| Issue 1 | Fact 38. Alarm.com did not provide Alliance with telemarketing brochures or other sales literature. Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 34:22–23. | Disputed. Alarm.com provided dealers with brochures, flyers, calling scripts, rebuttals, training, dedicated support staff, co-branded marketing collateral such as business cards, shirts, and hats, subscription and attrition reports, and dedicated marketing funds. Ex. 4 at 13:5-18, 51:2-10, 98:14-111:7; Dkt. No. 86-2; 86-3 at 92:8–93:17 & 95:20-97:9; 196-2; 196-3; 196-4; Ex. 11; Ex.8 at 8. |
| Issue 1 | Fact 39. Alliance supplied its own phones, computers, furniture, and office space for conducting its telemarketing activities. Jaszczuk Decl. Ex. 5 (Pitts Dep. Tr.) at 110:17–111:12; Jaszczuk Decl. Ex. 7 (Gotra Dep. Tr.) at 34:11–21. | Disputed in part. Alarm.com provided Alliance dedicated marketing funds that it could use to fund its telemarketing activities. Ex. 4 at 110:11-111:7. |
| Issue 1 | Fact 40. Alliance's marketing, sales, and installations of fully integrated | Disputed. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 14

Case No. 4:15-cv-06314-YGR

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | security systems were not within the regular course of Alarm.com's business.<br><br>Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 4. | Alarm.com is in the business of selling security system software and contracts with partner dealers like Alliance to sell software on its behalf.<br><br>Ex. 1 at ALARM-6-7, ¶ 3.1, ¶ 3.5. |
| Issue 1 | Fact 41. Alarm.com and Alliance operate separate businesses.<br><br>Jaszczuk Decl. Ex. 3 (Ferguson Decl.) at ¶¶ 5–6. | Undisputed. |
| Issue 1 | Fact 42. Alarm.com and Alliance amended their Dealer Agreement in 2015, when Alliance threatened to replace Alarm.com's software with another company's.<br><br>Jaszczuk Decl. Ex. 6 (Second Pitts Decl.) at ¶ 10. | Undisputed. |
| Issue 1 | Fact 43. On August 19, 2015, Andrew Heidarpour of Abante Rooter and Plumbing, Inc. was informed by Alarm.com that:<br><br>Alarm.com does not sell any of its products or services directly to the public or conduct telemarketing of any kind. Instead, we wholesale the Alarm.com platform to over 5,000 businesses that resell our products to consumers. These businesses are independent companies and are not affiliated with Alarm.com. Alarm.com is not responsible for their marketing activities. | Undisputed. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 15

| NO. | DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Jaszczuk Decl. Ex. 19 (08/19/2015 Heidarpour Email) at 1. | |
| Issue 1 | Fact 44. The named Plaintiffs do not allege that they ever purchased an Alarm.com security system from Alliance or an Alliance sub-dealer. <br><br> Class Action Compl., at ¶¶ 75–148 (ECF No. 1). | Undisputed. |
| Issue 1 | Fact 45. Two of the three named Plaintiffs do not claim that they communicated directly with Alarm.com. <br><br> Class Action Compl., at ¶¶ 109–148 (ECF No. 1). | Undisputed. |

**B.    Plaintiffs' Additional Material Facts.**

Plaintiffs identify the following additional material facts and supporting evidence for each additional material fact.

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| Issue 1, 2 | Additional Fact 46. The Subscription Agreements that the customers sign prominently display the Alarm.com logo and the title "Alarm.com Terms," state that Alarm.com has "authorized" Alliance to market and sell its services with certain hardware and other products, and provide that the "Alarm.com Terms" are part of any agreement that the customer has with the dealer. | Ex. 3. |
| Issue 1, 2 | Additional Fact 47. Once Alliance signs a customer up for an Alarm.com subscription, Alliance creates an account for the new subscriber using Alarm.com's service provider portal. | Ex. 4 at 55:9-22; Ex. 5 at 16671. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 16

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| Issue 1, 2 | <u>Additional Fact 48</u>. Once Alliance signs a customer up for an Alarm.com subscription, Alliance creates an account for the new subscriber using Alarm.com's service provider portal. | Ex. 4 at 55:9-22; Ex. 5 at 16671 |
| Issue 1, 2 | <u>Additional Fact 49</u>. Alliance collects "monthly service charges" and "activation fees" from the end users and remits those payments to Alarm.com. | Ex. 6 at 19:6-20:8. |
| Issue 1, 2 | <u>Additional Fact 50</u>. The Alarm.com Dealer Agreement imposes a host of requirements on Alliance. | Ex. 1 at ¶¶ 3.4, 3.2, 3.3, 5.2, 7.1. |
| Issue 1, 2 | <u>Additional Fact 51</u>. Alarm.com can take action to ensure compliance with telemarketing laws when it is made aware of an egregious case. | Ex. 4 at 36:10-37:20. |
| Issue 1, 2 | <u>Additional Fact 52</u>. If Alarm.com had investigated Alliance — then VMS — after the Today Show aired it would have learned that VMS's allegedly "minor problem with its software" had been an ongoing problem; the Pennsylvania AG fined VMS in 2010 and the telemarketing violations continued through 2011 when VMS was sued in a class action lawsuit in West Virginia and 2012 when the Kentucky AG fined VMS once again. | Exs.14, 15, 16. |
| Issue 1, 2 | <u>Additional Fact 53</u>. If Alarm.com had investigated VMS, Alarm.com would have discovered that the West Virginia court rejected Mr. Gotra's claim that VMS only called people who "opted in" to receiving calls and granted summary judgment for the plaintiffs on VMS's "consent" defense. | Ex. 17. |
| Issue 1, 2 | <u>Additional Fact 54</u>. Had Alarm.com monitored Alliance after the Today Show aired, it would have learned that VMS | Exs. 18, 19, 30. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 17
<small>CASE NO. 4:15-CV-06314-YGR</small>

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | continued to place calls to telephone numbers on the NDNC Registry and continued to get sued. | |
| Issue 1, 2 | Additional Fact 55. Unlike Alarm.com, the FTC did not take VMS's assurances that they were complying with telemarketing laws at face value, but instead conducted an extensive investigation that culminated in a Stipulated Final Order for Permanent Injunction and Civil Penalty Judgment in the amount of $3.4 million. | Ex. 20. |
| Issue 1, 2 | Additional Fact 56. During audits associated with the CLS program, Alliance was named a "problem dealer" due to its telemarketing practices, including overcalling, using an automated dialing system to make calls, and leaving prerecorded messages. | Ex. 4 at 59:3–61:10, 147:5–17. |
| Issue 1, 2 | Additional Fact 57. Alarm.com did not inform Alliance about the results of its audit of Alliance. | Ex. 2 at 107:19-108:1. |
| Issue 1, 2 | Additional Fact 58. Even after it was sued in 2015, Alarm.com did not discuss with Alliance whether it complied with the TCPA. | Ex. 21 at 26:6-14. |
| Issue 1, 2 | Additional Fact 59. Alliance was sued again just two months ago by the FTC, which characterized Alliance and Gotra as "recidivist violators" of the telemarketing laws. | Complaint ¶ 2, *FTC v. Alliance Security, Inc.*, No. 1:18-cv-10548 (D. Mass. Mar. 22, 2018). |
| Issue 1, 2 | Additional Fact 60. Alarm.com could have exercised control over Alliance once it was aware of telemarketing violations. | Ex. 8 at 99:8-102:6; Ex. 24 at 120:1-121:16. |
| Issue 1, 2 | Additional Fact 61. Alarm.com's industry expert testified that if he worked with a company subject to an injunction prohibiting TCPA violations and was | Ex. 23 at 42:24-44:6 |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 18

CASE NO. 4:15-CV-06314-YGR

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
|  | informed that the company may still be engaging in the prohibited conduct, he would investigate. |  |
| Issue 1, 2 | <u>Additional Fact 62</u>. The Electronic Security Association's "Code of Ethics" requires members to "comply with all applicable laws that prohibit or regulate solicitations, including honoring all applicable do-not-call lists and all other requests not to be called." | Ex. 24 at 122:18–123:19; Ex. 24 at Ex. 7. |
| Issue 1, 2 | <u>Additional Fact 63</u>. ESA members must train employees and representatives who market security products on their behalf, "to implement appropriate and effective controls to ensure compliance with the Code." | Ex. 24 at 121:17-122:17. |
| Issue 1, 2 | <u>Additional Fact 64</u>. The ESA Code of Ethics applies to Alarm.com. | Ex. 26; Ex. 8 at 88:7-16, 89:1-9. |
| Issue 1, 2 | <u>Additional Fact 65</u>. After the Today Show aired in April 2012, Alliance and its representatives placed 3,002,373 calls to 393,762 unique residential telephone numbers after those telephone numbers were listed on the NDNC Registry for at least 31 days and calls were placed to each number at least twice within a twelve-month period. | Ex. 99-1 at ¶ 34. |
| Issue 3 | <u>Additional Fact 66</u>. Alliance's agent, Nationwide, used a predictive dialer called Ytel to place to place 119,484 calls to 22,055 unique cell phone numbers. | Dkt. No. 196-20 ¶ 57; Ex. 27 at 17:5-18:9, 18:17-19, 19:15-20:1. |
| Issue 3 | <u>Additional Fact 67</u>. The Ytel dialing system has the inherent capacity to store telephone numbers to be dialed and then dial them automatically. | Ex. 28. |
| Issue 3 | <u>Additional Fact 68</u>. When used in "automatic" mode, the system beeps so | Ex. 27 at 22:4-13. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 19

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|-----|---------------------|---------------------|
| | call center employees know when to pick up the call. | |
| Issue 3 | Additional Fact 69. Nationwide placed 31,939 calls in "AUTO mode" to 15,781 cell phones. | Ex. 28 at ¶ 12. |
| Issue 2 | Additional Fact 70. Alarm.com benefitted from Alliance's unlawful telemarketing. | Ex. 4 at 108:2-19; Ex. 9; Ex.19; Ex. 6 at Ex. 31 at 21; Ex. 6 at 22:15-25:19. |

Pursuant to paragraph 9(c)(4) of this Court's Standing Order in Civil Cases, the undersigned counsel attests that the evidence cited herein fairly and accurately supported the facts as asserted.

RESPECTFULLY SUBMITTED AND DATED this 22nd day of May, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By: Beth E. Terrell, SBN #178181
    Beth E. Terrell, SBN #178181
    Email: bterrell@terrellmarshall.com
    Jennifer Rust Murray, *Admitted Pro Hac Vice*
    Email: jmurray@terrellmarshall.com
    Elizabeth A. Adams, SBN #290029
    Email: eadams@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

John W. Barrett, *Admitted Pro Hac Vice*
E-mail: jbarrett@baileyglasser.com
Email:  crobinson@baileyglasser.com
Jonathan R. Marshall, *Admitted Pro Hac Vice*
Email:  jmarshall@baileyglasser.com
Ryan McCune Donovan, *Admitted Pro Hac Vice*
Email:  rdonovan@baileyglasser.com
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia  25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

Edward A. Broderick *Admitted Pro Hac Vice*
Email: ted@broderick-law.com
Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Matthew P. McCue
E-mail: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts  01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

Chiharu Sekino, SBN #306589
Email: csekino@sfmslaw.com
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 429-5272
Facsimile: (866) 300-7367

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF
UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -
21
CASE NO. 4:15-cv-06314-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

James C. Shah, SBN #260435
Email: jshah@sfmslaw.com
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
35 East State Street
Media, Pennsylvania 19063
Telephone: (610) 891-9880
Facsimile: (866) 300-7367

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Beth E. Terrell, hereby certify that on May 22, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kasey C. Townsend, SBN #152992
Email: ktownsend@murchisonlaw.com
Susan J. Welde, SBN #205401
Email: swelde@murchisonlaw.com
MURCHISON & CUMMING, LLP
275 Battery Street, Suite 850
San Francisco, California 94111
Telephone: (415) 524-4300

Martin W. Jaszczuk, *Admitted Pro Hac Vice*
Email: mjaszczuk@jaszczuk.com
Margaret M. Schuchardt, *Admitted Pro Hac Vice*
Email: mschuchardt@jaszczuk.com
Keith L. Gibson, *Admitted Pro Hac Vice*
Email: kgibson@jaszczuk.com
Seth H. Corthell, *Admitted Pro Hac Vice*
Email: scorthell@jaszczuk.com
Daniel I. Schlessinger, *Admitted Pro Hac Vice*
Email: dschlessinger@jaszczuk.com
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
Telephone: (312) 442-0311

Craig S. Primis, *Admitted Pro Hac Vice*
Email: craig.primis@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5921
Facsimile: (202) 879-5200

*Attorneys for Defendants Alarm.com Incorporated and Alarm.com Holdings, Inc.*

DATED this 22nd day of May, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Beth E. Terrell, SBN #178181
Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF
UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -
24
CASE NO. 4:15-CV-06314-YGR