# — EXHIBIT  6 —

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3

 4   ABANTE ROOTER and PLUMBING,   *

 5   INC., GEORGE ROSS MANESIOTIS, * NO. 3:15-cv-06314-YGR

 6   MARK HANKINS, and PHILIP J.   *

 7   CHARVAT, individually and on  *

 8   Behalf of all others similarly*

 9   situated,                     *

10              Plaintiff,         *

11   vs.                           *

12   ALARM.COM INCORPORATED, and   *

13   ALARM.COM HOLDINGS, INC.,     *

14              Defendants.        *

15   * * * * * * * * * * * * * * * * * * *

16       The deposition of ALLEN J. GOLLINGER, took place

17   on Friday, October 28, 2016, beginning at 12:40 p.m.,

18   at ARNALL, GOLDEN, GREGORY, LLP, 1775 Pennsylvania

19   Avenue, NW, Suite 1000, Washington, DC, before

20   Melissa L. Clark, a Professional Court Reporter and

21   Notary Public.

22   * * * * * * * * * * * * * * * * * * *

23   Reported by:

24         Melissa L. Clark, Court Reporter
```

 1        Q.    Are you aware of any discussion at for
 2    consideration at Alarm.com for providing a $5 million
 3    line of credit to Alliance?
 4        A.    Yes.
 5        Q.    Tell me what you're aware of.
 6        A.    I knew there was some work on potentially
 7    doing something along those lines.  That was before --
 8    that was to see if I was still there, so she was more
 9    involved with it.  All I know is it was supposed to be
10    similar to some other programs who've offered other
11    service providers, and I don't
12    have the details.
13        Q.    Who was the CFO at the time?
14        A.    Jen Moyer.
15        Q.    Are you aware of any other service providers,
16    any service providers with which Alarm.com has a credit
17     line exceeding a million dollars?
18        A.    Yes .
19        Q.    How many of them are there?
20        A.    Currently one.
21        Q.    And who is that?
22        A.    I'm supposed to answer that?
23        Q.    Well, you could tell me --
24              MR. JACOBOVITZ:  Well, you could say it's

 1  a service provider.  If it's confidential, you shouldn't

 2  talk about it.

 3           THE WITNESS:  Yeah, we don't disclose the

 4  name of them, so we'd prefer not to use them if they're

 5  a service provider.

 6           BY MR. BARRETT:

 7      Q.    And what is the amount of that credit line?

 8      A.    Up to 4 million.

 9      Q.    And how long has that credit line been in

10  existence?

11      A.    That particular credit line has been in

12  existence since September.

13      Q.    Of 2016?

14      A.    Yes.

15      Q.    And do you know why -- do you know whether

16  the credit line was, in fact, extended to Alliance?

17      A.    I do not know.

18      Q.    Were you involved in discussions about

19  whether to do that?

20      A.    No.

21      Q.    Were you involved in the -- forget that, I'll

22   move on.

23           Are you involved -- what is your involvement

24   in the sales operations of Alarm.com?

1    also collect for where we can resale our certificates;

2    however, contracts are stipulated that the service

3    provider as the reseller to the end-user customer is

4     responsible for collecting any and all and remitting

5    those sales taxes, if applicable.  Jurisdictions change.

6        Q.    So if you will, walk me through the flow of

7     money from when a new subscriber is obtained by a

8    service provider.  Who pays what to whom and what

9    other payments does that trigger?

10       A.    Specific to Alliance?

11       Q.    Yes.

12       A.    So if Alliance signs up a new subscriber,

13   then they would charge whatever they charge.  We don't

14   monitor or track or tell our service providers how to

15   charge their customers.  We would charge them an

16   activation fee if they're not selling off to

17   Monitronics.

18       Q.    "Charge them an activation fee" meaning

19   charge --

20       A.    I would have to look at the Alliance contract

21   to make sure we have that provision, its not with all of

22   our service providers, I should go back and look at

23   that.  If they sell them to Monitronics, the flow of

24   cash to Alarm.com would be when we charge Monitronics

1    the monthly subscription rate that we're charging for

2    whatever type of service they've put on.

3                Again, we don't know what Monitronics is

4    charging those end-user customers, we don't dictate

5    that to our service providers.  They would pay us

6    whatever we're charging for the program that -- you

7    know, different service packages.  And if they bought

8    hardware, we would receive cash for the hardware.

9            Q.    So let me kind of take that step-by-step.

10   That's good, helpful information, but it's a lot, so I

11   want to make sure that I understand it.

12           A.    Uh-huh.

13           Q.    So Alliance obtains a new account --

14           A.    Uh-huh.

15           Q.    -- right, Alarm.com account subscriber?  It

16   charges that subscriber monthly; right?

17           A.    Yes.

18           Q.    And it receives that money, you know he --

19   where does the -- Alarm.com does not pay directly for

20    that account any money to Alliance; is that right,

21   apart from the rebate?

22           A.    Correct.

23           Q.    Alarm.com pays Monitronics?

24           A.    No.  Alarm.com doesn't pay anybody anything.

1  basic cable, and you can get basic cable plus a sports

2  tier.  It depends on the tier, but there is tier --

3  there is set pricing for each tier.

4          Now, we do negotiate with dealers on a, you

5  know, a case-by-case basis, the rates may be

6  different, but we have a standard rack rate for these

7  subscriptions.

8      Q.    Take that back if I may.

9            I'm handing you Exhibit 31.

10           (Gollinger Exhibit No. 31, Objections and

11  Responses to Plaintiff's First Set of Interrogatories to

12  Defendant's Alarm.com, Incorporated, and Alarm.com

13  Holdings, Incorporated, marked for identification.)

14           BY MR. BARRETT:

15      Q.    What is Exhibit 31?

16      A.    Is that question to me?

17      Q.    Yes, it is.

18      A.    Objections and Responses to Plaintiff's First

19  Set of Interrogatories to Defendants Alarm.com,

20  Incorporated, and Alarm.com Holdings, Incorporated.

21      Q.    Is this one of the documents that you

22  reviewed in preparing for your deposition?

23      A.    Yes.

24      Q.    And were you involved in providing

ABANTE ROOTER, ET AL. v                                          ALLEN GOLLINGER
ALARM.COM INCORPORATED, ET AL.                                  October 28, 2016

 1  information that is contained in this document?

 2       A.     No.

 3       Q.     What aspects of which interrogatory responses

 4  did you review in preparation for this deposition?

 5       A.     I reviewed all of them.

 6       Q.     I want to talk to you in particular about

 7  response to Interrogatory No. 17, in particular page 21.

 8              Were you involved in preparing information

 9  that was used to respond to Interrogatory 17?

10       A.     No.

11       Q.     Are you familiar with how that information

12  was obtained?

13       A.     Yes.

14       Q.     And how was that information obtained?

15       A.     Counsel requested a member of my team to pull

16   the information as requested.

17              Q.     Do you see under subparagraph A, page 21

18   "Alarm.com received the following revenue from

19  Alliance" by year?

20       A.     Yes.

21       Q.     And the numbers are at least reasonably 2015,

22   $718,786.05.  Do you see that?

23       A.     I do.

24       Q.     How did Alarm.com receive that -- or why did

1    Alarm.com receive that revenue from Alliance?

2         A.    Because Alliance began in the late 2013,

3    early 2014 time period, buying hardware directly from

4    Alarm.com, as opposed to going through the distribution

5    channel.

6         Q.    So is this all $718,786, was that limited to

7    hardware purchases from --

8         A.    The vast majority, greater than 98 percent.

9         Q.    What was the remainder?

10        A.    They do hold a couple of accounts on their

11   own, their own subscriber accounts.

12        Q.    I'm not sure I -- I don't follow that.  They

13   held a couple of subscriber accounts on their own?

14        A.    Alliance generally creates subscriptions,

15   sells them to Monitronics.  They retain, or have

16   retained some of those, and they generate their own

17   monthly revenue stream off of those accounts.

18             So there could be some of that in there.  I

19   can't say that that's 100 percent hardware.  It is the

20   vast majority.

21        Q.    And what is the hardware that is sold?

22        A.    It depends on the subscription.  It could be

23   cameras.  It could be the actual panels for securities.

24   It depends, again, in the home automation suite what

 1   they're actually -- what the subscriber is purchasing.

 2        Q.    Okay.  Does Alliance purchase that hardware

 3   directly from Alarm.com?

 4        A.    Yes.  But they're not required to.

 5        Q.    Do they purchase hardware used by Alarm.com

 6   subscribers for Alarm.com services from any other

 7   company?

 8        A.    Yes.  They buy them from distributors as

 9   well.

10        Q.    Do you know who?

11        A.    No.

12        Q.    And what is an example of that hardware?

13        A.    It's the same.

14        Q.    Do you know what approximate percentage of

15   their hardware they are purchasing from Alarm.com as

16   opposed to from other distributors?

17        A.    In 2015, the majority is from Alarm.com.

18        Q.    As a percentage, would it be more than 50

19   percent, more than 90 percent?

20        A.    It would be unable for me to make that

21   determination.

22        Q.    The next subparagraph of part B, "Alarm.com

23   provided the following rebates to Alliance," 2015,

24   159,984.  Earlier, you had described the rebate.  Why

1    were there no rebates paid to Alliance in 2014?

2        A.    The rebate program from a buying perspective

3    was agreed upon with Alliance in 2015. One didn't exist

4    in 2014.

5        Q.    Were you involved in the negotiation of the

6    rebate amounts or targets --

7        A.    No.

8        Q.    -- with respect to Alliance?

9                MR. JACOBOVITZ:  Let him finish.

10               THE WITNESS:  I'm sorry.  I thought he

11   was.

12               BY MR. BARRETT:

13       Q.    That's okay.  Paragraph C, "Alarm.com

14   extended the following marketing development funds to

15   Alliance in the form of a credit to be used on

16   Alarm.Com's branded store."  What information did you

17   access to obtain -- or what did Alarm.com access to

18   obtain the figures in C1 through 3?

19       A.    As I didn't pull it, I couldn't say for sure.

20   It would be available through looking at marketing spin.

21       Q.    Are plural item such as contributions to

22   Christmas parties or other events included within

23   subparagraphs A through C?

24       A.    No.

ABANTE ROOTER, ET AL. v                                                    ALLEN GOLLINGER
ALARM.COM INCORPORATED, ET AL.                                             October 28, 2016

```
 1    State of Maryland
 2    Carroll County to wit:
 3            I, MELISSA LYNN CLARK, a Notary Public of
 4    the State of Maryland, do hereby certify that the
 5    within-named witness personally appeared before me at
 6    the time and place here-in set out, and after having
 7    been duly sworn by me, according to the law, was
 8    examined by counsel.
 9            I further certify that the examination was
10    recorded stenographically by me and this transcript
11    is a true record of the proceedings.
12            I further certify that I am not of counsel
13    to any of the parties, nor an employee of counsel,
14    nor related to any of the parties, nor in any way
15    interested in the outcome of this action.
16            As witness my hand and Notarial Seal
17    This 9th day of November, 2016.
18
19
20
21
22            *Melissa L. Clark*
23            Melissa L. Clark, Notary Public
24    My commission expires:   06/30/2019
```

Ross A. Buntrock (admitted *pro hac vice*)
Email: ross.buntrock@agg.com
Maayan Y. Lattin (admitted *pro hac vice*)
Email: maayan.lattin@agg.com
Eric D. Olson (admitted *pro hac vice*)
Email: eric.olson@agg.com
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006
Telephone: (202) 677-4910
Facsimile: (202) 677-4911

Stephen E. Taylor (SBN 058452)
Email: staylor@tcolaw.com
Jonathan A. Patchen (SBN 237346)
Email: jpatchen@tcolaw.com
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208

Attorneys for Defendants
*Alarm.com Incorporated and*
*Alarm.com Holdings, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

|  |  |
|---|---|
| ABANTE ROOTER & PLUMBING, INC., *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALARM.COM INCORPORATED, *et al.*,<br><br>Defendants. | Case No. 4:15-cv-06314-YGR<br><br>**DEFENDANTS' FIRST SUPPLE-MENTAL OBJECTIONS AND RE-SPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DE-FENDANTS ALARM.COM INCORPO-RATED AND ALARM.COM HOLD-INGS, INC.**<br><br>Action Filed: December 30, 2015<br><br>Honorable Yvonne Gonzales Rogers |

EXHIBIT 31
GOLLINGER
10/28/16
Reporter: Melissa L. Clark

8948956v1

Defendants Alarm.com Incorporated and Alarm.com Holdings, Inc. (collectively, "Alarm.com"),[1] by and through their undersigned counsel, hereby serve their Objections and Responses to Plaintiffs Abante Rooter and Plumbing, Inc., George Ross Manesiotis, Mark Hankins, and Philip J. Charvat's (collectively, "Plaintiffs") First Set of Interrogatories, as follows:

## PRELIMINARY STATEMENT

1.   Alarm.com's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Alarm.com's right to rely on other facts or documents at trial.

2.   By making the accompanying responses and objections to Plaintiffs' Interrogatories, Alarm.com does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Alarm.com makes the responses and objections herein without in any way implying that it considers the Interrogatories, and responses to the Interrogatories, to be relevant or material to the subject matter of this action.

3.   Alarm.com will produce responsive documents only to the extent that such documents are in the possession, custody, or control of Alarm.com. Alarm.com's possession, custody, or control does not include any constructive possession that may be inferred by Alarm.com's ability to issue subpoenas to third parties or to request information from its Service Providers based on any contract.

4.   A response to an Interrogatory stating objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Alarm.com performed any of the acts described in the Interrogatory or definitions and/or instructions applicable to the Interrogatory, or that Alarm.com acquiesces in the characterization of the

---

[1] Alarm.com submits this joint document on behalf of both Alarm.com Incorporated and Alarm.com Holdings, Inc. pursuant to an agreement with counsel for Plaintiffs.

8948956v1

conduct or activities contained in the Interrogatory, or definitions and/or instructions applicable to the Interrogatory.

5.   Alarm.com expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses or objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6.   Alarm.com will attempt to accommodate the formatting requests of Plaintiffs. However, if such accommodation will impose an undue or substantial burden on Alarm.com, Alarm.com reserves the right to object to that formatting.

## GENERAL OBJECTIONS

1.   Alarm.com objects to the use of any titles, terms, or definitions used by Plaintiffs to describe Alarm.com employees, processes, affiliates, service providers, or other entities to the extent that those titles, terms, or definitions are not used by Alarm.com and/or do not accurately describe the titles and functions of those entities.

2.   Alarm.com objects to Plaintiffs' Interrogatories to the extent they seek information not reasonably related to the allegations in the Complaint. Specifically, Alarm.com objects to Plaintiffs' attempts to engage in a fishing expedition for information regarding Alarm.com Service Providers not named in the Complaint.

3.   Alarm.com objects to Plaintiffs' Interrogatories to the extent that any one seeks information that is not in Alarm.com's possession, custody, or control.

4.   Alarm.com objects to Plaintiffs' Interrogatories to the extent that any one requests information and/or documents that are subject to attorney-client privilege, that constitute trial preparation materials or work product, or that are otherwise privileged, protected from, and/or not subject to discovery. Nothing contained in these responses is intended or should be construed as a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or doctrine.

5.  Alarm.com objects to Plaintiffs' Interrogatories to the extent that any one seeks information and/or documents that are irrelevant, immaterial, and/or not reasonably calculated to lead to discovery of relevant or admissible evidence.

6.  Alarm.com objects to Plaintiffs' Interrogatories to the extent that any Interrogatory, or set of such Interrogatories, when read together, are disproportionate to the allegations set forth in the Complaint.

7.  Alarm.com objects to Plaintiffs' Interrogatories to the extent that any one exceeds the scope of discovery permitted by the Federal Rules of Civil Procedure, or to the extent that the Interrogatories purport to impose obligations upon Alarm.com greater or different from those imposed by the Federal Rules of Civil Procedure.

8.  Alarm.com objects to Plaintiffs' Interrogatories to the extent that any one seeks information or documents that constitute or contain trade secrets, proprietary information, and/or other confidential information.  Alarm.com will only produce such information pursuant to entry of an appropriate protective order and if such information is not subject to any other objection justifying withholding.

9.  Alarm.com objects to Plaintiffs' Interrogatories to the extent that they are vague or ambiguous. Alarm.com will attempt to respond to each interrogatory to the best of its ability based upon its understanding of any such request, if possible.

10. Alarm.com objects to Plaintiffs' Interrogatories to the extent that any one seeks the present or last known addresses of any of the named individuals referred to herein on privacy grounds.  Alarm.com also states that any contacts by or on behalf of the Plaintiffs with any of the individuals named or referred to herein should be made through counsel for Alarm.com.

11. Alarm.com's responses set forth below are made without waiving in any manner (1) the right to object to use of any response for any purpose, in this action or any other action, on the grounds of privilege, relevance, materiality, or any other appropriate grounds; (2)  the right to object to any other request involving or relating to the subject matter of the responses herein; and

1  (3) the right to revise, correct, supplement, or clarify any of the responses provided below as may

2  be warranted.

3    12. Alarm.com's responses set forth below are made based on the information currently with-

4  in its knowledge and information, and objects to any Interrogatory that purports to require

5  Alarm.com to ascertain information not currently within its knowledge based on a reasonable

6  investigation.

7    13. Each and every response below is made subject to the foregoing General Objections, re-

8  gardless of whether a general or specific objection is stated in the response to a particular Inter-

9  rogatory, and Alarm.com does not waive any General Objections not referred to in a particular

10  response.

11                        **OBJECTIONS TO DEFINITIONS**

12    1.  Alarm.com objects to the definition of "Electronically Stored Information" ("ESI") as

13  overly broad, unduly burdensome, disproportionate under the facts of this case, and unlikely to

14  lead to the discovery of admissible evidence. Alarm.com specifically objects to collecting, re-

15  viewing, or otherwise producing the following types of ESI, as defined by Plaintiffs: text mes-

16  sages; AOL Instant Messenger (or similar program) or bulletin board programs; operating sys-

17  tems; source code; PRF files; PRC files, batch files; ASCII files; deleted files; file fragments;

18  and miscellaneous media. Alarm.com further objects to collecting, reviewing, or otherwise pro-

19  ducing ESI that resides on thumb drives, jump drives, CDs, DVDs, floppy disks, CD-ROM,

20  magnetic tape, microfiche, along with personal cellular or tablet devices.

21    2.  Alarm.com objects to the definition of "Identity of Individuals and/or Entities," as set

22  forth in General Objection No. 10, on privacy, burdensomeness, and relevance grounds.

23    3.  Alarm.com objects to the definition of "Alarm.com" to the extent that the definition pur-

24  ports to include its attorneys and/or legal representatives in this or any other action.

25    4.  Alarm.com objects to the definition of "Alarm.com Holdings" to the extent that the defi-

26  nition purports to include its attorneys and/or legal representatives in this or any other action.

27

5.  Alarm.com objects to the definition of "You" or "Your" to the extent that the definition purports to include its attorneys or legal representatives in this or any other action.

6.  Alarm.com objects to the use of the terms "Authorized Dealer" and "Authorized Marketer" as seeking to state the ultimate legal conclusion regarding Plaintiffs' legal theory relating to vicarious liability.

7.  Alarm.com further objects to the use of the terms "Authorized Dealer," "Authorized Marketer," "Lead Generator," "Vendor" or "Vendors," and "Third Party" or "Third Parties" or "Other Parties" on the grounds that the terms are ambiguous as defined, overbroad, and not reasonably calibrated to the issues at hand.

8.  Alarm.com objects to the definition of "Relevant Time Period," as the relevant time period for the purposes of the Complaint is from December 30, 2011 to December 30, 2015.

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**      IDENTIFY each PERSON who provided the information to answer these interrogatories, and specify each interrogatory or interrogatories about which each such PERSON had information.

**ANSWER:**

OBJECTION: Alarm.com objects to Interrogatory No. 1 to the extent that it seeks information covered by the attorney-client privilege or the work product doctrine or other applicable privilege or doctrine.

RESPONSE: These Interrogatory Responses were prepared by counsel, with the assistance of Kate Scavello, Deputy General Counsel of Alarm.com. Additional information relating to Interrogatory 7 was provided by Anne Ferguson and Donald (Nate) Natale, who are high-ranking Alarm.com employees. Ms. Scavello, Ms. Ferguson, and Mr. Natale may be contacted via Alarm.com's counsel.

1

2     **INTERROGATORY NO. 2:**        IDENTIFY the PERSONS who are most knowl-

3 edgeable about TELEMARKETING, including, but not limited to, the decision to engage in

4 TELEMARKETING, the making of TELEMARKETING calls, the preparation of the script(s)

5 used in the TELEMARKETING calls, and the AUTHORIZED DEALERS, AUTHORIZED

6 MARKETERS, LEAD GENERATORS, VENDORS, or other THIRD PARTIES that made

7 TELEMARKETING calls.

8     **ANSWER:**

9     <u>OBJECTION</u>: Alarm.com objects to Interrogatory No. 2 on the grounds that it rests on

10 the assumption that Alarm.com engages in telemarketing or any direct-to-consumer marketing,

11 which it does not. Alarm.com further objects to the use of the phrase "most knowledgeable" as

12 ambiguous under the circumstances. Alarm.com further objects on the ground that Interrogatory

13 No. 2 constitutes a compound interrogatory, seeking information about the persons most knowl-

14 edgeable about two separate subjects. Alarm.com further objects to the use of the terms "AU-

15 THORIZED DEALERS" and "AUTHORIZED MARKETERS," as those terms may have spe-

16 cific legal implications as it regards the TCPA.

17     <u>RESPONSE</u>: Subject to and without waiving the foregoing general and specific objec-

18 tions, Alarm.com states that none of its employees are knowledgeable about telemarketing, as

19 defined in the Interrogatory, as Alarm.com does not engage in telemarketing and does not control

20 or otherwise have knowledge of the marketing techniques and strategies employed by its Service

21 Providers. Alarm.com further notes that the individuals identified in its Initial Disclosures are the

22 persons who are most knowledgeable about Alarm.com's relationship with Alliance Security,

23 Inc.

24

25     **INTERROGATORY NO. 3:**       IDENTIFY each AUTHORIZED DEALER, AU-

26 THORIZED MARKETER, LEAD GENERATOR, VENDOR, or other THIRD PARTY who

27

---

1     engage or have engaged in TELEMARKETING during the RELEVANT TIME PERIOD.  For

2     each entity identified, list all sub-vendors or other THIRD-PARTIES each entity hired to per-

3     form TELEMARKETING.

4         **ANSWER:**

5         OBJECTION: Alarm.com objects to Interrogatory No. 3 on the grounds that it rests on

6     the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or

7     awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com

8     further objects to the use of the terms "AUTHORIZED DEALERS" and "AUTHORIZED

9     MARKETERS," as those terms may have specific legal implications as it regards the TCPA.

10    Alarm.com further objects to Interrogatory No. 3 on the grounds that it is overbroad, unduly bur-

11    densome, and is disproportionate in light of the limited nature of the allegations of the Com-

12    plaint, which cite calls allegedly made by only one or two of Alarm.com's Service Providers.

13    Alarm.com further objects on the ground that Interrogatory No. 3 constitutes a compound inter-

14    rogatory, seeking information about both Alarm.com's Service Providers and their sub-vendors

15    or contractors.

16        RESPONSE: Subject to and without waiving the foregoing general and specific objec-

17    tions, Alarm.com states that it has no direct knowledge of, or control over, the marketing practic-

18    es or policies of its Service Providers. Alarm.com further states that the only Service Provider

19    that is a subject of the Complaint that Alarm.com is indirectly and/or anecdotally aware engages

20    or engaged in telemarketing is Alliance Security, Inc. Alarm.com has no knowledge or infor-

21    mation in its possession, custody, or control regarding any sub-vendors or third parties contract-

22    ed by any Service Provider to perform telemarketing.

23

24        **INTERROGATORY NO. 4:**      IDENTIFY the hardware and software system(s)

25    (including the make of such system(s)) used by YOU or any AUTHORIZED DEALERS, AU-

26

27

THORIZED MARKETERS, LEAD GENERATORS, VENDORS, or other THIRD PARTIES for TELEMARKETING services identified in YOUR answer to Interrogatory No. 3.

**ANSWER:**

OBJECTION: Alarm.com objects to Interrogatory No. 4 on the grounds that it rests on the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com further objects to the use of the terms "AUTHORIZED DEALERS" and "AUTHORIZED MARKETERS," as those terms may have specific legal implications as it regards the TCPA. Alarm.com further objects to Interrogatory No. 4 on the grounds that it seeks information that is more readily available either from third parties, such as Alliance, or is already in Plaintiffs' counsel's possession as a result of discovery in *In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation*, MDL No. 2493. Alarm.com further objects to Interrogatory No. 4 on the grounds that it is not reasonably calculated to lead to discoverable information in this action. Alarm.com further objects to Interrogatory No. 4 on the grounds that it is ambiguous with respect to the nature, type, or style of the hardware and software systems about which it seeks information. Alarm.com further objects to Interrogatory No. 4 as compound, as it requests information regarding both hardware *and* software systems allegedly utilized by *both* Alarm.com *and* any party named in Interrogatory 3.

RESPONSE: Subject to and without waiving the foregoing general and specific objections, Alarm.com states that it has no information responsive to Interrogatory No. 4 in its possession, custody, or control.

**INTERROGATORY NO. 5:**     For each hardware or software system IDENTIFIED in YOUR answer to Interrogatory No. 4, IDENTIFY the primary PERSON(S) responsible for its maintenance or operation.

**ANSWER:**

8948956v1

OBJECTION: Alarm.com objects to Interrogatory No. 5 on the grounds that it rests on the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com further objects to Interrogatory No. 5 on the grounds that it seeks information that is in whole or in part more readily available either from third parties, such as Alliance, or is already in Plaintiffs' counsel's possession as a result of discovery in *In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation*, MDL No. 2493. Alarm.com further objects to Interrogatory No. 5 on the grounds that it is not reasonably calculated to lead to discoverable information in this action. Alarm.com further objects to Interrogatory No. 5 on the grounds that it is ambiguous with respect to the nature, type, or style of the hardware and software systems about which it seeks information.

RESPONSE: Notwithstanding and without waiving the foregoing general and specific objections, Alarm.com states that it has no information responsive to Interrogatory No. 5 in its possession, custody, or control.

**INTERROGATORY NO. 6:**        For each hardware or software system IDENTIFIED in YOUR answer to Interrogatory No. 4, please DESCRIBE the data contained within, its data dictionary, and the key to its data tables.

**ANSWER:**

OBJECTION: Alarm.com objects to Interrogatory No. 6 on the grounds that it rests on the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com further objects to Interrogatory No. 6 on the grounds that it seeks information that is in whole or in part more readily available either from third parties, such as Alliance, or is already in Plaintiffs' counsel's possession as a result of discovery in *In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation*, MDL No. 2493. Alarm.com further objects to Inter-

1  rogatory No. 6 on the grounds that it is not reasonably calculated to lead to discoverable infor-

2  mation in this action. Alarm.com further objects to Interrogatory No. 6 on the grounds that it is

3  ambiguous with respect to the nature, type, or style of the hardware and software systems about

4  which it seeks information. Alarm.com further objects to Interrogatory No. 6 on the grounds that

5  it seeks the production of documents, which must be made in a request for production.

6  RESPONSE: Notwithstanding and without waiving the foregoing general and specific

7  objections, Alarm.com states that it has no information responsive to Interrogatory No. 6 in its

8  possession, custody, or control.

9

10  **INTERROGATORY NO. 7:**      Please IDENTIFY any awards, certificates, honors,

11  sales rankings, performance incentives, or similar recognitions YOU have provided to any AU-

12  THORIZED DEALERS, AUTHORIZED MARKETERS, LEAD GENERATORS, VENDORS,

13  or other THIRD PARTIES.

14  **ANSWER:**

15  OBJECTION: Alarm.com objects to Interrogatory No. 7 on the grounds that it is over-

16  broad, unduly burdensome, and not reasonably calculated to lead to admissible information.

17  Alarm.com further objects to the use of the terms "AUTHORIZED DEALERS" and "AUTHOR-

18  IZED MARKETERS," as those terms may have specific legal implications as it regards the

19  TCPA. Alarm.com further objects to Interrogatory No. 7 on the grounds that the term "similar

20  recognitions" is ambiguous and not defined in these Interrogatories.

21  Alarm.com notes for the record that its response is limited, as agreed by Plaintiffs' coun-

22  sel, to awards, certificates, honors, sales rankings, performance incentives, or similar recogni-

23  tions provided to those entities identified in its response to Interrogatory No. 3.

24  RESPONSE: Subject to and without waiving the foregoing general and specific objec-

25  tions, Alarm.com states that its service providers may become part of its four-tiered Premier

26  Partner Program. The program, which includes only a small portion of Alarm.com's over 6,000

27

1   service providers, is based on volume sales and new consumer activations, as well as log-in per-

2   centage. Each ascending tier of the Premier Partner Program, from Bronze to Platinum, entitles

3   the Service Provider to additional Marketing Development Funds, which may be used to order

4   co-branded marketing collateral from Alarm.com's internal store. Certain large partners may

5   propose additional co-branded marketing items, such as co-branded clothing, pens, and similar

6   items, to which they may apply their Marketing Development Funds.

7          Alarm.com also recognizes certain Service Providers that are members of the Premier

8   Partner Program with gifts of nominal value upon the achievement of certain milestones.

9

10         **INTERROGATORY NO. 8:**        For each entity identified in YOUR answer to Inter-

11   rogatory No. 3, please IDENTIFY:  (a) the number of TELEMARKETING calls made by each

12   AUTHORIZED DEALER, AUTHORIZED MARKETER, LEAD GENERATOR, VENDOR, or

13   other THIRD PARTY; (b) the dates the TELEMARKETING calls were made; and (c) the PER-

14   SON(S) who received the TELEMARKETING calls.

15         **ANSWER:**

16         OBJECTION: Alarm.com objects to Interrogatory No. 8 on the grounds that it rests on

17   the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or

18   awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com

19   further objects that it has no direct knowledge that any of its Service Providers ever placed tele-

20   marketing calls. Alarm.com further objects to Interrogatory No. 8 on the grounds that it seeks

21   information that is in whole or in part more readily available either from third parties, such as

22   Alliance, or is already in Plaintiffs' counsel's possession as a result of discovery in *In re Moni-*

23   *tronics International, Inc. Telephone Consumer Protection Act Litigation*, MDL No. 2493.

24   Alarm.com further objects to Interrogatory No. 8 on the grounds that it is not reasonably calcu-

25   lated to lead to discoverable information in this action. Alarm.com further objects to Interrogato-

26   ry No. 8 on the grounds that it seeks the production of documents, which must be made in a re-

27

1   quest for production. Alarm.com further objects to the use of the terms "AUTHORIZED DEAL-

2   ERS" and "AUTHORIZED MARKETERS," as those terms may have specific legal implications

3   as it regards the TCPA. Alarm.com further objects on the ground that Interrogatory No. 8 consti-

4   tutes a compound interrogatory, as it requests that Alarm.com identify the number of calls made,

5   the dates the calls were made, and the persons who received the calls

6       RESPONSE: Notwithstanding and without waiving the foregoing general and specific

7   objections, Alarm.com states that there is no information responsive to this Interrogatory in its

8   custody, control, or possession.

9

10      **INTERROGATORY NO. 9:**        State whether any TELEMARKETING calls placed

11  by any AUTHORIZED DEALERS, AUTHORIZED MARKETERS, LEAD GENERATORS,

12  VENDORS, or other THIRD PARTIES were ever transferred to YOU.

13      **ANSWER:**

14      OBJECTION: Alarm.com objects to Interrogatory No. 9 on the grounds that it rests on

15  the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or

16  awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com

17  further objects that it has no direct knowledge that any of its Service Providers ever placed tele-

18  marketing calls. Alarm.com further objects to Interrogatory No. 9 on the grounds that it is not

19  reasonably calculated to lead to discoverable information in this action. Alarm.com further ob-

20  jects to the use of the terms "AUTHORIZED DEALERS" and "AUTHORIZED MARKET-

21  ERS," as those terms may have specific legal implications as it regards the TCPA.

22      RESPONSE: Subject to and without waiving the foregoing general and specific objec-

23  tions, Alarm.com denies that any telemarketing calls, whether placed by a Service Provider or

24  otherwise, were ever transferred to Alarm.com.

25

26

27

8948956v1

1   **INTERROGATORY NO. 10:**      State whether YOU required any AUTHORIZED

2   DEALERS, AUTHORIZED MARKETERS, LEAD GENERATORS, VENDORS, or other

3   THIRD PARTIES to record TELEMARKETING calls, whether YOU or any AUTHORIZED

4   DEALERS, AUTHORIZED MARKETERS, LEAD GENERATORS, VENDORS, or other

5   THIRD PARTIES in fact recorded TELEMARKETING calls, and whether YOU reviewed, or

6   reserved the right to review, the content of those recordings.

7   **ANSWER:**

8   OBJECTION: Alarm.com objects to Interrogatory No. 10 on the grounds that it rests on

9   the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or

10  awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com

11  further objects on the grounds that it has no direct knowledge that any of its Service Providers

12  ever placed telemarketing calls. Alarm.com further objects to Interrogatory No. 10 on the

13  grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to dis-

14  coverable information in this action. Alarm.com further objects to Interrogatory No. 10 on the

15  grounds that it seeks the production of documents, which must be made in a request for produc-

16  tion. Alarm.com further objects to the use of the terms "AUTHORIZED DEALERS" and "AU-

17  THORIZED MARKETERS," as those terms may have specific legal implications as it regards

18  the TCPA. Alarm.com further objects on the grounds that this question is not limited to the alle-

19  gations set forth in the Complaint.

20  RESPONSE: Subject to and without waiving the foregoing general and specific objec-

21  tions, Alarm.com states that it is not involved in, does not control, and has no knowledge of the

22  marketing practices or policies of its Service Providers. Similarly, Alarm.com has never required

23  any of its Service Providers to record any telemarketing calls, and, to the extent that any exist in

24  the records of any Service Provider, has never received, reviewed, or reserved the right to review

25  any such recording.

26

27

1  **INTERROGATORY NO. 11:**     DESCRIBE whether any AUTHORIZED DEAL-

2  ERS, AUTHORIZED MARKETERS, LEAD GENERATORS, VENDORS, or other THIRD

3  PARTIES had access to YOUR computer systems, websites, intranet, or databases and the nature

4  of that access.

5      **ANSWER:**

6      OBJECTION: Alarm.com objects to Interrogatory No. 11 on the grounds that the terms

7  "computer systems," "websites," and "intranet" are ambiguous and are not defined in the Inter-

8  rogatories. Alarm.com further objects to the use of the terms "AUTHORIZED DEALERS" and

9  "AUTHORIZED MARKETERS," as those terms may have specific legal implications with re-

10 gard to the TCPA. Alarm.com further objects on the grounds that Interrogatory No. 11 is not rea-

11 sonably calculated to lead to admissible evidence and is disproportionately broad, as the Inter-

12 rogatory is not limited to those Service Providers that are subjects of the allegations in the Com-

13 plaint.

14      RESPONSE: Subject to and without waiving the foregoing general and specific objec-

15 tions, Alarm.com states that it makes an administrative, provider-focused web portal available to

16 its Service Providers via secure login. From the web portal, Service Providers may, among other

17 activities, register or terminate customer accounts, review Alarm.com's terms and conditions,

18 and access a store where Service Providers may order co-branded collateral materials.

19

20      **INTERROGATORY NO. 12:**     DESCRIBE any POLICIES related to TELEMAR-

21 KETING that were provided by YOU to any AUTHORIZED DEALERS, AUTHORIZED

22 MARKETERS, LEAD GENERATORS, VENDORS, or THIRD PARTIES identified in YOUR

23 answer to Interrogatory No. 3.

24      **ANSWER:**

25      OBJECTION: Alarm.com objects to Interrogatory No. 12 on the grounds that it rests on

26 the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or

27

1    awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com

2    further objects on the grounds that it has no direct knowledge that any of its Service Providers

3    ever placed telemarketing calls. Alarm.com further objects to Interrogatory No. 12 on the

4    grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to dis-

5    coverable information in this action. Alarm.com further objects to Interrogatory No. 12 on the

6    grounds that it effectively seeks the production of documents, which must be made in a request

7    for production. Alarm.com further objects to the use of the terms "AUTHORIZED DEALERS"

8    and "AUTHORIZED MARKETERS," as those terms may have specific legal implications as it

9    regards the TCPA.

10        RESPONSE: Subject to, and without waiving the foregoing general and specific objec-

11    tions, Alarm.com states that it has never provided any policies related to telemarketing to any of

12    the entities identified in its answer to Interrogatory No. 3.

13

14        **INTERROGATORY NO. 13:**        DESCRIBE any POLICIES used during the REL-

15    EVANT TIME PERIOD, whether or not still in force, related to compliance with the Telephone

16    Consumer Protection Act, 47 U.S.C. § 227, including, but not limited to the rules, regulations,

17    opinions, advisories, comments, or filings of the Federal Communications Commission that re-

18    late to 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c)(2) & (d), and the time period each POLICY

19    was in force.

20        **ANSWER:**

21        OBJECTION: Alarm.com objects to the use of the phrase "related to compliance" as am-

22    biguous and not defined in the Interrogatories.

23        RESPONSE: Alarm.com states that it promulgated several Consumer Communications

24    Policies, including its Do Not Call Policy, Do Not Fax Policy, and "CAN-SPAM" Email Market-

25    ing Policy, all of which are still in effect and were in effect during the relevant time period.

26

27

1   These Policies require employees to fully comply with the TCPA, among other federal and state

2   regulations.

3

4   **INTERROGATORY NO. 14:**       IDENTIFY all PERSONS who have made requests

5   to stop being contacted by, or made complaints about TELEMARKETING calls from, YOU or

6   any AUTHORIZED DEALER, AUTHORIZED MARKETER, LEAD GENERATOR, VEN-

7   DOR, or THIRD PARTY, including, but not limited to, requests and complaints made by mail,

8   email, or telephone; requests and complaints submitted to any government agency; requests and

9   complaints submitted to any other organization such as the Better Business Bureau, Chamber of

10  Commerce or other consumer advice or protection organization; or any other organization of any

11  kind.

12      **ANSWER:**

13      <u>OBJECTION:</u> Alarm.com objects to Interrogatory No. 14 as overly broad, unduly bur-

14  densome, and not reasonably calculated to lead to admissible evidence. Alarm.com further ob-

15  jects to Interrogatory No. 14 as exceeding the scope of the allegations in the Complaint and is

16  disproportionate in light of the limited nature of the allegations in the Complaint. Alarm.com fur-

17  ther objects to the use of the terms "AUTHORIZED DEALERS" and "AUTHORIZED MAR-

18  KETERS," as those terms may have specific legal implications as it regards the TCPA.

19  Alarm.com further objects to Interrogatory No. 14 as compound, as it seeks not only complaints

20  made to Alarm.com, but also complaints submitted to government agencies and other organiza-

21  tions. Alarm.com limits its response to those entities listed in its response to Interrogatory No. 3.

22      <u>RESPONSE:</u> Subject to and without waiving the foregoing general and specific objec-

23  tions, Alarm.com states that it has not received any complaints related to telemarketing naming

24  any of the entities listed in its response to Interrogatory No. 3.

25

26

27

8948956v1

1    **INTERROGATORY NO. 15:**        IDENTIFY any PERSON (whether employed by

2    YOU or not) whom YOU have disciplined, reprimanded, or taken similar action against for en-

3    gaging in, facilitating, or allowing allegedly unlawful or unauthorized TELEMARKETING to

4    occur.  In YOUR answer, please IDENTIFY all PERSONS involved in any investigation, DE-

5    SCRIBE the reasons for YOUR disciplinary action or reprimand, and DESCRIBE the action tak-

6    en against the PERSON.

7    **ANSWER:**

8    OBJECTION: Alarm.com objects to Interrogatory No. 15 on the grounds that it rests on

9    the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or

10   awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com

11   further objects on the grounds that it has no direct knowledge that any of its Service Providers

12   ever placed telemarketing calls. Alarm.com further objects to Interrogatory No. 15 on the

13   grounds that  the phrases "disciplined," "reprimanded," "similar action," and "facilitating" are

14   ambiguous, vague, and unclear in this context. Alarm.com further objects to Interrogatory No. 15

15   on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead

16   to admissible evidence. Alarm.com further objects to Interrogatory No. 15 on the grounds that it

17   exceeds the scope of permissible discovery with respect to the allegations in the Complaint.

18   Alarm.com further objects to Interrogatory No. 15 as compound, as it seeks information about

19   individuals against whom Alarm.com has taken several forms of disciplinary action, as well as

20   information relating to the investigation into and details relating to the same.

21   RESPONSE: Subject to and without waiving the foregoing general and specific objec-

22   tions, Alarm.com states that Alarm.com has not disciplined or reprimanded any person for en-

23   gaging in, facilitating, or allowing allegedly unlawful or unauthorized telemarketing to occur re-

24   lated to the events and allegations set forth in the Complaint or the entities listed in its response

25   to Interrogatory No. 3.

26

27

1    **INTERROGATORY NO. 16:**       IDENTIFY each PERSON involved in training

2    YOUR employees, AUTHORIZED DEALERS, AUTHORIZED MARKETERS, LEAD GEN-

3    ERATORS, VENDORS, or other THIRD PARTIES regarding TELEMARKETING.  Please in-

4    clude in YOUR answer a brief description of each PERSON'S responsibilities regarding this

5    training, and the dates of any training provided.

6    **ANSWER:**

7    OBJECTION: Alarm.com objects to Interrogatory No. 16 on the grounds that it rests on

8    the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or

9    awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com

10    further objects on the grounds that it has no direct knowledge that any of its Service Providers

11    ever placed telemarketing calls. Alarm.com further objects to Interrogatory No. 16 as exceeding

12    the scope of the allegations in the Complaint and disproportionate in light of the limited nature of

13    the allegations in the Complaint. Alarm.com further objects to the use of the terms "AUTHOR-

14    IZED DEALERS" and "AUTHORIZED MARKETERS," as those terms may have specific legal

15    implications as it regards the TCPA.

16    RESPONSE: Subject to and without waiving any of the foregoing specific or general ob-

17    jections, Alarm.com states, as its response to Interrogatory No. 16: "None."

18

19    **INTERROGATORY NO. 17:**       Regarding Alliance Security, Inc. and any AU-

20    THORIZED DEALER, AUTHORIZED MARKETER, LEAD GENERATOR, VENDOR, or

21    THIRD PARTY that has engaged in TELEMARKETING:

22             a.       Please state the total annual amount YOU paid to or received from the

23    AUTHORIZED DEALER, AUTHORIZED MARKETER, LEAD GENERATOR, VENDOR, or

24    THIRD PARTY;

25             b.       Please state the total annual amount of any noncash compensation (*e.g.*,

26    rebates, purchase credits, credit lines, or discounts) YOU provided to the AUTHORIZED

27

1  DEALER, AUTHORIZED MARKETER, LEAD GENERATOR, VENDOR, or THIRD

2  PARTY;

3         c.      Please IDENTIFY any form of financial support YOU have provided to

4  the AUTHORIZED DEALER, AUTHORIZED MARKETER, LEAD GENERATOR,

5  VENDOR, or THIRD PARTY to offset the cost of, or finance, their sales or marketing activities.

6         **ANSWER:**

7         OBJECTION: Alarm.com objects to Interrogatory No. 17 on the grounds that it rests on

8  the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or

9  awareness of the marketing practices or policies of its Service Providers; it does not. Alarm.com

10 further objects on the grounds that it has no direct knowledge that any of its Service Providers

11 ever placed telemarketing calls. Alarm.com objects to Interrogatory No. 17 on the grounds that it

12 exceeds the scope of the allegations in the Complaint and is disproportionate in light of the lim-

13 ited nature of the allegations in the Complaint. Alarm.com further objects to Interrogatory No. 17

14 on the grounds that a full response to the Interrogatory as written would require Alarm.com to

15 investigate whether each and every one of its Service Providers engaged in telemarketing during

16 the relevant period and then disclose voluminous information regarding the financial relationship

17 between Alarm.com and that particular Service Provider. Alarm.com accordingly limits its re-

18 sponse to the entities listed in response to Interrogatory No. 3. Alarm.com further objects to In-

19 terrogatory No. 17 on the grounds that it constitutes a compound interrogatory, requesting nu-

20 merous types of information regarding the financial relationship between Alarm.com and its Ser-

21 vice Providers. Alarm.com further objects to Interrogatory No. 17 on the grounds that the sub-

22 parts of the Interrogatory are substantially duplicative of each other. Alarm.com further objects

23 to the use of the terms "AUTHORIZED DEALERS" and "AUTHORIZED MARKETERS," as

24 those terms may have specific legal implications as it regards the TCPA. Alarm.com further ob-

25 jects to Interrogatory No. 17 inclusion of such offers as rebates, purchase credits, credit lines, or

26

27

1   discounts in the definition of "noncash compensation," as such belies the common usage of that

2   term.

3        <u>RESPONSE:</u> Alarm.com specifically states that the following information is designated

4   "CONFIDENTIAL" pursuant to the terms of the Stipulated Protective Order entered in this case.

5   Subject to that designation, Alarm.com responds as follows, with reference to the period from

6   December 30, 2011 to December 30, 2015:

7            a.    Alarm.com received the following revenue from Alliance, by year:

8               i.  2011 (Dec. 30-31 only): $188.11

9              ii.  2012: $62,423.44

10            iii.  2013: $57,526.35

11            iv.  2014: $230,840.06

12             v.  2015: $718,786.05

13            b.    Alarm.com provided the following rebates to Alliance:

14               i.  2015: $159,984.00

15            c.    Alarm.com extended the following Marketing Development Funds to Al-

16   liance in the form of a credit to be used on Alarm.com's branded store:

17               i.  2013: $2,000 (extended); $1,100 used

18              ii.  2014: $7,000 (extended); $7,000 used

19            iii.  2015: $4,000 (extended); $4,000 used

20

21     **<u>INTERROGATORY NO. 18:</u>**     IDENTIFY all PERSONS at ALARM.COM that

22   have communicated with any AUTHORIZED DEALER, AUTHORIZED MARKETER, LEAD

23   GENERATOR, VENDOR, or THIRD PARTY that has engaged in TELEMARKETING.

24     **<u>ANSWER:</u>**

25     <u>OBJECTION:</u> Alarm.com objects to Interrogatory No. 18 on the grounds that it rests on

26   the assumption that Alarm.com either engages in telemarketing itself or has any knowledge or

27

awareness of, or control over, the marketing practices or policies of its Service Providers; it does not. Alarm.com further objects on the grounds that it has no direct knowledge that any of its Service Providers ever placed telemarketing calls. Alarm.com objects to Interrogatory No. 18 on the grounds that it exceeds the scope of the allegations in the Complaint and is disproportionate in light of the limited nature of the allegations in the Complaint. Alarm.com further objects to Interrogatory No. 18 on the grounds that a full response to the Interrogatory as written would require Alarm.com to investigate whether each and every one of its Service Providers engaged in telemarketing during the relevant period. Alarm.com further objects to the use of the terms "AUTHORIZED DEALERS" and "AUTHORIZED MARKETERS," as those terms may have specific legal implications as it regards the TCPA. Alarm.com further objects to Interrogatory No. 18 as overly broad on the grounds that is not limited to individuals who have had communications with Service Providers about telemarketing.

RESPONSE: Subject to and without waiving the foregoing objections, Alarm.com states that no Alarm.com employees have had communications with the entities named in Interrogatory No. 3 regarding telemarketing.

**INTERROGATORY NO. 19:**        IDENTIFY all facts in support of affirmative defenses YOU have raised, including, but not limited to, the sources of any consent YOU assert YOU have obtained from any of the PLAINTIFFS or putative class members to make TELEMARKETING calls to them.

**ANSWER:**

**[Per Letter from Mary Reiten dated 6/22/2016, Interrogatory No. 19 is withdrawn]**

Respectfully submitted this 28th day of June 2016,

By: */s/ Ross A. Buntrock*
_____

Ross A. Buntrock, *Admitted Pro Hac Vice*
Email:  ross.buntrock@agg.com
Maayan Y. Lattin, *Admitted Pro Hac Vice*
Email:  maayan.lattin@agg.com
Eric D. Olson, *Admitted Pro Hac Vice*
Email:  eric.olson@agg.com
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006
Telephone: (202) 677-4910
Facsimile: (202) 677-4911

Stephen E. Taylor (SBN 058452)
Email: staylor@tcolaw.com
Jonathan A. Patchen (SBN 237346)
Email: jpatchen@tcolaw.com
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone:  (415) 788-8200
Facsimile:   (415) 788-8208

8948956v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### CERTIFICATION OF ATTORNEY

I am the attorney for Defendant Alarm.com Incorporated, in this matter, and I hereby certify that I have read the foregoing Plaintiffs' First Set of Requests for Production of Documents Propounded to Defendant Alarm.com Incorporated, and the Responses thereto, and believe that the same are in compliance with Federal Rule of Civil Procedure 26(g).

DATED this 28th day of June, 2016.

By: */s/ Ross A. Buntrock*

*Attorneys for Defendant Alarm.com Incorporated*

8948956v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**VERIFICATION**

I, Catherine Scavello, declare as follows:

I am the Deputy General Counsel of Defendant Alarm.com Incorporated and Alarm.com Holdings, Inc., parties to this action; I have read the within and foregoing Responses to Plaintiffs' First Set of Interrogatories and know its contents. I am informed and believe, and on that ground allege, that the matters stated in the foregoing document are true.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed on June 28, 2016, at McLean, Virginia.

By: _Catherine Scavello_

Catherine Scavello

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record for the Plaintiffs in this matter by electronic mail on June 28, 2016:

Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray
Email: jmurray@terrellmarshall.com
Kerem M. Levitas
Email: klevitas@terrellmarshall.com
936 N. 34th Street, Suite 300
Seattle, Washington  98103
Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

Michael F. Ram, SBN #104805
Email:  mram@rocklawcal.com
RAM, OLSON, CEREGHINO
   & KOPCZYNSKI LLP
101 Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

Marc R. Weintraub
360 Central Avenue, Suite 1500
St. Petersburg, Florida 33701
Telephone:  (727) 894-6745
Facsimile:  (727) 894-2649
E-mail: mweintraub@baileyglasser.com

John W. Barrett, *Admitted Pro Hac Vice*
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia  25301
Telephone:  (304) 345-6555
Facsimile:  (304) 342-1110
E-mail: jbarrett@baileyglasser.com

Edward A. Broderick
Anthony I. Paronich, *Admitted Pro Hac Vice*
BRODERICK LAW, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone:  (617) 738-7080
Facsimile:  (617) 830-0327
Email: ted@broderick-law.com
Email: anthony@broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts  01760
Telephone:  (508) 655-1415
Facsimile:  (508) 319-3077
E-mail: mmccue@massattorneys.net

*Attorneys for Plaintiffs*

DATED this 28th day of June, 2016.

By: /s/ Ross A. Buntrock
Ross A. Buntrock, *Admitted Pro Hac Vice*

8948956v1