— **EXHIBIT 8** —

**CERTIFIED COPY**

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                     OAKLAND DIVISION

 4

 5   ABANTE ROOTER AND PLUMBING,        )
 6   INC., MARK HANKINS, and PHILIP     )
 7   J. CHARVAT, individually and on    )   Case No.
 8   behalf of all others similarly     )   4:15-cv-06314-YGR
 9   situated,                          )
10                 Plaintiffs,          )
11        vs.                           )
12   ALARM.COM INCORPORATED, and        )
13   ALARM.COM HOLDINGS, INC.,          )
14                 Defendants.          )
15   _____    )

16

17      VIDEOTAPED DEPOSITION OF STEVE KAUFER, CPP

18                   March 8, 2018

19

20

21

22

23

24   Lori Arias, CSR 9433
     434717
25
```

**BARKLEY Court Reporters**
barkley.com

SINCE 1972

(310) 207-8000 Los Angeles        (415) 433-5777 San Francisco     (949) 955-0400 Irvine          (858) 455-5444 San Diego
(310) 207-8000 Century City       (408) 885-0550 San Jose          (760) 322-2240 Palm Springs    (800) 222-1231 Carlsbad
(916) 922-5777 Sacramento         (800) 222-1231 Martinez          (702) 366-0500 Las Vegas       (800) 222-1231 Monterey
(951) 686-0606 Riverside          (818) 702-0202 Woodland Hills    (702) 366-0500 Henderson       (516) 277-9494 Garden City
(212) 808-8500 New York City      (347) 821-4611 Brooklyn          (518) 490-1910 Albany          (914) 510-9110 White Plains
(312) 379-5566 Chicago            00+1+800 222 1231 Paris          00+1+800 222 1231 Dubai        001+1+800 222 1231 Hong Kong

|     |       |                                                          |
| --- | ----- | -------------------------------------------------------- |
|       | 1  | that would allow Alliance to choose a component |
|       | 2  | manufactured by someone other than Alarm.com that |
|       | 3  | would fill that part of the alarm system? |
|       | 4  | A.   Well, again, that's why -- that's why you |
| 10:43 | 5  | need an expert in the alarm industry, because you |
|       | 6  | can't provide Alarm.com service without the part |
|       | 7  | from Alarm.com, just as you can't provide the |
|       | 8  | Honeywell Total Connect service without the part |
|       | 9  | from Honeywell.  So if -- if a company wants to |
| 10:43 | 10 | offer another service, then they just switch to a |
|       | 11 | different module. |
|       | 12 | Q.   You've read the contract between Alliance |
|       | 13 | and Alarm.com, correct? |
|       | 14 | A.   Correct. |
| 10:44 | 15 | Q.   Did you see that there's an exclusivity |
|       | 16 | provision in the addendum? |
|       | 17 | A.   Yes, but that doesn't mean that they could |
|       | 18 | decide we no longer want to use Alarm.com and go to |
|       | 19 | Honeywell Total Connect or DMP SecureCom. |
| 10:44 | 20 | Q.   So long as that contract is in place |
|       | 21 | between Alarm.com and Alliance, they are precluded |
|       | 22 | from going to a different company to provide that |
|       | 23 | component -- |
|       | 24 | A.   But they could end -- |
| 10:44 | 25 | Q.   -- is that correct? |

```
 1        MS. SCHUCHARDT:  Objection.
 2        THE WITNESS:  -- they could end the contract,
 3   correct.
 4   BY MS. TERRELL:
 5       Q.   Okay.  So -- so your -- your assumption
 6   that Alliance had a choice about which type of
 7   component to use other than Alarm.com assumes that
 8   in order to exercise that choice, they would need
 9   to terminate the contract with Alarm.com?
10        MS. SCHUCHARDT:  Objection.
11        THE WITNESS:  If they wanted to provide a
12   service other than Alarm.com, they would have to
13   use a different module, yes.
14   BY MS. TERRELL:
15       Q.   Do you know whether Alliance ever
16   terminated the contract with Alarm.com during the
17   time which is relevant to this lawsuit?
18       A.   I do not.
19       Q.   So while there might be a general ability
20   in the alarm industry for alarm companies to choose
21   components to put into whatever system they're
22   going to sell, for purposes of this case, Alliance
23   had contracted away that choice.
24            Isn't that correct?
25        MS. SCHUCHARDT:  Objection to form.
```

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | you're an Alarm.com dealer, you're a Honeywell           |
|       | 2  | dealer, they don't give you the set of standards         |
|       | 3  | and practices that they want to apply to your            |
|       | 4  | business.                                                |
| 11:23 | 5  | BY MS. TERRELL:                                          |
|       | 6  |     Q.   I see in paragraph 19 two components.  One      |
|       | 7  | is they do not dictate or exert control.  Okay?          |
|       | 8  |     A.   Okay.                                           |
|       | 9  |     Q.   The second one is that they cannot dictate      |
| 11:23 | 10 | or exert control.  So we've just discussed your          |
|       | 11 | understanding of what Alarm.com does or does not do      |
|       | 12 | with regard to exerting control over Alliance            |
|       | 13 | Security.  Okay?  So set that to one side.               |
|       | 14 |     A.   Okay.                                           |
| 11:23 | 15 |     Q.   Do you have an opinion about whether or         |
|       | 16 | not -- based on the actual facts and the                 |
|       | 17 | relationship between Alarm.com and Alliance,             |
|       | 18 | whether or not Alarm.com could have exerted control      |
|       | 19 | over the relationship, the day-to-day business           |
| 11:23 | 20 | operation of Alliance -- and I want to be clear --       |
|       | 21 | including the manner in which Alliance is selling        |
|       | 22 | the Alarm.com systems?                                   |
|       | 23 |     MS. SCHUCHARDT:  Objection to form.                  |
|       | 24 |     THE WITNESS:  I didn't see any evidence of that      |
| 11:24 | 25 | in the agreement, no.                                    |

```
 1  BY MS. TERRELL:
 2      Q.  Okay.  That's a different question.  Do
 3  you have an opinion about whether or not they could
 4  have exerted control?
 5      A.  No.  I mean they could have, but it's not
 6  the standard in the industry to do that.
 7      Q.  Okay.  You say "cannot dictate."  I'm
 8  asking you do you have an opinion you're going to
 9  offer in this case that Alarm.com could not have
10  exerted control over the manner in which Alliance
11  was selling systems that included the Alarm.com
12  component, including the manner in which those
13  systems were sold using telemarketing?
14      MS. SCHUCHARDT:  Objection to form.
15      THE WITNESS:  Well, the answer to that is of
16  course they could, but they didn't, and that's not
17  standard in the industry.  I mean they could do
18  anything they wanted to do if the other party
19  allowed them to do that, but that's not what they
20  did, nor is it the standard of care in the
21  industry.
22  BY MS. TERRELL:
23      Q.  For example, the contract, which is the
24  only document that you reviewed and that you're
25  basing your opinion on for this case with regard to
```

76

STEVE KAUFER, CPP

BARKLEY
Court Reporters

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
|       | 1  | anybody else.  It applies to a company like                              |
|       | 2  | Alliance or VMS, if they were members -- and I                           |
|       | 3  | don't know that they were or were not.  That is the                      |
|       | 4  | target of the Code of Ethics.  It's -- all the                           |
| 11:40 | 5  | language points to the alarm company, not the                            |
|       | 6  | manufacturer.                                                            |
|       | 7  |     Q.   Is Alarm.com a member of ESA?                                   |
|       | 8  |     A.   Yes.                                                            |
|       | 9  |     Q.   Was Alarm.com a member of ESA during the                        |
| 11:40 | 10 | time that -- that -- during the time that it had a                       |
|       | 11 | relationship with Alliance?                                              |
|       | 12 |     A.   I believe so, yes.                                              |
|       | 13 |     Q.   As a member of the ESA, it has agreed to                        |
|       | 14 | abide by the ESA Code of Ethics, correct?                                |
| 11:40 | 15 |          MS. SCHUCHARDT:  Objection.                                     |
|       | 16 |          THE WITNESS:  Correct.                                          |
|       | 17 | BY MS. TERRELL:                                                          |
|       | 18 |     Q.   Is it your opinion that Alarm.com abided                        |
|       | 19 | by the ESA Code of Ethics?                                               |
| 11:40 | 20 |     A.   Yes.                                                            |
|       | 21 |     Q.   In what way?                                                    |
|       | 22 |     A.   Well, again, the Code of Ethics primarily                       |
|       | 23 | applies to alarm companies.  The actions of                              |
|       | 24 | Alarm.com didn't violate those page after page of                        |
| 11:41 | 25 | issues related to the alarm industry.                                    |

```
         1  BY MS. TERRELL:
         2      Q.  You're testifying about the standard in
         3  the industry, right?  What -- what companies should
         4  typically do, right?
11:54    5      MS. SCHUCHARDT:  Objection.
         6      THE WITNESS:  Right.
         7  BY MS. TERRELL:
         8      Q.  And you qualified that by saying that
         9  general standards might be different -- in other
11:54   10  words, you -- one company might exert control over
        11  another -- a manufacturer or a monitoring
        12  company -- perhaps should exert control over a
        13  dealer if it was aware that there were problems,
        14  right?
11:54   15      MS. SCHUCHARDT:  Objection.
        16      THE WITNESS:  Right.
        17  BY MS. TERRELL:
        18      Q.  So why isn't it relevant to your opinion
        19  as to whether or not Alarm.com could have exerted
11:54   20  control over Alliance?  Why don't you want to know,
        21  in connection with that opinion, whether or not
        22  Alliance -- Alarm.com actually knew that Alliance
        23  was engaging in telemarketing violations?
        24      MS. SCHUCHARDT:  Objection, asked and answered.
11:55   25      THE WITNESS:  Because it's not part of what I
```

99

STEVE KAUFER, CPP

BARKLEY
Court Reporters

```
        1   was hired to do.  That's not part of my scope of
        2   retention.
        3   BY MS. TERRELL:
        4       Q.   Because you don't actually have an opinion
11:55   5   about whether Alarm.com could have controlled
        6   Alliance --
        7       MS. SCHUCHARDT:  Objection.
        8   BY MS. TERRELL:
        9       Q.   -- right?
11:55  10       A.   I don't have -- I don't agree with that.
       11       Q.   What is your opinion about whether --
       12   based on the facts that are actually in play in
       13   this case, whether Alarm.com could have controlled
       14   Alliance?
11:55  15       A.   Well, the facts are there are allegations
       16   and investigations and fines.  There's no
       17   indication to me that Alarm.com knew that.
       18       Q.   So it's the knowledge.  That's what you
       19   think is missing, right?
11:55  20       A.   The knowledge on the part of Alarm.com?
       21       Q.   Right.
       22       A.   Yes.
       23       Q.   Okay.  What if Alarm.com knew about each
       24   of these allegations prior to executing the first
11:56  25   amendment to the agreement that it had with
```

100

STEVE KAUFER, CPP

BARKLEY
Court Reporters

1 Alliance?

2     MS. SCHUCHARDT: Objection to the form of the
3 question.

4     THE WITNESS: I don't know if they did know,
5 but if they did, I don't know what actions they
6 took to investigate and determine these issues and
7 what investigation they may or may not have done in
8 talking to Alliance or any of the other dealers
9 related to that.

10 BY MS. TERRELL:

11     Q. And why would you want to know that? Why
12 would you want to know whether they knew and
13 whether, if they knew, what follow-up they did?

14     A. Because, as we talked about before, that's
15 something they could do.

16     Q. Right.

17     A. They could check.

18     Q. They could check. And they could check,
19 they could investigate, they could determine what
20 was happening, and they could potentially place
21 restrictions or limitations on Alliance going
22 forward, correct?

23     MS. SCHUCHARDT: Objection.

24     THE WITNESS: Correct.

25 ///

BY MS. TERRELL:

Q. The most extreme of which could be to choose to invoke paragraph 7.1 of the agreement to terminate Alliance for violating the law, right?

MS. SCHUCHARDT: Objection.

THE WITNESS: They could, yes.

BY MS. TERRELL:

Q. But as you sit here today, you don't know whether they knew; you don't know if they knew, what steps they took; or anything related to those topics, right?

A. Correct.

Q. Before we do this -- have you read any deposition transcripts from this case?

A. No.

Q. Have you read any summaries of deposition transcripts from this case?

A. No.

MS. TERRELL: Mark this as Exhibit 4.

(Exhibit 4 marked for identification.)

BY MS. TERRELL:

Q. So, Mr. Kaufer, Exhibit 2 to your declaration -- to your deposition, sorry, is the Complaint in this case, and it references, as we mentioned earlier in paragraph 56, the Today show,

102

STEVE KAUFER, CPP

BARKLEY
Court Reporters

```
 1      alarm system -- which is part of what you opined
 2      people in the industry do -- they're specifically
 3      promoting a product that includes an Alarm.com
 4      technology, right?
 5           MS. SCHUCHARDT:  Objection.
 6           THE WITNESS:  Again, I don't see anything wrong
 7      with that.  You know, they're getting -- they're
 8      getting funding from Alarm.com, and that's not
 9      unusual for alarm -- alarm companies to promote.
10           MS. TERRELL:  Mark that as Exhibit 8.
11           (Exhibit 8 marked for identification.)
12      BY MS. TERRELL:
13           Q.   And so Exhibit 8 is a document Bates
14      stamped ALARM-0001248.  It's a business card of
15      Mike Gray, who's a lead technician in Alliance
16      Security, and you see that both the logos for
17      Alliance Security and Alarm.com are on his card.
18           A.   Okay.
19           Q.   So again, this is just not surprising to
20      you.  This is what happens in the industry?
21           A.   Correct.
22           Q.   The fact that Mr. Gray, when he's out
23      visiting a homeowner to discuss an alarm system,
24      would hand the homeowner his business card that has
25      Alarm.com on it, and that indicates that the
```

130

1  product that's being sold is in part on behalf of
2  Alarm.com?
3      MS. SCHUCHARDT:  Objection.
4      THE WITNESS:  Not on behalf of.  It indicates
01:22  5  that they're using a product in the system that
6  they're selling.  They're not selling it on behalf
7  of Alarm.com.  They're selling it as part of a
8  system that they've configured and are offering to
9  their potential clients.
01:23 10  BY MS. TERRELL:
11     Q.   But Mr. Gray is handing the homeowner a
12  card that has Alarm.com on it, because Alarm.com
13  said he had to, right?
14      MS. SCHUCHARDT:  Objection.
01:23 15      THE WITNESS:  No.  There's no proof that
16  Alarm.com said they had to pass out these business
17  cards.  There's an e-mail that you showed me that
18  said that they were going to give them business
19  cards, but I don't know that they're required to
01:23 20  pass them out, and even if they were required to
21  pass them out, there's nothing wrong with that in
22  the industry.
23         I mean it's common that the logo is put on
24  devices if -- or on, you know, advertising,
01:23 25  websites, trucks, shirts.

131

STEVE KAUFER, CPP

BARKLEY
Court Reporters

```
     1  BY MS. TERRELL:
     2      Q.   But here we know that there's an exclusive
     3  relationship between Alarm.com and Alliance, right?
     4      MS. SCHUCHARDT:  Objection.
01:23  5  BY MS. TERRELL:
     6      Q.   Based on the contract that is basically
     7  the heart of your opinions today.
     8      A.   Okay.
     9      MS. SCHUCHARDT:  Objection.
01:23 10      THE WITNESS:  But I don't know what that has to
    11  do with this.
    12  BY MS. TERRELL:
    13      Q.   Because it doesn't say Alarm.com and
    14  Honeywell and Monotronics and, and, and, and,
01:24 15  right?  It all just says "Alarm.com."
    16      MS. SCHUCHARDT:  Objection.
    17      THE WITNESS:  That's the -- that's the person
    18  or the company they chose to promote or -- I don't
    19  see anything nefarious in that.
01:24 20  BY MS. TERRELL:
    21      Q.   Okay.  Not necessarily nefarious, but --
    22      A.   Well, you're trying to paint it as
    23  nefarious.
    24      Q.   Well, your opinion is that manufacturers
01:24 25  and dealers promote their own systems, not someone
```

132

STEVE KAUFER, CPP

BARKLEY
Court Reporters

```
       1   else's, and this very evidence I've shown you shows
       2   you Alliance promoting Alarm.com.
       3       A.   That's true.
       4       MS. SCHUCHARDT:  Objection.
01:24  5       THE WITNESS:  And I also offer the opinion that
       6   it's not unusual for that to happen.  So even
       7   though Alliance is promoting Alliance (sic),
       8   they're saying this is -- this is a vendor that we
       9   chose to provide service through.
01:24 10   BY MS. TERRELL:
      11       Q.   In fact, to exclusively provide that type
      12   of service through, and that vendor has required
      13   them to include those logos on their website and on
      14   their marketing materials in exchange for money and
01:25 15   incentives, right?
      16       MS. SCHUCHARDT:  Objection, and objection to
      17   form.
      18       THE WITNESS:  Well, I don't know whether it's
      19   required on their business cards.
01:25 20   BY MS. TERRELL:
      21       Q.   Their website and other marketing
      22   collateral, correct?
      23       A.   Correct.
      24       Q.   Why would --
01:25 25       MS. SCHUCHARDT:  Same objections.
```

133

STEVE KAUFER, CPP

BARKLEY
Court Reporters

```
 1            DEPOSITION OFFICER'S CERTIFICATE
 2   STATE OF CALIFORNIA   )
                           ) ss.
 3   COUNTY OF ORANGE      )
 4
 5
 6           I, Lori L. Arias, hereby certify:
 7           I am a duly qualified Certified Shorthand
 8   Reporter in the State of California, holder of
 9   Certificate Number CSR 9433 issued by the Certified Court
10   Reporters' Board of California and which is in full
11   force and effect.  (Fed. R. Civ. P. 28(a)(1)).
12           I am authorized to administer oaths or
13   affirmations pursuant to California Code of Civil
14   Procedure, Section 2093(b) and prior to being examined,
15   the witness was first duly sworn by me.  (Fed. R. Civ.
16   P. 28(a)(a)).
17           I am not a relative or employee or attorney or
18   counsel of any of the parties, nor am I a relative or
19   employee of such attorney or counsel, nor am I
20   financially interested in this action.  (Fed. R. Civ. P.
21   28).
22           I am the deposition officer that
23   stenographically recorded the testimony in the foregoing
24   deposition and the foregoing transcript is a true record
25                            / / /
```

```
 1   of the testimony given by the witness.  (Fed. R. Civ. P.
 2   30(f)(1)).
 3           Before completion of the deposition, review of
 4   the transcript [  ] was [XX] was not requested.  If
 5   requested, any changes made by the deponent (and
 6   provided to the reporter) during the period allowed, are
 7   appended hereto.  (Fed. R. Civ. P. 30(e)).
 8
 9   Dated: March 20, 2018
10
11
12
13                                  _____
14
15
16
17
18
19
20
21
22
23
24
25
```

**From:** Jake Murray [jmurray@alliancesecurity.com]
**Sent:** Tuesday, May 05, 2015 2:47 PM
**To:** Nicole Brown
**CC:** Noah Billger
**Subject:** Re: Alliance Website and Marketing Fund Usage 2015

Hi Nicole ! I just let our marketing team know, i am sure this was a simple oversight. The page has gone through so many changes in the last 6 months... it just might have gotten missed.

I will keep you posted. Once i do... i have a few ideas to spend that money !

On Fri, May 1, 2015 at 2:37 PM, Nicole Brown <nbrown@alarm.com> wrote:

> Jake!!!
>
> I feel like I haven't talked to you in forever ☺ I just wanted to reach out and see if we want to start gearing up another Marketing project to use your 2015 funds! This is not part of the co-advertising money that we are going to give you, but a separate $4,000 in Marketing Development Funds.
>
> Also, loving the new website except I noticed the powered by Alarm.com logo wasn't on there anymore. In order to take advantage of the Advertising money as well as the Marketing Funds, we ask that the attached logo be on the homepage somewhere for that partnership recognition ☺
>
> Let's chat about another project and see what we can do this year now that all your techs have jackets and business cards ;) haha. Also, let me know when the logo is back in action!
>
> Nicole
>
> Nicole Brown
> *Marketing Manager*
>
> nbrown@alarm.com
> www.alarm.com
>
> -------------------
>
> **ALARM.COM**
> *Your home in your hands.*

--
Alliance Security
Jake Murray
Director of Operations
Office: 401-889-2495 or Ext 7009
Alliance Security
Rhode Island

60 Jefferson Park Rd.

Warwick



ALARM-0000200
ALARM-0000200

Thanks

[ ] http://www.jobs.net/jobs/alliance-security/en-us/join

DISCLAIMER – This e-mail may contain confidential information. It is intended solely for the addressee. Access to this e-mail by anyone else is unauthorized. If you are not the intended recipient, you must not use, copy, disclose or take any action based on this e-mail or any information herein. If you have received this e-mail in error, please notify the sender and permanently delete the email and any attachments immediately.

Alliance Security

ALARM-0000201
ALARM-0000201





Mike Gray
Lead Technician
Tech of the Year 2012 and 2013

address:
60 JEFFERSON PARK RD
WARWICK RI 02888

phone:
877-760-ALLY

web:
ALLIANCESECURITY.COM

Alliance Security

powered by
ALARM.COM


DEPO OF: Kaufer
Pl's EXHIBIT 8
DATE: 3-8-18
LORI ARIAS, CSR NO. 9433

ALARM-0001248
ALARM-0001248