— **EXHIBIT 16** —

IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly situated,

    **Plaintiff,**

v.                                        CIVIL ACTION NO. 11-C-143

MONITRONICS INTERNATIONAL, INC.;
VERSATILE MARKETING SOLUTIONS, INC.,
d/b/a/ VMS ALARMS; and
UNITED TECHNOLOGIES CORP., d/b/a GE
SECURITY, a division of UTC FIRE & SECURITY,

    **Defendants.**

## CLASS ACTION COMPLAINT

### I. Preliminary Statement

1.    Twenty years ago, Congress recognized that unsolicited telemarketing calls are a common nuisance and an unreasonable intrusion on citizens' privacy, and enacted the Telephone Consumer Protection Act of 1991, or TCPA, to regulate telemarketing. Among other things, the TCPA prohibits telemarketing calls to persons and entities who list their telephone numbers on the national Do Not Call Registry. The TCPA places responsibility for violations not only on businesses that *place* calls to persons listed on the Registry, but also on businesses *on whose behalf* the calls are made. Here, Defendant VMS Alarms, hoping to sell Plaintiff Diana Mey an alarm system and monitoring services she neither wanted nor needed, placed more than a dozen telemarketing calls to Ms. Mey, despite the fact she had listed her number on the Do Not Call Registry. VMS Alarms placed these calls on its own behalf to sell its own products and services, and on behalf of GE Security and Monitronics, for whom it was an authorized dealer of alarm systems and monitoring services. Under the TCPA, each of

461893

the three companies is liable for the illegal calls made in furtherance of their joint venture. Ms. Mey brings this action individually and on behalf of a class to enforce the TCPA and recover statutory damages for the Defendants' violations.

## II. Parties

2. Plaintiff Diana Mey ("Ms. Mey") is an individual with a principal residence in Wheeling, West Virginia.

3. Defendant United Technologies Corp. is a Connecticut corporation with a principal place of business at 9 Farm Springs Road, Farmington, CT 06034. It does business as GE Security, a trade name of its UTC Fire & Security division.

4. Defendant Monitronics International, Inc. ("Monitronics") is a Texas corporation with a principal place of business at 2350 Valley View Lane, Suite 100, Dallas, Texas.

5. Defendant Versatile Marketing Solutions, Inc., d/b/a VMS Alarms ("VMS") is a Rhode Island corporation with a principal place of business at 60 Jefferson Park Road in West Warwick, Rhode Island.

6. At all relevant times, each Defendant conducted business in West Virginia, solicited business in West Virginia, engaged in a persistent course of conduct in West Virginia, and/or has derived substantial revenue from services provided in West Virginia.

7. Each Defendant is jointly and severally liable for the conduct alleged in this complaint.

### III. The Legal Basis for the Complaint

*The TCPA prohibits telemarketing calls made to persons and entities listed on the Do Not Call Registry*

8. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]unrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

9. In 1995, under its authority to adopt rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, the FTC adopted the Telemarketing Sales Rule, 16 C.F.R. § 310, which was later amended in 2003. Among other things, the amended TSR established a "Do Not Call Registry." The Registry lists the telephone numbers of consumers who have informed the FTC that they do not wish to receive certain types of telemarketing calls.

10. The TCPA prohibits persons or entities from initiating telephone solicitations to registered telephone subscribers. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c). A person whose number is on the Registry, and who has received more than one telephone call within any 12 month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

11. The law contains a safe harbor provision that exempts from liability a person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) who has obtained the subscriber's prior express invitation or permission to make the call. 47 C.F.R. § 64.1200(c)(2)(ii).

12. Such permission must be evidenced by a signed, written agreement between the consumer and seller that states the consumer agrees to be contacted by this seller, and includes the telephone number to which the calls may be placed. 47 C.F.R. § 64.1200(c)(2)(ii).

### *TCPA "on behalf of" liability*

13. Under the TCPA, a person or entity can be liable for calls made on its behalf, even if the person or entity does not directly place the calls. 47 U.S.C. 227 § (c)(5).

14. As explained by the FCC, the agency charged with interpreting and enforcing the TCPA, the applicable rules "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397¶ 13 (1995).

15. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

### IV. The Factual Basis for the Complaint

### *The Defendants' joint venture*

16. The three Defendants work jointly to promote the sale of their goods and services.

17. GE Security is a leading manufacturer of residential and commercial electronic security and alarm systems.

18. Monitronics is a leading provider of monitoring services for residential and commercial electronic security and alarm equipment.

19. VMS is a leading seller of residential and commercial electronic security and alarm equipment and monitoring services.

20. VMS is an authorized dealer for both GE Security and Monitronics. In that capacity, it serves as a sales arm of those companies.

21. GE Security, VMS and Monitronics are participants in a joint venture, and share in its costs and its profits.

22. The telemarketing calls listed below were initiated by VMS or Monitronics, on their own behalves, and on behalf of GE Security.

### *Calls made by or on behalf of the Defendants to the Mey Home*

#### The First Call

23. Since 2003, Ms. Mey's residential phone number (xxx) xxx-1943 has been listed on the Do Not Call Registry.

24. Nonetheless, on November 16, 2009, Ms. Mey received a telemarketing call purporting to conduct a survey about home security (the "First Call").

25. The telemarketer told Ms. Mey that she was calling on behalf of Monitronics and GE Security, but refused to provide more specific information.

26. The telemarketer further told Ms. Mey that she was eligible to receive a "free" GE home security system and would be contacted again if she won.

461893                                   5

27. Ms. Mey's Caller ID for the First Call was displayed as (401) 401-4010. As set forth below, Ms. Mey later determined that the number belonged to Defendant VMS.

### The Second Call

28. On December 11, 2009, Ms. Mey received a call (the "Second Call") from Caller ID (401) 401-4010, the same number as the First Call.

29. When Ms. Mey answered, the caller was no longer on the line.

### The Third Call

30. On December 14, 2009, Ms. Mey again received a call (the "Third Call") from Caller ID (401) 401-4010, the same number as the First Call and the Second Call.

31. Ms. Mey answered the Third Call and spoke with a representative who told Ms. Mey she had "won a free GE alarm system." The representative told Ms. Mey that all she had to do to receive her "free" system was to sign up, and pay for, monthly monitoring services from Monitronics.

32. When Ms. Mey asked for more specific information in order to identify who was making these sales calls to her home, she was told a manager would return her call.

### The Fourth Call

33. On December 14, 2009, Ms. Mey received a call (the "Fourth Call") from a manager named "Ryan," calling from (401) 533-9592.

34. Ryan informed Ms. Mey that he worked for VMS, and offered to sell Ms. Mey Monitronics home monitoring services. Ms. Mey informed Ryan that she had no interest in home security services.

35. Ryan's call confirmed that the first three calls, all of which originated from Caller ID (401) 401-4010, were made by VMS, on behalf of VMS, Monitronics and GE Security.

36. After receiving the fourth call, Ms. Mey wrote VMS to advise that her residential phone number was listed on the Do Not Call Registry. She insisted that VMS stop calling her home. She requested a copy of the company's written do not call policy, but never received it.

### The Fifth Call

37. Despite her letter, on April 27, 2010, Ms. Mey received a call (the "Fifth Call) from (401) 401-0125. When Ms. Mey answered the Fifth Call, the caller was no longer on the line.

38. Upon information and belief, the Fifth Call was initiated by VMS.

### The Sixth Call

39. On July 15, 2010, Ms. Mey received a call (the "Sixth Call) from (401) 401-0125. When Ms. Mey answered the Sixth Call, the caller was no longer on the line.

40. Upon information and belief, the Sixth Call was initiated by VMS.

### The Seventh Call

41. On August 30, 2010, Ms. Mey received a call (the "Seventh Call) from (352) 352-0325. When Ms. Mey answered the Seventh Call, the caller was no longer on the line.

42. Upon information and belief, the Seventh Call was initiated by VMS or Monitronics.

...
...

### The Eighth Call

43. On September 15, 2010, Ms. Mey received a call (the "Eighth Call) from (352) 352-0325.

44. Ms. Mey answered the Eighth Call and spoke with a representative who told her she was calling on behalf of Monitronics. When Ms. Mey asked for more specific identifying information, the Eighth Call was terminated.

45. Upon information and belief, the Eighth Call was initiated by VMS or Monitronics.

### The Ninth Call

46. On October 12, 2010, Ms. Mey received a call (the "Ninth Call) from (352) 352-0325.

47. The Ninth Call was abandoned.

48. Upon information and belief, the Ninth Call was initiated by VMS or Monitronics.

### The Tenth Call

49. On March 17, 2011, Ms. Mey received a call (the "Tenth Call") from (978) 570-2411. Ms. Mey answered the Tenth Call and spoke with a representative who told her he was calling for a "survey as to home security concerns."

50. Ms. Mey was then told that she was eligible to win a "free" GE home security system, and would be called back if she was a "winner."

51. Upon information and belief, the Tenth Call was initiated by VMS or Monitronics.

### The Eleventh Call

52. On March 23, 2011, Ms. Mey received a call (the "Eleventh Call") from (979) 201-0548. Ms. Mey answered the Eleventh Call and spoke with a representative named "Megan," who said she worked for VMS.

53. Megan attempted to sell Ms. Mey home security services. When Ms. Mey asked Megan who was involved in the promotion, Megan responded that a manager would return her call.

54. Megan told Ms. Mey she was calling from an autodialer from Providence, Rhode Island, and that the security survey was sponsored by General Electric.

55. Upon information and belief, the Eleventh Call was initiated by VMS.

### The Twelfth Call

56. Approximately ten minutes later, also on March 23, 2011, Ms. Mey received a call (the "Twelfth Call") from (401) 365-1130. Ms. Mey answered the Twelfth Call and spoke with a VMS manager named Dennis Castro.

57. Mr. Castro told Ms. Mey the autodialer phone calls she was receiving were being monitored from Texas, and that GE provided the security survey to VMS, and that GE randomly called homeowners in areas where the security systems could be installed.

58. Upon information and belief, the Twelfth Call was initiated by VMS.

### The Thirteenth Call

59. On April 18, 2011, Ms. Mey received a call (the "Thirteenth Call") from (701) 625-5002. Ms. Mey answered the Thirteenth Call and spoke with a representative who told her he was employed by Monitronics, and that she could receive a free GE alarm system from Monitronics.

60. Upon information and belief, the Thirteenth Call was initiated by Monitronics.

### The Fourteenth Call

61. On April 19, 2011, Ms. Mey received a call (the "Fourteenth Call") from (401) 365-1130. The Caller ID also indicated the Fourteenth Call was from "VMS."

62. The Fourteenth Call was abandoned.

63. Upon information and belief, the Fourteenth Call was initiated by VMS.

### The Fifteenth Call

64. On April 20, 2011, Ms. Mey received a call (the "Fifteenth Call") from caller ID "401-654-4540 VMS."

65. Ms. Mey's answering machine picked up the call, and the caller hung up.

66. Upon information and belief, the Fifteenth Call was initiated by VMS.

### The Sixteenth Call

67. On May 5, 2011, Ms. Mey received a call (the "Sixteenth Call") from caller ID "401-654-4540 VMS."

68. Ms. Mey's answering machine picked up the call, and the caller hung up.

69. Upon information and belief, the Sixteenth Call was initiated by VMS.

### *The Defendants' awareness of consumer complaints about their telemarketing practices*

70. Ms. Mey is not the only consumer who received illegal calls from VMS, Monitronics and GE Security. For several years, consumers have been complaining to the Federal Trade Commission and directly to the companies that the telemarketing practices being used to market the joint venture were unlawful.

71. In July of 2010, the Attorney General for the State of Pennsylvania, following an investigation, fined VMS for telemarketing in violation of Pennsylvania's Do Not Call registry.

72. Upon information and belief, although GE and Monitronics have long been aware of the unlawful telemarketing practices utilized by VMS to forward their joint venture, GE and Monitronics have taken insufficient steps to ensure that any telemarketing being conducted on their behalf by VMS complied with all applicable laws.

73. In 2010, GE honored VMS for its success as a dealer of GE Security products, and awarded VMS its Freedom Award, which is presented to qualifying GE Security dealers who have top product sales and customer satisfaction.

74. GE Security awarded this honor despite knowing that VMS was engaged in illegal telemarketing practices on behalf of VMS and GE Security.

75. In 2011, Monitronics recognized VMS with its Dealer of the Year Award.

76. Monitronics honored VMS despite its awareness that VMS was engaged in illegal telemarketing practices on behalf of VMS and Monitronics.

## V. Class Action Allegations

77. Plaintiff brings this action pursuant to Rule 23 of the West Virginia Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States.

78. Upon information and belief, over the past four years, pursuant to a uniform policy and procedure, GE, Monitronics and VMS have jointly engaged in widespread telemarketing in violation of the TCPA.

79. Upon information and belief, pursuant to a uniform policy and procedure, VMS, Monitronics and GE did not obtain the prior express written consent of recipients of their telemarketing calls whose numbers were listed on the Do Not Call Registry, prior to the transmission of telemarketing calls to those phone numbers.

80. The class of persons Plaintiff proposes to represent is tentatively defined as all persons or entities within the United States whose phone numbers were registered on the Do Not Registry, and who, within the last four years, received more than one telemarketing call within any twelve month period of time from any of the Defendants promoting their goods or services.

81. The members of the class are identifiable by phone records and phone number databases, employed by VMS, GE and Monitronics, or their agents, in transmitting telemarketing calls to members of the class. On information and belief, the potential class members will be sufficiently numerous that joinder of all class members is impracticable.

82. Plaintiff is a member of the class.

83. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

   a. Whether VMS, GE and Monitronics violated the TCPA by engaging in telemarketing in violation of the TCPA.

   b. Whether the telemarketing calls sent to class members by VMS were made on behalf of GE and Monitronics;

   c. Whether the telemarketing calls sent to class members by VMS were "telephone solicitations;

   d. Whether the Plaintiff and the members of the class are entitled to statutory damages as a result of the defendants' actions.

84. Plaintiff's claims are typical of the claims of the class.

85. Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class, she will fairly and adequately protect the interests of the class, and she is represented by counsel skilled and experienced in class actions.

86. The actions of VMS, Monitronics and GE are generally applicable to the class as a whole and to Plaintiff.

87. Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

88. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

89. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

90. Plaintiff is capable of and is willing to represent the other members of the class.

## VI. Legal Claims

### Count One:
### All Defendants committed negligent violations of the TCPA

91. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

92. Each Defendant negligently violated the TCPA by making telephone solicitations to persons and entities whose phone numbers were listed on the Do Not Call Registry, or by the fact that others made such calls on their behalf.

93. Defendant VMS negligently violated the TCPA by making those solicitations on its own behalf.

94. Defendants Monitronics and GE Security negligently violated the TCPA because VMS made those solicitations on their behalf.

### Count Two:
### All Defendants committed knowing violations of the TCPA

95. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

96. Each Defendant knowingly violated the TCPA by making telephone solicitations to persons and entities whose phone numbers were listed on the Do Not Call Registry, or by the fact that others made such calls on their behalf.

97. Defendant VMS knowingly violated the TCPA by making those solicitations on its own behalf.

98. Defendants Monitronics and GE Security knowingly violated the TCPA because VMS made those solicitations on their behalf.

99. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

100. The telemarketing solicitations sent to the class by VMS were sent "on behalf of" Monitronics.

## Count Three:
### Injunctive relief to bar future TCPA violations

101. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

102. The TCPA expressly authorizes injunctive relief to prevent further violations of the Telephone Consumer Protection Act.

103. The Plaintiff, acting on behalf of the Class, respectfully petitions this Court to order all defendants, including but not limited to Defendants, their employees, agents or independent distributors, to immediately cease engaging in unsolicited telemarketing in violation of the TCPA.

## Count Four:
### Injunctive relief to preserve evidence

104. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

105. The Defendants, or their agents, have custody and control of the business records and other information necessary to identify the members of the class including names and telephone numbers. Unless immediate injunctive relief is ordered, it is feared that the Defendants will alter, erase, delete, destroy or otherwise dispose of the records in their possession which are necessary to identify each recipient of the illegal telemarketing calls at issue. For this reason, the Plaintiff petitions the Court for an order enjoining Defendants and their agents, or anyone acting on their behalf, from altering, deleting or destroying any documents or records which could be used to identify the members of the class.

## VII. Relief Sought

On behalf of herself and the other members of the class, Plaintiff requests the following relief:

1. That the Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims under Rule 23 of the West Virginia Rules of Civil Procedure;

2. For negligent violations of the TCPA, a $500 penalty awarded to the Plaintiff and each class member for each telemarketing call made by or on behalf of any Defendant;

3. For knowing violations of the TCPA, a $1500 penalty awarded to the Plaintiff and each class member for each telemarketing call made by or on behalf of any Defendant

4. That the Defendants, and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records which could be used to identify the members of the class.

5. That the named plaintiff and the members of the class be granted such other and further relief as is just and equitable under the circumstances.

**Jury trial demanded.**

Plaintiff Diana Mey
By Counsel

*/s/ John W. Barrett*
John W. Barrett (WVSB#7289)
Jonathan R. Marshall (WVSB#10580)
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*

461893

16