Chiharu Sekino, SBN #306589
Email: csekino@sfmslaw.com
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
1230 Columbia Street, Suite 1140
San Diego, California 92101
Telephone: (619) 235-2416

Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email: jmurray@terrellmarshall.com
Elizabeth A. Adams, SBN #290029
Email: eadams@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
[Additional Counsel Appear on Signature Page]
*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., MARK HANKINS, and PHILIP J. CHARVAT, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ALARM.COM INCORPORATED, and ALARM.COM HOLDINGS, INC., <br><br> Defendants. | NO. 4:15-cv-06314-YGR <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** <br><br> <u>JURY TRIAL DEMAND</u> <br><br> Complaint Filed: December 30, 2015 <br><br> Honorable Yvonne Gonzalez Rogers <br><br> DATE: August 13, 2019 <br> TIME: 2:00 p.m. <br> LOCATION: Oakland Courthouse <br> Courtroom 1 - 4th Floor |

TO:     THE CLERK OF THE COURT; and

TO:     DEFENDANTS ALARM.COM INCORPORATED, and ALARM.COM
        HOLDINGS, INC., AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 13, 2019 at 2:00 p.m., in Courtroom 1, 4th Floor, of the Oakland Courthouse for the U.S. District Court for the Northern District of California, 1301 Clay Street, Oakland, California, 94612, Plaintiffs will move for (1) an award of attorneys' fees and costs in the amount of $8,400,000, which is 30% of the $28,000,000 Settlement Fund; (2) reimbursement of $529,313.20 in litigation costs; and (3) $10,000 service awards to each Plaintiff.

This motion will be based on: this Notice of Motion, the Memorandum of Points and Authorities, the Declarations of Beth Terrell, John W. Barrett, Edward A. Broderick, and Matthew P. McCue, the records and file in this action, and on such other matter as may be presented before or at the hearing of the motion.

**TABLE OF CONTENTS**

                                                                                                            Page No.

I.      INTRODUCTION ................................................................................................................. 1

II.     ISSUE TO BE DECIDED .................................................................................................... 1

III.    STATEMENT OF FACTS ................................................................................................... 1

        A.      Plaintiffs and their counsel vigorously litigated on behalf of the class ............... 1

        B.      Plaintiffs and their counsel negotiate an outstanding settlement for the
                class........................................................................................................................ 4

        C.      The Court grants preliminary approval of the proposed settlement ..................... 5

IV.     AUTHORITY AND ARGUMENT........................................................................................ 5

        A.      The percentage-of-the-fund method is the appropriate method for
                determining a reasonable attorneys' fee in this case............................................ 5

                1.      A fee award of 30% of the Settlement Fund will fairly
                        compensate Class Counsel for their work on behalf of the
                        Settlement Class............................................................................................ 8

                        a.      Class Counsel achieved an excellent settlement for the
                                class..................................................................................................... 9

                        b.      Class Counsel assumed a significant risk of no recovery .......... 10

                        c.      Class Counsel's skill and quality of work delivered a
                                recovery for the class ................................................................... 12

                        d.      Awards in similar cases show that the requested fee is
                                reasonable ................................................................................... 12

                2.      A lodestar crosscheck confirms that the requested fee is
                        reasonable ................................................................................................... 13

                        a.      Class Counsel's rates are consistent with rates in the
                                community for similar work performed by attorneys
                                of comparable skill, experience, and reputation ........................ 14

                        b.      Class Counsel expended a reasonable number of hours
                                litigating the case ........................................................................ 15

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS - i
CASE NO. 4:15-CV-06314-YGR

c.    A multiplier is reasonable and appropriate ................................. 16

B.    Class Counsel's litigation costs were necessarily and reasonably incurred ....... 19

C.    Plaintiffs request service awards of $10,000 ....................................... 19

V.    CONCLUSION ........................................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## FEDERAL CASES

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ..................................................................................... 5

*Burnthorne-Martinez v. Sephora USA, Inc.*,
    No. 4:16-CV-02843-YGR, 2018 WL 5310833 (N.D. Cal. May 16, 2018) ..................... 8

*Contreras v. Performance Food Grp., Inc.*,
    No. 4:14-CV-03380-PJH, 2016 WL 9138157 (N.D. Cal. May 4, 2016) ....................... 21

*Corson v. Toyota Motor Sales U.S.A., Inc.*,
    No. CV 12-8499-JGB, 2016 WL 1375838 (C.D. Cal. Apr. 4, 2016) ........................... 19

*Couser v. Comenity Bank*,
    125 F. Supp. 3d 1034 (S.D. Cal. 2015) .................................................................. 9

*Dakota Med., Inc. v. RehabCare Grp., Inc.*,
    No. 114CV02081DAD, 2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) ....................... 13

*del Toro Lopez v. Uber Techs., Inc.*,
    No. 17-cv-06255-YGR, 2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) ................. 14, 21

*Destefano v. Zynga*,
    No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................. 7, 10, 12

*Di Giacomo v. Plains All Am. Pipeline*,
    No. Civ. A. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ..................... 18

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) ......................................................................... 21

*Franklin v. Wells Fargo Bank, N.A.*,
    No. 14CV2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ................. 9

*Glass v. UBS Fin. Servs., Inc.*,
    331 F. App'x 452 (9th Cir. 2009) ..................................................................... 6, 13

*Gonzalez v. City of Maywood*,
    729 F.3d 1196 (9th Cir. 2013) ........................................................................... 14

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*,
    Case No. 16-CV-00182-H-BLM, 2018 WL 1470198 (S.D. Cal. March 26, 2018) ....... 13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... 7

*Hillson v. Kelly Servs. Inc.*,
    No. 2:15-cv-10803, 2017 WL 3446596 (E.D. Mich. Aug. 11, 2017)............................ 18

*Hodgin v. UTC Fire & Security Americas Corp., Inc.*,
    885 F.3d 243 (4th Cir. 2018) .................................................................... 11

*Hopkins v. Stryker Sales Corp.*,
    No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013)..................... 16, 19

*Ikuseghan v. Multicare Health Sys.*,
    No. C 14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) ...................... 12

*In re Activision Secs. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................ 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ....................................................... 6, 7, 8, 14

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) .......................................................... 12, 13

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    109 F.3d 602 (9th Cir. 1997) ..................................................................... 6, 8

*In re Magsafe Apple Power Adapter Litig.*,
    No. 5:091-CV-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015)...................... 14

*In re Nat'l Collegiate Athletic Ass'n*,
    No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ......................... 21

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................... 7, 8, 9, 11

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................................ 10, 19, 20

*In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*,
    No. 11MD02295 JAH - BGS, 2017 WL 10777695 (S.D. Cal. Jan. 25, 2017).............. 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ....................................................................... 6

*Jenson v. First Tr. Corp.*,
    No. CV 05-3124 ABC, 2008 WL 11338161 (C.D. Cal. June 9, 2008) ......................... 10

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    No. 16-CV-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ......................... 17

*Jones v. Royal Admin. Servs. Inc.*,
    887 F.3d 443 (9th Cir. 2018) ....................................................................... 11

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ........................................................................ 18

*Knight v. Red Door Salons, Inc.*,
    No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .......................... 12

*Krakauer v. Dish Network L.L.C.*,
    No. 1:14-cv-333, 2017 WL 2242952 (M.D.N.C. May 22, 2017) ................................... 11

*Kristensen v. Credit Payment Servs.*,
    879 F.3d 1010 (9th Cir. 2018) ..................................................................... 11

*Lofton v. Verizon Wireless (VAW) LLC*,
    No. C 13-05665 YGR, 2016 WL 7985253 (N.D. Cal. May 27, 2016) .............. 10, 12, 21

*Makaron v. GE Security Mfg. Co.*,
    No. CV-14-1274-GW (AGRx), 2015 WL 3526253 (C.D. Cal. May 18, 2015) ............. 11

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................... 18

*Malta v. Freddie Mac & Wells Fargo Home Mtg.*,
    2013 WL 5467425 (S.D. Cal. June 21, 2013) ................................................. 9

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*,
    No. 1:16-cv-00157-DAD-JLT, 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017) ............. 17

*Moore v. Verizon Commc'ns Inc.*,
    No. C 09-1823 SBA, 2014 WL 588035 (N.D. Cal. Feb. 14, 2014) ................................ 14

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ..................................................................... 14

*Nwabueze v. AT&T, Inc.*,
    No. C 09-01529 SI, 2014 WL 324262 (N.D. Cal. Jan. 29, 2014)...................................14

*Pan v. Qualcomm Inc.*,
    No. 16-CV-01885-JLS-DHB, 2017 WL 3252212 (S.D. Cal. July 31, 2017)................18

*Pelletz v. Weyerhaeuser Co.*,
    592 F. Supp. 2d 1322 (W.D. Wash. 2009)....................................................................21

*Ritchie v. Van Ru Credit Corp.*,
    No. 2:12-CV-01714-PHX-SM, 2014 WL 3955268 (D. Ariz. Aug. 13, 2014)..............13

*Rodriguez v. W. Publishing*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................................19, 20

*Rose v. Bank of Am. Corp.*,
    12 Civ. 04009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)........................................9

*Simon v. Toshiba Am.*,
    No. C 07-06202 MHP, 2010 WL 1757956 (N.D. Cal. Apr. 30, 2010)............................7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................6, 19, 20

*Steiner v. Am. Broad Co., Inc.*,
    248 F. App'x 780 (9th Cir. 2007) ................................................................................17

*Steinfeld v. Discover Fin. Servs.*,
    No. 3:12-cv-01118-JSW, 2014 WL 1309352 (N.D. Cal. Mar. 10, 2014) ......................9

*Vandervort v. Balboa Capital Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) ..........................................................................13

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ..............................................................................18

*Vincent v. Hughes Air W.*,
    557 F.2d 759 (9th Cir. 1977) ......................................................................................19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..........................................................6, 8, 10, 13, 17, 18

*Wehlage v. Evergreen at Arvin, LLC*,
    No. 4:10-cv-05839-CW, 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012) ........................14

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS - vi
CASE NO. 4:15-CV-06314-YGR

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) ........................................................................... 15

*Wren v. RGIS Inventory Specialists*,
   No. C 06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011).............................. 20

**OTHER AUTHORITIES**

John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*,
   90 Yale L.J. 473 (1981) .................................................................................. 16

Richard A. Posner, Economic Analysis of Law 783 (8th ed. 2011).......................................... 16

William B. Rubenstein, 5 Newberg on Class Actions § 15:91 (5th ed. Nov. 2018 update)....... 17

William B. Rubenstein, *Why the Percentage Method?*, 2 Class Action
   Attorney Fee Digest 93 (March 2008) ................................................................. 7

# I. INTRODUCTION

This TCPA class action settled a month before the parties were scheduled to go to trial. The litigation was fierce. Although the parties engaged in mediation twice earlier in the case, settlement negotiations were not productive. Instead, Alarm.com lodged a vigorous defense, requiring Plaintiffs and Class Counsel to aggressively prosecute the case. Plaintiffs had already successfully moved for class certification, the Court had ruled on the parties' summary judgment motions and Alarm.com's motion to exclude Plaintiffs' experts, and the parties were actively preparing to the try the case when the parties settled.

The settlement provides significant cash awards for Settlement Class Members. To compensate them for their efforts, Class Counsel request a fee award of 30% of the $28,000,000 Settlement Fund, or $8,400,000, which recognizes the excellent result they obtained for the Settlement Class given the risks they faced at trial and their high-quality work. A lodestar crosscheck confirms the reasonableness of this request.

Finally, Class Counsel also respectfully request reimbursement of $529,313.20 in litigation costs, and request that the Court approve service awards to each Plaintiff in the amount of $10,000 for their work on behalf of the Settlement Class. Plaintiffs have actively participated in this action since its inception. They responded to written discovery requests, assisted in counsel's investigation, sat for depositions, and were ready and willing to testify at trial. Service awards of $10,000 each for their efforts are reasonable and appropriate.

# II. ISSUE TO BE DECIDED

Whether the requested attorneys' fees, costs, and service awards are reasonable and should be awarded.

# III. STATEMENT OF FACTS

## A. Plaintiffs and their counsel vigorously litigated on behalf of the class.

Following an investigation, Plaintiffs filed a class action complaint on December 30, 2015, alleging that Alarm.com was liable under the TCPA for four types of calls made on its

behalf: (1) to cell phones using an ADTS and a prerecorded voice, in violation of 47 U.S.C. § 227(b)(1)(A); (2) to residential lines using an artificial or prerecorded voice, in violation of § 227(b)(1)(B)); (3) to numbers on the National Do Not Call list, in violation of § 227(c)(5); and (4) in violation of the internal Do Not Call regulations, 47 C.F.R. § 64.1200(c). ECF 1. Plaintiffs alleged that Alarm.com hired Alliance to make calls to market Alarm.com's security services and products. *Id.* ¶¶ 55-68. Plaintiffs each received multiple calls made by Alliance or one of Alliance's agents on Alarm.com's behalf. *See* ECF 277 (Declaration of Fred Heidarpour ¶¶ 3-5), ECF 278 (Declaration of Philip Charvat ¶¶ 7-10), ECF 279 (Declaration of Mark Hankins ¶¶ 2-3).

The parties initially focused on targeted discovery. Declaration of Beth E. Terrell in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards ("Terrell Decl.") ¶ 3. They served and responded to written discovery requests and produced and reviewed tens of thousands of pages of documents. *Id*. Plaintiffs took seven depositions of Alarm.com and Alarm.com deposed the three Plaintiffs. *Id*. Plaintiffs issued third party subpoenas to Alliance and to Alliance's agent, Nationwide Alarms, Inc., to obtain records of telemarketing calls made to class members and other documents. *Id.* ¶ 4. Plaintiffs retained an expert, Anya Verkhovskaya, to process and analyze the records to identify the telephone numbers of potential members of the National Do-Not-Call Class. *Id*. Plaintiffs were able to obtain an affidavit from Nationwide's principle, Joseph Moretti, who stated that Nationwide used a dialing system called "Ytel" to contact Settlement Class Members. *See* ECF No. 89. Plaintiffs analyzed the Nationwide data to identify the cell phone and residential numbers Nationwide contacted using the Ytel calling system. *See generally* ECF No. 87.

Plaintiffs moved for class certification in March 2017. ECF No. 85. Following a hearing, the Court granted the motion and certified a Cell Phone Class, Residential Class, and National Do-Not-Call Class. ECF No. 126.[1]

---

[1] Plaintiffs did not seek certification of an internal Do Not Call Class.

The parties resumed discovery. In an effort to identify class members, Plaintiffs sent subpoenas to 38 companies they understood operated as Alliance's subdealers requesting calling data for calls placed on behalf of Alliance and Alarm.com. Plaintiffs received no calling data in response to any of the subpoenas. Terrell Decl. ¶ 7. Plaintiffs obtained permission to use documents and data that Alliance produced in the MDL litigation against Monitronics (N.D.W.V. Case No. 13-md-2943) that they thought might include calling data for class members. *Id.* Plaintiffs also took several additional depositions, including depositions of Alliance's corporate officers, Nationwide's principal, Mr. Moretti. *Id.*

After completing discovery and their expert's analysis of the Monitronics calling data, Plaintiffs filed a motion requesting that the Court modify its class certification order to (1) limit the Cell Phone class to individuals who were called by Nationwide because they did not have authenticated data of calls made by Alliance's other subdealers; (2) decertify the Residential Class because there was no way to tell from the available calling data whether a class member received a pre-recorded message, raising individualized issues; and (3) modify the National Do-Not-Call Class definition to correct a clerical error. The Court granted the motion. ECF No. 176.

Notice of class certification was disseminated to approximately 415,817 class members in accordance with the Court-approved notice plan. *See* ECF No. 178.

The parties exchanged expert disclosures and deposed each other's experts in early 2018. Terrell Decl. ¶ 9. Alarm.com moved for summary judgment in May 2018, arguing that it was not liable for calls made by Alliance on its behalf. ECF No. 195. Alarm.com also filed a motion to strike Plaintiffs' experts. ECF No. 198. Plaintiffs opposed both motions and filed a cross-motion for summary judgment. ECF Nos. 205 & 211. Following a hearing, the Court denied the summary judgment motions and the motion to exclude Plaintiffs' experts. ECF. No. 242.

Trial was set for October 9, 2018. After the summary judgment ruling, the parties prepared and exchanged exhibit lists, deposition designations, trial stipulations, jury instructions, and motions in limine. Terrell Decl. ¶ 11.

**B.      Plaintiffs and their counsel negotiate an outstanding settlement for the class.**

The parties engaged in settlement negotiations in December 2016 with Judge James F. Holderman of JAMS Chicago and in November 2017 with Judge Morton Denlow, also of JAMS Chicago. Neither was successful. Terrell Decl. ¶ 12. With trial fast approaching, the parties reopened their discussions. *Id.* This time, the parties were able to reach agreement on the terms of a settlement. *Id*; *see also* ECF 273-1 (Settlement Agreement); ECF 287-1 (Addendum to Settlement Agreement).

The proposed settlement requires Alarm.com to pay $28,000,000 into a "Settlement Fund." Settlement Agreement § 1.31. Subject to Court approval, the Settlement Fund will be used to make payments to all Settlement Class Members who submit timely and valid claims; pay the Settlement Administrator the costs of notice and Settlement Administration Expenses in an amount capped at $1,825,000; pay Service Awards in the amount of $10,000 to each Class Representative; and pay Class Counsel's attorneys' fees in an amount not to exceed $8,400,000 and litigation costs and expenses. *Id.* §§ 2.1, 8. Initially, the parties estimated litigation costs and expenses would be $300,000. *Id.* § 8.1. Plaintiffs later realized the estimate did not include the cost of disseminating notice of the Court's class certification order. ECF 287 at ¶ 2. With the cost of the notice program of $221,293.77, Class Counsel's estimate increased to $525,000. *Id.* Class Counsel's actual costs are close to their revised estimate, totaling $529,313.20. Terrell Decl. ¶ 50.

After payment of Court-approved administrative expenses, attorneys' fees and expenses, and service awards, the Settlement Fund will be distributed equally to Settlement Class Members who submit timely and valid claims. Settlement Agreement §§ 2.3(b) & 5.3. To participate, a Settlement Class Member only has to complete a simple Claim Form with his or her name, contact information, the telephone number that received the allegedly unlawful calls, and an affirmation that he or she received the allegedly unlawful calls at the designated telephone number. Settlement Agreement, Ex. 1. Settlement Class Members may submit one claim form

for each cellular or residential number on which they received the calls at issue. Addendum to Settlement Agreement § 5.3.

Plaintiffs' expert identified approximately 1,215,993 Settlement Class Members to whom claims administrator KCC provided notice. ECF 273 at ¶ 30; ECF 175 (describing notice plan following class certification); ECF 280 (describing notice plan following settlement). To date, KCC has received 25,740 claims, and Settlement Class Members still have more than a month— until April 16, 2019—to submit claims, opt out, or object. Terrell Decl. ¶ 52. If 10% of the identified Settlement Class Members file claims, each will receive approximately $142. If 15% file claims, each will receive approximately $94. *Id.*

**C.    The Court grants preliminary approval of the proposed settlement.**

Plaintiffs filed their unopposed motion for preliminary approval of the proposed Settlement on October 25, 2018. ECF 272-80. Plaintiffs filed a supplemental memorandum in support of their motion on November 15 to provide information required by the Court's newly updated Procedural Guidance for Class Action Settlements that was not included in their initial motion. ECF 282-83. Following a hearing on November 27, 2018, Plaintiffs filed a second supplemental memorandum that included additional information about the reach of the proposed notice plan, Class Counsel's revised litigation costs, and the Addendum to the Settlement Agreement addressing modifications to the plan for distributing the Settlement Fund. ECF 286-88. The Court granted preliminary approval of the proposed Settlement on December 19, 2018. ECF 291.

## IV.  AUTHORITY AND ARGUMENT

**A.    The percentage-of-the-fund method is the appropriate method for determining a reasonable attorneys' fee in this case.**

The common fund doctrine is an equitable exception to the American rule that litigants must bear their own attorneys' fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). It is well settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* The

"common fund" doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* A court with jurisdiction over the fund can "prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* "Ninth Circuit jurisprudence … permits the application of common fund principles where— as in the present case—the class of beneficiaries is identifiable and the benefits can be traced in order to allocate the fees to the class." *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 457 (9th Cir. 2009). In such cases, "the common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit in the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it").

Courts in the Ninth Circuit have discretion to award attorneys' fees using either the percentage of the fund method or the lodestar method when settlement of a class action creates a common fund. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). The method a district court chooses to use, and its application of that method, must achieve a reasonable result. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."). As the Ninth Circuit has instructed, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

The Ninth Circuit and district courts in this Circuit have recognized that the percentage-of-the-fund method is the appropriate method for calculating fees when counsel's effort has created a common fund. *See, e.g., In re Bluetooth*, 654 F.3d at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys

a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (observing that "use of the percentage method in common fund cases appears to be dominant" and discussing its advantages over the lodestar method); *see also Destefano v. Zynga*, No. 12-cv-04007-JSC, 2016 WL 537946, at *16-18 (N.D. Cal. Feb. 11, 2016) (using the percentage-of-the-fund method in a case that " involves a common settlement fund with an easily quantifiable benefit to the Class"). As one judge explained, "a number of salutary effects can be achieved by [using the percentage method], including removing the inducement to unnecessarily increase hours, prompting early settlement, reducing burdensome paperwork for counsel and the court and providing a degree of predictability to fee awards." *In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1376 (N.D. Cal. 1989); *see also* William B. Rubenstein, *Why the Percentage Method?*, 2 Class Action Attorney Fee Digest 93 (March 2008) ("[U]nder the percentage method, counsel has an interest in generating as large a recovery for the class as possible, as her fee increases with the class's take, while keeping her hours to the minimum necessary to do the job effectively.").[2]

The lodestar method, by contrast, is typically used when the value of the class's recovery is difficult to determine. *See In re Bluetooth*, 654 F.3d at 941 (courts use the lodestar method when the relief is "primarily injunctive in nature and thus not easily monetized"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (noting that courts use the lodestar method when "there is no way to gauge the net value of the settlement or any percentage thereof"); *Simon v. Toshiba Am.*, No. C 07-06202 MHP, 2010 WL 1757956, at *3 (N.D. Cal. Apr. 30, 2010) (using the lodestar method where the settlement allowed class members to choose between a voucher or a replacement product and the claims process had not yet concluded, making the value of the benefit to the class uncertain). Courts also use the lodestar method to determine a reasonable fee in cases involving a fee-shifting statute ("such as federal civil rights, securities, antitrust, copyright, and patent acts"). *In re Bluetooth*, 654 F.3d at 941. The lodestar method, by

---

[2] Available at http://www.billrubenstein.com/Downloads/Rubenstein%20_Mar08_column.pdf.

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS - 7

CASE NO. 4:15-CV-06314-YGR

contrast, has been criticized as encouraging lawyers to prolong the litigation and discourage early settlements that would benefit the class. *See Vizcaino*, 290 F.3d at 1050 n.5 ("[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement").

The percentage-of-the-fund method is the appropriate method for determining a reasonable fee in this case. The benefit to the class is easily quantified. Class Counsel's efforts resulted in a $28,000,000 common fund, all of which will be distributed to Settlement Class Members after settlement expenses, including administration expenses, Court-approved fees and costs, and Court-approved service awards, are deducted. Using the percentage method in this case will recognize Class Counsel's efficiency and their efforts to achieve the highest possible recovery for the class.

1.    A fee award of 30% of the Settlement Fund will fairly compensate Class Counsel for their work on behalf of the Settlement Class.

The Ninth Circuit has instructed that 25% is "a proper benchmark figure," with common fund fees typically ranging from 20% to 30% of the fund. *In re Coordinated Pretrial*, 109 F.3d at 607 (citation omitted); *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). While the 25% benchmark is the starting point for the analysis, "in most common fund cases, the award exceeds that benchmark," with a 30% award the norm "absent extraordinary circumstances that suggest reasons to lower or increase the percentage." *Burnthorne-Martinez v. Sephora USA, Inc*., No. 4:16-CV-02843-YGR, 2018 WL 5310833, at *2 (N.D. Cal. May 16, 2018) (citing *In re Omnivision Techs. Inc*., 559 F. Supp. 2d at 1047–48).

The percentage may be adjusted up or down based on the court's consideration of "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The relevant circumstances include (1) the results achieved for the class, (2) the risk counsel assumed, (3) the skill required and the

quality of the work, (4) the contingent nature of the fee, (5) whether the fee is above or below the market rate, and (6) awards in similar cases. *Id.* at 1048-50. Consideration of the relevant circumstances supports a fee award of 30% of the Settlement Fund, or $8,400,000.

a. *Class Counsel achieved an excellent settlement for the class.*

The $28,000,000 settlement amount reflects both the success Class Counsel achieved on class certification and in defeating summary judgment, and the legal challenges to come in proving vicarious liability at trial. A loss at trial could have prevented class members from recovering anything. Under the settlement, Settlement Class Members will likely receive between $94 to $142. Terrell Decl. ¶ 52 (based on 15% and 10% claim rates). This is a highly favorable outcome for the class in any TCPA case. *See In re Omnivision*, 559 F. Supp. 2d at 1046 ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award.").

The settlement amount is in line with—and in fact superior to—many other TCPA settlements in this circuit and around the country, including a long list of cases approved by district courts in California. *See Adams v. AllianceOne Receivables Mgt., Inc.*, No. 3:08-cv-00248, ECF 137, 116 at 7, & 109 at 10–11 (S.D. Cal.) (approving $40-per-claimant settlement); *Couser v. Comenity Bank,* 125 F. Supp. 3d 1034, 1043 (S.D. Cal. 2015) (approximately $13.75 per claimant); *Franklin v. Wells Fargo Bank, N.A.,* No. 14CV2349-MMA (BGS), 2016 WL 402249, at *3 (S.D. Cal. Jan. 29, 2016) ($71.16 per claimant); *Malta v. Freddie Mac & Wells Fargo Home Mtg*., 2013 WL 5467425 (S.D. Cal. June 21, 2013) ($84.82 per claimant); *Sarabri v. Weltman, Weinberg & Reis Co.*, L.P.A. No. 3:10-cv-01777-AJB-NLS, ECF 31-1 at 3 (S.D. Cal.) ($48.67 per claimants); *Steinfeld v. Discover Fin. Servs.*, No. 3:12-cv-01118-JSW, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) (payments estimated to be between $20 and $40); *Rose v. Bank of Am. Corp.*, 12 Civ. 04009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant).

This factor weighs in favor of Class Counsel's fee request.

### b. *Class Counsel assumed a significant risk of no recovery.*

Class Counsel's fee request also reflects that the case was risky and handled on a contingency basis. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015); *Vizcaino*, 290 F.3d at 1048; *see also Jenson v. First Tr. Corp.*, No. CV 05-3124 ABC, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008) ("Uncertainty that *any* recovery ultimately would be obtained is a highly relevant consideration. Indeed, the risks assumed by Counsel, particularly the risk of non-payment or reimbursement of expenses, is important to determining a proper fee award." (internal citation omitted)).

Class Counsel represented Plaintiffs and the class entirely on a contingent basis. Courts recognize that "[w]ith respect to the contingent nature of the litigation … courts tend to find above-market-value fee awards more appropriate in this context given the need to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees." *Destefano*, 2016 WL 537946, at *18 (citing *In re Wash. Public Power*, 19 F.3d at 1299). "This is especially true where, as here, class counsel has significant experience in the particular type of litigation at issue; indeed, in such contexts, courts have awarded an even higher 33 percent fee award." *Id.* (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, et al., 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005)); *see also* Terrell Decl. ¶¶ 18-20; Declaration of John W. Barrett in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards ("Barrett Decl.") ¶¶ 4-10; Declaration of Edward A. Broderick in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards ("Broderick Decl.") ¶¶ 4-11; and Declaration of Matthew P. McCue in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards ("McCue Decl.") ¶¶ 4-11.

Moreover, Class Counsel faced the very real risk they would not recover any fees and costs. *Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016) (awarding fees above the benchmark where, absent settlement, "there would remain a significant risk that the Settlement Class may have recovered less or nothing…"). "The risk that further litigation might result in Plaintiffs not recovering at all,

particularly a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046–47 (N.D. Cal. 2008). While Plaintiffs believed they have a case for liability, success on this score was not guaranteed. Terrell Decl. ¶ 14. Alarm.com denies that it can be held vicariously liable for Alliance's alleged telemarketing violations. *Id.* Proving vicarious liability can be challenging in this circuit, as the Ninth Circuit recently affirmed summary dismissal of two TCPA cases, finding that the defendants could not be held vicariously liable for telemarketing calls made by third parties. *See Jones v. Royal Admin. Servs. Inc.*, 887 F.3d 443 (9th Cir. 2018); *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010 (9th Cir. 2018). TCPA defendants often prevail on summary judgment on vicarious liability grounds. *See Hodgin v. UTC Fire & Security Americas Corp., Inc.*, 885 F.3d 243 (4th Cir. 2018); *Makaron v. GE Security Mfg. Co.*, No. CV-14-1274-GW (AGRx), 2015 WL 3526253, at *10 (C.D. Cal. May 18, 2015).

These risks are not unfounded. Class Counsel have unfortunately lost a number of TCPA cases without receiving a penny in fees. Terrell Decl. ¶ 17; Barrett Decl. ¶ 4; Broderick Decl. ¶ 3; McCue Decl. ¶ 3. Even where Class Counsel have successfully litigated TCPA claims through class certification and trial, they faced significant challenges. Three of the firms involved here were members of the team that successfully obtained, after years of hard-fought litigation, a $20.5 million jury verdict that the district court trebled to $61.5 upon finding that the defendant's TCPA violations were willful and knowing. *Krakauer v. Dish Network L.L.C.*, No. 1:14-cv-333, 2017 WL 2242952 (M.D.N.C. May 22, 2017). The firms also spent more than $500,000 in litigation costs. But the verdict is on appeal and it could be years before the class receives payment. Barrett Decl. ¶ 4.

These risks weigh in favor of Class Counsel's fee request.

c.    *Class Counsel's skill and quality of work delivered a recovery for the class.*

Class Counsel were able to litigate this case efficiently because of their experience in litigating TCPA claims in class action cases. Class Counsel have litigated dozens of TCPA cases—achieving a successful resolution in many, but also losing some. *See* Terrell Decl. ¶¶ 17-20; Barrett Decl. ¶¶ 4-10; Broderick Decl. ¶¶ 3-11; McCue Decl. ¶¶ 3-11. This depth of experience with TCPA claims and class action litigation allowed Class Counsel to clear several procedural hurdles, including class certification and summary judgment, and to negotiate a settlement that capitalized on the claims' strengths while taking into account the risks of continued litigation.

"The quality of opposing counsel is also relevant to the quality and skill that class counsel provided." *Destefano*, 2016 WL 537946, at *17. Class Counsel's ability to negotiate a favorable settlement despite the vigorous opposition of Alarm.com's counsel supports their fee request. *See, e.g.*, *Lofton*, 2016 WL 7985253, at *1 (the "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the fee award); *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (where defense counsel "understood the legal uncertainties in this case[] and were in a position to mount a vigorous defense," the favorable settlement was a "testament to Plaintiffs' counsel's skill").

d.    *Awards in similar cases show that the requested fee is reasonable.*

An award of 30% of a common fund is consistent with fee awards in other TCPA class settlements in this circuit and in federal courts around the country. The District Court for the Western District of Washington awarded a fee of 30% of a $2.5 million settlement fund. *Ikuseghan v. Multicare Health Sys.*, No. C 14-5539 BHS, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016). As part of its analysis, the court surveyed fee awards in TCPA settlements in the Ninth Circuit and discovered that more than half of the awards (14 of 25) were at the 25% benchmark or higher. *Id.* at *3; *see also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F.

Supp. 3d 781, 804 (N.D. Ill. 2015) (determining that the typical attorneys' fee award in a consumer case is 30% of the first $10 million recovered for the class).

The *Ikuseghan* Court's analysis finds support in this district. *See Lofton*, 2016 WL 7985253, at *1 (awarding 30% of the common fund in TCPA class action). In addition, courts in other districts within this circuit routinely award fees that exceed the benchmark in TCPA class actions. *See Gutierrez-Rodriguez v. R.M. Galicia, Inc.,* Case No. 16-CV-00182-H-BLM, 2018 WL 1470198 (S.D. Cal. March 26, 2018) (approving award of fees and costs of 30%, based on excellent results achieved, risks of litigation, high quality of work and contingency basis); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (finding "a 33% award of fees and costs is warranted"); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 114CV02081DAD, 2017 WL 4180497, at *9 (E.D. Cal. Sept. 21, 2017) (approving "an award of one-third of the $25 million settlement fund, or $8,333,333"); *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.,* No. 11MD02295 JAH - BGS, 2017 WL 10777695, at *1 (S.D. Cal. Jan. 25, 2017) (approving fee request for 27% of the common fund); *Ritchie v. Van Ru Credit Corp.*, No. 2:12-CV-01714-PHX-SM, 2014 WL 3955268, at *3 (D. Ariz. Aug. 13, 2014) (approving fees of 28% of the settlement fund).

    2.    <u>A lodestar crosscheck confirms that the requested fee is reasonable.</u>

In the Ninth Circuit, courts may use a rough calculation of the lodestar as a crosscheck to assess the reasonableness of an award based on the percentage method. *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *see also Glass*, 331 F. App'x at 456-57 (affirming a fee award of 25% of a settlement fund with an "informal" lodestar crosscheck and despite "the relatively low time-commitment by plaintiff's counsel" because "the district court did not abuse its discretion in giving weight to other factors, such as the results achieved for the class and the favorable timing of the settlement"). Courts use a two-step process in applying the lodestar method. First, the court calculates the "lodestar

figure" by multiplying the number of hours reasonably expended by a reasonable rate. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Once the lodestar is determined, the amount may be adjusted to account for several factors, such as the benefit obtained for the class, the risk of nonpayment, the complexity and novelty of the issues presented, and awards in similar cases. *See In re Bluetooth*, 654 F.3d at 942. Foremost among the considerations is the benefit obtained for the class." *Id.*

        a.    *Class Counsel's rates are consistent with rates in the community for similar work performed by attorneys of comparable skill, experience, and reputation.*

In determining a reasonable hourly rate, courts look at the prevailing market rates in the relevant community, which is the forum in which the district court sits. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). In this district, courts typically approve as reasonable hourly rates billed by partners up to $850, associates up to $510, paralegals up to $240, and litigation staff up to $185. *See del Toro Lopez v. Uber Techs., Inc.,* No. 17-CV-06255-YGR, 2018 WL 5982506, at *4 (N.D. Cal. Nov. 14, 2018) ("Class Counsel's hourly rates, ranging from $250 to $850 for attorneys, are reasonable in light of the market for legal services of this type and quality."); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2014 WL 588035, at *14 (N.D. Cal. Feb. 14, 2014) (approving partner rates ranging from $550 to $825 as "reasonable given the geographic location and experience of counsel"); *Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 WL 324262, at *2 (N.D. Cal. Jan. 29, 2014) (finding partner rates of $625 and $825, listed in ECF No. 248 ¶ 11, were reasonable); *Wehlage v. Evergreen at Arvin, LLC*, No. 4:10-cv-05839-CW, 2012 WL 4755371, at *2 (N.D. Cal. Oct. 4, 2012) (approving senior partner rates of $750 and $900, listed in ECF No. 116); *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) (citing *Armstrong v. Brown*, 805 F. Supp. 2d 918, 920-21 (N.D. Cal. 2011) (finding that ranges of $285 to $510 for associates, $200 to $240 for paralegals, and $150 to $185 for litigation support staff, were reasonable)).

Class Counsel have provided the Court with declarations describing the basis for their hourly rates, including their education, legal experience, and reputation in the legal community. Counsel set their rates for attorneys and staff members based on a variety of factors, including, among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation and ability of the attorneys and staff members. *See* Terrell Decl. ¶¶ 47-48; *See* Terrell Decl. ¶¶ 17-20; Barrett Decl. ¶¶ 4-10; Broderick Decl. ¶¶ 4-11, 16; McCue Decl. ¶¶ 4-11. Across firms, the rates Class Counsel charged for attorneys and staff members working on this matter ranged from $100.00 to $760.00. Terrell Decl. ¶ 43; Barrett Decl. ¶ 16; Broderick Decl. ¶ 16; McCue Decl. ¶ 18. Courts have found these rates to be reasonable in numerous class action cases. *Id*. Because counsel's hourly rates are in line with rates approved in similar cases in this district, counsel's hourly rates are reasonable and appropriate for calculating the lodestar. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (affidavits by plaintiffs' counsel and fee awards in other cases are sufficient evidence of prevailing market rates).

> b. *Class Counsel expended a reasonable number of hours litigating the case.*

The number of hours that Class Counsel devoted to investigation, discovery, motion practice, trial preparation, and achieving a favorable settlement is reasonable. Since the inception of this case more than three years ago, Class Counsel have worked diligently to prosecute this action on behalf of the Settlement Class. Counsel served and responded to written discovery requests, produced and reviewed tens of thousands of pages of documents, and took multiple depositions of Alarm.com, third parties, and Alarm.com's experts. Terrell Decl. ¶¶ 3, 7, 9. Plaintiffs also issued multiple third-party subpoenas in an effort to obtain critical records of telemarketing calls made to class members. *Id.* ¶¶ 4, 7. Class Counsel successfully certified three classes, responded to Alarm.com's motion for summary judgment and filed a cross-motion for summary judgment, and opposed Alarm.com's motion to exclude Plaintiffs' experts. *Id*. ¶¶ 6,10.

After the summary judgment ruling, Class Counsel prepared for trial, providing their exhibit lists, deposition designations, trial stipulations, jury instructions, and motions in limine. *Id.* ¶ 11. With trial just a month away, the parties were finally able to settle. *Id.* ¶ 12.

In all, Class Counsel dedicated over 3,527 hours to the investigation, development, litigation, and resolution of this case. *See* Terrell Decl. ¶ 49. This total excludes time that Class Counsel removed as duplicative, administrative, or arguably excessive. *Id.* Class Counsel worked collaboratively, but also took care to avoid duplication of effort by dividing tasks according to each professional's skill, experience, and availability, both within and amongst the firms. *Id.* The resulting hours are those that would be billed to a fee-paying client in a non-contingent case. *Id.* As in every case, counsel will spend additional hours to see this case through to final resolution, including the work necessary to prepare the motion for final approval, attend the hearing on final approval, and ensure the claims process is properly carried out. Class Counsel's total lodestar, which does not include the time incurred to prepare this motion, is $2,576,774.50. *Id.*

              c.      *A multiplier is reasonable and appropriate.*

After determining the lodestar, courts consider the appropriate multiplier to apply. The multiplier can be determined by dividing the total fees sought by the lodestar. *See Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013). "The purpose of this multiplier is to account for the risk Class Counsel assumes when they take on a contingent-fee cases." *Id.* (citation omitted). Multipliers are commonplace in attorneys' fee awards in class actions, particularly when the lodestar method is used to cross-check a percentage-of-the-fund fee. *See* Richard A. Posner, Economic Analysis of Law 783 (8th ed. 2011) ("A contingent fee must be higher than a fee for the same legal services paid as or after they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is high because the risk of default (the loss of the case, which cancels the client's debt to the lawyer) is much higher than in the case of conventional loans, and the total amount of interest is large not only

because the interest rate is high but because the loan may be outstanding for years—and with no periodic part payment, a device for reducing the risk borne by the ordinary lender."); *see also* John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981) ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.").

Courts approach multipliers differently when the lodestar method is used as a crosscheck than when using the lodestar in fee-shifting cases. In fee-shifting cases, "the question of whether a multiplier is permitted is a question of statutory interpretation" and "courts are somewhat hesitant to make the shift broader than is necessary" since the adversary pays the fee. William B. Rubenstein, 5 Newberg on Class Actions § 15:91 (5th ed. Nov. 2018 update). "[I]n common fund cases, courts that employ a pure lodestar method are not bound by the Supreme Court's rulings that limit multiplied lodestars in the fee-shifting context." *Id.*; *see also Vizcaino*, 290 F.3d at 1051 ("The bar against risk multipliers in statutory fee cases does not apply to common fund cases" and "'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'" (citation omitted)).

In the Ninth Circuit, multipliers "ranging from one to four are frequently awarded." *Vizcaino*, 290 F.3d at 1051 n.6. The Ninth Circuit collected dozens of class action lodestars and found that in 83% of the cases the lodestar was between 1.0 and 4.0. *Id.* Courts find higher multipliers appropriate when using the lodestar method as a crosscheck for an award based on the percentage method. *See, e.g., Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (finding a multiplier of approximately 6.85 to be "well within the range of multipliers that courts have allowed" when crosschecking a fee based on a percentage of the fund); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018) (finding a 4.375 multiplier to be reasonable in crosschecking a fee of 25% of a settlement fund); *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 1:16-cv-00157-

DAD-JLT, 2017 WL 5665848, at *8 (E.D. Cal. Nov. 27, 2017) ("awarding attorneys' fees at a 25 percent benchmark of the common fund would yield a lodestar multiplier of 3.95, which is within the range of acceptable lodestar multipliers previously approved by this court and others"); *Hillson v. Kelly Servs. Inc.*, No. 2:15-cv-10803, 2017 WL 3446596, at *6 (E.D. Mich. Aug. 11, 2017) (finding a multiplier of 4 to be reasonable in crosschecking a fee of 25% of a settlement fund); *Pan v. Qualcomm Inc.*, No. 16-CV-01885-JLS-DHB, 2017 WL 3252212, at *13 (S.D. Cal. July 31, 2017) (finding a multiplier of 3.5 to be reasonable for a fee equal to 24.6% of the settlement value); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) (finding a "modest multiplier of 4.65 is fair and reasonable" when cross-checking a fee of 33⅓% of the settlement fund); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ. A. H-99-4137, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (finding a multiplier of 5.3 appropriate in crosschecking a fee of 30% of the settlement fund); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (finding that a multiplier of 3.6 was "well within the acceptable range" and explaining that "[m]ultipliers in the 3-4 range are common").

Courts may consider the following factors when assessing the reasonableness of a multiplier: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Vizcaino*, 290 F.3d at 1051 (noting that the district court found a 3.65 multiplier to be reasonable after considering the factors in *Kerr*).

Application of these factors confirms that a multiplier of 3.26 is reasonable and appropriate in this case. Class Counsel took the case on a contingent basis and to the preclusion

1 of other work. They were able to achieve a favorable settlement for the class that is comparable

2 to other similar settlements (and superior to many) despite the challenges presented by this

3 litigation. Class Counsel have substantial experience in litigating TCPA class actions and have

4 earned reputations for skilled representation of victims of TCPA violations. Finally, Class

5 Counsel will continue to respond to Settlement Class Members' calls and work with the

6 settlement administrator through final approval and distribution of the settlement funds.

7 **B.     Class Counsel's litigation costs were necessarily and reasonably incurred.**

8        Rule 23(h) authorizes courts to award costs authorized by law or the parties' agreement.

9 Attorneys who create a common fund are entitled to reimbursement of their out-of-pocket

10 expenses so long as they are reasonable, necessary and directly related to the work performed on

11 behalf of the class. *Vincent v. Hughes Air W.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Corson*

12 *v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB, 2016 WL 1375838, at *9 (C.D. Cal.

13 Apr. 4, 2016) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-

14 distance telephone calls, computer legal research, postage, courier service, mediation, exhibits,

15 documents scanning, and visual equipment are typically recoverable"); *Hopkins v. Stryker Sales*

16 *Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (awarding

17 costs for document review, depositions, and experts).

18        Class Counsel have provided the Court with a chart that lists their litigation costs by

19 category. These costs, the bulk of which were incurred retaining experts to perform the data

20 analysis essential to proving Alarm.com's liability and damages, total $529,313.20. Terrell Decl.

21 ¶ 50.

22 **C.     Plaintiffs request service awards of $10,000.**

23        Class representatives are eligible for reasonable service awards. *Staton*, 327 F.3d at 977.

24 The Ninth Circuit has explained that service awards that are "intended to compensate class

25 representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'"

26 *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. W. Publishing*, 563 F.3d 948, 958-59

27

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS - 19
CASE NO. 4:15-CV-06314-YGR

1   (9th Cir. 2009)). The awards recognize the effort class representatives expend and the financial

2   or reputational risk they undertake in bringing the case, and to recognize their willingness to act

3   as private attorneys general. *W. Publishing*, 563 F.3d at 958-59. The factors courts consider

4   include the class representative's actions to protect the interests of the class, the degree to which

5   the class has benefitted from those actions, the time and effort the class representative expended

6   in pursuing the litigation, and any risk the class representative assumed. *Staton*, 327 F.3d at 977.

7   Courts also "balance 'the number of named plaintiffs receiving incentive payments, the

8   proportion of the payments relative to the settlement amount, and the size of each payment.'"

9   *Wren v. RGIS Inventory Specialists*, No. C 06-05778 JCS, 2011 WL 1230826, at *32 (N.D. Cal.

10  Apr. 1, 2011) (quoting *Staton*, 327 F.3d at 977).

11          Unlike unnamed Settlement Class Members, who are passive beneficiaries of the

12  representatives' efforts on their behalf, named class representatives agree to be the subject of

13  discovery, including making themselves available as witnesses at deposition and trial, and

14  subject themselves to other obligations of named parties. Service payments, which serve as

15  premiums in addition to any claims-based recovery from the settlement, promote the public

16  policy of encouraging individuals to undertake the responsibility of representative lawsuits. In

17  this case, the Plaintiffs protected the interests of the Settlement Class for more than three years.

18  Each actively assisted in the prosecution of this case by responding to Alarm.com's discovery

19  requests. Mr. Heidarpour worked closely with counsel to respond to interrogatories and produced

20  235 pages of documents in response to Alarm.com's 38 requests for production. ECF 277, ¶ 6.

21  He sat for a nearly full-day deposition. *Id*. ¶ 7. And he consulted with counsel throughout the

22  settlement process to ensure that an excellent result was reached for all Settlement Class

23  Members. *Id*. ¶ 8. Mr. Charvat, who has passionately pursued telemarketing cases for twenty

24  years, also responded to Alarm.com's discovery requests, including requests to search for and

25  provide supplemental discovery. ECF 278 ¶¶ 3, 11-12. Like the other Plaintiffs, Mr. Charvat sat

26  for a long deposition and worked with counsel to make sure they reached a fair settlement. *Id*.

27

1  ¶¶ 13-14. Finally, Mr. Hankins also responded to discovery, sat for a deposition, and participated

2  in the settlement process. ECF 279 ¶¶ 4-6. Perhaps most important, each was ready and willing

3  to testify at the imminent trial.

4      Service Awards of $10,000 are reasonable and in line with awards approved by federal

5  courts in California and elsewhere. *See, e.g., del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-

6  06255-YGR, 2018 WL 5982506, at *3, 18 (N.D. Cal. Nov. 14, 2018) (approving service awards

7  ranging from $30,000 to $50,000); *In re Nat'l Collegiate Athletic Ass'n*, No. 4:14-md-2541-CW,

8  2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000 incentive awards to each

9  of four class representatives and collecting cases approving similar awards); *Lofton*, 2016 WL

10  7985253, at *2 (awarding $15,000 incentive fee in TCPA class action); *Pelletz v. Weyerhaeuser

11  Co.*, 592 F. Supp. 2d 1322, 1329-30 & n.9 (W.D. Wash. 2009) (collecting cases approving

12  awards ranging from $5,000 to $40,000). *Contreras v. Performance Food Grp., Inc.*, No. 4:14-

13  CV-03380-PJH, 2016 WL 9138157, at *1 (N.D. Cal. May 4, 2016) (approving service award "in

14  the amount of $10,000.00, for the initiation of this action, the substantial benefit conferred upon

15  the Class, and the risks taken by stepping forward and prosecuting this action"); *Dyer v. Wells

16  Fargo Bank, N.A.*, 303 F.R.D. 326, 336 (N.D. Cal. 2014) (approving $10,000 service award

17  where class representative consulted with counsel, attended mediation, contributed significant

18  personal time, and award was paid directly by the defendant such that "class members will not

19  fund the awards."). Thus, $10,000 service awards are reasonable here.

20  **V.  CONCLUSION**

21      Class Counsel request that the Court approve a fee and cost award of $8,400,000, which

22  is 30% of the settlement fund, and reimbursement of $529,313.20 in litigation costs. Plaintiffs

23  request service awards of $10,000 in recognition of their representation of the class in this case.

24

25

26

27

RESPECTFULLY SUBMITTED AND DATED this 18th day of March, 2019.

TERRELL MARSHALL LAW GROUP PLLC


By: Beth E. Terrell, SBN #178181
    Beth E. Terrell, SBN #178181
    Email: bterrell@terrellmarshall.com
    Jennifer Rust Murray, *Admitted Pro Hac Vice*
    Email: jmurray@terrellmarshall.com
    Elizabeth A. Adams, SBN #290029
    Email: eadams@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    John W. Barrett, *Admitted Pro Hac Vice*
    E-mail: jbarrett@baileyglasser.com
    Email: crobinson@baileyglasser.com
    Jonathan R. Marshall, *Admitted Pro Hac Vice*
    Email: jmarshall@baileyglasser.com
    Ryan McCune Donovan, *Admitted Pro Hac Vice*
    Email: rdonovan@baileyglasser.com
    Brian A. Glasser, *Admitted Pro Hac Vice*
    Email: bglasser@baileyglasser.com
    BAILEY & GLASSER, LLP
    209 Capitol Street
    Charleston, West Virginia 25301
    Telephone: (304) 345-6555
    Facsimile: (304) 342-1110

    Edward A. Broderick *Admitted Pro Hac Vice*
    Email: ted@broderick-law.com
    Anthony I. Paronich, *Admitted Pro Hac Vice*
    Email: anthony@broderick-law.com
    BRODERICK & PARONICH, P.C.
    99 High Street, Suite 304
    Boston, Massachusetts 02110
    Telephone: (617) 738-7080
    Facsimile: (617) 830-0327

Matthew P. McCue
E-mail: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts  01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

Chiharu Sekino, SBN #306589
Email: csekino@sfmslaw.com
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
1230 Columbia Street, Suite 1140
San Diego, California 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367

James C. Shah, SBN #260435
Email: jshah@sfmslaw.com
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
35 East State Street
Media, Pennsylvania 19063
Telephone: (610) 891-9880
Facsimile: (866) 300-7367

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on March 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kasey C. Townsend, SBN #152992
Email: ktownsend@murchisonlaw.com
Susan J. Welde, SBN #205401
Email: swelde@murchisonlaw.com
MURCHISON & CUMMING, LLP
275 Battery Street, Suite 850
San Francisco, California 94111
Telephone: (415) 524-4300

Martin W. Jaszczuk, *Admitted Pro Hac Vice*
Email: mjaszczuk@jaszczuk.com
Margaret M. Schuchardt, *Admitted Pro Hac Vice*
Email: mschuchardt@jaszczuk.com
Seth H. Corthell, *Admitted Pro Hac Vice*
Email: scorthell@jaszczuk.com
Daniel I. Schlessinger, *Admitted Pro Hac Vice*
Email: dschlessinger@jaszczuk.com
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
Telephone: (312) 442-0311

Craig S. Primis, *Admitted Pro Hac Vice*
Email: craig.primis@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5921
Facsimile: (202) 879-5200

*Attorneys for Defendants Alarm.com Incorporated and Alarm.com Holdings, Inc.*

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS - 24
CASE NO. 4:15-CV-06314-YGR

DATED this 18th day of March, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, SBN #178181
Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*